UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Misc. Case No. _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PDV USA, INC.,

   Petitioner,

v.              Related Case No. 20-cv-3699
                (S.D.N.Y.)

COMMUNICATION SOLUTIONS, INC. and
ESTHER NUHFER,

   Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PETITIONER PDV USA'S MOTION TO COMPEL RESPONDENTS'
COMPLIANCE WITH SUBPOENAS AND FOR FEES AND COSTS**

Respondents vigorously evaded service of the subpoenas at issue for weeks, even refusing to answer a knock at the door with multiple police officers present. Respondents' counsel refused to accept service by email. And now that they have been properly served by mail, Respondents have opted to ignore these lawfully issued and served subpoenas altogether. Accordingly, PDV USA, Inc. ("PDV USA") respectfully moves this Court for an order to compel Communication Solutions, Inc. ("Communication Solutions") and Esther Nuhfer (together, "Respondents") to comply with non-party subpoenas properly served by PDV USA as part of *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 1:20-cv-03699 (S.D.N.Y. 2020) (the "Underlying Action"), and to pay PDV USA's attendant fees and costs.

## INTRODUCTION

This motion to compel compliance with non-party subpoenas arises from PDV USA's extensive but ultimately unsuccessful efforts to obtain third-party document discovery from the Miami-based firm Communication Solutions and its president and sole employee, Esther Nuhfer,

a critical player in the Underlying Action.

The Underlying Action concerns a 2017 consulting agreement (the "Contract") between Interamerican Consulting, Inc. ("Interamerican"), a Florida corporation owned and run by former U.S. Congressman David Rivera, and PDV USA, a U.S.-based indirect subsidiary of PDVSA, the state-owned petroleum corporation of Venezuela. The Contract provided that PDV USA would pay $50 million to Interamerican over a three-month period, in exchange for Interamerican providing strategic consulting services to PDVSA. PDV USA brought suit against Interamerican in federal court in New York for breach of contract and unjust enrichment, alleging that Interamerican breached the Contract because, among other reasons, it failed to render any consulting services. *See generally PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 1:20-cv-03699 (S.D.N.Y. 2020), ECF No. 25 (hereinafter, "Compl.").

Respondents played a central role in the Contract and related transactions, and therefore are highly likely to have relevant documents in their possession. Indeed, documents already obtained from other third parties in the Underlying Action prove that Respondents were funneled over $4.5 million from PDV USA by Interamerican in connection with the Contract. Furthermore, Respondents received a grand jury subpoena (the "Government Subpoena") requesting documents related to the Contract, and Respondents have already begun producing documents to the government. Accordingly, PDV USA has sought third-party discovery from Respondents.

Relevant to this motion, PDV USA seeks to enforce compliance with two subpoenas for documents served on Respondents: a Subpoena to Produce Documents directed to Communication Solutions (the "Communication Solutions Document Subpoena," Ex. 1)[1] and a Subpoena to

---

[1] Citations to "Ex. __" refer to documents attached to the Declaration of Brady M. Sullivan ("Sullivan Decl."), attached hereto as Exhibit A.

Produce Documents directed to Esther Nuhfer (the "Nuhfer Document Subpoena," Ex. 2) (collectively, the "Subpoenas"). PDV USA's process servers and private investigators attempted numerous times to serve the Subpoenas on Ms. Nuhfer in person—after she refused to authorize her counsel to accept service—but they were unsuccessful because Ms. Nuhfer actively evaded service. On April 6, 2022, the Subpoenas were mailed to a United Parcel Service mailbox registered to Communication Solutions and Esther Nuhfer in Pinecrest, Florida. Under well-established law in this Circuit, service by mail is adequate under Federal Rule of Civil Procedure ("FRCP") 45. More than fourteen days have passed since service, and Respondents have not produced documents or provided any objections. The Subpoenas are appropriate in scope, as they primarily request documents and communications concerning the Contract, as well as related subcontracts and payments.

Counsel for PDV USA have attempted for many weeks to resolve these issues with Respondents, but both sides are at an impasse. Accordingly, PDV USA moves this Court to compel Respondents' compliance with the properly served Subpoenas. In addition, because Respondents intentionally evaded service of process, PDV USA moves for an order directing Respondents to pay PDV USA's fees and expenses incurred in attempting to serve Respondents and in litigating this motion.

## FACTUAL BACKGROUND

### I. The Underlying Action

On March 21, 2017, Interamerican and PDV USA signed the Contract, pursuant to which Interamerican would be paid $50 million in six installments over the three-month contract term (March 21, 2017 to June 21, 2017) to provide purported "strategic consulting services" for PDV USA's ultimate parent company, PDVSA. Compl. ¶¶ 19–32. PDV USA was instructed by PDVSA—controlled at that time by the regime of Nicolás Maduro—to enter into the Contract for

the purported purpose of improving PDVSA's "long-term reputation and standing" in the United States. *Id.* at ¶ 2. At the beginning of the Contract term, PDV USA paid three installments of $5 million ($15 million in total) to Interamerican. *Id.* at ¶ 47. But Interamerican never rendered any strategic consulting services or otherwise fulfilled its obligations under the Contract. As just one example, the Contract obligated Interamerican to provide at least seven bi-weekly written reports to PDV USA detailing the work carried out during the relevant period. *Id.* at ¶¶ 34–39. Instead, Interamerican provided just two reports, which failed to describe any actual services rendered. *Id.*[2] Thereafter, PDV USA refused to pay Interamerican the remaining balance on the Contract, and sought to have the Contract assigned to PDVSA. *Id.* at ¶¶ 48, 51.

PDV USA sued Interamerican for breach of contract in federal court in New York. *See generally id.* In addition to claims for breach of contract and indemnity, PDV USA asserted a claim for unjust enrichment, insofar as "discovery shows that the [Contract] was a sham" and that therefore no enforceable contract was formed between PDV USA and Interamerican. *Id.* at ¶ 75. Interamerican asserted counterclaims, alleging that it fully performed under the Contract and is owed the unpaid balance by PDV USA. *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 1:20-cv-03699 (S.D.N.Y. 2020), ECF No. 50. The discovery cut-off is currently set for June 23, 2022.

II.  **Communication Solutions and Esther Nuhfer Were Extensively Involved in the Contract at the Heart of the Underlying Litigation and They Are Highly Likely to Have Relevant Documents in Their Possession**[3]

Discovery in the Underlying Action—namely, documents produced by other third parties in Florida—has thus far revealed that Interamerican did not provide any consulting services under

---

[2] Interamerican breached the Contract in several other ways, as detailed in the Complaint. *See id.* at ¶¶ 33–43.

[3] The Underlying Action, including Respondents' role in the Contract, has garnered significant press coverage in

the Contract; in fact, Mr. Rivera funneled the money he received from PDV USA to a group of associates, including Respondents—all of whom are either indicted or under criminal investigation—under the guise of purported "subcontracts" and other arrangements. *See PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 1:20-cv-03699 (S.D.N.Y. 2020), ECF No. 70. These associates and purported subcontractors include Raul Gorrín, a billionaire Maduro supporter who was indicted in the United States for his role in a massive money laundering and bribery operation, Hugo Perera, a convicted drug trafficker who is currently under criminal investigation for his involvement with the Contract, and Esther Nuhfer and her purported political consulting firm: Communication Solutions. *See id.*; Ex. 11 (recent press coverage).

In fact, documents already produced by others in the Underlying Action prove that Respondents worked closely with Interamerican before, during and after the term of the Contract:

- In March 2017, Ms. Nuhfer emailed drafts of the Contract to Mr. Rivera, Mr. Gorrín, and Mr. Perera. *See* Exs. 13, 14.

- Esther Nuhfer signed a one-page subcontract with Interamerican, dated March 20, 2017, which provided that Communication Solutions would "provide [Interamerican] and [PDV USA] with Marketing Strategic Consulting to best serve [Interamerican's] ability to fulfill its agreement with [PDV USA]." Ex. 15. In exchange, Communication Solutions would "receive from [Interamerican] 25 percent of net fees received from [PDV USA] in fulfilment of the [Contract]." *Id.* Communication Solutions did in fact receive over $4.5 million from Interamerican in 2017, which Interamerican reported as a deductible expense on its 2017 tax return. Ex. 19.

- On March 21, 2017, the same day the Contract was signed, Mr. Rivera emailed a copy of the Contract to Ms. Nuhfer, Mr. Gorrín, and Mr. Perera. Ex. 16. Mr. Rivera stated "I think we're almost ready" and discussed arranging a supposed meeting with Congressman Pete Sessions (who Interamerican claims was involved in its alleged consulting services under the Contract). *Id.*[4]

---

Miami. *See, e.g.*, Ex. 11.

[4] When asked at deposition about this email and the supposed meeting with Pete Sessions, Mr. Perera invoked his Fifth Amendment rights and declined to answer.

- During the Contract term in 2017, Mr. Rivera blind-copied Ms. Nuhfer on numerous email exchanges between Mr. Rivera and PDV USA concerning the Contract and invoices thereunder.

- On November 3, 2017, Ms. Nuhfer emailed draft subcontracts for "Hugo" and "Raul," Ex. 17, which were similar to the subcontract signed by Ms. Nuhfer on behalf of Communication Solutions.

- On November 29, 2017, Mr. Rivera emailed Ms. Nuhfer and Mr. Perera a list of "invoice dates and amounts that I need from each sub-contractor"—including three invoices for millions of dollars from Communication Solutions—and congratulated Ms. Nuhfer and Mr. Perera for "the performance by each sub-contractor." Ex. 18.

- Recently, Ms. Nuhfer has continued to communicate via email with Mr. Rivera about the Underlying Action.

These documents make clear that it is highly likely that Respondents have relevant documents in their possession. Furthermore, counsel for Respondents have advised that the topics in the Government Subpoena received by Respondents are "virtually identical" to the topics set forth in the Subpoenas, Respondents have already produced responsive documents to the government, and they have performed forensic collections of Ms. Nuhfer's cell phones to obtain additional documents. *See* Sullivan Decl. ¶ 6.

**III.    The Subpoenas and Attempted Service of Process**

This motion concerns a dispute over two identical subpoenas for documents: the Communication Solutions Document Subpoena (Ex. 1) and the Nuhfer Document Subpoena (Ex. 2) (as defined above, the "Subpoenas"). Ms. Nuhfer is the President and Registered Agent for Communication Solutions, Ex. 12, and also its only employee. The Subpoenas seek documents and communications concerning (a) the Contract and the Underlying Action; (b) relevant subcontracts; (c) certain meetings involving Mr. Rivera that Ms. Nuhfer may have attended; (d) relevant payments concerning the Contract, including payments to or from the other subcontractors (such as Mr. Gorrín and Mr. Perera) and other entities/individuals potentially involved in the Contract; (e) two discrete issues derived from emails to or from Ms. Nuhfer produced in the

6

Underlying Action; and (f) Ms. Nuhfer's ownership interest in Communication Solutions. Exs. 1, 2.

Because Ms. Nuhfer had previously tried to evade service of a separate subpoena for her deposition, which eventually resulted in the police being called to her residence, PDV USA attempted throughout February and March 2022 to convince counsel for Respondents to accept service of a prior version of the Communication Solutions Document Subpoena, which PDV USA emailed to counsel for Respondents in early February 2022. Sullivan Decl. ¶¶ 3–7 & Ex. 3. During February and March 2022, PDV USA exchanged emails and had numerous telephonic conferrals with counsel for Respondents. Sullivan Decl. ¶¶ 4–7 & Ex. 4–5. Unfortunately, Respondents refused to authorize their lawyers to accept service. Sullivan Decl. ¶ 7 & Ex. 5 (March 15, 2022 email from counsel for Respondents to counsel for PDV USA: "I am very sorry but I cannot get authorization to accept service.").

Having exhausted efforts to effectuate service through Respondents' counsel, PDV USA instructed private investigations firm JS Held to serve the Subpoenas on Ms. Nuhfer. Between late March and early April, investigators from JS Held attempted and failed to serve Ms. Nuhfer at her residence in Palmetto Bay, Florida and other nearby locations. Exs. 6, 7. These attempts included (a) twice ringing Ms. Nuhfer's doorbell when she was confirmed to be home (once with law enforcement present at her door); (b) following Ms. Nuhfer in her vehicle to a gas station and shopping center, where she successfully evaded the process servers; (c) following a person driving Ms. Nuhfer's vehicle, only to discover it was her husband acting as a decoy to draw the process servers away from Ms. Nuhfer's residence; and (d) renting new vehicles to avoid being spotted by Ms. Nuhfer or her husband. Exs. 6, 7. Thus, it is clear that Ms. Nuhfer—who, as evidenced by her refusal to authorize her counsel to accept service as early as February 2022, had been on notice

for months that PDV USA was trying to serve her—went to great lengths to actively evade service of process. These attempts at personal service ultimately failed.

On April 5, 2022, PDV USA resorted to alternative service, and served the Subpoenas via UPS mail. Sullivan Decl. ¶ 10 & Ex. 7. According to a recently amended Florida business filing, the address for both Communication Solutions and Esther Nuhfer is 11767 South Dixie Hwy, Suite 269, Pinecrest, FL 33156, a UPS box. Ex. 12. The subpoenas were mailed to that address on April 5, 2022, and delivered on April 6. Ex. 7 (with UPS delivery receipts). The manager of the UPS Store, Gabriel Colon, confirmed that the box was registered to both Communication Solutions and Ms. Nuhfer. *Id*.

On April 7, PDV USA emailed copies of the Subpoenas to counsel for Respondents and advised that service had been properly effectuated by UPS mail. Ex. 8.[5] On April 21, counsel for Respondents advised, for the first time, that Respondents intended to move to quash the Subpoenas, including on grounds of improper scope. Sullivan Decl. ¶ 12. PDV USA expressed willingness to meet and confer with Respondents regarding the scope of the Subpoenas, and stated that PDV USA reserved the right to move to compel in the event Respondents would not accept service. Sullivan Decl. ¶ 12 & Ex. 9. Counsel for Respondents advised that Respondents had no desire to negotiate. Sullivan Decl. ¶ 12. Both sides continued to exchange emails, but Respondents refused to acknowledge that the Subpoenas were properly served. Sullivan Decl. ¶ 13 & Ex. 10.

---

[5] In addition to the Subpoenas, the April 6 service included a subpoena for a 30(b)(6) deposition of Communication Solution. Sullivan Decl. ¶ 10 & Ex. 7. This was in addition to the deposition subpoena directed at Ms. Nuhfer in her individual capacity, previously served on Ms. Nuhfer. Sullivan Decl. ¶ 3 & Ex. 3. Counsel for Respondents represented that Respondents are willing to comply with the deposition subpoenas. Sullivan Decl. ¶ 12 & Ex. 9. Based on that representation, PDV USA is not moving to enforce the deposition subpoenas, but PDV USA expressly reserves the right to do so.

**ARGUMENT**

I. **The Subpoenas Were Properly Issued in the United States District Court for the Southern District of New York and Served on Communication Solutions and Esther Nuhfer and May Be Enforced by this Court**

    A. The Subpoenas Were Properly Issued in the Southern District of New York and May Be Properly Enforced by this Court

Under FRCP 45(a)(2), a subpoena must issue from the court where the action is pending. Through the subpoena, a party may command a non-party to produce documents, electronically stored information, or tangible things within 100 miles of where the non-party regularly transacts business. FRCP 45(c)(2)(a). Where a person or entity subject to a subpoena for production of documents fails to respond to the subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production." *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 2020 WL 9549534, at *1 (S.D. Fla. Apr. 8, 2020) (quoting FRCP 45(d)(2)(B)(i)); *cf. Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1157–58 (11th Cir. 2019). Here, the Subpoenas were properly issued in the District Court for the Southern District of New York. Exs. 1, 2. The UPS mail box in Pinecrest Florida, registered to Communication Solutions and to Ms. Nuhfer is well within 100 miles of the place of production for the Subpoenas—600 Brickell Ave., Miami, FL 33131. *See* FRCP 45(c)(2)(A); Factual Background Section III, *supra*; Ex. 12. A place of production is within the Southern District of Florida, and therefore this Court may enforce the Subpoenas.

    B. The Subpoenas Were Properly Served on Respondents

The Subpoenas were properly served on Respondents in accordance with the requirements of FRCP 45. As detailed above, on April 6, 2022, the Subpoenas were received by mail at a UPS box registered to Communication Solutions and Esther Nuhfer in Pinecrest, Florida. *See* Factual Background, Section III, *supra*. Service by mail constitutes proper service under FRCP 45. *See*

*TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) (authorizing service of third-party subpoenas by FedEx or UPS because "substantial recent authority from federal courts in Florida support that Rule 45 does not require personal service; rather, it requires service reasonably calculated to ensure receipt of the subpoena by the witness"); *State Farm Mutual Auto. Ins. Co. v. Maistrenko*, 2019 WL 7790855, at *3 (S.D. Fla. Dec. 20, 2019) (finding that "Rule 45 does not require personal delivery of the subpoena in order to effectuate service"); *Rainey v. Taylor*, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019) (citing cases where "service [under Rule 45] was effectuated when made by FedEx and certified mail"). And where, as here, the receiving party actively evaded personal service of process, courts generally find that alternative service by mail was proper. *See, e.g.*, *In re Viacao Itapemirim, S.A.*, 608 B.R. 268, 274 (Bankr. S.D. Fla. 2019) (denying motion to quash and citing case for the proposition that "Rule 45 allow[ed] for service of a subpoena by certified mail on a deponent who rebuffed attempts at personal service and whose doorman restricted a process server's access to a deponent's apartment"). Accordingly, Respondents were properly served.

II. **The Court Should Grant PDV USA's Motion to Compel Compliance with the Subpoenas Because Respondents Have Not Responded and Have Waived All Objections**

The Court should compel Respondents to meet their obligations under the properly issued and served Subpoenas. An entity or individual subject to a subpoena must raise any objections within fourteen days. FRCP 45(d)(2)(B). "Failure to timely raise objections results in waiver." *Madeline L.L.C. v. Street*, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009); *see also Whatley v. World Fuel Servs. Corp.*, 2020 WL 2616209, at *3 (S.D. Fla. May 22, 2020) ("failure to serve any objections in the time provided constitutes a waiver of any objections"); *Carrol v. TheStreet.com, Inc.*, 2013 WL 12383301, at *1 (S.D. Fla. Apr. 15, 2013) ("failure to serve written objections to a subpoena generally waives any objections"). The deadline for Respondents to serve objections or

produce documents (April 20) has passed.  Respondents have failed to produce any documents or raise any written objections.  Respondents have thus waived their rights to object to producing all non-privileged information responsive to the Subpoenas, and this Court should grant PDV USA's motion to compel and require Respondents to produce the requested information.  *See, e.g.*, *Berkley Ins. Co. v. Suffolk Constr. Co. Inc.*, 2020 WL 10057924, at *1 (S.D. Fla. Oct. 30, 2020) ("[defendant] served [multiple non-parties] with a subpoena and they each failed to serve an objection or response pursuant to Rule 45.  [Defendant]'s motion to compel is therefore granted"); *Noel-Wagstaffe v. Metro. Cas. Ins. Co.*, 2017 WL 6047679, at *2 (S.D. Fla. Dec. 7, 2017) (granting motion to compel where non-party subpoena recipient failed to respond).

### III.     The Scope of Discovery Requested by the Subpoenas Is Appropriate under FRCP 45

As discussed above, Respondents have waived any and all objections as to the scope of the Subpoenas and the Court should therefore grant this motion to compel.  However, even if Respondents had not waived their objections, the discovery requested by the Subpoenas is entirely appropriate under FRCP 45.  Courts consider the scope of discovery available from a non-party under FRCP 45 to be "the same as the scope of discovery under Rule 26." *Marjam Supply Co. of Fla. LLC v. Pliteq, Inc.*, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018).  "In other words, a party may use a Rule 45 subpoena to obtain 'discovery regarding any non-privilege matter that is relevant to any party's claim or defense,'" so long as it is proportionate to the needs of the case. *Sakhil Ctr. at Doral Condo Ass'n, Inc. v. Hanover Ins. Co.*, 2019 WL 7881626, at *1 (S.D. Fla. Mar. 21, 2019) (quoting FRCP 26(b)(1)).  As set forth in the Subpoenas, PDV USA is requesting the production of documents related to the Contract at the heart of the Underlying Action.  *See* Factual Background Secs. II–III, *supra*.  These documents are clearly relevant to the Underlying Action, especially given the extensive involvement of Respondents in the payments and purported

subcontracts made in connection with the Contract. *Id.* There can be no dispute that Respondents are likely to have responsive documents, because some have already been produced in the Underlying Action from other third parties, and because Respondents have already produced documents in response to the "virtually identical" Government Subpoena. *Id.*[6]

### IV. PDV USA Is Entitled to Costs and Fees Owing to Respondents' Evasion of Service

Finally, because Respondents refused to authorize their counsel to accept service, and then intentionally and repeatedly evaded service of process, PDV USA moves for an order requiring Respondents to pay the attorneys' fees of PDV USA, expenses, and third-party costs reasonably incurred in connection with the failed attempts at service of process, as well as litigating this motion. Courts have held that evading service of process renders third parties liable for such costs. *See Xfinity Mobile v. AS Trading Corp.*, 2020 WL 5215097, at *4–5 (S.D. Fla. Sept. 1, 2020) (where third-party respondent "refused to answer the door (despite his car being in the driveway)" and petitioner filed affidavit showing that respondent intentionally evaded service numerous times, awarding attorneys' fees for litigating the motion to compel, and third-party costs incurred for personally serving respondents, and observing that "evasion of service of process comes at a price"). Here, Ms. Nuhfer actively evaded service of process, including by not answering her door on two occasions (once with law enforcement present) when she was confirmed to be home. *See* Factual Background Sec. III, *supra*. Therefore, PDV USA is entitled to recover fees and costs.[7]

---

[6] Because Interamerican has indicated that a significant number of the emails between Communication Solutions and Interamerican are missing from its email archives, it is especially critical that PDV USA be afforded discovery directly from Respondents.

[7] Once this motion has been resolved, PDV USA will prepare and submit an accounting of its requested fees and costs, if necessary.

## **CONCLUSION**

For the foregoing reasons, PDV USA respectfully requests that this Court compel Respondents to, within seven (7) days of the Court's order on this Motion, produce documents responsive to the Subpoenas, and order Respondents to pay applicable costs and fees.

## **CERTIFICATE PURSUANT TO LOCAL RULE 7.1(a)(3)**

The undersigned certifies that, as described above and in the Declaration attached as Exhibit A, counsel for Petitioner PDV USA have attempted to confer with Respondents in an effort to resolve the issues raised in this Motion but were unable to do so.

Dated: May 3, 2022

> Respectfully submitted,
>
> **JONES DAY**
>
> By: */s/ Ricardo Hugo Puente*
> Ricardo Hugo Puente (FBN 121533)
> Amy Grace Fudenberg (FBN 1011312)
> JONES DAY
> Brickell World Plaza
> 600 Brickell Avenue, Suite 3300
> Miami, Florida 33131
> (305) 714-9726
> rpuente@jonesday.com
> afudenberg@jonesday.com
>
> Jeffrey B. Korn (admission *pro hac vice* pending)
> Brady M. Sullivan (admission *pro hac vice* pending)
> WILLKIE FARR & GALLAGHER LLP
> 787 Seventh Avenue
> New York, New York 10019
> (212) 728-8000
> jkorn@willkie.com
> bsullivan@willkie.com
>
> Michael J. Gottlieb (admission *pro hac vice* pending)
> Willkie Farr & Gallagher LLP
> 1875 K Street, N.W.
> Washington, D.C. 20006
> (202) 303-1000
> mgottlieb@willkie.com
>
> *Attorneys for Petitioner PDV USA, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, a member in good standing of the Bar of this Court, hereby certifies that the foregoing document will be served on counsel for Respondents Communication Solutions, Inc. and Esther Nuhfer by email, and served on Respondents by mail, in accordance with the service provisions of Rule 5 of the Federal Rules of Civil Procedure.

Dated: May 3, 2022

By: */s/ Ricardo Hugo Puente*
Ricardo Hugo Puente (FBN 121533)
JONES DAY
Brickell World Plaza
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 714-9726
rpuente@jonesday.com

*Attorney for Petitioner PDV USA, Inc.*