# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**Misc. Case No. _____**

- - - - - - - - - - - - - - - - - - - - - - - - - -x

                                 :

PDV USA, INC.,

                                 :

        Petitioner,               :

                                 :

v.                                  :      Related Case No. 20-cv-3699

                                :      (S.D.N.Y.)

                                :

COMMUNICATION SOLUTIONS, INC. and

ESTHER NUHFER,                 :

                                :

        Respondents.            :

- - - - - - - - - - - - - - - - - - - - - - - - - -x

**<u>DECLARATION OF BRADY M. SULLIVAN</u>**

I, Brady M. Sullivan, hereby declare as follows:

1.      I am an attorney at the law firm Willkie Farr & Gallagher LLP ("Willkie") and an attorney of record for petitioner PDV USA, Inc. ("PDV USA") in the Underlying Action. Unless otherwise indicated, I have personal knowledge of the matters set forth herein and would be competent to testify to those matters if called upon to do so.

2.      This motion concerns a dispute over two identical subpoenas for documents: a Subpoena to Produce Documents directed to Communication Solutions (the "Communication Solutions Document Subpoena," attached hereto as Exhibit 1) and a Subpoena to Produce Documents directed to Esther Nuhfer (the "Nuhfer Document Subpoena," attached hereto as Exhibit 2).

3.      On February 1, 2022, Esther Nuhfer was served a subpoena for deposition at her residence, 13604 SW 83 Court, Palmetto Bay, Florida.  Service was effectuated by licensed private investigator Michael S. Mills, as set forth in the affidavit of service attached hereto as

Exhibit 3.   According to the affidavit, service of the deposition subpoena necessitated the intervention of law enforcement.  Ex. 3.

4.      On February 9, 2022, Adrianna Collado-Hudak, Esq., counsel for Esther Nuhfer and Communication Solutions contacted Willkie via email.  That day, I spoke with Ms. Collado-Hudak about possible dates for Ms. Nuhfer's deposition, and I asked if Ms. Collado-Hudak was authorized to accept service of a subpoena for the production of documents directed at Communication Solutions, which I emailed to Ms. Collado-Hudak and other lawyers for Ms. Nuhfer and Communication Solutions the following day.[8]  On February 11, 2022, Ms. Collado-Hudak advised that Ms. Nuhfer refused to accept service of the document subpoena.  These emails are attached as Exhibit 4.

5.      On February 14, 2022, I spoke again with Ms. Collado-Hudak on the phone and she told me that she believed, but was not certain, that the documents requested in the subpoena were "virtually identical" to documents demanded by a grand jury subpoena directed at Ms. Nuhfer and Communication Solutions (the "Government Subpoena").

6.      On February 18, 2022, I spoke on the phone with Phil Reizenstein, Esq., another lawyer for Ms. Nuhfer and Communication Solutions.  Mr. Reizenstein represented that the categories of documents demanded in the Government Subpoena included, among other things, documents concerning the contract at issue in this litigation, David Rivera, Raul Gorrín, PDV USA, PDVSA, and payments made by and among those persons and Ms. Nuhfer.  This representation confirmed Ms. Collado-Hudak's belief that the documents demanded by the Government Subpoena were virtually identical to those demanded by the subpoena directed at

---

[8] This document subpoena was almost identical to the Communication Solutions Document Subpoena eventually served on April 6, 2022.  The latter contained one additional topic.

Communication Solutions.  Mr. Reizenstein also represented that his client had produced some documents to the government and was in the process of producing more, including by means of a forensic collection of numerous cell phones belonging to Ms. Nuhfer.  During this call, I urged Mr. Reizenstein to again ask his client to consider accepting service of the subpoena because it would be in both sides' best interest to avoid additional attempts at service of process on Ms. Nuhfer at her residence.

7.      Following additional correspondence between myself and Mr. Reizenstein, Mr. Reizenstein emailed me on March 15, 2022 and stated "I am very sorry but I cannot get authorization to accept service."  This email is attached as Exhibit 5.

8.      Having exhausted efforts to effectuate service through counsel for Ms. Nuhfer and Communication Solutions, Willkie instructed private investigations firm JS Held to personally serve on Ms. Nuhfer the Communication Solutions Document Subpoena, the Nuhfer Document Subpoena, and a subpoena for a Rule 30(b)(6) deposition directed at Communication Solutions (the "30(b)(6) Subpoena").

9.      Between March 28, 2022 and April 6, 2022, personnel affiliated with JS Held attempted and failed to serve Ms. Nuhfer at her residence and other locations.  According to the affidavits of service signed by licensed private investigators James Bittar and Michael Mills, attached as Exhibits 6 and 7, Ms. Nuhfer, with the assistance of her husband, went to great lengths to actively evade service of process.

10.     On April 6, 2022, the investigators successfully served the Communication Solutions Document Subpoena, the Nuhfer Document Subpoena, and the 30(b)(6) Subpoena on Ms. Nuhfer and Communication Solutions by way of UPS mail.  Ex. 7.

11.     On April 7, 2022, I emailed copies of the aforementioned subpoenas to Mr. Reizenstein and informed him that service had been properly effectuated.  This email is attached as Exhibit 8.

12.     On April 21, 2022, Mr. Reizenstein told me for the first time that his client intended to move to quash the Communication Solutions Document Subpoena and the Nuhfer Document Subpoena on numerous grounds, one of which was that the scope of the subpoenas was improper.  I told Mr. Reizenstein, both on that call and in a subsequent email (attached hereto as Exhibit 9), that PDV USA was willing to meet and confer and negotiate the scope of the subpoenas. Mr. Reizenstein advised that his client had no desire to negotiate.[9]

13.     On April 26, counsel for Respondents advised that they would reach a final determination as to the propriety of service by the end of that day and that "in anticipation of proper service" they wanted to discuss the scope of the subpoena.  PDV USA replied the next day, stating that it would move to compel unless Respondents promptly acknowledged that service had been properly effectuated.  These emails are attached as Exhibit 10.  Respondents never provided the requested acknowledgement.

14.     In further support of PDV USA's motion to compel, attached to this declaration are true and correct copies of the following documents either produced in the underlying litigation or retrieved from public sources:

> a)     Exhibit 11: Jay Weaver and Antonio Maria Delgado, "Rivera diverted $13 million from Venezuela deal to convicted drug trafficker, others," MIAMI HERALD (Apr. 22, 2022)
>
> b)     Exhibit 12: Communication Solutions, Inc. Annual Report, Florida Division of Corporations, amended Feb. 15, 2022

---

[9] Mr. Reizenstein also did not dispute that Respondents were not contesting the deposition subpoenas and would agree to be deposed by PDV USA.  Ex. 9.

c)    Exhibit 13: PGA00132 (Mar. 7, 2017 email and attachment from Esther Nuhfer to Raul Gorrín, Hugo Perera, cc: David Rivera, subject: "Revised Citgo Contract")

d)    Exhibit 14: PGA0134 (Mar. 7, 2017 email and attachment from Esther Nuhfer to Raul Gorrín, cc: Hugo Perera and David Rivera, subject: "Final Citgo Contract")

e)    Exhibit 15: IYM_SUPPLEMENTAL_RESPONSE_000290 ("Contract for Services" between Interamerican Consulting and Communication Solutions, signed by Communication Solutions (Esther Nuhfer) and David Rivera on Mar. 20, 2017)

f)    Exhibit 16: PGA00054 (Mar. 21, 2017 email and attachment from David Rivera to Esther Nuhfer, Raul Gorrín, and Hugo Perera, subject: "Fwd: CONSULTING AGREEMENT FORM W-9")

g)    Exhibit 17: PGA00139 (Nov. 3, 2017 email and attachments from Esther Nuhfer to Hugo Perera and Raul Gorrín, cc: David Rivera, subject: "Hugo Raul Contracts")

h)    Exhibit 18: PGA00104 (Nov. 29, 2017 email from David Rivera to Esther Nuhfer and Hugo Perera, subject: "Project Invoices")

i)    Exhibit 19: LYKKEBAK0000000003 (excerpted 2017 Interamerican Consulting, Inc. U.S. Income Tax Return)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 3, 2022

*/s/ Brady M. Sullivan*
Brady M. Sullivan

# Exhibit 1

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| PDV USA, INC. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   20-cv-3699 |
| INTERAMERICAN CONSULTING INC. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Communication Solutions, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: c/o Amy G. Fudenberg, Jones Day, Brickell World Plaza, 600 Brickell Avenue, Suite 3300, Miami, FL 33131 | Date and Time:<br><br>04/15/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      03/29/2022

|  *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Jeffrey B. Korn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff
PDV USA, Inc.                                                , who issues or requests this subpoena, are:

Jeffrey B. Korn, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, jkorn@willkie.com, 212-728-8842

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   20-cv-3699

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS

1.      In responding to these requests (the "Requests"), You are required to

produce all Documents described below that are in Your possession, custody or control.  A

Document is within Your control, for example, if You have the right to obtain the Document or a

copy of the Document from another person having possession or custody of the Document.  If any

Document is in the possession or custody of another person and not currently within Your control,

identify the person (or persons) from whom the Document may be obtained.

2.      Produce all documents as they are kept in the normal course of business.

3.      Each document request requires you to produce all responsive documents

in their entirety, including all attachments and documents affixed thereto, without abbreviation or

expurgation.  If no documents responsive to a particular request exist or are within your control,

the response should so state.  In the event that you are able to provide only a portion of the

document(s) called for in any particular document request, provide all document(s) that you are

able to provide, and (i) identify the remaining documents and (ii) state the reason why you are

unable to produce the remaining documents.

4.      To the extent you refuse to respond to any document request, in whole or

in part, on grounds of privilege or attorney work-product, you shall comply with and provide the

information required by Local Civil Rule 26.2.  Any redactions to documents shall be

prominently identified with a mark indicating the location and size of the redacted area.

5.      These discovery requests are continuing.  Supplement your responses

promptly if and when you obtain or locate additional responsive documents.

6.      In the event that any document called for by the requests for production has

been destroyed, lost, or otherwise discarded, identify the document request(s) to which that

document was responsive and identify such document or documents as completely as possible, including, without limitation, the following information: the substance of the document or documents; last known custodian(s); date and method of disposal; person authorizing or directing the disposal; person disposing of the document or documents; reason(s) for the disposal; and whether any copy(ies) of the document or documents exist.

7.     Produce, without redaction, the entirety of any document that contains responsive, non-privileged information.

8.     The scope of your search for electronic data that is responsive to any request shall include all forms of electronic data collection, preservation, transmission, communication, and storage, including without limitation:

a.     All data generated and maintained in the ordinary course of business, including data stored on mainframe computers, with third parties, or on local and network computers and storage devices;

b.     Distributed, removable, or portable data, *i.e.*, information which resides on portable media and non-local devices, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, solid-state and flash memory drives, cloud storage or other internet repositories (including e-mail hosted by web services such as Gmail), and handheld storage devices such as smart phones, tablets, and iPads;

c.     Forensic copy or backup data, including archive and backup data tapes and discs;

d.     Network data, including voicemail systems, e-mail servers, file and print servers, and fax servers;

e.     Legacy data, *i.e.*, retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f.     Metadata, *i.e.*, information regarding a particular data set which describes

g.     how, when, and by whom it was collected, created, accessed, and modified and how it is formatted; and

4

   h. Residual or deleted data, *i.e.*, data that is not active on a computer system, including data found on media free space, data found on media slack space, and data within files that have been functionally deleted.

  9. You should produce Documents, including e-mail, in single-page tagged image file format ("TIFF"). Each image shall have a unique production number. Full text files, if any, should be delivered as document-level text files named for the first production number of that document. Spreadsheets, video and audio recordings, presentation files (such as PowerPoint files), and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file. Each Document produced in native format shall be clearly labeled to indicate the placeholder production number that corresponds to the placeholder production-numbered TIFF file for that Document.

  10. Database information for Your production shall be provided in a ".dat" file, which contains the metadata fields as a delimited database load file. The data load file should contain the field headers indicating the contents of each field. Required fields of data are, but are not limited to:

- Beg Bates
- End Bates
- Begin Attachment
- End Attachment
- Native File Path (for native file productions)
- Page Count
- Custodian
- Duplicate Custodian(s)
- Time Sent (hh:mm:ss)
- Date Sent (mm/dd/yyyy)
- Date Received (mm/dd/yyyy)
- Time Received (hh:mm:ss)
- Last Modified (mm/dd/yyyy)
- Email Subject
- From
- To
- CC

- BCC
- Email Item Type (Email or Attachment)
- File Source Path
- File Name
- File Type
- File Source Extension
- Modified By, or in the alternative, Author or Last Author
- Hash Value (MD5 or SHA1/2 algorithm)
- Email Conversation/Thread ID

11.     If, in responding to these Requests, You claim any ambiguity in interpreting a Request or a definition or instruction applicable thereto, You should not rely on such claim as a basis for refusing to respond, but you shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Request.

12.     In the event that You claim that a Request is overly broad or unduly burdensome, You are requested to respond to that portion of the Request that is unobjectionable and specifically identify the respect in which You believe the Request is overly broad or unduly burdensome.  If Your objection relates only to part of the Request, produce all Documents that do not fall within the scope of your objection.

13.     Plaintiff expressly reserves the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

14.     Unless otherwise stated, these Requests seek documents and communications from the time period January 1, 2017 through present.

## **DEFINITIONS**

1.     The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District

Court for the Southern District of New York (the "Local Rules") shall apply to these Requests. All terms not otherwise defined shall have their ordinary and common meanings.

2.      "Action" means the above-captioned litigation and any pleadings filed in connection therewith.

3.      "Communication" means the transmittal of information by any means, including, without limitation, transmittal by electronic means such as electronic mail, including via both business and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites.

4.      "Communication Solutions," "You," or "Your" means Communication Solutions, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Esther Nuhfer.

5.      "Concern" or "concerning" means relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

6.      "Consulting Agreement" means the consulting agreement entered into by and between PDV USA, Inc. ("PDV USA") and Interamerican as of March 21, 2017 that is the subject of this Action.

7.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

8.      "Gorrín-Communication Solutions Agreement" means the contract dated May 10, 2017 between Raul Gorrín and Communication Solutions in which Communication Solutions agreed to provide strategic consulting services to Gorrín in exchange for a $3,750,000 retainer and negotiated payments thereafter.  *See* Interamerican_001925.

9.      "Interamerican" means the defendant in this Action, Interamerican Consulting, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Rivera and Diana Rivera McKenzie.

10.      "Interamerican-Communication Solutions Subcontracting Agreement" means the contract dated March 20, 2017 between Interamerican and Communication Solutions, in which Communication Solutions agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Marketing Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

11.      "Interamerican-PG & Associates Subcontracting Agreement" means the contract dated March 20, 2017 between PG & Associates Inc. ("PG & Associates") and Interamerican, in which PG & Associates agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

12.      "Interamerican-PG & Associates Marketing Agreement" means the contract dated March 21, 2017 between PG & Associates and Interamerican, in which PG &

Associates agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

13.     "Interamerican-Krome Marketing Agreement" means the contract dated March 21, 2017 between Krome Argonomics, LLC ("Krome") and Interamerican in which Krome agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

14.     "Interamerican-Miami College of Design Agreement" means the draft agreement contemplated to become effective on May 24, 2017 between Interamerican and Miami College of Design, LLC, which stated that Interamerican would provide consulting services to the Miami College of Design in exchange for an initial retainer of $75,000.

15.     "Interamerican-Interglobal Subcontracting Agreement" means the agreement between Interamerican and Interglobal Yacht Management, LLC ("Interglobal"), signed by Rivera on March 20, 2017, in which Interglobal would agree to "provide the Contractor [Interamerican] and the Client [PDV USA] with International Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

16.     "PDVSA" means Petróleos de Venezuela, S.A. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

17.     "PDV USA" means PDV USA, Inc. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

18.     "Rivera" means former U.S. Congressman David Mauricio Rivera.

19.     "Venezuelan Government" means the government of Venezuela under the Nicolás Maduro regime, as well as its officials, committees, ministries, commissions, affiliates, divisions, agents, members, employees, ministers, attorneys, consultants, and representatives, past, present, or future, in their individual or representative capacities.

20.     The use of the singular form of any word includes the plural and vice versa.

21.     All terms defined herein shall have the meanings set above, whether such terms are capitalized or not.

## REQUESTS FOR PRODUCTION

1.     All Documents and Communications concerning the Consulting Agreement or the subject matter of this Action.

2.     All Documents and Communications concerning Interamerican's performance (if any) pursuant to the Consulting Agreement, including but not limited to any reports provided by Interamerican to PDV USA or PDVSA in connection with the Consulting Agreement.

3.     All Documents and Communications concerning PDV USA's attempt to transfer its rights and obligations under the Consulting Agreement to PDVSA.

4.     All Documents and Communications concerning any agreement or understanding between You and Interamerican or Rivera, including but not limited to the Interamerican-Communication Solutions Subcontracting Agreement.

5.     All Documents and Communications concerning the Gorrín-Communication Solutions Agreement.

6.     All Documents and Communications concerning any of the following:

    a.     Interamerican-PG & Associates Subcontracting Agreement;

        b.        Interamerican-PG & Associates Marketing Agreement;

        c.        Interamerican-Krome Marketing Agreement;

        d.        Interamerican-Interglobal Subcontracting Agreement;

        e.        Interamerican-Miami College of Design Agreement.

7. All Documents and Communications concerning any meetings with Rivera and Joel Brakha, president of Interglobal Yacht Management, including a meeting on or around March 8, 2018 at the offices of Interglobal Yacht Management.

8. All Documents and Communications (including bank account and other financial records) concerning any payments either received or made by You, Rivera, or Interamerican, directly or indirectly, related in any way to the Consulting Agreement or the subject matter of this Action.

9. All Documents and Communications (including bank account and other financial records) concerning Your disbursement or use of any funds received from Interamerican or Rivera in connection with the Consulting Agreement.

10. All Documents and Communications (including bank account and other financial records) concerning payments made by You, Interamerican, or Rivera, directly or indirectly, to any of the following:

        a.        The Citgo 6;

        b.        the Venezuelan Government;

        c.        any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

        d.        Leopoldo Lopez;

        e.        Lilian Tintori;

        f.        Julio Borges;

g.  Leocenis Garcia;

h.  Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

i.  Sara Abdel Karim Hanna Georges ("Sara Hanna");

j.  Raul Gorrín;

k.  Interglobal;

l.  Joel Brakha;

m.  Cascading Investment Limited;

n.  Maria Alexandra;

o.  Hugo Perera;

p.  Krome;

q.  PG & Associates;

r.  Miami College of Design, LLC.

11. All Documents and Communications (including bank account and other financial records) concerning payments received by You, Interamerican, or Rivera, directly or indirectly, from any of the following:

a.  The Citgo 6;

b.  the Venezuelan Government;

c.  any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

d.  Leopoldo Lopez;

e.  Lilian Tintori;

f.  Julio Borges;

g.  Leocenis Garcia;

h.  Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

12

i.       Sara Abdel Karim Hanna Georges ("Sara Hanna");

j.       Raul Gorrín;

k.       Interglobal;

l.       Joel Brakha;

m.      Cascading Investment Limited;

n.       Maria Alexandra;

o.       Hugo Perera;

p.       Krome;

q.       PG & Associates;

r.       Miami College of Design, LLC.

12.     All Documents and Communications (including bank account and other financial records) concerning Invoices sent by You to Interamerican, including but not limited to the invoices from Communication Solutions to Interamerican requested by Rivera on November 29, 2017 with the following dates and in the following amounts:

a.       March 27, 2017: $750,000;

b.       April 11, 2017: $750,000;

c.       April 12, 2017: $750,000;

d.       April 21, 2017: $625,000;

e.       April 24, 2017: $625,000;

f.       November 7, 2017: $1,000,000.

13.     All Documents and Communications concerning any attempt by You, Interamerican, or Rivera to delist Carlos Erik Malpica Flores from the Specially Designated Nationals and Blocked Persons List.

14.     All Documents and Communications concerning the planned travel of Leocenis Garcia to and from Caracas, Venezuela and Washington, D.C. in or around March 2017.

15.     All Documents and Communications concerning any governmental or administrative investigations or inquiries involving You or Esther Nuhfer that relate in any way to the Consulting Agreement or the subject matter of this Action.  This includes any Documents produced to or shared with the government or investigative authority in connection therewith.

16.     Documents sufficient to identify the relationship between Esther Nuhfer and Communication Solutions including any ownership interest held by Esther Nuhfer.

Dated: New York, New York

March 29, 2022

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Jeffrey B. Korn_____

Jeffrey B. Korn
Brady M. Sullivan
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
JKorn@willkie.com
BSullivan@willkie.com

Michael J. Gottlieb
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
MGottlieb@willkie.com

*Attorneys for Plaintiff PDV USA, Inc.*

# Exhibit 2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| PDV USA, INC. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   20-cv-3699 |
| INTERAMERICAN CONSULTING INC. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Esther Nuhfer

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: c/o Amy G. Fudenberg, Jones Day, Brickell World Plaza, 600 Brickell Avenue, Suite 3300, Miami, FL 33131 | Date and Time: 04/15/2022 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        03/29/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Jeffrey B. Korn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        Plaintiff
PDV USA, Inc.                                                    , who issues or requests this subpoena, are:

Jeffrey B. Korn, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, jkorn@willkie.com, 212-728-8842

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 20-cv-3699

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

## **INSTRUCTIONS**

1. In responding to these requests (the "Requests"), You are required to produce all Documents described below that are in Your possession, custody or control.  A Document is within Your control, for example, if You have the right to obtain the Document or a copy of the Document from another person having possession or custody of the Document.  If any Document is in the possession or custody of another person and not currently within Your control, identify the person (or persons) from whom the Document may be obtained.

2. Produce all documents as they are kept in the normal course of business.

3. Each document request requires you to produce all responsive documents in their entirety, including all attachments and documents affixed thereto, without abbreviation or expurgation.  If no documents responsive to a particular request exist or are within your control, the response should so state.  In the event that you are able to provide only a portion of the document(s) called for in any particular document request, provide all document(s) that you are able to provide, and (i) identify the remaining documents and (ii) state the reason why you are unable to produce the remaining documents.

4. To the extent you refuse to respond to any document request, in whole or in part, on grounds of privilege or attorney work-product, you shall comply with and provide the information required by Local Civil Rule 26.2.  Any redactions to documents shall be prominently identified with a mark indicating the location and size of the redacted area.

5. These discovery requests are continuing.  Supplement your responses promptly if and when you obtain or locate additional responsive documents.

6. In the event that any document called for by the requests for production has been destroyed, lost, or otherwise discarded, identify the document request(s) to which that

3

document was responsive and identify such document or documents as completely as possible, including, without limitation, the following information: the substance of the document or documents; last known custodian(s); date and method of disposal; person authorizing or directing the disposal; person disposing of the document or documents; reason(s) for the disposal; and whether any copy(ies) of the document or documents exist.

7.  Produce, without redaction, the entirety of any document that contains responsive, non-privileged information.

8.  The scope of your search for electronic data that is responsive to any request shall include all forms of electronic data collection, preservation, transmission, communication, and storage, including without limitation:

    a.  All data generated and maintained in the ordinary course of business, including data stored on mainframe computers, with third parties, or on local and network computers and storage devices;

    b.  Distributed, removable, or portable data, *i.e.*, information which resides on portable media and non-local devices, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, solid-state and flash memory drives, cloud storage or other internet repositories (including e-mail hosted by web services such as Gmail), and handheld storage devices such as smart phones, tablets, and iPads;

    c.  Forensic copy or backup data, including archive and backup data tapes and discs;

    d.  Network data, including voicemail systems, e-mail servers, file and print servers, and fax servers;

    e.  Legacy data, *i.e.*, retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

    f.  Metadata, *i.e.*, information regarding a particular data set which describes

    g.  how, when, and by whom it was collected, created, accessed, and modified and how it is formatted; and

h.   Residual or deleted data, *i.e.*, data that is not active on a computer system, including data found on media free space, data found on media slack space, and data within files that have been functionally deleted.

9.   You should produce Documents, including e-mail, in single-page tagged image file format ("TIFF").  Each image shall have a unique production number.  Full text files, if any, should be delivered as document-level text files named for the first production number of that document.  Spreadsheets, video and audio recordings, presentation files (such as PowerPoint files), and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file.  Each Document produced in native format shall be clearly labeled to indicate the placeholder production number that corresponds to the placeholder production-numbered TIFF file for that Document.

10.   Database information for Your production shall be provided in a ".dat" file, which contains the metadata fields as a delimited database load file.  The data load file should contain the field headers indicating the contents of each field.  Required fields of data are, but are not limited to:

- Beg Bates
- End Bates
- Begin Attachment
- End Attachment
- Native File Path (for native file productions)
- Page Count
- Custodian
- Duplicate Custodian(s)
- Time Sent (hh:mm:ss)
- Date Sent (mm/dd/yyyy)
- Date Received (mm/dd/yyyy)
- Time Received (hh:mm:ss)
- Last Modified (mm/dd/yyyy)
- Email Subject
- From
- To
- CC

5

- • BCC
- • Email Item Type (Email or Attachment)
- • File Source Path
- • File Name
- • File Type
- • File Source Extension
- • Modified By, or in the alternative, Author or Last Author
- • Hash Value (MD5 or SHA1/2 algorithm)
- • Email Conversation/Thread ID

11.     If, in responding to these Requests, You claim any ambiguity in interpreting a Request or a definition or instruction applicable thereto, You should not rely on such claim as a basis for refusing to respond, but you shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Request.

12.     In the event that You claim that a Request is overly broad or unduly burdensome, You are requested to respond to that portion of the Request that is unobjectionable and specifically identify the respect in which You believe the Request is overly broad or unduly burdensome.  If Your objection relates only to part of the Request, produce all Documents that do not fall within the scope of your objection.

13.     Plaintiff expressly reserves the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

14.     Unless otherwise stated, these Requests seek documents and communications from the time period January 1, 2017 through present.

## **DEFINITIONS**

1.     The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District

Court for the Southern District of New York (the "Local Rules") shall apply to these Requests. All terms not otherwise defined shall have their ordinary and common meanings.

2.      "Action" means the above-captioned litigation and any pleadings filed in connection therewith.

3.      "Communication" means the transmittal of information by any means, including, without limitation, transmittal by electronic means such as electronic mail, including via both business and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites.

4.      "Communication Solutions" means Communication Solutions, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Esther Nuhfer.

5.      "You," or "Your" means Esther Nuhfer.

6.      "Concern" or "concerning" means relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

7.      "Consulting Agreement" means the consulting agreement entered into by and between PDV USA, Inc. ("PDV USA") and Interamerican as of March 21, 2017 that is the subject of this Action.

8.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

9.      "Gorrín-Communication Solutions Agreement" means the contract dated May 10, 2017 between Raul Gorrín and Communication Solutions in which Communication Solutions agreed to provide strategic consulting services to Gorrín in exchange for a $3,750,000 retainer and negotiated payments thereafter.  *See* Interamerican_001925.

10.      "Interamerican" means the defendant in this Action, Interamerican Consulting, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Rivera and Diana Rivera McKenzie.

11.      "Interamerican-Communication Solutions Subcontracting Agreement" means the contract dated March 20, 2017 between Interamerican and Communication Solutions, in which Communication Solutions agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Marketing Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

12.      "Interamerican-PG & Associates Subcontracting Agreement" means the contract dated March 20, 2017 between PG & Associates Inc. ("PG & Associates") and Interamerican, in which PG & Associates agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

13.      "Interamerican-PG & Associates Marketing Agreement" means the contract dated March 21, 2017 between PG & Associates and Interamerican, in which PG &

Associates agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

14.     "Interamerican-Krome Marketing Agreement" means the contract dated March 21, 2017 between Krome Argonomics, LLC ("Krome") and Interamerican in which Krome agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

15.     "Interamerican-Miami College of Design Agreement" means the draft agreement contemplated to become effective on May 24, 2017 between Interamerican and Miami College of Design, LLC, which stated that Interamerican would provide consulting services to the Miami College of Design in exchange for an initial retainer of $75,000.

16.     "Interamerican-Interglobal Subcontracting Agreement" means the agreement between Interamerican and Interglobal Yacht Management, LLC ("Interglobal"), signed by Rivera on March 20, 2017, in which Interglobal would agree to "provide the Contractor [Interamerican] and the Client [PDV USA] with International Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

17.     "PDVSA" means Petróleos de Venezuela, S.A. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

18.     "PDV USA" means PDV USA, Inc. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

19.     "Rivera" means former U.S. Congressman David Mauricio Rivera.

20.     "Venezuelan Government" means the government of Venezuela under the Nicolás Maduro regime, as well as its officials, committees, ministries, commissions, affiliates, divisions, agents, members, employees, ministers, attorneys, consultants, and representatives, past, present, or future, in their individual or representative capacities.

21.     The use of the singular form of any word includes the plural and vice versa.

22.     All terms defined herein shall have the meanings set above, whether such terms are capitalized or not.

## REQUESTS FOR PRODUCTION

1.     All Documents and Communications concerning the Consulting Agreement or the subject matter of this Action.

2.     All Documents and Communications concerning Interamerican's performance (if any) pursuant to the Consulting Agreement, including but not limited to any reports provided by Interamerican to PDV USA or PDVSA in connection with the Consulting Agreement.

3.     All Documents and Communications concerning PDV USA's attempt to transfer its rights and obligations under the Consulting Agreement to PDVSA.

4.     All Documents and Communications concerning any agreement or understanding between You and Interamerican or Rivera, including but not limited to the Interamerican-Communication Solutions Subcontracting Agreement.

5.     All Documents and Communications concerning the Gorrín-Communication Solutions Agreement.

6.     All Documents and Communications concerning any of the following:

    a.     Interamerican-PG & Associates Subcontracting Agreement;

10

b.        Interamerican-PG & Associates Marketing Agreement;

c.        Interamerican-Krome Marketing Agreement;

d.        Interamerican-Interglobal Subcontracting Agreement;

e.        Interamerican-Miami College of Design Agreement.

7.      All Documents and Communications concerning any meetings with Rivera and Joel Brakha, president of Interglobal Yacht Management, including a meeting on or around March 8, 2018 at the offices of Interglobal Yacht Management.

8.      All Documents and Communications (including bank account and other financial records) concerning any payments either received or made by You, Rivera, or Interamerican, directly or indirectly, related in any way to the Consulting Agreement or the subject matter of this Action.

9.      All Documents and Communications (including bank account and other financial records) concerning Your disbursement or use of any funds received from Interamerican or Rivera in connection with the Consulting Agreement.

10.    All Documents and Communications (including bank account and other financial records) concerning payments made by You, Communication Solutions, Interamerican, or Rivera, directly or indirectly, to any of the following:

a.        The Citgo 6;

b.        the Venezuelan Government;

c.        any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

d.        Leopoldo Lopez;

e.        Lilian Tintori;

f.        Julio Borges;

11

g.    Leocenis Garcia;

h.    Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

i.    Sara Abdel Karim Hanna Georges ("Sara Hanna");

j.    Raul Gorrín;

k.    Interglobal;

l.    Joel Brakha;

m.    Cascading Investment Limited;

n.    Maria Alexandra;

o.    Hugo Perera;

p.    Krome;

q.    PG & Associates;

r.    Miami College of Design, LLC.

11.    All Documents and Communications (including bank account and other financial records) concerning payments received by You, Communication Solutions, Interamerican, or Rivera, directly or indirectly, from any of the following:

a.    The Citgo 6;

b.    the Venezuelan Government;

c.    any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

d.    Leopoldo Lopez;

e.    Lilian Tintori;

f.    Julio Borges;

g.    Leocenis Garcia;

h.    Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

12

   i.  Sara Abdel Karim Hanna Georges ("Sara Hanna");

   j.  Raul Gorrín;

   k.  Interglobal;

   l.  Joel Brakha;

   m.  Cascading Investment Limited;

   n.  Maria Alexandra;

   o.  Hugo Perera;

   p.  Krome;

   q.  PG & Associates;

   r.  Miami College of Design, LLC.

  12.  All Documents and Communications (including bank account and other financial records) concerning Invoices sent by You or Communication Solutions to Interamerican, including but not limited to the invoices from Communication Solutions to Interamerican requested by Rivera on November 29, 2017 with the following dates and in the following amounts:

   a.  March 27, 2017: $750,000;

   b.  April 11, 2017: $750,000;

   c.  April 12, 2017: $750,000;

   d.  April 21, 2017: $625,000;

   e.  April 24, 2017: $625,000;

   f.  November 7, 2017: $1,000,000.

  13.  All Documents and Communications concerning any attempt by You, Communication Solutions, Interamerican, or Rivera to delist Carlos Erik Malpica Flores from the Specially Designated Nationals and Blocked Persons List.

14.     All Documents and Communications concerning the planned travel of Leocenis Garcia to and from Caracas, Venezuela and Washington, D.C. in or around March 2017.

15.     All Documents and Communications concerning any governmental or administrative investigations or inquiries involving You or Communication Solutions that relate in any way to the Consulting Agreement or the subject matter of this Action.  This includes any Documents produced to or shared with the government or investigative authority in connection therewith.

16.     Documents sufficient to identify the relationship between You and Communication Solutions including any ownership interest held by You.


Dated: New York, New York
          March 29, 2022

                              **WILLKIE FARR & GALLAGHER LLP**

                              By: /s/ Jeffrey B. Korn_____

                                   Jeffrey B. Korn
                                   Brady M. Sullivan
                                   787 Seventh Avenue
                                   New York, New York 10019
                                   (212) 728-8000
                                   JKorn@willkie.com
                                   BSullivan@willkie.com

                                   Michael J. Gottlieb
                                   1875 K Street, N.W.
                                   Washington, D.C. 20006
                                   (202) 303-1000
                                   MGottlieb@willkie.com


                                   *Attorneys for Plaintiff PDV USA, Inc.*

14

Exhibit 3

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 20-cv-3699

## PROOF OF SERVICE

### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)* ESTHER NUHFER
on *(date)* 01/31/2022

☒ I served the subpoena by delivering a copy to the named individual as follows: SEE ATTACHED
AFFIDAVIT.

_____ on *(date)* 02/01/2022 ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: 02/02/2022

_____
Server's signature

MICHAEL MILLS, INVESTIGATOR
Printed name and title

12973 SW 112 ST. SUITE 178
MIAMI, FL 33186
Server's address

Additional information regarding attempted service, etc.:

Narrative for Affidavit of Service

Esther Nuhfer

On Tuesday, February 1, 2022, at approximately 1:15pm, I, Michael Mills, a licensed private investigator with the state of Florida, was in the area of 13604 SW 83 Court, Palmetto Bay, Florida, the residence of Esther Nuhfer for the purpose of serving a subpoena.

I observed Esther Nuhfer in the north driveway of the residence and her husband was also present and exercising in the driveway.

I parked on an adjacent street and approached the residence on foot for the purpose of serving the subpoena on Esther Nuhfer. Upon reaching the open gate, I observed Nuhfer and called her by name. She said nothing and walked toward the open garage and I followed calling her name. She entered the residence through a door from the garage and I knocked on the door and called her name several times.

I then noticed a white Volvo SUV approaching the driveway, driven by Nuhfer's husband. He asked why I was in his garage and I replied that I was attempting to serve a subpoena and that Esther had walked in the garage. The husband threatened to shoot me if I ever entered the property after which I began calling Miami Dade Police and the husband drove away.

Three (3) Miami Dade Police officers arrived at approximately 1:30pm and I explained the situation.

Officer D. Zaldivar, ID# 9799, took the subpoena to the front door and was admitted into the residence by Esther Nuhfer. When Officer Zaldivar emerged, she stated that she had confirmed Esther Nuhfer's identification when Esther produced picture I.D. and she served the subpoena a copy of which is attached hereto and made part hereof.

Officer Zaldivar advised Esther would not acknowledge receipt of the subpoena, but the officer's body worn camera recorded the event and the subpoena was placed on the table in front of Esther.

This incident is was documented under MDPD Case# PD220201035193.

Michael S. Mills

Date: 02/07/2022

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

|  |  |  |
|---|---|---|
| PDV USA, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  20-cv-3699 |
| INTERAMERICAN CONSULTING INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Esther Nuhfer

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Remote Deposition Platform | Date and Time: |
|---|---|
| | 02/23/2022 9:30 am |

The deposition will be recorded by this method: __Stenographically and by videotape__

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 01/18/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Jeffrey B. Korn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
PDV USA, Inc. _____ , who issues or requests this subpoena, are:

Jeffrey B. Korn, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, jkorn@willkie.com, 212-728-9942

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  20-cv-3699

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____ _____

on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit 4

| | |
|---|---|
| **From:** | Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com> |
| **Sent:** | Friday, February 11, 2022 4:37 PM |
| **To:** | Sullivan, Brady M. |
| **Cc:** | Korn, Jeffrey; Gottlieb, Michael; Wu, Xiaoli (Lily); David Kubiliun; 'PhilReizenstein@protonmail.com' |
| **Subject:** | Re: Subpoena for depo - Esther Nuhfer (20-CV-3699) |

**\*\*\* EXTERNAL EMAIL \*\*\***

Good afternoon, Brady. I have good news and bad news. The bad news is that Ms. Nuhfer IS NOT authorizing me to accept service on behalf of Communication Solutions. The good news is that we can proceed to schedule her individual depo for either the week of March 14th or the week of March 28th. (I initially thought that the first two weeks of March were workable, but Ms. Nuhfer will still be in recovery from surgery during that time.)

As to whether the documents produced to the government overlap with the subject matter of your litigation, I am deferring to my co-counsel Phil Reizenstein (cc'd) as he has taken the lead on that aspect of Ms. Nuhfer's representation.

Please let me know what dates/times are workable for Ms. Nuhfer's depo from your end.

Have a good weekend.

ACH



**Adriana Collado-Hudak**
**Senior Counsel**
1144 15th St.
Suite 2700
Denver, CO 80202
720-702-0913
Miami, FL – 305-789-2713
adriana.collado-hudak@gmlaw.com

  

---

**From:** Sullivan, Brady M. <BSullivan@willkie.com>
**Date:** Thursday, February 10, 2022 at 5:26 PM
**To:** Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Cc:** Korn, Jeffrey <JKorn@willkie.com>, Gottlieb, Michael <MGottlieb@willkie.com>, Wu, Xiaoli (Lily) <XWu@willkie.com>, David Kubiliun <David.Kubiliun@gmlaw.com>, 'PhilReizenstein@protonmail.com' <PhilReizenstein@protonmail.com>
**Subject:** RE: Subpoena for depo - Esther Nuhfer (20-CV-3699)

Adriana, as discussed, please find attached the two additional subpoenas. We put 3/11 as the date for the 30(b)(6) – we're of course happy to work with you and the witness on scheduling.

Regards,
Brady

**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard [willkie.com] | www.willkie.com bio [willkie.com]

---

**From:** Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Sent:** Wednesday, February 9, 2022 7:07 PM
**To:** Sullivan, Brady M. <BSullivan@willkie.com>
**Cc:** Korn, Jeffrey <JKorn@willkie.com>; Gottlieb, Michael <MGottlieb@willkie.com>; David Kubiliun
<David.Kubiliun@gmlaw.com>; 'PhilReizenstein@protonmail.com' <PhilReizenstein@protonmail.com>
**Subject:** RE: Subpoena for depo - Esther Nuhfer (20-CV-3699)

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Brady, pleasure speaking with you. Your summary is correct. I will be in touch by the end of the week.

Have a good evening.



**Adriana Collado-Hudak**
**Senior Counsel**
1144 15th St.
Suite 2700
Denver, CO 80202
720-702-0913
Miami, FL - 305-789-2713
adriana.collado-hudak@gmlaw.com

  

---

**From:** Sullivan, Brady M. <BSullivan@willkie.com>
**Sent:** Wednesday, February 9, 2022 4:21 PM
**To:** Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Cc:** Korn, Jeffrey <JKorn@willkie.com>; Gottlieb, Michael <MGottlieb@willkie.com>; David Kubiliun
<David.Kubiliun@gmlaw.com>; 'PhilReizenstein@protonmail.com' <PhilReizenstein@protonmail.com>
**Subject:** RE: Subpoena for depo - Esther Nuhfer (20-CV-3699)

Adriana,

Thanks for speaking today. I wanted to summarize where we left off:

You agreed to get back to us on whether you are authorized to accept service of two additional subpoenas (separate and apart from the deposition subpoena already served on Ms. Nuhfer): a 30b6 subpoena for Communication Solutions, and a document subpoena for Communication Solutions. I agreed to send you those promptly.

We agreed to change the date for Ms. Nuhfer's deposition (noticed for 2/23) and that generally the window of March 1 – March 11 would work for the witness and for us, subject to the timing of our receiving documents.

Finally, you agreed to get back to us as to the nature of the documents already produced by your client to the government and whether those productions overlap with the subject matter of our litigation (which includes the Interamerican – PDV USA consulting agreement from March 2017 and payments made by David Rivera / Interamerican to your client in connection with that contract).

I look forward to speaking with you again soon.

Regards,
Brady

**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard [willkie.com] | www.willkie.com bio [willkie.com]

---

**From:** Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Sent:** Wednesday, February 9, 2022 1:41 PM
**To:** Sullivan, Brady M. <BSullivan@willkie.com>
**Cc:** Korn, Jeffrey <JKorn@willkie.com>; Gottlieb, Michael <MGottlieb@willkie.com>; David Kubiliun <David.Kubiliun@gmlaw.com>; 'PhilReizenstein@protonmail.com' <PhilReizenstein@protonmail.com>
**Subject:** Re: Subpoena for depo - Esther Nuhfer (20-CV-3699)

*** EXTERNAL EMAIL ***

Thanks Brady – please note that I am unavailable from 3 to 3:30 PM (ET) and after 5:30 PM today. Otherwise, you can call me anytime.

ACH



**Adriana Collado-Hudak**
**Senior Counsel**
1144 15th St.
Suite 2700
Denver, CO 80202
720-702-0913
Miami, FL – 305-789-2713
adriana.collado-hudak@gmlaw.com

  

**From:** Sullivan, Brady M. <BSullivan@willkie.com>
**Date:** Wednesday, February 9, 2022 at 11:29 AM
**To:** Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Cc:** Korn, Jeffrey <JKorn@willkie.com>, Gottlieb, Michael <MGottlieb@willkie.com>, David Kubiliun <David.Kubiliun@gmlaw.com>, 'PhilReizenstein@protonmail.com' <PhilReizenstein@protonmail.com>
**Subject:** RE: Subpoena for depo - Esther Nuhfer (20-CV-3699)

Thanks for your email. I work with Jeff Korn – will give you a call later this afternoon.

Regards,
Brady


**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard [willkie.com] | www.willkie.com bio [willkie.com]

**From:** Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Sent:** Wednesday, February 9, 2022 12:51 PM
**To:** Korn, Jeffrey <JKorn@willkie.com>
**Cc:** David Kubiliun <David.Kubiliun@gmlaw.com>; PhilReizenstein@protonmail.com
**Subject:** Subpoena for depo - Esther Nuhfer (20-CV-3699)

**\*\*\* EXTERNAL EMAIL \*\*\***

Good afternoon, Mr. Korn. I represent Esther Nuhfer. I just tried calling the number on the subpoena for depo that my client received, but got what sounds like a fax machine. Please call me at your earliest convenience at 305-905-3736.

Regards,
ACH


GreenspoonMarder
**Adriana Collado-Hudak**
**Senior Counsel**
1144 15th St.
Suite 2700
Denver, CO 80202
720-702-0913
Miami, FL – 305-789-2713
adriana.collado-hudak@gmlaw.com

  

GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that purpose if we are attempting to collect a debt from you.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# Exhibit 5

| | |
|---|---|
| **From:** | PhilReizenstein <PhilReizenstein@protonmail.com> |
| **Sent:** | Tuesday, March 15, 2022 10:32 AM |
| **To:** | Sullivan, Brady M. |
| **Subject:** | Re: Esther Nuhfer |

**\*\*\* EXTERNAL EMAIL \*\*\***

Brady would you like to speak to
Pick dates ? I am free all day after 1130 I am very sorry but I cannot get authorization to accept service.
Phil.

On Tue, Mar 15, 2022 at 10:29 AM, Sullivan, Brady M. <BSullivan@willkie.com> wrote:

> Hi Phil – just following up on our call last week.
>
> Best,
>
> Brady
>
>
> **Brady M. Sullivan**
> **Willkie Farr & Gallagher LLP**
> 787 Seventh Avenue | New York, NY 10019-6099
> Direct: +1 212 728 8949 | Fax: +1 212 728 8111
> bsullivan@willkie.com | vCard | www.willkie.com bio
>
> _____
>
> **Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

Exhibit 6

Affidavit of Investigator James Bittar

United States District Court - Southern District of New

York Case Number: 20-CV-3699

Plaintiff: PDV USA, Inc.

vs.

Defendant: Interamerican Consulting, Inc.

For:

Amy G. Fudenberg, Esq.
Jones Day,
Brickell World Plaza, 600
Brickell Avenue, Suite 3300, Miami, FL 33131

On Monday, March 28, 2022, I was on surveillance with another Florida licensed investigator, Michael Mills, at 13604 SW 83 Court Palmetto Bay, Florida, the residence of Ms. Esther Nuhfer. At approximately 11:58 am, a white Volvo registered to Esther Nuhfer exited the north privacy gate and was lost in traffic as it traveled east on 136 Street. The occupant(s) were not observed. After maintaining continuous surveillance, at 405 pm, Alexander Enriquez (husband) was observed retrieving the trash bin from the street.

On Tuesday, March 29, 2022, at 9:40 am, I approached the front door of 13604 SW 83 Court with Miami Dade Police Officers Zaldivar and Zuleta to serve three subpoenas on Esther Nuhfer. Upon our arrival, Esther Nuhfer's Volvo, her husband's GMC Yukon, and a Chevrolet pickup owned by Enriquez's son were present at the residence. After ringing the front doorbell and knocking several times, there was no response at the door. Investigator Mills and I maintained continuous surveillance. At approximately 10:37 am I observed Nuhfer's white Volvo exit the residence's north driveway privacy gate and proceed west, then north on 84th Avenue. As the Volvo turned north onto 84th Avenue, I could see that Esther Nuhfer was the driver. Investigator Mills and I followed her to a Shell gas station located at U.S. 1 and SW 132 Street, where she pulled up to a gas pump. I parked near the garage/convenience store, and as I began to exit my vehicle to serve Esther Nuhfer, she left without pumping gas and fled north on U.S. 1. Mills and I followed Nuhfer, who made an abrupt U-turn at SW 126 Street. Our observation of her was held until Nuhfer cut through a parking lot located in the 12400 block of U.S. 1. As traffic permitted, we turned into the parking lot, and I searched for the Volvo to no avail but uncovered that Nuhfer most likely exited the lot through a rear exit. At this point, Mills and I returned to her residence and continued our surveillance. At 1:20 pm, Esther Nuhfer returned to 13604 SW 83rd Court, pulled into the north driveway, and closed the privacy gate. Upon her return, 1:23 pm, I walked up to the front door, rang the doorbell, and knocked several times to serve Esther Nuhfer three subpoenas; no one answered the door. Approximately five minutes later, the north driveway privacy gate opened, and the Volvo exited. The driver was wearing a large floppy hat, concealing the driver's identity. The Volvo drove west to a parking lot where Mills and I were posted in our vehicles. The Volvo stopped behind my vehicle, but

due to the glare, dark window tints, and floppy hat, I could not verify who was driving. The Volvo continued through the Home Depot parking lot; as we crossed paths, I waved the subpoenas at the still unidentified driver signaling them to stop to serve the subpoenas. The driver ignored my signal and proceeded north on U.S. 1. Mills and I followed. Between the 13500 and 10500 blocks of South Dixie Highway (US 1,) I observed the Volvo make more than ten maneuvers to evade Mills and me. Finally, while driving north on U.S. 1 near the 10500 block, the Volvo and I were side by side. Once side by side, I observed Enriquez was the driver, not Nuhfer. Enriquez rolled down the driver's side window; I rolled down my passenger's side window.  Enriquez gave me "the middle finger," then removed the floppy hat and said," how do you like it," I replied that I was just trying to serve subpoenas. He then made an abrupt right turn out of my view. At this point, I returned to the residence and observed that the GMC Yukon was gone.

52683569.1

I certify that I am over the age of 18 and have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated are

James Bittar

Dated: _4/29/2022_

# Exhibit 7

## **Return of Service**

United States District Court – Southern District of New York

Case Number: 20-CV-3699

Plaintiff: PDV USA, Inc.

vs.

Defendant: Interamerican Consulting, Inc.

For:

Amy G. Fudenberg, Esq.
Jones Day,
Brickell World Plaza, 600
Brickell Avenue, Suite 3300, Miami, FL 33131

Received by JS Held on March 21, 2022, to be served on Communication Solutions, Inc. c/o registered agent Esther Nuhfer and Esther Nuhfer.

I, Michael Mills, private investigator licensed by the state of Florida, do hereby affirm that on April 5, 2022, I mailed two sets of true and correct copies of three (3) subpoenas to the address of record for Communications Solutions, 11767 South Dixie Highway, Suite 269, Pinecrest, Florida. The three subpoenas, appended below, were: SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION With Schedule A to: Esther Nuhfer; SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION With Schedule A to: Communication Solutions, Inc.; and SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION With Schedule A to: Communication Solutions, Inc. Upon checking UPS tracking website, I found that both packages were received and signed for by an employee at the UPS Store, 11767 South Dixie Highway, on April 6, 2022.

Additional Information:

On Monday, March 28, 2022, I was on surveillance with another Florida licensed investigator, James Bittar, at 13604 SW 83 Court, Palmetto Bay, Florida, the residence of Ms. Esther Nuhfer. At approximately 11:58am, a white Volvo registered to Esther Nuhfer exited the north gate and was lost in traffic as it traveled east on SW 136 Street. The occupant(s) were not observed. After maintaining continuous surveillance, at 4:05pm, Alexander Enriquez (husband) was observed retrieving the trash bin from the street.

On Tuesday, March 29, 2022, at 9:40am, I observed Investigator James Bittar approach the front door of 13604 SW 83 Court with Miami Dade Police Officers Zaldivar and Zuleta for the purpose of serving subpoenas on Esther Nuhfer. Esther Nuhfer's Volvo, her husband's

52683569.1

GMC Yukon and a Chevrolet pickup owned by Enriquez' son were present at the residence. There was no response at the door. Continuous surveillance of the residence was maintained until 10:37am when Investigator Bittar alerted me that Esther Nuhfer was exiting the residence's north driveway gate. Bittar reported that she turned north on SW 84th Avenue and proceeded to the Shell gas station at US 1 and SW 132 Street. I drove to the Shell station and found Nuhfer's Volvo stopped at the gas pumps and Investigator Bittar parking near the garage/convenience store. As Bittar began to exit his vehicle to approach and serve Esther Nuhfer, she left without pumping gas and fled north on US 1. I followed and she made an abrupt U-turn at SW 126 Street. As I began to U-turn with her, she circled back north on US 1 and entered a parking lot in the 12400 block of US 1. Bittar and I searched the parking lot but discovered that she must have fled via a rear exit. At 1:20pm, Esther Nuhfer returned to 13604 SW 83rd Court, parked in the north driveway and closed the gate. I then watched Investigator Bittar approach the front door of the residence at approximately 1:23pm to serve the subpoenas. No one answered the door. Approximately five minutes later, the north driveway gate opened, and the Volvo exited. The driver was wearing a large floppy hat. The Volvo drove west to a parking lot where Investigator Bittar and I were posted in our vehicles. The Volvo stopped behind Bittar's vehicle for a few seconds, then through the Home Depot parking lot. Investigator Bittar and I followed for the purpose of serving the subpoenas, assuming the driver was Esther Nuhfer. Between the 13500 and 10500 blocks of South Dixie Highway (US 1), I observed the Volvo make more than ten maneuvers to evade Bittar and I. Finally, In the 10500 block, the Volvo, Bittar and I were caught in traffic backed up from the traffic light at SW 104 Street. I observed Investigator Bittar inch up next to the Volvo. Bittar reported that the driver gave Bittar "the finger" and took off the floppy hat, enabling Bittar to realize it was Alexander Enriquez (Nuhfer's husband). I immediately drove back to 13604 SW 83rd Court. Upon arrival, I found Alexander Nuhfer's GMC Yukon, which was in the front driveway when the Volvo exited, gone and I realized the husband had tricked and taunted us to assist his wife in evading service.

On Tuesday, April 5, 2022, I printed multiple sets of the three (3) subpoenas. I placed one set of subpoenas in a packing box with a bag of candy and sent the box via UPS to the address of record for Communications Solutions, 11767 South Dixie Highway, Suite 269, Pinecrest, Florida. Another set of the three subpoenas was placed in a mailing envelope and sent via UPS to the same address.

Upon checking the UPS tracking website, I found that both items were received and signed for on April 6, 2022, by an employee at the UPS Store, 11767 South Dixie Highway.

True and correct copies of shipping receipts and tracking confirmation are set forth on the following pages:

**Shipment Receipt:** Page #1 c,f
THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS,

IHIP DATE:
IUES 5 APA 202!

SHIPMENT INFORMAIION:
UPS GROUND RESIDENTIAL
1.70 lb actual wt

EXPECTID DELIUERi DATE:
IED 6 APA 2022 EOD

2.000 lb billable wt
ms: 13,00X18,00N5,00 IN

SHIP FROM:
JEFFEREI KORN,FAARI GALLAGHER
181 SEUENTK AUE
HEN iOlK  Ki 10019
(1212) 128-8641

TRACKING NUMBER: 1Z3F64N003I9I110551
SHTPHENI JD: NHSDBIH9ZHZMK
SHIP REF 1: • •
SHIP REF 2: • •

IHIP IO:
ESHER J NUHFER
11781 S DIKii Hiii
SIE 269
PINECREST fl  m56-4436
RESIDENImL

IESCAIPIION OF GOOIS:
mm   AHi LEGAL DOCS

SHIPKEN! CHARGES:
GROUND RESIDENIIAL       11.69
SERUICE OP110NS           0.00
CMS PROCESSING FEE        0,22

SHIPPED IHROUGtt:
THE UPS STORE I2814
NIINI,FL  35168-4168
(315) 382-5220

IOIAL                    111.91

11 Leee ONl-INE2iosl)iIiO1  E-TEA mm  unoR ss d" vs HB JIROWSER ro 1J1cl<1
ou s{ iJ ,u:} i'iR PP e Hijii|Rail T.   ENTE SHI E  ID I>  SHIP ENT

**Shipment Receipt:** **Page #1** of  1
THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

SHIP DATE:
TUES 5 APR 2022

SHIPHENT IHFOAMAmN:
UPS GAOUKD AESIDENTIAL
1,45 lb actual wt
1,000 lb billaBle wt

EMPECTEDDELI
mP8 Flli/0!2

DIHS: 12,00MIe,OONI,OO IN

JEFFEREI KORN,FARRI GALLAGHER
181 SEVEHIK AUE
HEH VOIK  Ni 10019
(1212) 128-8`42

IRACKING NUKBEA: 1Z3FB4N083191114I0
SHIPMEN! IDI NMSDBOHZ02F99
SHIP REF 1: • •
SHIP REF 2: • •

SHIP IO:
ESIHER  J NUHFER
11161 S IIKIE HUi
SIE 289
PIHECRESI  FL  33158-44I8
AESIIEHTIAL

DESCRIPTIOK OF GOODS:
LEGAL DOCS

SHIIHEN! CHARGES:
GROUND IESIIENIIAL       11.08
SERUICE OPIIONS           0.0a
CMS PROCESSING FEE        0,22

SHIPPED THROUGH:
IHE UPS SIORE I2814
HIAHI,FL  33161-4168
I385) 382-5228

IOIAL                    $11,22

COMPLETE OHLINE: TRACKING: ENTEK THE HUDRESS IN YOU, W,T BROISEK TO TRACK
HTTPHUHI! I)ISIT RE,COII (SELECT Jft11CIO o  ENTER SHIPIE T ID ill  SHIPHENT
QUESTIONS? CONT CT SHIPPED THAOU  AIIOUE,

SHIPMEN!IDi NMSDIQH9ZIiHN

0i:ihoboiSiitu P®ifi>ll" F

ihe UPS Store«

a
ijjp

SU30ODCD'iBIFiREEusesDil1IVI9im/Lassil 10iLUUns109!ias-6 Hliir'WhiiO>ih!'!Z-Y "I... ImfJ:nfe1U toe=iaU'lQhiip•O=s,o0i+!XdOO•0
-d1I110t11 1,ll ..iIomiIhUS,IIppoec05IIIID11" 1IIo' """""1Bo I>d!""7Ye,sbwalnvanOI6 dih1 niliISI1n1-d111vwilIIn hig'OJlIIAniskflhoiion
=,,..Ir'rylolliwl>geni.filiod,

R888'21I222,

SHIPMENm:   MMsDa1Itza2Fss
POYfied ib Shipt)
041 121)22 J!: 2 IIII  P-lohlh liM F

ihe UPS Store«

SILRAPICE GIFHEIFICUT regarding: UPS Term, and notice of limitation of liability. Where nothing is here, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. In agree that the US, shipper confirms that the commodities, technology or software were exported from the Export Administration Regulation. Diversion contrary to law is prohibited.

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

Tracking Number
1Z3F84X0031977055l

Weight
1.70 LBS

Service
UPS Ground

Shipped / Billed On
04/05/2022

Delivered On
04/06/2022 1:08 P.M.

Delivered To
MIAMI, FL, US

Received By
CHRIS

Left At
Inside Delivery

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 04/28/2022 1:35 P.M. EST

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1Z3F84X0031977l470

**Weight**
0.50 LBS

**Service**
UPS Ground

**Shipped / Billed On**
04/05/2022

**Delivered On**
04/06/2022 1:08 P.M.

**Delivered To**
MIAMI, FL, US

**Received By**
CHRIS

**Left At**
Inside Delivery

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 04/28/2022 1:32 P.M. EST

52683569.1

On Wednesday, April 6, 2022, I summoned Walter Butler, a certified process server in the 11th Judicial Circuit of Florida, to meet me at the UPS Store, 11767 S. Dixie Highway. Once he arrived, I entered the UPS store with him. Butler met with the UPS Store manager, Gabriel Colon. Colon confirmed that Box 269 is rented to Esther Nuhfer and Communication Solutions. Butler then served the two Communication Solutions, Inc. subpoenas on Colon as the UPS Store in manager for the Corporation. After leaving the UPS Store, I followed Walter Butler to 13604 SW 83 Court, Palmetto Bay. I observed Butler approach and knock on the door several times with no response. As he left, Walter Butler reported to me that he could see shadows behind the glass front doors, indicating a person or persons were present and purposely not answering the door.

On Thursday, April 21, 2022, I printed two more sets of the three subpoenas and brought them to the U.S. Post Office, Snapper Creek Annex. I placed one set in a Priority Mail envelope and the other set in a regular mailing envelope. The regular envelope was sent certified, and a tracking number was received. The priority mail envelope also had a tracking number. They both we addressed to Esther Nuhfer, 13604 SW 83 Court, Palmetto Bay, Florida 33158. Upon checking the USPS tracking website on April 25, 2022, both tracking numbers indicated the envelopes were delivered on April 22, 2022, at 1:35pm.

True and correct copies of USPS shipping receipts and tracking confirmation are set forth on the following pages:



**UNITED STATES POSTAL SERVICE.**

SNAPPER CREEK
11000 SW 104TH ST
MIAMI, FL 39116-9998
(800)275-8777

04/21/2022                              12:13 PM

```
Product          Qty   Unit     Price
                       Price
------------------------------------------
First-Class Mail®   1            $2.76
Large Envelope
    Miami, FL 33158
    Weight: 0 lb 8.50 oz
    Estimated Delivery Date
        Sat 04/23/2022
    Certified Mail®                $3.75
    Tracking #:
        70220410000182259702
Total                             $6.51

Priority Mail® 1-Day 1            $8.95
Flat Rate Env
    Miami, FL 33158
    Flat Rate
    Expected Delivery Date
        Fri 04/22/2022
    Tracking #:
        9505 5144 0157 2111 5779 05
    Insurance                     $0.00
        Up to $50.00 included
Total                             $8.95
------------------------------------------

Grand Total:                     $15.46
------------------------------------------
Credit Card Remitted             $15.46
    Card Name: AMEX
    Account #: XXXXXXXXXXX2025
    Approval #: 881638
    Transaction #: 206
    AID: A0000000025010801       Chip
    AL: AMERICAN EXPRESS
    PIN: Not Required
------------------------------------------
```

*********************************************
Every household in the U.S. is now
eligible to receive a second set
of 4 free test kits.
Go to www.covidtests.gov
*********************************************

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
htt,s://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

# USPS Tracking®

FAQs □

Track Another Package    ✚

**Tracking Number:** 70220410000182259702

Remove □

Your item was delivered to an individual at the address at 1:35 pm on April 22, 2022 in MIAMI, FL 33158.

**USPS Tracking Plus® Available** □

## □ **Delivered, Left with Individual**

April 22, 2022 at 1:35 pm
MIAMI, FL 33158

**Get Updates** □

**See More** □

**Tracking Number:** 9505514401572111577905

Remove □

Your item was delivered in or at the mailbox at 1:35 pm on April 22, 2022 in MIAMI, FL 33158.

**USPS Tracking Plus® Available** □

## □ **Delivered, In/At Mailbox**

April 22, 2022 at 1:35 pm
MIAMI, FL 33158

52683569.1

I certify that I am over the age of 18 and have no interest in the above action.  Under penalties of perjury, I declare that I have read the foregoing Return of Service and that the facts stated are true.

Michael Mills

Dated: 4/28/2022

- 4 -

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | | |
|---|---|---|
| PDV USA, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   20-cv-3699 |
| INTERAMERICAN CONSULTING INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                  Esther Nuhfer

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: c/o Amy G. Fudenberg, Jones Day, Brickell World Plaza, 600 Brickell Avenue, Suite 3300, Miami, FL 33131 | Date and Time:<br><br>04/15/2022 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      03/29/2022

|  *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Jeffrey B. Korn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff
PDV USA, Inc. , who issues or requests this subpoena, are:

 Jeffrey B. Korn, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, jkorn@willkie.com, 212-728-8842

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   20-cv-3699

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## **INSTRUCTIONS**

1.      In responding to these requests (the "Requests"), You are required to
produce all Documents described below that are in Your possession, custody or control.  A
Document is within Your control, for example, if You have the right to obtain the Document or a
copy of the Document from another person having possession or custody of the Document.  If any
Document is in the possession or custody of another person and not currently within Your control,
identify the person (or persons) from whom the Document may be obtained.

2.      Produce all documents as they are kept in the normal course of business.

3.      Each document request requires you to produce all responsive documents
in their entirety, including all attachments and documents affixed thereto, without abbreviation or
expurgation.  If no documents responsive to a particular request exist or are within your control,
the response should so state.  In the event that you are able to provide only a portion of the
document(s) called for in any particular document request, provide all document(s) that you are
able to provide, and (i) identify the remaining documents and (ii) state the reason why you are
unable to produce the remaining documents.

4.      To the extent you refuse to respond to any document request, in whole or
in part, on grounds of privilege or attorney work-product, you shall comply with and provide the
information required by Local Civil Rule 26.2.  Any redactions to documents shall be
prominently identified with a mark indicating the location and size of the redacted area.

5.      These discovery requests are continuing.  Supplement your responses
promptly if and when you obtain or locate additional responsive documents.

6.      In the event that any document called for by the requests for production has
been destroyed, lost, or otherwise discarded, identify the document request(s) to which that

document was responsive and identify such document or documents as completely as possible, including, without limitation, the following information: the substance of the document or documents; last known custodian(s); date and method of disposal; person authorizing or directing the disposal; person disposing of the document or documents; reason(s) for the disposal; and whether any copy(ies) of the document or documents exist.

7. Produce, without redaction, the entirety of any document that contains responsive, non-privileged information.

8. The scope of your search for electronic data that is responsive to any request shall include all forms of electronic data collection, preservation, transmission, communication, and storage, including without limitation:

a. All data generated and maintained in the ordinary course of business, including data stored on mainframe computers, with third parties, or on local and network computers and storage devices;

b. Distributed, removable, or portable data, *i.e.*, information which resides on portable media and non-local devices, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, solid-state and flash memory drives, cloud storage or other internet repositories (including e-mail hosted by web services such as Gmail), and handheld storage devices such as smart phones, tablets, and iPads;

c. Forensic copy or backup data, including archive and backup data tapes and discs;

d. Network data, including voicemail systems, e-mail servers, file and print servers, and fax servers;

e. Legacy data, *i.e.*, retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f. Metadata, *i.e.*, information regarding a particular data set which describes

g. how, when, and by whom it was collected, created, accessed, and modified and how it is formatted; and

        h.      Residual or deleted data, *i.e.*, data that is not active on a computer system, including data found on media free space, data found on media slack space, and data within files that have been functionally deleted.

    9.      You should produce Documents, including e-mail, in single-page tagged image file format ("TIFF"). Each image shall have a unique production number. Full text files, if any, should be delivered as document-level text files named for the first production number of that document. Spreadsheets, video and audio recordings, presentation files (such as PowerPoint files), and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file. Each Document produced in native format shall be clearly labeled to indicate the placeholder production number that corresponds to the placeholder production-numbered TIFF file for that Document.

    10.     Database information for Your production shall be provided in a ".dat" file, which contains the metadata fields as a delimited database load file. The data load file should contain the field headers indicating the contents of each field. Required fields of data are, but are not limited to:

- Beg Bates
- End Bates
- Begin Attachment
- End Attachment
- Native File Path (for native file productions)
- Page Count
- Custodian
- Duplicate Custodian(s)
- Time Sent (hh:mm:ss)
- Date Sent (mm/dd/yyyy)
- Date Received (mm/dd/yyyy)
- Time Received (hh:mm:ss)
- Last Modified (mm/dd/yyyy)
- Email Subject
- From
- To
- CC

- BCC
- Email Item Type (Email or Attachment)
- File Source Path
- File Name
- File Type
- File Source Extension
- Modified By, or in the alternative, Author or Last Author
- Hash Value (MD5 or SHA1/2 algorithm)
- Email Conversation/Thread ID

11.     If, in responding to these Requests, You claim any ambiguity in interpreting a Request or a definition or instruction applicable thereto, You should not rely on such claim as a basis for refusing to respond, but you shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Request.

12.     In the event that You claim that a Request is overly broad or unduly burdensome, You are requested to respond to that portion of the Request that is unobjectionable and specifically identify the respect in which You believe the Request is overly broad or unduly burdensome.  If Your objection relates only to part of the Request, produce all Documents that do not fall within the scope of your objection.

13.     Plaintiff expressly reserves the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

14.     Unless otherwise stated, these Requests seek documents and communications from the time period January 1, 2017 through present.

## **DEFINITIONS**

1.     The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District

Court for the Southern District of New York (the "Local Rules") shall apply to these Requests. All terms not otherwise defined shall have their ordinary and common meanings.

2.    "Action" means the above-captioned litigation and any pleadings filed in connection therewith.

3.    "Communication" means the transmittal of information by any means, including, without limitation, transmittal by electronic means such as electronic mail, including via both business and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites.

4.    "Communication Solutions" means Communication Solutions, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Esther Nuhfer.

5.    "You," or "Your" means Esther Nuhfer.

6.    "Concern" or "concerning" means relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

7.    "Consulting Agreement" means the consulting agreement entered into by and between PDV USA, Inc. ("PDV USA") and Interamerican as of March 21, 2017 that is the subject of this Action.

8.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

9.      "Gorrín-Communication Solutions Agreement" means the contract dated May 10, 2017 between Raul Gorrín and Communication Solutions in which Communication Solutions agreed to provide strategic consulting services to Gorrín in exchange for a $3,750,000 retainer and negotiated payments thereafter.  *See* Interamerican_001925.

10.      "Interamerican" means the defendant in this Action, Interamerican Consulting, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Rivera and Diana Rivera McKenzie.

11.      "Interamerican-Communication Solutions Subcontracting Agreement" means the contract dated March 20, 2017 between Interamerican and Communication Solutions, in which Communication Solutions agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Marketing Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

12.      "Interamerican-PG & Associates Subcontracting Agreement" means the contract dated March 20, 2017 between PG & Associates Inc. ("PG & Associates") and Interamerican, in which PG & Associates agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

13.      "Interamerican-PG & Associates Marketing Agreement" means the contract dated March 21, 2017 between PG & Associates and Interamerican, in which PG &

Associates agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

14.    "Interamerican-Krome Marketing Agreement" means the contract dated March 21, 2017 between Krome Argonomics, LLC ("Krome") and Interamerican in which Krome agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

15.    "Interamerican-Miami College of Design Agreement" means the draft agreement contemplated to become effective on May 24, 2017 between Interamerican and Miami College of Design, LLC, which stated that Interamerican would provide consulting services to the Miami College of Design in exchange for an initial retainer of $75,000.

16.    "Interamerican-Interglobal Subcontracting Agreement" means the agreement between Interamerican and Interglobal Yacht Management, LLC ("Interglobal"), signed by Rivera on March 20, 2017, in which Interglobal would agree to "provide the Contractor [Interamerican] and the Client [PDV USA] with International Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

17.    "PDVSA" means Petróleos de Venezuela, S.A. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

18.    "PDV USA" means PDV USA, Inc. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

19.    "Rivera" means former U.S. Congressman David Mauricio Rivera.

20.     "Venezuelan Government" means the government of Venezuela under the Nicolás Maduro regime, as well as its officials, committees, ministries, commissions, affiliates, divisions, agents, members, employees, ministers, attorneys, consultants, and representatives, past, present, or future, in their individual or representative capacities.

21.     The use of the singular form of any word includes the plural and vice versa.

22.     All terms defined herein shall have the meanings set above, whether such terms are capitalized or not.

## REQUESTS FOR PRODUCTION

1.     All Documents and Communications concerning the Consulting Agreement or the subject matter of this Action.

2.     All Documents and Communications concerning Interamerican's performance (if any) pursuant to the Consulting Agreement, including but not limited to any reports provided by Interamerican to PDV USA or PDVSA in connection with the Consulting Agreement.

3.     All Documents and Communications concerning PDV USA's attempt to transfer its rights and obligations under the Consulting Agreement to PDVSA.

4.     All Documents and Communications concerning any agreement or understanding between You and Interamerican or Rivera, including but not limited to the Interamerican-Communication Solutions Subcontracting Agreement.

5.     All Documents and Communications concerning the Gorrín-Communication Solutions Agreement.

6.     All Documents and Communications concerning any of the following:

a.     Interamerican-PG & Associates Subcontracting Agreement;

10

  b.  Interamerican-PG & Associates Marketing Agreement;

  c.  Interamerican-Krome Marketing Agreement;

  d.  Interamerican-Interglobal Subcontracting Agreement;

  e.  Interamerican-Miami College of Design Agreement.

7.  All Documents and Communications concerning any meetings with Rivera and Joel Brakha, president of Interglobal Yacht Management, including a meeting on or around March 8, 2018 at the offices of Interglobal Yacht Management.

8.  All Documents and Communications (including bank account and other financial records) concerning any payments either received or made by You, Rivera, or Interamerican, directly or indirectly, related in any way to the Consulting Agreement or the subject matter of this Action.

9.  All Documents and Communications (including bank account and other financial records) concerning Your disbursement or use of any funds received from Interamerican or Rivera in connection with the Consulting Agreement.

10.  All Documents and Communications (including bank account and other financial records) concerning payments made by You, Communication Solutions, Interamerican, or Rivera, directly or indirectly, to any of the following:

  a.  The Citgo 6;

  b.  the Venezuelan Government;

  c.  any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

  d.  Leopoldo Lopez;

  e.  Lilian Tintori;

  f.  Julio Borges;

g.      Leocenis Garcia;

h.      Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

i.      Sara Abdel Karim Hanna Georges ("Sara Hanna");

j.      Raul Gorrín;

k.      Interglobal;

l.      Joel Brakha;

m.      Cascading Investment Limited;

n.      Maria Alexandra;

o.      Hugo Perera;

p.      Krome;

q.      PG & Associates;

r.      Miami College of Design, LLC.

11.      All Documents and Communications (including bank account and other financial records) concerning payments received by You, Communication Solutions, Interamerican, or Rivera, directly or indirectly, from any of the following:

a.      The Citgo 6;

b.      the Venezuelan Government;

c.      any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

d.      Leopoldo Lopez;

e.      Lilian Tintori;

f.      Julio Borges;

g.      Leocenis Garcia;

h.      Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

i.        Sara Abdel Karim Hanna Georges ("Sara Hanna");

j.        Raul Gorrín;

k.        Interglobal;

l.        Joel Brakha;

m.        Cascading Investment Limited;

n.        Maria Alexandra;

o.        Hugo Perera;

p.        Krome;

q.        PG & Associates;

r.        Miami College of Design, LLC.

12.     All Documents and Communications (including bank account and other financial records) concerning Invoices sent by You or Communication Solutions to Interamerican, including but not limited to the invoices from Communication Solutions to Interamerican requested by Rivera on November 29, 2017 with the following dates and in the following amounts:

a.        March 27, 2017: $750,000;

b.        April 11, 2017: $750,000;

c.        April 12, 2017: $750,000;

d.        April 21, 2017: $625,000;

e.        April 24, 2017: $625,000;

f.        November 7, 2017: $1,000,000.

13.     All Documents and Communications concerning any attempt by You, Communication Solutions, Interamerican, or Rivera to delist Carlos Erik Malpica Flores from the Specially Designated Nationals and Blocked Persons List.

13

14.     All Documents and Communications concerning the planned travel of Leocenis Garcia to and from Caracas, Venezuela and Washington, D.C. in or around March 2017.

15.     All Documents and Communications concerning any governmental or administrative investigations or inquiries involving You or Communication Solutions that relate in any way to the Consulting Agreement or the subject matter of this Action.  This includes any Documents produced to or shared with the government or investigative authority in connection therewith.

16.     Documents sufficient to identify the relationship between You and Communication Solutions including any ownership interest held by You.

Dated: New York, New York
       March 29, 2022

                         **WILLKIE FARR & GALLAGHER LLP**

                    By: /s/ Jeffrey B. Korn_____

                        Jeffrey B. Korn
                        Brady M. Sullivan
                        787 Seventh Avenue
                        New York, New York 10019
                        (212) 728-8000
                        JKorn@willkie.com
                        BSullivan@willkie.com

                        Michael J. Gottlieb
                        1875 K Street, N.W.
                        Washington, D.C. 20006
                        (202) 303-1000
                        MGottlieb@willkie.com

                        *Attorneys for Plaintiff PDV USA, Inc.*

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

|  |  |
|---|---|
| PDV USA, INC. | ) |
| *Plaintiff* | ) |
| v. | ) |
| INTERAMERICAN CONSULTING INC. | ) |
|  | ) |
| *Defendant* | ) |

Civil Action No.   20-cv-3699

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                       Communication Solutions, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: c/o Amy G. Fudenberg, Jones Day, Brickell World Plaza, 600 Brickell Avenue, Suite 3300, Miami, FL 33131 | Date and Time: 04/15/2022 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   03/29/2022

| *CLERK OF COURT* | | |
|---|---|---|
|  | OR | |
| _____ | | /s/ Jeffrey B. Korn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiff
PDV USA, Inc. , who issues or requests this subpoena, are:

Jeffrey B. Korn, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, jkorn@willkie.com, 212-728-8842

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  20-cv-3699

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____   on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

## INSTRUCTIONS

1.      In responding to these requests (the "Requests"), You are required to produce all Documents described below that are in Your possession, custody or control.  A Document is within Your control, for example, if You have the right to obtain the Document or a copy of the Document from another person having possession or custody of the Document.  If any Document is in the possession or custody of another person and not currently within Your control, identify the person (or persons) from whom the Document may be obtained.

2.      Produce all documents as they are kept in the normal course of business.

3.      Each document request requires you to produce all responsive documents in their entirety, including all attachments and documents affixed thereto, without abbreviation or expurgation.  If no documents responsive to a particular request exist or are within your control, the response should so state.  In the event that you are able to provide only a portion of the document(s) called for in any particular document request, provide all document(s) that you are able to provide, and (i) identify the remaining documents and (ii) state the reason why you are unable to produce the remaining documents.

4.      To the extent you refuse to respond to any document request, in whole or in part, on grounds of privilege or attorney work-product, you shall comply with and provide the information required by Local Civil Rule 26.2.  Any redactions to documents shall be prominently identified with a mark indicating the location and size of the redacted area.

5.      These discovery requests are continuing.  Supplement your responses promptly if and when you obtain or locate additional responsive documents.

6.      In the event that any document called for by the requests for production has been destroyed, lost, or otherwise discarded, identify the document request(s) to which that

document was responsive and identify such document or documents as completely as possible, including, without limitation, the following information: the substance of the document or documents; last known custodian(s); date and method of disposal; person authorizing or directing the disposal; person disposing of the document or documents; reason(s) for the disposal; and whether any copy(ies) of the document or documents exist.

7.     Produce, without redaction, the entirety of any document that contains responsive, non-privileged information.

8.     The scope of your search for electronic data that is responsive to any request shall include all forms of electronic data collection, preservation, transmission, communication, and storage, including without limitation:

a.     All data generated and maintained in the ordinary course of business, including data stored on mainframe computers, with third parties, or on local and network computers and storage devices;

b.     Distributed, removable, or portable data, *i.e.*, information which resides on portable media and non-local devices, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, solid-state and flash memory drives, cloud storage or other internet repositories (including e-mail hosted by web services such as Gmail), and handheld storage devices such as smart phones, tablets, and iPads;

c.     Forensic copy or backup data, including archive and backup data tapes and discs;

d.     Network data, including voicemail systems, e-mail servers, file and print servers, and fax servers;

e.     Legacy data, *i.e.*, retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f.     Metadata, *i.e.*, information regarding a particular data set which describes

g.     how, when, and by whom it was collected, created, accessed, and modified and how it is formatted; and

h.  Residual or deleted data, *i.e.*, data that is not active on a computer system, including data found on media free space, data found on media slack space, and data within files that have been functionally deleted.

9.   You should produce Documents, including e-mail, in single-page tagged image file format ("TIFF").  Each image shall have a unique production number.  Full text files, if any, should be delivered as document-level text files named for the first production number of that document.  Spreadsheets, video and audio recordings, presentation files (such as PowerPoint files), and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file.  Each Document produced in native format shall be clearly labeled to indicate the placeholder production number that corresponds to the placeholder production-numbered TIFF file for that Document.

10.   Database information for Your production shall be provided in a ".dat" file, which contains the metadata fields as a delimited database load file.  The data load file should contain the field headers indicating the contents of each field.  Required fields of data are, but are not limited to:

- Beg Bates
- End Bates
- Begin Attachment
- End Attachment
- Native File Path (for native file productions)
- Page Count
- Custodian
- Duplicate Custodian(s)
- Time Sent (hh:mm:ss)
- Date Sent (mm/dd/yyyy)
- Date Received (mm/dd/yyyy)
- Time Received (hh:mm:ss)
- Last Modified (mm/dd/yyyy)
- Email Subject
- From
- To
- CC

5

- BCC
- Email Item Type (Email or Attachment)
- File Source Path
- File Name
- File Type
- File Source Extension
- Modified By, or in the alternative, Author or Last Author
- Hash Value (MD5 or SHA1/2 algorithm)
- Email Conversation/Thread ID

11.     If, in responding to these Requests, You claim any ambiguity in interpreting a Request or a definition or instruction applicable thereto, You should not rely on such claim as a basis for refusing to respond, but you shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Request.

12.     In the event that You claim that a Request is overly broad or unduly burdensome, You are requested to respond to that portion of the Request that is unobjectionable and specifically identify the respect in which You believe the Request is overly broad or unduly burdensome.  If Your objection relates only to part of the Request, produce all Documents that do not fall within the scope of your objection.

13.     Plaintiff expressly reserves the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

14.     Unless otherwise stated, these Requests seek documents and communications from the time period January 1, 2017 through present.

## **DEFINITIONS**

1.     The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District

Court for the Southern District of New York (the "Local Rules") shall apply to these Requests. All terms not otherwise defined shall have their ordinary and common meanings.

2.      "Action" means the above-captioned litigation and any pleadings filed in connection therewith.

3.      "Communication" means the transmittal of information by any means, including, without limitation, transmittal by electronic means such as electronic mail, including via both business and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites.

4.      "Communication Solutions," "You," or "Your" means Communication Solutions, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Esther Nuhfer.

5.      "Concern" or "concerning" means relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

6.      "Consulting Agreement" means the consulting agreement entered into by and between PDV USA, Inc. ("PDV USA") and Interamerican as of March 21, 2017 that is the subject of this Action.

7.       "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

8.      "Gorrín-Communication Solutions Agreement" means the contract dated May 10, 2017 between Raul Gorrín and Communication Solutions in which Communication Solutions agreed to provide strategic consulting services to Gorrín in exchange for a $3,750,000 retainer and negotiated payments thereafter.  *See* Interamerican_001925.

9.      "Interamerican" means the defendant in this Action, Interamerican Consulting, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Rivera and Diana Rivera McKenzie.

10.      "Interamerican-Communication Solutions Subcontracting Agreement" means the contract dated March 20, 2017 between Interamerican and Communication Solutions, in which Communication Solutions agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Marketing Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

11.      "Interamerican-PG & Associates Subcontracting Agreement" means the contract dated March 20, 2017 between PG & Associates Inc. ("PG & Associates") and Interamerican, in which PG & Associates agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

12.      "Interamerican-PG & Associates Marketing Agreement" means the contract dated March 21, 2017 between PG & Associates and Interamerican, in which PG &

Associates agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

13.    "Interamerican-Krome Marketing Agreement" means the contract dated March 21, 2017 between Krome Argonomics, LLC ("Krome") and Interamerican in which Krome agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

14.    "Interamerican-Miami College of Design Agreement" means the draft agreement contemplated to become effective on May 24, 2017 between Interamerican and Miami College of Design, LLC, which stated that Interamerican would provide consulting services to the Miami College of Design in exchange for an initial retainer of $75,000.

15.    "Interamerican-Interglobal Subcontracting Agreement" means the agreement between Interamerican and Interglobal Yacht Management, LLC ("Interglobal"), signed by Rivera on March 20, 2017, in which Interglobal would agree to "provide the Contractor [Interamerican] and the Client [PDV USA] with International Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

16.    "PDVSA" means Petróleos de Venezuela, S.A. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

17.    "PDV USA" means PDV USA, Inc. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

18.    "Rivera" means former U.S. Congressman David Mauricio Rivera.

19.     "Venezuelan Government" means the government of Venezuela under the Nicolás Maduro regime, as well as its officials, committees, ministries, commissions, affiliates, divisions, agents, members, employees, ministers, attorneys, consultants, and representatives, past, present, or future, in their individual or representative capacities.

20.     The use of the singular form of any word includes the plural and vice versa.

21.     All terms defined herein shall have the meanings set above, whether such terms are capitalized or not.

## REQUESTS FOR PRODUCTION

1.     All Documents and Communications concerning the Consulting Agreement or the subject matter of this Action.

2.     All Documents and Communications concerning Interamerican's performance (if any) pursuant to the Consulting Agreement, including but not limited to any reports provided by Interamerican to PDV USA or PDVSA in connection with the Consulting Agreement.

3.     All Documents and Communications concerning PDV USA's attempt to transfer its rights and obligations under the Consulting Agreement to PDVSA.

4.     All Documents and Communications concerning any agreement or understanding between You and Interamerican or Rivera, including but not limited to the Interamerican-Communication Solutions Subcontracting Agreement.

5.     All Documents and Communications concerning the Gorrín-Communication Solutions Agreement.

6.     All Documents and Communications concerning any of the following:

a.     Interamerican-PG & Associates Subcontracting Agreement;

10

      b.       Interamerican-PG & Associates Marketing Agreement;

      c.       Interamerican-Krome Marketing Agreement;

      d.       Interamerican-Interglobal Subcontracting Agreement;

      e.       Interamerican-Miami College of Design Agreement.

7.     All Documents and Communications concerning any meetings with Rivera and Joel Brakha, president of Interglobal Yacht Management, including a meeting on or around March 8, 2018 at the offices of Interglobal Yacht Management.

8.     All Documents and Communications (including bank account and other financial records) concerning any payments either received or made by You, Rivera, or Interamerican, directly or indirectly, related in any way to the Consulting Agreement or the subject matter of this Action.

9.     All Documents and Communications (including bank account and other financial records) concerning Your disbursement or use of any funds received from Interamerican or Rivera in connection with the Consulting Agreement.

10.     All Documents and Communications (including bank account and other financial records) concerning payments made by You, Interamerican, or Rivera, directly or indirectly, to any of the following:

      a.       The Citgo 6;

      b.       the Venezuelan Government;

      c.       any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

      d.       Leopoldo Lopez;

      e.       Lilian Tintori;

      f.       Julio Borges;

g.     Leocenis Garcia;

h.     Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

i.     Sara Abdel Karim Hanna Georges ("Sara Hanna");

j.     Raul Gorrín;

k.     Interglobal;

l.     Joel Brakha;

m.     Cascading Investment Limited;

n.     Maria Alexandra;

o.     Hugo Perera;

p.     Krome;

q.     PG & Associates;

r.     Miami College of Design, LLC.

11.     All Documents and Communications (including bank account and other financial records) concerning payments received by You, Interamerican, or Rivera, directly or indirectly, from any of the following:

a.     The Citgo 6;

b.     the Venezuelan Government;

c.     any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

d.     Leopoldo Lopez;

e.     Lilian Tintori;

f.     Julio Borges;

g.     Leocenis Garcia;

h.     Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

      i.        Sara Abdel Karim Hanna Georges ("Sara Hanna");

      j.        Raul Gorrín;

      k.        Interglobal;

      l.        Joel Brakha;

      m.        Cascading Investment Limited;

      n.        Maria Alexandra;

      o.        Hugo Perera;

      p.        Krome;

      q.        PG & Associates;

      r.        Miami College of Design, LLC.

12.     All Documents and Communications (including bank account and other financial records) concerning Invoices sent by You to Interamerican, including but not limited to the invoices from Communication Solutions to Interamerican requested by Rivera on November 29, 2017 with the following dates and in the following amounts:

      a.        March 27, 2017: $750,000;

      b.        April 11, 2017: $750,000;

      c.        April 12, 2017: $750,000;

      d.        April 21, 2017: $625,000;

      e.        April 24, 2017: $625,000;

      f.        November 7, 2017: $1,000,000.

13.     All Documents and Communications concerning any attempt by You, Interamerican, or Rivera to delist Carlos Erik Malpica Flores from the Specially Designated Nationals and Blocked Persons List.

14.     All Documents and Communications concerning the planned travel of Leocenis Garcia to and from Caracas, Venezuela and Washington, D.C. in or around March 2017.

15.     All Documents and Communications concerning any governmental or administrative investigations or inquiries involving You or Esther Nuhfer that relate in any way to the Consulting Agreement or the subject matter of this Action.  This includes any Documents produced to or shared with the government or investigative authority in connection therewith.

16.     Documents sufficient to identify the relationship between Esther Nuhfer and Communication Solutions including any ownership interest held by Esther Nuhfer.

Dated: New York, New York

March 29, 2022

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Jeffrey B. Korn_____

Jeffrey B. Korn
Brady M. Sullivan
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
JKorn@willkie.com
BSullivan@willkie.com

Michael J. Gottlieb
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
MGottlieb@willkie.com

*Attorneys for Plaintiff PDV USA, Inc.*

14

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| PDV USA, INC. | )<br>) |
| *Plaintiff* | ) |
| v. | )     Civil Action No.    20-cv-3699 |
| INTERAMERICAN CONSULTING INC. | )<br>) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Communication Solutions, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Schedule A

| Place: Jones Day, Brickell World Plaza, 600 Brickell Avenue, Suite 3300, Miami, FL 33131 | Date and Time:<br>05/03/2022 9:30 am |
|---|---|

The deposition will be recorded by this method:     Stenographically and by videotape

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     03/21/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Jeffrey B. Korn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
PDV USA, Inc.                                                                                    , who issues or requests this subpoena, are:

Jeffrey B. Korn, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, jkorn@willkie.com, 212-728-8842

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   20-cv-3699

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Pursuant to Rules 30(b)(6) and 45 of the Federal Rule of Civil Procedure, Plaintiff, by its counsel, will take the deposition of Communication Solutions, Inc. ("Communication Solutions") on May 3, 2022 at 9:30 a.m.  The deposition will take place at Jones Day, Brickell World Plaza, 600 Brickell Avenue, Suite 3300, Miami, FL 33131.  The deposition will be taken before a person authorized by law to administer oaths under Fed. R. Civ. P. 28(a) and shall continue from one day to the next, excluding Sundays and holidays, until the examination is completed.

Pursuant to Rule 30(b)(6), Communication Solutions is directed to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf on the following Deposition Topics set forth below.  For each person designated, Plaintiff requests that Communication Solutions identify the particular topics on which such person(s) will testify. Plaintiff also hereby notifies Communication Solutions of its duty to confer with Plaintiff pursuant to Rule 30(b)(6).

## **DEFINITIONS**

1.      "Action" means the above-captioned litigation and any pleadings filed in connection therewith.

2.      "The Citgo 6" refers to Jorge Toledo, Gustavo Cardenas, José Pereira, Tomeu Vadell, José Luis Zambrano, and Alirio Zambrano, who were detained and imprisoned by Venezuelan authorities on November 21, 2017.

3.      "Communication" means the transmittal of information by any means, including, without limitation, transmittal by electronic means such as electronic mail, including via both business and personal email accounts, text messaging, instant messaging, online chat platforms, recordings, or postings on social media sites.

1

4.      "Communication Solutions," "You," "or Your" means Communication Solutions, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Esther Nuhfer.

5.      "Concern" or "concerning" means relating to, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed, in whole or part, directly or indirectly.

6.      "Consulting Agreement" means the consulting agreement entered into by and between PDV USA, Inc. ("PDV USA") and Interamerican as of March 21, 2017 that is the subject of this Action.

7.      "Gorrín-Communication Solutions Agreement" means the contract dated May 10, 2017 between Raul Gorrín and Communication Solutions in which Communication Solutions agreed to provide strategic consulting services to Gorrín in exchange for a $3,750,000 retainer and negotiated payments thereafter.  *See* Interamerican_001925.

8.      "Interamerican" means the defendant in this Action, Interamerican Consulting, Inc., as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates, including but not limited to Rivera and Diana Rivera McKenzie.

9.       "Interamerican-Communication Solutions Subcontracting Agreement" means the contract dated March 20, 2017 between Interamerican and Communication Solutions in which Communication Solutions agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Marketing Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

10.     "Interamerican-PG & Associates Subcontracting Agreement" means the contract dated March 20, 2017 between PG & Associates Inc. ("PG & Associates") and Interamerican, in which PG & Associates agreed to "provide the Contractor [Interamerican] and the Client [PDV USA] with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

11.     "Interamerican-PG & Associates Marketing Agreement" means the contract dated March 21, 2017 between PG & Associates and Interamerican, in which PG & Associates agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

12.     "Interamerican-Krome Marketing Agreement" means the contract dated March 21, 2017 between Krome Argonomics, LLC ("Krome") and Interamerican in which Krome agreed to "promote Interamerican Consulting, Inc.'s services to its customers" in exchange for a fee of twenty-five percent of the net received from the "client."

13.     "Interamerican-Miami College of Design Agreement" means the draft agreement contemplated to become effective on May 24, 2017 between Interamerican and Miami College of Design, LLC, which stated that Interamerican would provide consulting services to the Miami College of Design in exchange for an initial retainer of $75,000.

14.     "Interamerican-Interglobal Subcontracting Agreement" means the agreement between Interamerican and Interglobal Yacht Management, LLC ("Interglobal"), signed by Rivera on March 20, 2017, in which Interglobal would agree to "provide the Contractor [Interamerican] and the Client [PDV USA] with International Strategic Consulting to best serve the Contractor's

ability to fulfill its agreement with the Client" in exchange for a fee of twenty-five percent of the net received from the "Client."

15.     "PDVSA" means Petróleos de Venezuela, S.A. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

16.     "PDV USA" means PDV USA, Inc. as well as its officers, directors, employees, agents, associates, partners, shareholders, corporate parents, subsidiaries, or affiliates.

17.     "Rivera" means former United States Congressman David Mauricio Rivera.

18.     "Venezuelan Government" means the government of Venezuela under the Nicolás Maduro regime, as well as its officials, committees, ministries, commissions, affiliates, divisions, agents, members, employees, ministers, attorneys, consultants, and representatives, past, present, or future, in their individual or representative capacities.

19.     The use of the singular form of any word includes the plural and vice versa.

20.     All terms defined herein shall have the meanings set forth above, whether such terms are capitalized or not.

## **DEPOSITION TOPICS**

1.     Your involvement in or understanding of the Consulting Agreement, including but not limited to its inception, formation, negotiation, drafting, intended purpose, as well as any understanding or Communications between You on the one hand and Interamerican, Rivera, or anyone else on the other hand regarding the Consulting Agreement.

2.     Your involvement in or understanding of Interamerican's performance (if any) pursuant to the Consulting Agreement, including but not limited to any reports provided by Interamerican to PDV USA or PDVSA in connection with the Consulting Agreement.

3.      Your involvement in or understanding of PDV USA's attempt to transfer its rights and obligations under the Consulting Agreement to PDVSA.

4.      Any agreement or understanding between You and Interamerican or Rivera, including but not limited to the Interamerican-Communication Solutions Subcontracting Agreement.

5.      The Gorrín-Communication Solutions Agreement.

6.      Your involvement in or understanding of the following agreements:

      a)      Interamerican-PG & Associates Subcontracting Agreement;

      b)      Interamerican-PG & Associates Marketing Agreement;

      c)      Interamerican-Krome Marketing Agreement;

      d)      Interamerican-Interglobal Subcontracting Agreement;

      e)      Interamerican-Miami College of Design Agreement.

7.      Any meetings with Rivera and Joel Brakha, president of Interglobal Yacht Management, including a meeting on or around March 8, 2018 at the offices of Interglobal Yacht Management.

8.      Any payments either received or made by You, Rivera, or Interamerican, directly or indirectly, concerning the Consulting Agreement or the subject matter of this Action.

9.      Your disbursement or use of any money received from Interamerican in connection with the Consulting Agreement.

10.      Invoices sent by You to Interamerican, including but not limited to the invoices from Communication Solutions to Interamerican requested by Rivera on November 29, 2017 with the following dates and in the following amounts:

      a)      March 27, 2017: $750,000;

     b)         April 11, 2017: $750,000;

     c)         April 12, 2017: $750,000;

     d)         April 21, 2017: $625,000;

     e)         April 24, 2017: $625,000;

     f)         November 7, 2017: $1,000,000.

11.     Concerning the Consulting Agreement or the subject matter of this Action, Your, Rivera's, or Interamerican's involvement with (including sending or receiving payments, directly or indirectly) or Communications with any of the following:

     a)         Any employee, agent, director, officer or representative of PDV USA, PDVSA, or Citgo Petroleum Corporation;

     b)         The Citgo 6;

     c)         the Venezuelan Government;

     d)         Delcy Rodriguez;

     e)         Jorge Rodríguez;

     f)         Carolos Erik Malpica Flores;

     g)         Ronald Meltzer;

     h)         any opposition of the Venezuelan Government or anti-Maduro leaders, organizations, entities, parties, forces, or factions;

     i)         Leopoldo Lopez;

     j)         Lilian Tintori;

     k)         Julio Borges;

     l)         Leocenis Garcia;

     m)         Safiya Prysmakova (aka "Safiya Prysmakova-Rivera");

     n)         Sara Abdel Karim Hanna Georges ("Sara Hanna");

     o)         Raul Gorrín;

p)      Interglobal;

q)      Joel Brakha;

r)      Cascading Investment Limited;

s)      Maria Alexandra;

t)      individuals associated with the M/Y La Pellegrina vessel;

u)      Hugo Perera;

v)      Krome;

w)      PG & Associates;

x)      Miami College of Design, LLC;

y)      Florida First;

z)      Marco Rubio;

aa)     Pete Sessions;

bb)     Darren Woods;

cc)     Randy Ebner;

dd)     Steven Davidson;

ee)     Hector Galeano;

ff)     Rowdy Rebman Lopez;

gg)     Jorge Rebman Lopez;

hh)     Petro Gaz Haiti.

12.     Other than with counsel, any Communications You have had with anyone about the Consulting Agreement or this Action.

13.     Your involvement in or understanding of any attempt of You, Interamerican, or Rivera to delist Carlos Erik Malpica Flores from the Specially Designated Nationals and Blocked Persons List.

14.     The email and attachments from Hugo Perera to Esther Nuhfer, dated March 1, 2017, forwarding an email from Leocenis Garcia and attaching various travel documents reflecting planned travel to and from Caracas, Venezuela and Washington, D.C. involving Mr. Jose Gregorio Correa.

15.     Any governmental or administrative investigations or inquiries involving You or Esther Nuhfer that relate in any way to the Consulting Agreement or the subject matter of this Action.

16.     Your preservation and collection of documents in connection with this Action.

17.     Documents produced by You in this Action.

Dated: New York, New York
      March 21, 2022

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Jeffrey B. Korn
    Jeffrey B. Korn
    Brady M. Sullivan
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000
    JKorn@willkie.com
    BSullivan@willkie.com

    Michael J. Gottlieb
    1875 K Street, N.W.
    Washington, D.C. 20006
    (202) 303-1000
    MGottlieb@willkie.com

*Attorneys for Plaintiff PDV USA, Inc.*

# Exhibit 8

| | |
|---|---|
| **From:** | Sullivan, Brady M. |
| **Sent:** | Thursday, April 7, 2022 11:59 AM |
| **To:** | 'PhilReizenstein' |
| **Subject:** | Nuhfer Service Via UPS |
| **Attachments:** | 2022.03.29 Document Subpoena to Nuhfer.PDF; 2022.03 29 Document Subpoena to Communication Solutions.PDF; 2022.03.21 Deposition Subpoena to Communication Solutions.pdf |

Phil,

Let's discuss today when you have a minute? 212 728 8949. The attached subpoenas have been served via UPS. UPS Box 269 (11767 South Dixie Highway, Suite 269, Pinecrest, Florida 33156) is registered to your client (personally, and for Communication Solutions). On 4/5/22, the subpoenas were mailed to that address. Delivery was confirmed as delivered on 4/6/22 at 1:08 PM. On 4/6/22, Gabriel Colon at UPS accepted service of the subpoenas on behalf of Ms. Nuhfer and Communication Solutions.

Recent cases in Florida acknowledge that this is proper service. *See TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) (authorizing service of third party subpoenas by FedEx or UPS because "substantial recent authority from federal courts in Florida support that Rule 45 does not require personal service; rather, it requires service reasonably calculated to ensure receipt of the subpoena by the witness"); *State Farm Mutual Auto. Ins. Co. v. Maistrenko*, 2019 WL 7790855, at *3 (S.D. Fla. Dec. 20, 2019) ("We agree and find that Rule 45 does not require personal delivery of the subpoena in order to effectuate service."); *Rainey v. Taylor*, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019) (favorably citing cases where "service [under Rule 45] was effectuated when made by FedEx and certified mail"). Especially given your client's evasion of service over the past few weeks, we are confident that any judge would find that mail service is proper here.

Please acknowledge that these subpoenas have been properly served.

Regards,
Brady

**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard | www.willkie.com bio

# Exhibit 9

| | |
|---|---|
| **From:** | Sullivan, Brady M. |
| **Sent:** | Thursday, April 21, 2022 3:57 PM |
| **To:** | 'PhilReizenstein' |
| **Subject:** | RE: Nuhfer Service Via UPS |

Phil,

Thanks for speaking with me today and advising that your client intends to move to quash the document subpoenas. We of course disagree with any notion that the subpoenas were not properly served or are otherwise not enforceable, and reserve all rights to contest your motion on any grounds (or make a motion of our own at any time). I'm writing to memorialize a couple of points. If the below mischaracterizes anything, please let me know promptly.

1. I have offered numerous times, including on our call today, to meet and confer and negotiate the scope of the document subpoenas.
2. You confirmed on our call today that your client is not contesting the service or enforceability of the *deposition* subpoenas served on her as well as Communication Solutions.

Regards,
Brady

**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard | www.willkie.com bio

**From:** PhilReizenstein <PhilReizenstein@protonmail.com>
**Sent:** Monday, April 18, 2022 7:03 PM
**To:** Sullivan, Brady M. <BSullivan@willkie.com>
**Subject:** RE: Nuhfer Service Via UPS

**\*\*\* EXTERNAL EMAIL \*\*\***

I'll have an update tomorrow- she is out of the US I believe
Phil

**Philip L. Reizenstein, Esq.**
2828 Coral Way Suite 540
Miami, FL, 33145
Off (305) 444-0755
Cell (305) 926-0218
This email is covered by Attorney- Client privilege and the Work Product privilege. If you are not the intended recipient of this email do not read this email. This transmission is intended to be delivered to and read by the named addressee(s) only, and may contain information that is confidential, proprietary, attorney work-product or attorney-client privileged. If this information is received by anyone other than the named addressee(s), Under no circumstances shall this material be read, used, copied, reproduced, stored or retained by anyone other that the named addressee(s) except with the express and actual consent of the sender.

Sent with ProtonMail secure email.

# Exhibit 10

| | |
|---|---|
| **From:** | Sullivan, Brady M. |
| **Sent:** | Wednesday, April 27, 2022 3:50 PM |
| **To:** | 'PhilReizenstein'; Adriana Collado-Hudak |
| **Subject:** | RE: Esther Nufer depo dates |
| **Attachments:** | Nuhfer Service Via UPS |

Phil,

Thanks for your email and your continued efforts to find a resolution here.

My email to you dated April 7 describes in detail the mail service. It's attached here for your reference. The subpoenas were also mailed to Ms. Nuhfer's home address in Palmetto Bay last week. The case law is clear that mailing constitutes proper service under Rule 45, especially where, as here, your client has repeatedly and intentionally evaded service. Your email below suggests you disagree and intend to contest service, and states that that you and Adriana would reach a final determination by end of day yesterday. We haven't heard anything, so we assume your client continues to contest service of process.

As you know, we have been attempting to obtain documents from your client and conferring on these issues for two and a half months. We have discovery deadlines in our case and, as I have mentioned before, we need your client's documents before we take a deposition. We cannot keep dragging this out.

Unless you promptly represent in writing that your client acknowledges that service of the document subpoenas directed to her and Communication Solutions was proper (or that she has authorized you to accept service), PDV USA intends to seek relief from the court. To be clear, we reserve the right to argue that your client has waived the right to object to the subpoena (including scope), given that the 14 day deadline has passed.

If we can move beyond the service issue, I'm happy to meet and confer about scope. Otherwise, it does not make sense to negotiate the scope of subpoenas that your client does not acknowledge were even served.

Regards,
Brady

**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard | www.willkie.com bio

**From:** PhilReizenstein <PhilReizenstein@protonmail.com>
**Sent:** Tuesday, April 26, 2022 12:18 PM
**To:** Sullivan, Brady M. <BSullivan@willkie.com>; Adriana Collado-Hudak <Adriana.Collado-Hudak@gmlaw.com>
**Subject:** Esther Nufer depo dates

<mark>*** EXTERNAL EMAIL ***</mark>

Brady I met with Esther today to discuss the subpoena for deposition and documents. Adriana, who you have spoken with, will have a final analysis for us today on the mail service issue. What address did you mail/fedex the

subpoenas to? That being said, if you want to schedule a phone call with us, perhaps in anticipation of proper service we can talk about narrowing down the subpoena scope so my office can at least start to gather data. I can't throw as many lawyers on this as your firm, so I need to schedule it and ahead of the curve.
And lets pick a depo date so we have that- May 26, 27,  June 16, 17


Let me know if you have 30-45 min to speak on scope
Phil

**Philip L. Reizenstein, Esq.**
2828 Coral Way Suite 540
Miami, FL, 33145
Off (305) 444-0755
Cell (305) 926-0218
This email is covered by Attorney- Client privilege and the Work Product privilege. If you are not the intended recipient of this email do not read this email. This transmission is intended to be delivered to and read by the named addressee(s) only, and may contain information that is confidential, proprietary, attorney work-product or attorney-client privileged.  If this information is received by anyone other than the named addressee(s), Under no circumstances shall this material be read, used, copied, reproduced, stored or retained by anyone other that the named addressee(s) except with the express and actual consent of the sender.


Sent with ProtonMail secure email.

# Exhibit 11

Case 1:22-mc-21372-JAL    Document 12    Entered on FLSD Docket 05/03/2022    Page 116 of
178

   

SUBSCRIBER EDITION

Coronavirus   News   Sports   Business   Personal Finance   Public Notices

HOMEPAGE

# Rivera diverted $13 million from Venezuelan deal to convicted drug trafficker, others

**BY JAY WEAVER** AND **ANTONIO MARIA DELGADO**

UPDATED APRIL 22, 2022 3:37 PM



ORDER REPRINT →

Venezuela's state oil firm paid Miami ex-Congressman, convicted drug trafficker | Miami Herald



File photo of former U.S. Rep. David Rivera. PEDRO PORTAL *EL NUEVO HERALD*



As Venezuela's economy was crashing in 2017, the country's state-owned oil company hired former Miami Congressman David Rivera for a costly public relations campaign to improve the tarnished image of the Venezuelan firm in the United States.

In just a few months, Rivera's consulting business collected $20 million from Venezuela's U.S. subsidiary, PDV USA, but its contract with the former politician abruptly ended when he was accused of doing little work, according to a lawsuit. Newly filed court documents reveal that Rivera diverted more than half of his PDV USA income — $13 million — to three subcontractors in Miami who supposedly provided "international strategic consulting services" for the Venezuelan firm.

One of Rivera's subcontractors who received millions from his Venezuelan deal is a real estate developer who was convicted in one of South Florida's biggest drug-trafficking cases, the Miami Herald and el Nuevo Herald have learned from court records. It's not clear from the records whether Miami developer Hugo Perera and the other recipients of Rivera's payments ever did any work as part of his consulting firm's contract with PDV USA.

TOP VIDEOS



4/22/22, 4:25 PM
Case 1:22-mc-21372-JAL    Document 1-2    Entered on FLSD Docket 05/03/2022    Page 118 of 178
Biden's friend's tie from Venezuela oil deal to South Florida drug traffickers | Miami Herald



UM Sports Hall of Fame inductee Jay Brophy explains the meaning of the U

Venezuela's U.S. subsidiary only became aware of Rivera's diversion of payments after it sued his company, Interamerican Consulting, in 2020; it is now battling with Rivera and his firm's lawyers over obtaining key evidence from the former politician. PDV USA, based in New York, is seeking to recover the $20 million in payments from Rivera's company in a breach-of-contract suit stemming from their original $50 million agreement signed in 2017. Rivera's firm has filed a counterclaim seeking full payment of the contract.

Rivera, who never registered as a foreign agent with the U.S. government to do consulting work for the Venezuelan firm, has been under scrutiny in a parallel criminal investigation by federal prosecutors in Miami, according to several sources familiar with the probe. But no one, including Rivera, has been charged in connection with his contract with PDV USA.

## Collapse: Disaster in Surfside

What went wrong in Surfside? Listen to our new 12-part investigative podcast

READ MORE

Court records in the PDV USA case, filed in New York federal court, show that Rivera diverted the $13 million in income from his consulting contract to a handful of Miami-area companies owned by or linked to the following three people:

▪ Perera, who is building affordable housing projects in the city's working-class neighborhoods, according to his company's website. Currently living on exclusive Fisher Island, Perera pleaded guilty to cocaine trafficking and tax fraud charges in the mid-1990s in a massive drug-smuggling case against the notorious Cali Cartel, according to federal court records. Perera played a supporting role as a distributor for the cartel in South Florida and was sentenced to eight years in prison, court records show. Herald reporters tried to visit Perera at his business address, 141

Sevilla Ave. in Coral Gables, but his company, PG & Associates, no longer operates there.

▪ Miami-Dade political operative Esther Nuhfer. Over the years, she has provided fundraising, marketing and other services for Rivera's campaigns for Congress and the state Legislature, as well as for other local politicians.

▪ Venezuelan business mogul Raúl Gorrín. He was politically close to the late Venezuelan President Hugo Chávez and is tight with current President Nicolás Maduro and reportedly tried to prevent U.S. sanctions against Venezuela's government and state-run oil company. (The Trump administration late imposed the sanctions.) In late 2018, Gorrín was indicted in a money laundering and foreign corruption case unrelated to the Rivera matter and several of his real estate properties were seized in the Miami area. He lives in Caracas and is considered a fugitive.

There is no indication in the PDV USA court record that Perera, Nuhfer and Gorrín ever did any work to help the former congressman with his consulting project to spruce up the image of Venezuela's U.S. subsidiary. Owned by parent Petróleos de Venezuela, S.A., PDV USA is a holding company for Houston-based Citgo. Citgo refines Venezuelan oil and distributes fuel products in the United States.

## Thank you for supporting local journalism

Your subscription allows us to provide our readers with quality, relevant journalism that makes a difference. We believe a platform for sharing local news is critical to our community – and we're glad you think so, too.

Have questions about your subscription? We're happy to help. Contact us

Rivera and his consulting firm's lawyers, as well as Nuhfer, did not return calls, emails or text messages seeking comment for this story.

Perera's attorney, Simon Ferro, declined to answer a series of Miami Herald and el Nuevo Herald questions. "Mr. Perera doesn't have any comments at this time because of the ongoing legal matters," Ferro said Thursday.

In a Nov. 29, 2017, email filed in the PDV USA case, Rivera asked Perera and Nuhfer to provide their companies' tax identification numbers and thanked them for their "hard work and great contributions" to the public relations effort for the Venezuelan subsidiary.

"This has really been a team effort and the performance by each subcontractor has been truly exceptional," Rivera wrote in the email, before summarizing a series of 13 payments that his company, Interamerican Consulting, made to them in 2017.

Perera's main company, PG & Associates, which develops residential projects in Miami, and his other firm, Krome Agronomics, which sells fertilizer products, received a total of $4.85 million from Rivera's consulting firm as part of his PDV USA contract, court records show.

Nuhfer's Miami business, Communication Solutions, Inc., received a total of $4.5 million from Rivera's firm.

Lastly, a Miami company, Interglobal Yacht Management, LLC, which provided maintenance services for 's Gorrín's yacht, received a total of $3.75 million from Rivera's firm. The president of the company, Joel Brakha, said in a recent deposition that Rivera approached him in 2018 to sign the subcontracting agreement with Interglobal Yacht but he refused to do so. The actual subcontract had been signed by Rivera in 2017, court records show.

"I'm not signing it," Brakha recalled saying to Rivera at their meeting in March 2018. "I think this has nothing do with me."

Brakha said in his February 2022 deposition that the yacht company neither acted as a consultant nor provided any services for Rivera and his Venezuelan client, PDV USA. Brakha said that after talking with Gorrín, he thought the $3.75 million transferred to Interglobal Yacht was from a real estate deal between Rivera and Gorrín and that it was meant to pay for expenses on the Venezuelan businessman's yacht.

Confusion over Rivera's consulting contract with PDV USA has dominated the legal dispute and news media coverage — mainly because of the former congressman's public statements about the agreement.

Ex-Congressman David Rivera earned millions consulting for Venezuela | Miami Herald

Back in May 2020, after being sued, Rivera would not comment on the specifics of his contract or whether he had taken a paycheck to represent a Venezuelan company controlled by the country's socialist government. But in text messages he gave a murky explanation, hinting at a scheme to fund Maduro foes with proceeds from the oil consulting contract.

"All those funds went to the opposition for anti-Maduro protests in the summer of 2017," Rivera wrote in the text messages to the Herald. "I never saw a penny of it. That's all I know." He added that the Trump administration, including the State Department, "were aware of everything."

But lawyers for PDV USA said in their lawsuit that Rivera's statement "defies credulity," saying it would make no sense for Venezuela's president, Maduro, to approve giving millions to Rivera's consulting business to support Venezuelan politicians who oppose his government.

"Mr. Rivera's claims in 2020 regarding the purpose of the [consulting] agreement are entirely inconsistent with Interamerican's two progress reports, which contain numerous representations concerning a consulting project for PDV USA to benefit PDVSA," Venezuela's state-owned oil company, says the lawsuit filed by lawyers Jeffrey Korn and Michael Gottlieb.

Moreover, Venezuelan opposition leader Juan Guaidó emerged two years after Rivera signed his consulting contract with PDV USA. In 2019, the Trump administration recognized him over Maduro as Venezuela's president, and it imposed sanctions against the country and the state-run oil company, PDVSA.

In response, however, lawyers for Rivera's consulting company assert that he was working directly for the PDV USA subsidiary in the United States — not for the Venezuelan government or PDVSA.

"The president of Interamerican, David Rivera, proved to be the perfect person for the consulting role," lawyers Tucker Byrd and Min Cho wrote in their answer to PDV USA's lawsuit.

"As a former U.S. Congressman with more than 20 years of experience in governmental affairs and strategic planning (which includes previously working for the U.S. State Department and serving as an elected official at the state and local levels) Rivera had the experience, expertise, and skills to help [PDV USA's] Citgo

Rivera battles U.S. from Venezuela over oil services contract | Miami Herald

implement a strategic plan to develop an independent identity and to disengage
from its Venezuelan parent."

Rivera, a one-term congressman and former Florida legislator whose career has
been dogged by ethics and campaign-finance violation complaints, once tried to
expel a Venezuelan consul in Miami. He is also a close friend of U.S. Sen. Marco
Rubio, an arch critic of the Maduro administration. Rivera and Rubio, both
Republicans, shared a house in Tallahassee when they were both in the state
Legislature.

Interamerican's lawyers contend that PDV USA is the one that breached the 2017
contract with Rivera's consulting firm. "Interamerican asserts that it provided all the
services required under the agreement, entitling it to retain the $20 million that PDV
USA previously paid to Interamerican, and that PDV USA owes Interamerican the
remaining balance of $30 million," they say in court papers.

But lawyers for PDV USA, take an opposite stand in their lawsuit, saying Rivera and
his consulting firm "performed no meaningful services under the agreement." The
Venezuela U.S. subsidiary is seeking to recover the money it paid to Interamerican in
2017, along with compensatory damages.

This story was originally published April 22, 2022 3:27 PM.



**JAY WEAVER**

🐦 ✉️ 📞 305-376-3446

Jay Weaver writes about federal crime at the crossroads of South Florida and Latin America. Since joining the Miami
Herald in 1999, he's covered the federal courts nonstop, from Elian's custody battle to A-Rod's steroid abuse. He was
part of the Herald team that won the 2001 Pulitzer Prize for breaking news on Elian's seizure by federal agents. He
and three Herald colleagues were 2019 Pulitzer Prize finalists for explanatory reporting for a series on gold smuggling
between South America and Miami.

## Conversation

Your voice matters. Discussions are moderated for civility. Read our guidelines here

Commenting as **Guest**                                              🔔  Log in   Sign up

# Exhibit 12

**2022 FLORIDA PROFIT CORPORATION AMENDED ANNUAL REPORT**

DOCUMENT# P04000112662

**FILED**

**Feb 15, 2022**
**Secretary of State**
**8877153173CC**

**Entity Name:** COMMUNICATION SOLUTIONS, INC.

**Current Principal Place of Business:**

11767 SOUTH DIXIE HWY
SUITE 269
PINECREST, FL 33156

**Current Mailing Address:**

PO BOX 143657
CORAL GABLES, FL 33114-3657 US

**FEI Number:** 11-3724543

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

NUHFER, ESTHER J
11767 SOUTH DIXIE HWY
SUITE 269
PINECREST, FL 33156 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

Electronic Signature of Registered Agent                                                                   Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | PSTD |
| Name | NUHFER, ESTHER J |
| Address | 11767 SOUTH DIXIE HWY SUITE 269 |
| City-State-Zip: | PINECREST FL 33156 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: ESTHER J NUHFER                                    PSTD                        02/15/2022

Electronic Signature of Signing Officer/Director Detail                                                  Date

# Exhibit 13

1/15/2020                                                      Workspace Webmail :: Print

<u>Print</u>  |  <u>Close Window</u>

Subject: **Revised Citgo Contract**
   From: **Esther Nuhfer <esther@commsol.biz>**
   Date: **Tue, Mar 07, 2017 9:15 am**
      To: **"rgorrn@me.com" <rgorrn@me.com>, "hugo@pgandassociates.net" <hugo@pgandassociates.net>**
      Cc: **Rivera for State House <electrivera@comcast.net>**
 Attach: **Citgo Contract.docx**
              **ATT00001.htm**

---

Por favor revise.

|

---

Copyright © 2003-2020. All rights reserved.

PGA0132

## CONTRACT FOR SERVICES

This contract is entered into between the CITGO Petroleum Corporation ("the Client"), 1293 Eldridge Parkway, Houston, Texas 77077, and Interamerican Consulting, Incorporated ("the Firm"), P.O. Box 520633, Miami, Florida 33152.

## TERMS AND RECITALS

Whereas, the Client wishes to retain the services of the Firm in order that the Firm may provide strategic consulting to the Client in connection with its business in the United States; and

Whereas, the Firm wishes to provide such consulting services as the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Firm will provide the Client with consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

    1.    **Term of Agreement**:  This agreement shall become effective on March 10, 2017 and shall remain effective until June 10, 2017.

    2.    **Duties of The Firm**:  It shall be the Firm's duty to provide strategic consulting services to the Client as the Client deems necessary and appropriate.  The Firm will provide the Client with updates regarding the consulting services provided by the Firm.

    3.    **Duties of The Client**:  It shall be the Client's duty to provide the Firm the information necessary to best serve the Client.  It shall also be the Client's duty to timely compensate the Firm for its services in response to invoices provided by the Firm.

    4.    **Compensation**:  The Firm shall receive from the Client via bank wire transfer a $5,000,000.00 initial retainer and $5,000,000.00 every two weeks thereafter for two months, for a total initial payment of $25,000,000.00 by May 10, 2017.  The firm thereafter will receive a $25,000,000.00 payment at the conclusion of the contract on June 10, 2017, for a total compensation of $50,000,000.00 for all consulting services received by the Client from the Firm.

**CITGO Petroleum Corporation**        **Interamerican Consulting, Incorporated**

By:_____        By:   David Rivera

Title:_____        Title:  President

Date:_____        Date:_____

1/15/2020                                    Workspace Webmail :: Print

Print | Close Window

Subject: **Revised Citgo Contract**
  From: **Esther Nuhfer <esther@commsol.biz>**
  Date: **Tue, Mar 07, 2017 9:15 am**
    To: **"rgorrn@me.com" <rgorrn@me.com>, "hugo@pgandassociates.net" <hugo@pgandassociates.net>**
    Cc: **Rivera for State House <electrivera@comcast.net>**
Attach: **Citgo Contract.docx**
        **ATT00001.htm**

Please, review.

I

Copyright © 2003-2020. All rights reserved.

https://email22.godaddy.com/view_print_multi.php?uidArray=7439|INBOX&aEmlPart=0

PGA0132                           1/1

PGA0001



## CONTRACT FOR SERVICES

This contract is entered into between the CITGO Petroleum Corporation ("the Client"), 1293 Eldridge Parkway, Houston, Texas 77077, and Interamerican Consulting, Incorporated ("the Firm"), P.O. Box 520633, Miami, Florida 33152.

## TERMS AND RECITALS

Whereas, the Client wishes to retain the services of the Firm in order that the Firm may provide strategic consulting to the Client in connection with its business in the United States; and

Whereas, the Firm wishes to provide such consulting services as the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Firm will provide the Client with consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

    **1.**   **Term of Agreement:** This agreement shall become effective on March 10, 2017 and shall remain effective until June 10, 2017.

    **2.**   **Duties of The Firm:** It shall be the Firm's duty to provide strategic consulting services to the Client as the Client deems necessary and appropriate. The Firm will provide the Client with updates regarding the consulting services provided by the Firm.

    **3.**   **Duties of The Client:** It shall be the Client's duty to provide the Firm the information necessary to best serve the Client. It shall also be the Client's duty to timely compensate the Firm for its services in response to invoices provided by the Firm.

    **4.**   **Compensation:** The Firm shall receive from the Client via bank wire transfer a $5,000,000.00 initial retainer and $5,000,000.00 every two weeks thereafter for two months, for a total initial payment of $25,000,000.00 by May 10, 2017. The firm thereafter will receive a $25,000,000.00 payment at the conclusion of the contract on June 10, 2017, for a total compensation of $50,000,000.00 for all consulting services received by the Client from the Firm.

**CITGO Petroleum Corporation**             **Interamerican Consulting, Incorporated**

By:_____      By:   **David Rivera**

Title:_____      Title:  President

Date:_____      Date:_____

PGA0133

PGA0001



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK            )
                             )            ss:
COUNTY of NEW YORK           )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, "PGA0001-PGA0170_EN"- originally written in Spanish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 3/3/2022                              Sworn to and signed before ME
                                             This 3rd day of March, 2022

_____

Heather Cameron                              Notary Public
Projects Manager
Consortra Translations



**JAMES G MAMERA**
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your
legal
translation
partner

---

New York, NY  |  Washington DC  |  Houston, TX  |  San Francisco, CA  |  Hong Kong

# Exhibit 14

Case 1:22-mc-21372-JAL   Document 1-2   Entered on FLSD Docket 05/03/2022   Page 132 of 178

Print  |  Close Window

Subject: **Final Citgo Contract**
  From: **Esther Nuhfer <esther@commsol.biz>**
  Date: **Tue, Mar 07, 2017 5:52 pm**
    To: **"rgorrn@me.com" <rgorrn@me.com>**
   Cc: **Rivera for State House <electrivera@comcast.net>, "hugo@pgandassociates.net"
        <hugo@pgandassociates.net>**
Attach: **Citgo Contract.docx**

---

Hola, Adjunto esta el contrato final.

Suerte!


Best Regards,

Esther J. Nuhfer
Communication Solutions
esther@commsol.biz
Cell: 786.402.4822

For we live by faith, not by sight.
2 Corinthians 5:7

---

Copyright © 2003-2020. All rights reserved.

PGA0134

## CONTRACT FOR SERVICES

This contract is entered into between the CITGO Petroleum Corporation ("the Client"), 1293 Eldridge Parkway, Houston, Texas 77077, and Interamerican Consulting, Incorporated ("the Firm"), P.O. Box 520633, Miami, Florida 33152.

## TERMS AND RECITALS

Whereas, the Client wishes to retain the services of the Firm in order that the Firm may provide strategic consulting to the Client in connection with its business in the United States; and

Whereas, the Firm wishes to provide such strategic consulting services as the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Firm will provide the Client with strategic consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

1.     **Term of Agreement:** This agreement shall become effective on March 10, 2017 and shall remain effective until June 10, 2017.

2.     **Duties of The Firm:** It shall be the Firm's duty to provide strategic consulting services to the Client as the Client deems necessary and appropriate. The Firm will provide the Client with updates regarding the strategic consulting services provided by the Firm.

3.     **Duties of The Client:** It shall be the Client's duty to provide the Firm the information necessary to best serve the Client. It shall also be the Client's duty to timely compensate the Firm for its services in response to invoices provided by the Firm.

4.     **Compensation:** The Firm shall receive from the Client via bank wire transfer a $5,000,000.00 initial retainer and $5,000,000.00 every two weeks thereafter for two months, for a total initial payment of $25,000,000.00 (US) by May 10, 2017. The firm thereafter will receive from the Client via wire bank transfer a $25,000,000.00 payment at the conclusion of the contract on June 10, 2017, for a total compensation of $50,000,000.00 (US) for all strategic consulting services received by the Client from the Firm.

**CITGO Petroleum Corporation**          **Interamerican Consulting, Incorporated**

By:_____          By:     David Rivera

Title:_____          Title:   President

Date:_____          Date:_____

PGA0135

1/15/2020                                        Workspace Webmail :: Print

Print | Close Window

Subject: Final Citgo Contract
  From: Esther Nuhfer <esther@commsol.biz>
  Date: Tue, Mar 07, 2017 5:52 pm
    To: "rgorm@me.com" <rgorm@me.com>
    Cc: Rivera for State House <electrivera@comcast.net>, "hugo@pgandassociates.net"
        <hugo@pgandassociates.net>
Attach: Citgo Contract.docx

Hi, Attached is the final contract.

Good luck!

Best Regards,

Esther J. Nuhfer
Communication Solutions
esther@commsol.biz
Cell: 786.402.4822

For we live by faith, not by sight.
2 Corinthians 5:7

Copyright © 2003-2020. All rights reserved.

PGA0134

PGA0001



## CONTRACT FOR SERVICES

This contract is entered into between the CITGO Petroleum Corporation ("the Client"), 1293 Eldridge Parkway, Houston, Texas 77077, and Interamerican Consulting, Incorporated ("the Firm"), P.O. Box 520633, Miami, Florida 33152.

## TERMS AND RECITALS

Whereas, the Client wishes to retain the services of the Firm in order that the Firm may provide strategic consulting to the Client in connection with its business in the United States; and

Whereas, the Firm wishes to provide such strategic consulting services as the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Firm will provide the Client with strategic consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

1.      **Term of Agreement:** This agreement shall become effective on March 10, 2017 and shall remain effective until June 10, 2017.

2.      **Duties of The Firm:** It shall be the Firm's duty to provide strategic consulting services to the Client as the Client deems necessary and appropriate. The Firm will provide the Client with updates regarding the strategic consulting services provided by the Firm.

3.      **Duties of The Client:** It shall be the Client's duty to provide the Firm the information necessary to best serve the Client. It shall also be the Client's duty to timely compensate the Firm for its services in response to invoices provided by the Firm.

4.      **Compensation:** The Firm shall receive from the Client via bank wire transfer a $5,000,000.00 initial retainer and $5,000,000.00 every two weeks thereafter for two months, for a total initial payment of $25,000,000.00 (US) by May 10, 2017. The firm thereafter will receive from the Client via wire bank transfer a $25,000,000.00 payment at the conclusion of the contract on June 10, 2017, for a total compensation of $50,000,000.00 (US) for all strategic consulting services received by the Client from the Firm.

**CITGO Petroleum Corporation**          **Interamerican Consulting, Incorporated**

_____          _____

By:_____             By:    David Rivera

Title:_____            Title:  President

Date:_____             Date:_____

PGA0135

PGA0001



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK          )
                           )                    ss:
COUNTY of NEW YORK         )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, "PGA0001-PGA0170_EN"- originally written in Spanish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 3/3/2022

_____
Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 3rd day of March, 2022

Notary Public



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your legal translation partner

# Exhibit 15

## CONTRACT FOR SERVICES

This contract is entered into between Interamerican Consulting, Incorporated ("the Contractor"), located at 10925 N.W. 43rd Lane, Miami, Florida 33178, and Communication Solutions ("the Subcontractor), located at 770 Ponce de Leon Blvd., Suite 302, Coral Gables, Florida 33134, in fulfillment of the Contractor's consulting agreement with PDV USA (the Client), located at 65 East 55th Street, Floor 21, New York, New York, 10022.

## TERMS AND RECITALS

Whereas, the Contractor wishes to retain the services of the Subcontractor in order that the Contractor may provide Strategic Consulting to the Client in connection with the Client's business in the United States; and

Whereas, the Subcontractor wishes to provide Marketing Strategic Consulting services as the Contractor and the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Subcontractor will provide the Contractor and the Client with Marketing Strategic Consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

1. **Term of Agreement**: This agreement shall become effective on March 21, 2017, 2017 and shall remain effective until June 21, 2017.

2. **Duties of The Contractor**: It shall be the Contractor's duty to provide Strategic Consulting services to the Client as it deems necessary and appropriate.

3. **Duties of The Subcontractor**: It shall be the Subcontractor's duty to provide the Contractor and the Client with Marketing Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client.

4. **Compensation**: The Subcontractor shall receive from the Contractor 25 percent of net fees received from the Client in fulfillment of the Contractor's agreement with the Client.

**Interamerican Consulting, Incorporated**          **Communication Solutions**

By:  David Rivera                                  By:  Esther Nuhfer

Title:  President                                  Title:  President

Date:  3-20-2017                                   Date:  3 | 20 | 2017

IYM SUPPLEMENTAL RESPONSE  000290

# Exhibit 16

1/14/2020                                                                                Workspace Webmail :. Print

⑤

Print   |   Close Window

Subject: Fwd: CONSULTING AGRREMENT FORM W-9
   From: David Rivera <rivera2002@comcast.net>
   Date: Tue, Mar 21, 2017 5:07 pm
     To: Esther Nuhfer <esther@commsol.biz>, rgorrn@me.com, hugo@pgandassociates.net
 Attach: CONSULTING AGREEMENT.pdf
         FORM W-9.pdf

Creo que estamos casi listos. Ahora solo estoy esperando el primer "retainer" para llamar al
Congresista Sessions y confirmar la cita en Dallas para este fin de semana ojala. Necesitamos
confirmar los calendarios y disposicion de la canciller y el Sr. Borges en algun momento.

**From:** "GUILLERMO BLANCO" <blancogga@pdvsa.com>
**To:** rivera2002@comcast.net
**Cc:** "PIO GONZALEZ" <gonzalezpu@pdvsa.com>, jperei1@citgo.com
**Sent:** Tuesday, March 21, 2017 7:23:12 PM
**Subject:** CONSULTING AGRREMENT FORM W-9

Señor David Rivera. Anexo el contrato que hemos suscrito de asesoria. A partir de este momento todos los informes
deben ser remitidos al Sr. Pio González.

Copyright © 2003-2020. All rights reserved.

## CONSULTING AGREEMENT

This Agreement is made and entered into as of March 21st, 2017, by and between PDV USA, Inc., a Delaware company ("PDV USA"), located at 65 East 55th Street, Floor 21, New York, New York, 10022, and Interamerican Consulting, Incorporated("CONSULTANT"), located at 10925 N.W. 43rd Lane, Miami, Florida, 33178.

WHEREAS, PDV USAdesires the "Services," as hereinafter defined, of CONSULTANT and CONSULTANT has all the experience, expertise, and skills to perform the same and has expressed its interest in entering into this Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     PDV USA hereby engages CONSULTANT to perform the Services during the term of this Agreement, and CONSULTANT accepts such engagement, upon the terms and conditions set forth herein.

2.     **Term.**The term of this Agreement shall commence on March 21st, 2017 and shall end on June 21st, 2017, unless sooner terminated as provided herein.  Either party may terminate this Agreement at any time, with or without cause, upon five calendar days prior written notice to the other party.  Such termination shall not apply to Services or Deliverables already accepted by CONSULTANT.

3.     **Compensation and Services.**During the term of this Agreement, PDV USA shall pay CONSULTANT as compensation for the completion of the Services, to PDV USA's sole satisfaction, in accordance with the attached Exhibit A, which, with any addendums or schedules thereto, shall be integrated into and made a part of this Agreement  CONSULTANT must include with the invoiceall supporting documentation, and set out adequate and complete details of the Services rendered. CONSULTANT shall be solely responsible for, and shall report, all payments received from PDV USA to the appropriate federal, state and local taxing authorities.

4.     **Personnel.**During the term of this Agreement, CONSULTANT shall devote all of the time of CONSULTANT's members and employees (hereinafter referred to as "Personnel") that is reasonable and necessary to perform independent consulting services (the "Services") for PDV USA which shall include, but are not limited to, the Services set forth in Exhibit A which with any addendums or schedules thereto, shall be integrated into and made a part of this Agreement. CONSULTANT shall make its Personnel available to perform the Services upon reasonable request by PDV USA, and the Services shall be rendered at such times as shall be mutually determined and shall be coordinated through the PDV USA Authorized Representative. This Agreement is entered into by PDV USA in reliance upon CONSULTANT and the qualifications of the Personnel. With the exception of clerical, bookkeeping, and secretarial work, CONSULTANT and its Personnel shall perform the Services and may not be substituted without the prior consent of PDV USA.

5.     **Independent Contractor.**  In the performance of the Services, CONSULTANT and its Personnel shall act solely as an independent contractor and nothing herein shall at any time be construed to create the relationship of employer and employee, partnership, principal and agent, or joint venture as between PDV USA and CONSULTANT or PDV USA and CONSULTANT's Personnel. CONSULTANT and its Personnel shall have no right or authority, and shall not attempt, to enter into any contract, commitment, or agreement, or incur any debt or liability, of any nature, in the name of or on behalf of PDV USA, its subsidiaries, or affiliates

Page 1

## CONSULTING AGREEMENT

6.    **Confidential Information.**CONSULTANT and its Personnel shall hold in strictest confidence any information, data and material which is related to PDV USA's business or is designated as proprietary and confidential or is otherwise provided or made available by PDV USA in connection with the Services performed hereunder ("Confidential Information") CONSULTANT and its Personnel shall not, without PDV USA's prior written consent, disclose to others any Confidential Information disclosed to CONSULTANT and its Personnel by PDV USA or any Confidential Information which comes into the possession of CONSULTANT and its Personnel as a result of this Agreement. CONSULTANT shall not to make use of the Confidential Information other than for the performance of the Services under this Agreement.  Confidential information includes, but is not limited to, information related to research, development, pricing, trade secrets, customer lists, salaries, technical data, procedures, or business affairs of PDV USA, its subsidiaries and affiliated companies. The Confidential Information shall remain the property of PDV USA and PDV USA may request the return of the Confidential Information at any time upon written request to CONSULTANT. The obligations in this section shall apply to any information, data and material that constitutes"Confidential Information" as defined hereinwhich was provided or made available to CONSULTANT and its Personnel prior to the effective date of this Agreement.

7.    **Warranty.**CONSULTANT hereby represents and warrants to PDV USA, with the intention that PDV USA rely thereon in entering into this Agreement, that: (a) CONSULTANT has the present capacity and will take all steps necessary to maintain the capacity to perform the Services hereunder; (b) each of CONSULTANT's Personnel assigned to perform Services hereunder has the proper skill, training, and background so as to be able to perform such Services in a competent and professional manner; (c) CONSULTANT and each of its Personnel are properly registered and licensed to perform the Services hereunder and shall maintain any such registration and licenses during the term of this Agreement; (d) in connection with performing the Services, CONSULTANT and its Personnel will not violate any applicable laws or regulations of any jurisdiction; (e) no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction; and (f) the execution and performance by CONSULTANT of this Agreement does not and will not violate or conflict with or result in a breach of any of the terms, conditions, duties, or obligations to which CONSULTANT is bound to any third party or any other rights of any third party.

8.    **PDV USA Rules.**CONSULTANT and its Personnel shall comply with any policy and procedures of PDV USA in the event they apply to the performance of the Services. CONSULTANT shall be notified by PDV USA when such compliance is required.

9    **Personnel Expertise**.   CONSULTANT warranties that its Personnel has the experience, expertise, and skills to perform the Services

10.    **Indemnity.**CONSULTANT shall protect, defend (at CONSULTANT's expense and by counsel satisfactory to PDV USA), indemnify, save and hold harmless PDV USA, its subsidiaries and affiliates and its and their agents, directors, officers, shareholders, employees, representatives, successors, and assigns, from and against any and all breaches of this Agreement by CONSULTANT, its Personnel, direct or indirect costs, damages, losses, obligations, lawsuits, claims, liabilities, fines, or penalties (whether or not ultimately defeated) in connection with, arising out of, relating to, incidental to, or resulting from any act or omission or any alleged act or omission by CONSULTANT or its Personnel, including in each instance, but not limited to, all costs and expenses of investigation and defending any claim at any time arising and any final judgments, compromises, settlements, court costs and attorneys' fees, whether foreseen or unforeseen (including all such expenses, court costs, and attorneys' fees in the enforcement of PDV USA's rights hereunder)

PGA0056

⑤

## CONSULTING AGREEMENT

incurred by PDV USA directly or indirectly.

11. **Insurance.** In the event PDV USA considers appropriate and applicable, and after proper notification to CONSULTAT, CONSULTANT shall be responsible for providing the following insurance coverages:

a. Workers' compensation and employer's liability insurance covering all of CONSULTANT's Personnel in accordance with the statutory requirements of the state of hire in which the Services are to be performed. CONSULTANT's employers' liability insurance covering its Personnel shall have a limit of five hundred thousand dollars ($500,000) per occurrence.

b. Comprehensive general liability insurance with contractual liability providing for a combined single limit of five hundred thousand dollars ($500,000) for personal injury, death or property damage resulting from each occurrence and covering all of CONSULTANT's operations involved in the performance of the Services hereunder. The aforesaid insurance shall cover, but not be limited to, loss of or damage to PDV USA's, and to CONSULTANT's, property, members, and employees.

c. Business automobile liability insurance covering owned, non-owned and hired motor vehicles, with combined single limits of at least five hundred thousand dollars ($500,000) for personal injury, death, or property damage, resulting from each occurrence.

In addition, PDV USA shall be named as an 'additional insured' with respect to comprehensive general liability coverage and automobile liability insurance coverage. Each respective insurance carrier shall waive subrogation rights with respect to PDV USA. CONSULTANT shall provide PDV USA with certificates evidencing the required coverage as soon as possible but in no event later than ten (10) days after this Agreement is executed. The insurance limits provided hereunder are those minimum limits to be provided by CONSULTANT and do not limit the liabilities for which CONSULTANT is responsible under this Agreement

12. **Title to Work Product.** All work performed hereunder, and any and all materials and products developed or prepared for PDV USA by CONSULTANT, including any Deliverables, are the property of PDV USA and all title and interest therein shall vest in PDV USA and shall be deemed to be made in the course of the Services rendered hereunder. To the extent that title to any such works may not, by operation of law, vest in PDV USA, all rights, title and interest therein are hereby irrevocably assigned to PDV USA. All such materials and products shall belong exclusively to PDV USA; with PDV USA having the right to obtain and hold in its own name, copyrights, patents, registrations or such other protection as may be appropriate to the subject matter thereof. PDV USA may use any of the work, materials, and products, Services or Deliverables in its sole discretion without additional compensation to CONSULTANT. CONSULTANT shall give PDV USA and any person designated by PDV USA reasonable assistance, at PDV USA's expense, required to perfect the rights defined in this Paragraph. Unless otherwise requested by PDV USA, upon completion of the Services to be performed hereunder, CONSULTANT shall immediately turn over to PDV USA all materials and products developed pursuant hereto.

13. **Audit.** PDV USA, its Accountant, Corporate Auditor and/or any third person representing PDV USA, shall have the right to inspect and/or audit, during the CONSULTANT's normal business hours, the books, records, internal controls and procedures and other information with respect to (a) CONSULTANT's performance of its obligations under this Agreement, and (b) information used by the CONSULTANT in determining the amounts payable by PDV USA under this Agreement. PDV USA shall provide reasonable notice to CONSULTANT of its plan to audit. CONSULTANT shall

Page 3

## CONSULTING AGREEMENT

retain all such records for a period of two years following the last day of each calendar year, in an orderly fashion, to facilitate the audit process.

14. **Authorized Representative and Notices**.  Any notice hereunder shall be in writing and shall be effective when delivered by email, personally or when deposited in the mail, postage prepaid, registered or certified and addressed as follows:

    If to CONSULTANT:
        Interamerican Consulting, Incorporated
        10925 N.W. 43rd Lane
        Miami, Florida 33178
        Attention:  David Rivera

    If to PDV USA:
        Mr. Pío González
        Edificio Petróleos de Venezuela, Torre Este,
        La Campina, Caracas – Venezuela 1060
        Email: gonzalezpu@pdvsa.com
        Phone Number: +582127083700

15. **Publicity**.  CONSULTANT shall not issue a press release regarding this Agreement or the Services provided or use PDV USA's or its affiliates' names in any advertising or publicity, without PDV USA's prior written consent.

16. **Choice of Law and Venue:** This Agreement shall be deemed to be made under, and shall be construed in accordance with, the laws of the State of New York (without reference to choice of law doctrine). The parties irrevocably submit to the exclusive jurisdiction of the State of New York for purposes of any suit, action or proceedings relating to this Agreement.

17. **Compliance With Laws.**  To the extent applicable, CONSULTANT shall comply with all federal, state and local laws, regulations and ordinances.

18. **Assignment and Subcontracting.** This Agreement is entered into by PDV USA in reliance upon the personal qualifications of CONSULTANT's Personnel and, therefore, CONSULTANT shall not assign this Agreement voluntarily, involuntarily, or by operation of law without the express written consent of PDV USA.  CONSULTANT may not subcontract any portion of the Services without the prior written consent of the PDV USA Authorized Representative.

19. **Miscellaneous**.  No waiver of any provision of this Agreement, or a breach hereof, shall be effective unless it is in writing and signed by both parties.  No waiver of a breach of this Agreement (whether express or implied) shall constitute a waiver of a subsequent breach.  All provisions of this Agreement are severable, and the unenforceability or invalidity of any of them shall not affect the enforceability or validity of the remaining provisions of this Agreement.  Any provision of this Agreement which by the nature of its terms would survive any termination or expiration of this Agreementshall continue to apply to the parties and remain in full force and effect.The headings in this Agreement are inserted for convenience only and shall not be used in the interpretation hereof.  Both parties have reviewed, and have had an opportunity for comment upon, this Agreement.  Any rule or principle of contractual construction that would otherwise require any aspect of this Agreement to be interpreted against the party primarily responsible for

Page 4

## CONSULTING AGREEMENT

its drafting shall not be employed in the interpretation hereof.This Agreement shall not be modified, altered, amended, or revoked except in writing duly executed by the parties

20.    **Exhibits and Entirety.**This Agreement contains all agreements of any kind or nature (oral or written) between the parties and all prior or contemporaneous promises, representations, agreements, or understandings are expressly merged herein and superseded hereby.  Any and all additional and different terms contained in CONSULTANT's proposals are herein rejected.  This Agreement shall include the following exhibits ("Exhibits") attached hereto and incorporated herein by reference:

Exhibit A    Scope of Services and Deliverables
Exhibit B    Compensation and Payment Schedule

This Consulting Agreement and the Exhibits are collectively referred to as the "Contract Documents".  To the extent of any inconsistency or conflicting terms and/or conditions between this Agreement and any of the Exhibits, this Agreement shall govern and control.  The Exhibits will have the same priority in the event of an irreconcilable conflict in the order in which they are listed above.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first shown above.

PDV USA, Inc.                                        Interamerican Consulting

By:                                                  By:

Name:    **GUILLERMO BLANCO**                         Name:    **DAVID RIVERA**

Title:    **President**                               Title:    **President**

Date:    **March 21st, 2017**                         Date:    **March 21st, 2017**

Page 5



**CONSULTING AGREEMENT**

**EXHIBIT A**
of
Consulting Agreementby and Between
PDV USA, Incand
Interamerican Consulting, Incorporated
March 21st, 2017

<u>SCOPE OF SERVICES AND DELIVERABLES</u>

The **Services** in general shall include, but not limited to:

It shall be the CONSULTANT's duty to provide strategic consulting services to the CLIENT as the CLIENT deems necessary and appropriate.

CONSULTANT will provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements.

CONSULTANT will develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders.

CONSULTANT will support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and standing of CLIENT.

CONSULTANT will identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials.

Consultant Deliverables are:

The CONSULTANT will provide the CLIENT with updates regarding the strategic consulting services provided by the CONSULTANT, and include with the invoice all supporting documentation, and set out adequate and complete details of the Services rendered.

CONSULTANT shall provide CLIENT with a bi-weekly report detailing the activities that it has carried out during that period to achieve the stated goals and purposes of the Agreement as well as a final report integrating all work product including recommendations for monitoring and following-up on the strategies implemented.

PGA0060

**CONSULTING AGREEMENT**

**EXHIBIT B**
of
Consulting Agreement by and Between
PDV USA, Incand
Interamerican Consulting, Incorporated
March 21st, 2017

<u>COMPENSATION AND PAYMENT SCHEDULE</u>

CONSULTANT agrees to accept and PDV USA agrees to pay for the complete, satisfactory and timely performance of the Services in strict accordance with all requirements contained in this Agreement. The total compensation for the Services provided by CONSULTANT, as per the terms and conditions herein provided, is U.S. Dollars 50,000,000.00.

<u>PAYMENT SCHEDULE:</u>

Initial Payment Installment for US$ 5,000,000.00 on March 21st, 2017

Consecutive Payment Installments for US$ 5,000,000.00 every two weeks starting on April 4th, 2017 until reaching the total amount of US$ 25,000,000.00 by May 16th, 2017

Final Payment Installment for US$ 25,000,000.00 before June 15th, 2017.

<u>INVOICING:</u>

Consultant shall submit an invoice for the Service completed and accepted, (as approved by the PDV USA Representative indicated in Section 14 of the Consulting Agreement), in triplicate, to the address shown below. The invoice shall reference the Consulting Agreement Number, PDV USAauthorized personnel responsible for accepting the services provided, and banking instructions.

Invoices shall be submitted by email to:

Mr. Pío González
Email: gonzalezpu@pdvsa.com
PhoneNumber: +582127083700

PGA0061

⑤

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give Form to the<br>requester. Do not<br>send to the IRS. |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Interamerican Consulting, Incorporated

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☑ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)

10925 N.W. 43rd Lane

**6** City, state, and ZIP code

Miami, Florida 33178

Requester's name and address (optional)

**7** List account number(s) here (optional)

Print or type. See Specific Instructions on page 2.

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

__ __ __ - __ __ - __ __ __ __

or

Employer identification number

__ __ __ __ - __ 9 9 8 3

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

| Sign Here | Signature of U.S. person ▶ | _[signature]_ | Date ▶ 3-21-17 |

### General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at www.irs.gov/fw9.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued), and

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting? on page 2 for further information.

Cat. No. 10231X                                                                 Form **W-9** (Rev. 12-2014)

1/14/2020                                      Workspace Webmail ;; Print                    

Print | Close Window

Subject: Fwd: CONSULTING AGRREMENT FORM W-9
   From: David Rivera <rivera2002@comcast.net>
   Date: Tue, Mar 21, 2017 5:07 pm
      To: Esther Nuhfer <esther@comn        Copyright © 2003-2020. All rights reserved.    s.net
Attach: CONSULTING AGREEMENT.p ...
           FORM W-9.pdf

I think we're almost ready. Now I'm just waiting for the first 'retainer' to call Congressman Sessions and
confirm the appointment in Dallas, hopefully for this weekend. We need to finalize the schedules and
disposition of the chancellor and Mr. Borges at some point.

From: "GUILLERMO BLANCO" <blancogga@pdvsa.com>
To: rivera2002@comcast.net
Cc: "PIO GONZALEZ" <gonzalezpu@pdvsa.com>, jperei1@citgo.com
Sent: Tuesday, March 21, 2017 7:23:12 PM
Subject: CONSULTING AGRREMENT FORM W-9

Mr. David Rivera, I am attaching the consulting contract that we have signed. From this moment all
reports must be sent to Mr. Pio González.

Copyright © 2003-2020. All rights reserved.

PGA0001



# CONSULTING AGREEMENT

This Agreement is made and entered into as of March 21st, 2017, by and between PDV USA, Inc., a Delaware company ("PDV USA"), located at 65 East 55th Street, Floor 21, New York, New York, 10022, and Interamerican Consulting, Incorporated("CONSULTANT"), located at 10925 N.W. 43rd Lane, Miami, Florida, 33178.

WHEREAS, PDV USAdesires the "Services," as hereinafter defined, of CONSULTANT and CONSULTANT has all the experience, expertise, and skills to perform the same and has expressed its interest in entering into this Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  PDV USA hereby engages CONSULTANT to perform the Services during the term of this Agreement, and CONSULTANT accepts such engagement, upon the terms and conditions set forth herein.

2.  **Term.**The term of this Agreement shall commence on March 21st, 2017 and shall end on June 21st, 2017, unless sooner terminated as provided herein. Either party may terminate this Agreement at any time, with or without cause, upon five calendar days prior written notice to the other party. Such termination shall not apply to Services or Deliverables already accepted by CONSULTANT.

3.  **Compensation and Services.**During the term of this Agreement, PDV USA shall pay CONSULTANT as compensation for the completion of the Services, to PDV USA's sole satisfaction, in accordance with the attached Exhibit A, which, with any addendums or schedules thereto, shall be integrated into and made a part of this Agreement  CONSULTANT must include with the invoiceall supporting documentation, and set out adequate and complete details of the Services rendered. CONSULTANT shall be solely responsible for, and shall report, all payments received from PDV USA to the appropriate federal, state and local taxing authorities.

4.  **Personnel.**During the term of this Agreement, CONSULTANT shall devote all of the time of CONSULTANT's members and employees (hereinafter referred to as "Personnel") that is reasonable and necessary to perform independent consulting services (the "Services") for PDV USA which shall include, but are not limited to, the Services set forth in Exhibit A which with any addendums or schedules thereto, shall be integrated into and made a part of this Agreement. CONSULTANT shall make its Personnel available to perform the Services upon reasonable request by PDV USA, and the Services shall be rendered at such times as shall be mutually determined and shall be coordinated through the PDV USA Authorized Representative. This Agreement is entered into by PDV USA in reliance upon CONSULTANT and the qualifications of the Personnel. With the exception of clerical, bookkeeping, and secretarial work, CONSULTANT and its Personnel shall perform the Services and may not be substituted without the prior consent of PDV USA.

5.  **Independent Contractor.** In the performance of the Services, CONSULTANT and its Personnel shall act solely as an independent contractor and nothing herein shall at any time be construed to create the relationship of employer and employee, partnership, principal and agent, or joint venture as between PDV USA and CONSULTANT or PDV USA and CONSULTANT's Personnel. CONSULTANT and its Personnel shall have no right or authority, and shall not attempt, to enter into any contract, commitment, or agreement, or incur any debt or liability, of any nature, in the name of or on behalf of PDV USA, its subsidiaries, or affiliates

Page 1

PGA0055



## CONSULTING AGREEMENT

6. **Confidential Information.**CONSULTANT and its Personnel shall hold in strictest confidence any information, data and material which is related to PDV USA's business or is designated as proprietary and confidential or is otherwise provided or made available by PDV USA in connection with the Services performed hereunder ("Confidential Information") CONSULTANT and its Personnel shall not, without PDV USA's prior written consent, disclose to others any Confidential Information disclosed to CONSULTANT and its Personnel by PDV USA or any Confidential Information which comes into the possession of CONSULTANT and its Personnel as a result of this Agreement. CONSULTANT shall not to make use of the Confidential Information other than for the performance of the Services under this Agreement. Confidential information includes, but is not limited to, information related to research, development, pricing, trade secrets, customer lists, salaries, technical data, procedures, or business affairs of PDV USA, its subsidiaries and affiliated companies. The Confidential Information shall remain the property of PDV USA and PDV USA may request the return of the Confidential Information at any time upon written request to CONSULTANT. The obligations in this section shall apply to any information, data and material that constitutes"Confidential Information" as defined hereinwhich was provided or made available to CONSULTANT and its Personnel prior to the effective date of this Agreement.

7. **Warranty.**CONSULTANT hereby represents and warrants to PDV USA, with the intention that PDV USA rely thereon in entering into this Agreement, that: (a) CONSULTANT has the present capacity and will take all steps necessary to maintain the capacity to perform the Services hereunder; (b) each of CONSULTANT's Personnel assigned to perform Services hereunder has the proper skill, training, and background so as to be able to perform such Services in a competent and professional manner; (c) CONSULTANT and each of its Personnel are properly registered and licensed to perform the Services hereunder and shall maintain any such registration and licenses during the term of this Agreement; (d) in connection with performing the Services, CONSULTANT and its Personnel will not violate any applicable laws or regulations of any jurisdiction; (e) no portion of any payment to CONSULTANT by PDV USA pursuant to this Agreement shall be used as a bribe, kickback, rebate, illegal political contribution, or in violation of applicable foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction; and (f) the execution and performance by CONSULTANT of this Agreement does not and will not violate or conflict with or result in a breach of any of the terms, conditions, duties, or obligations to which CONSULTANT is bound to any third party or any other rights of any third party.

8. **PDV USA Rules.**CONSULTANT and its Personnel shall comply with any policy and procedures of PDV USA in the event they apply to the performance of the Services. CONSULTANT shall be notified by PDV USA when such compliance is required.

9. **Personnel Expertise.**   CONSULTANT warranties that its Personnel has the experience, expertise, and skills to perform the Services

10. **Indemnity.**CONSULTANT shall protect, defend (at CONSULTANT's expense and by counsel satisfactory to PDV USA), indemnify, save and hold harmless PDV USA, its subsidiaries and affiliates and its and their agents, directors, officers, shareholders, employees, representatives, successors, and assigns, from and against any and all breaches of this Agreement by CONSULTANT, its Personnel, direct or indirect costs, damages, losses, obligations, lawsuits, claims, liabilities, fines, or penalties (whether or not ultimately defeated) in connection with, arising out of, relating to, incidental to, or resulting from any act or omission or any alleged act or omission by CONSULTANT or its Personnel, including in each instance, but not limited to, all costs and expenses of investigation and defending any claim at any time arising and any final judgments, compromises, settlements, court costs and attorneys' fees, whether foreseen or unforeseen (including all such expenses, court costs, and attorneys' fees in the enforcement of PDV USA's rights hereunder)

Page 2

PGA0056

PGA0001



## CONSULTING AGREEMENT

incurred by PDV USA directly or indirectly.

11.   **Insurance.**In the event PDV USA considers appropriate and applicable, and after proper notification to CONSULTAT, CONSULTANT shall be responsible for providing the following insurance coverages:

    a.   Workers' compensation and employer's liability insurance covering all of CONSULTANT's Personnel in accordance with the statutory requirements of the state of hire in which the Services are to be performed.  CONSULTANT's employers' liability insurance covering its Personnel shall have a limit of <u>five hundred thousand dollars ($500,000)</u> per occurrence.

    b.   Comprehensive general liability insurance with contractual liability providing for a combined single limit of <u>five hundred thousand dollars ($500,000)</u> for personal injury, death or property damage resulting from each occurrence and covering all of CONSULTANT's operations involved in the performance of the Services hereunder.  The aforesaid insurance shall cover, but not be limited to, loss of or damage to PDV USA's, and to CONSULTANT's, property, members, and employees.

    c.   Business automobile liability insurance covering owned, non-owned and hired motor vehicles, with combined single limits of at least <u>five hundred thousand dollars ($500,000)</u> for personal injury, death, or property damage, resulting from each occurrence.

In addition, PDV USA shall be named as an 'additional insured' with respect to comprehensive general liability coverage and automobile liability insurance coverage. Each respective insurance carrier shall waive subrogation rights with respect to PDV USA.  CONSULTANT shall provide PDV USA with certificates evidencing the required coverage as soon as possible but in no event later than ten (10) days after this Agreement is executed.  The insurance limits provided hereunder are those minimum limits to be provided by CONSULTANT and do not limit the liabilities for which CONSULTANT is responsible under this Agreement

12.   **Title to Work Product.**All work performed hereunder, and any and all materials and products developed or prepared for PDV USA by CONSULTANT, including any Deliverables, are the property of PDV USA and all title and interest therein shall vest in PDV USA and shall be deemed to be made in the course of the Services rendered hereunder.  To the extent that title to any such works may not, by operation of law, vest in PDV USA, all rights, title and interest therein are hereby irrevocably assigned to PDV USA.  All such materials and products shall belong exclusively to PDV USA; with PDV USA having the right to obtain and hold in its own name, copyrights, patents, registrations or such other protection as may be appropriate to the subject matter thereof.  PDV USA may use any of the work, materials, and products, Services or Deliverables in its sole discretion without additional compensation to CONSULTANT.  CONSULTANT shall give PDV USA and any person designated by PDV USA reasonable assistance, at PDV USA's expense, required to perfect the rights defined in this Paragraph.  Unless otherwise requested by PDV USA, upon completion of the Services to be performed hereunder, CONSULTANT shall immediately turn over to PDV USA all materials and products developed pursuant hereto.

13.   **Audit.**PDV USA, its Accountant, Corporate Auditor and/or any third person representing PDV USA, shall have the right to inspect and/or audit, during the CONSULTANT's normal business hours, the books, records, internal controls and procedures and other information with respect to (a) CONSULTANT's performance of its obligations under this Agreement, and (b) information used by the CONSULTANT in determining the amounts payable by PDV USA under this Agreement.  PDV USA shall provide reasonable notice to CONSULTANT of its plan to audit.  CONSULTANT shall

Page 3



## CONSULTING AGREEMENT

retain all such records for a period of two years following the last day of each calendar year, in an orderly fashion, to facilitate the audit process.

14. **Authorized Representative and Notices.**  Any notice hereunder shall be in writing and shall be effective when delivered by email, personally or when deposited in the mail, postage prepaid, registered or certified and addressed as follows:

> If to CONSULTANT:
> Interamerican Consulting, Incorporated
> 10925 N.W. 43rd Lane
> Miami, Florida 33178
> Attention: David Rivera

> If to PDV USA:
> Mr. Pío González
> Edificio Petróleos de Venezuela, Torre Este,
> La Campina, Caracas – Venezuela 1060
> Email: gonzalezpu@pdvsa.com
> Phone Number: +582127083700

15. **Publicity.**  CONSULTANT shall not issue a press release regarding this Agreement or the Services provided or use PDV USA's or its affiliates' names in any advertising or publicity, without PDV USA's prior written consent.

16. **Choice of Law and Venue;**This Agreement shall be deemed to be made under, and shall be construed in accordance with, the laws of the State of New York (without reference to choice of law doctrine). The parties irrevocably submit to the exclusive jurisdiction of the State of New York for purposes of any suit, action or proceedings relating to this Agreement.

17. **Compliance With Laws,**  To the extent applicable, CONSULTANT shall comply with all federal, state and local laws, regulations and ordinances.

18. **Assignment and Subcontracting.**This Agreement is entered into by PDV USA in reliance upon the personal qualifications of CONSULTANT's Personnel and, therefore, CONSULTANT shall not assign this Agreement voluntarily, involuntarily, or by operation of law without the express written consent of PDV USA. CONSULTANT may not subcontract any portion of the Services without the prior written consent of the PDV USA Authorized Representative.

19. **Miscellaneous.**  No waiver of any provision of this Agreement, or a breach hereof, shall be effective unless it is in writing and signed by both parties.  No waiver of a breach of this Agreement (whether express or implied) shall constitute a waiver of a subsequent breach.  All provisions of this Agreement are severable, and the unenforceability or invalidity of any of them shall not affect the enforceability or validity of the remaining provisions of this Agreement.  Any provision of this Agreement which by the nature of its terms would survive any termination or expiration of this Agreementshall continue to apply to the parties and remain in full force and effect.The headings in this Agreement are inserted for convenience only and shall not be used in the interpretation hereof.  Both parties have reviewed, and have had an opportunity for comment upon, this Agreement.  Any rule or principle of contractual construction that would otherwise require any aspect of this Agreement to be interpreted against the party primarily responsible for

Page 4

⑤

## CONSULTING AGREEMENT

its drafting shall not be employed in the interpretation hereof.This Agreement shall not be modified, altered, amended, or revoked except in writing duly executed by the parties

20.    **Exhibits and Entirety.**This Agreement contains all agreements of any kind or nature (oral or written) between the parties and all prior or contemporaneous promises, representations, agreements, or understandings are expressly merged herein and superseded hereby.  Any and all additional and different terms contained in CONSULTANT's proposals are herein rejected.  This Agreement shall include the following exhibits ("Exhibits") attached hereto and incorporated herein by reference:

Exhibit A    Scope of Services and Deliverables
Exhibit B    Compensation and Payment Schedule

This Consulting Agreement and the Exhibits are collectively referred to as the "Contract Documents".  To the extent of any inconsistency or conflicting terms and/or conditions between this Agreement and any of the Exhibits, this Agreement shall govern and control.  The Exhibits will have the same priority in the event of an irreconcilable conflict in the order in which they are listed above.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first shown above.

PDV USA, Inc.                                    Interamerican Consulting

By:                                              By:

Name:    **GUILLERMO BLANCO**                    Name:    **DAVID RIVERA**

Title:    **President**                          Title:    **President**

Date:    **March 21ˢᵗ, 2017**                    Date:    **March 21ˢᵗ, 2017**

Page 5

PGA0059



**CONSULTING AGREEMENT**

**EXHIBIT A**
of
Consulting Agreementby and Between
PDV USA, Incand
Interamerican Consulting, Incorporated
March 21st, 2017

## SCOPE OF SERVICES AND DELIVERABLES

The **Services** in general shall include, but not limited to:

It shall be the CONSULTANT's duty to provide strategic consulting services to the CLIENT as the CLIENT deems necessary and appropriate.

CONSULTANT will provide CLIENT with strategic consulting and assistance developing strategies to inform policy makers and opinion leaders regarding CLIENT initiatives and achievements.

CONSULTANT will develop and work with CLIENT to organize and implement a multi-faceted strategy to reinforce CLIENT's standing among important public officials and opinion leaders.

CONSULTANT will support CLIENT in the planning and execution of a strategic plan directed at targeted stakeholders to assist CLIENT with the development and implementation of a program to support efforts that will enhance the long-term reputation and standing of CLIENT.

CONSULTANT will identify opportunities to build long-term relationships among key third-parties, opinion leaders and public officials.

Consultant Deliverables are:

The CONSULTANT will provide the CLIENT with updates regarding the strategic consulting services provided by the CONSULTANT, and include with the invoice all supporting documentation, and set out adequate and complete details of the Services rendered.

CONSULTANT shall provide CLIENT with a bi-weekly report detailing the activities that it has carried out during that period to achieve the stated goals and purposes of the Agreement as well as a final report integrating all work product including recommendations for monitoring and following-up on the strategies implemented.

Page 6

PGA0060

PGA0001



## CONSULTING AGREEMENT

### EXHIBIT B
of
Consulting Agreement by and Between
PDV USA, Incand
Interamerican Consulting, Incorporated
March 21ˢᵗ, 2017

### COMPENSATION AND PAYMENT SCHEDULE

CONSULTANT agrees to accept and PDV USA agrees to pay for the complete, satisfactory and timely performance of the Services in strict accordance with all requirements contained in this Agreement. The total compensation for the Services provided by CONSULTANT, as per the terms and conditions herein provided, is U.S. Dollars 50,000,000.00.

### PAYMENT SCHEDULE:

Initial Payment Installment for US$ 5,000,000.00 on March 21ˢᵗ, 2017

Consecutive Payment Installments for US$ 5,000,000.00 every two weeks starting on April 4ᵗʰ, 2017 until reaching the total amount of US$ 25,000,000.00 by May 16ᵗʰ, 2017

Final Payment Installment for US$ 25,000,000.00 before June 15ᵗʰ, 2017.

### INVOICING:

Consultant shall submit an invoice for the Service completed and accepted, (as approved by the PDV USA Representative indicated in Section 14 of the Consulting Agreement), in triplicate, to the address shown below. The invoice shall reference the Consulting Agreement Number, PDV USAauthorized personnel responsible for accepting the services provided, and banking instructions.

Invoices shall be submitted by email to:

Mr. Pío González
Email: gonzalezpu@pdvsa.com
PhoneNumber: +582127083700

PGA0061

⑤

| Form **W-9**<br>(Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | Give Form to the<br>requester. Do not<br>send to the IRS. |

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Interamerican Consulting, Incorporated

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification; check only one of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☑ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.)

10925 N.W. 43rd Lane

6 City, state, and ZIP code

Miami, Florida 33178

Requester's name and address (optional)

7 List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

9 9 8 1

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

Sign Here  Signature of U.S. person ▶  Date ▶ 3-21-17

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at www.irs.gov/fw9.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting? on page 2 for further information.

Cat. No. 10231X  Form **W-9** (Rev. 12-2014)

PGA0062

PGA0001



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK    )
)       ss:
COUNTY of NEW YORK   )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached document, "PGA0001-PGA0170_EN"- originally written in Spanish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 3/3/2022

_____
Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 3rd day of March, 2022

Notary Public



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

# Exhibit 17

Print | Close Window

(14)

**Subject:** Hugo Raul Contracts
**From:** Esther Nuhfer <esther@commsol.biz>
**Date:** Fri, Nov 03, 2017 7:00 am
**To:** Hugo <hugo@pgandassociates.net>, Raul Gorrin <rgorrin@me.com>
**Cc:** David Rivera <rivera2002@comcast.net>
**Attach:** Interamerican PG Assoc Contract.docx
Interamerican Interglobal Contract.docx

Hola, aquí les envío los contratos para que los revisen.

Gracias

Esther Nuhfer
786-402-4822

Copyright © 2003-2020. All rights reserved.

PGA0139

## CONTRACT FOR SERVICES

This contract is entered into between Interamerican Consulting, Incorporated ("the Contractor"), located at 10925 N.W. 43rd Lane, Miami, Florida 33178, and PG and Associates ("the Subcontractor), located at 141 Sevilla Avenue, Coral Gables, Florida 33134, in fulfillment of the Contractor's consulting agreement with PDV USA (the Client), located at 65 East 55th Street, Floor 21, New York, New York, 10022.

## TERMS AND RECITALS

Whereas, the Contractor wishes to retain the services of the Subcontractor in order that the Contractor may provide Strategic Consulting to the Client in connection with the Client's business in the United States; and

Whereas, the Subcontractor wishes to provide Domestic Strategic Consulting services as the Contractor and the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Subcontractor will provide the Contractor and the Client with Domestic Strategic Consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

1.    **Term of Agreement:** This agreement shall become effective on May 24, 2017, 2017 and shall remain effective until May 24, 2018.

2.    **Duties of The Contractor:** It shall be the Contractor's duty to provide Strategic Consulting services to the Client as it deems necessary and appropriate.

3.    **Duties of The Subcontractor:** It shall be the Subcontractor's duty to provide the Contractor and the Client with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client.

4. **Compensation:** The Subcontractor shall receive from the Contractor 25 percent of net fees received from the Client in fulfillment of the Contractor's agreement with the Client.

**Interamerican Consulting, Incorporated**        **PG and Associates**

_____          _____

By:   David Rivera                                By:   Hugo Perera

Title:  President                                 Title:  President

Date:_____              Date:_____

PGA0140

## CONTRACT FOR SERVICES

This contract is entered into between Interamerican Consulting, Incorporated ("the Contractor"), located at 10925 N.W. 43rd Lane, Miami, Florida 33178, and Interaglobal Yaght Management, ("the Subcontractor), located at 2665 South Bayshore Drive, Suite 600, Miami, Florida 33186 in fulfillment of the Contractor's consulting agreement with PDV USA (the Client), located at 65 East 55th Street, Floor 21, New York, New York, 10022.

### TERMS AND RECITALS

Whereas, the Contractor wishes to retain the services of the Subcontractor in order that the Contractor may provide Strategic Consulting to the Client in connection with the Client's business in the United States; and

Whereas, the Subcontractor wishes to provide International Strategic Consulting services as the Contractor and the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Subcontractor will provide the Contractor and the Client with International Strategic Consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

      1.    **Term of Agreement:**  This agreement shall become effective on May 24, 2017, 2017 and shall remain effective until May 24, 2018.

      2.    **Duties of The Contractor:**  It shall be the Contractor's duty to provide Strategic Consulting services to the Client as it deems necessary and appropriate.

      3.    **Duties of The Subcontractor:**  It shall be the Subcontractor's duty to provide the Contractor and the Client with International Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client.

      4. **Compensation:** The Subcontractor shall receive from the Contractor 25 percent of net fees received from the Client in fulfillment of the Contractor's agreement with the Client.

**Interamerican Consulting, Incorporated**      **Interglobal Yaght Management**

_____      _____

By:   David Rivera      By:_____

Title:  President      Title:_____

Date:_____      Date:_____

1/15/2020                                   Workspace Webmail :: Print

Print  |  Close Window

Subject:  Hugo Raul Contracts
   From:  Esther Nuhfer <esther@commsol.biz>
   Date:  Fri, Nov 03, 2017 7:00 am
     To:  Hugo <hugo@pgandassociates.net>, Raul Gorrin <rgorrn@me.com>
     Cc:  David Rivera <rivera2002@comcast.net>
 Attach:  Interamerican PG Assoc Contract.docx
          Interamerican Interglobal Contract.docx

Hi, Here I am sending you the contracts for you to review.
Thanks

Esther Nuhfer
786-402-4822

Copyright © 2003-2020. All rights reserved.

PGA0001



## CONTRACT FOR SERVICES

This contract is entered into between Interamerican Consulting, Incorporated ("the Contractor"), located at 10925 N.W. 43rd Lane, Miami, Florida 33178, and PG and Associates ("the Subcontractor), located at 141 Sevilla Avenue, Coral Gables, Florida 33134, in fulfillment of the Contractor's consulting agreement with PDV USA (the Client), located at 65 East 55th Street, Floor 21, New York, New York, 10022.

## TERMS AND RECITALS

Whereas, the Contractor wishes to retain the services of the Subcontractor in order that the Contractor may provide Strategic Consulting to the Client in connection with the Client's business in the United States; and

Whereas, the Subcontractor wishes to provide Domestic Strategic Consulting services as the Contractor and the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Subcontractor will provide the Contractor and the Client with Domestic Strategic Consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

1.   **Term of Agreement:**  This agreement shall become effective on May 24, 2017, 2017 and shall remain effective until May 24, 2018.

2.   **Duties of The Contractor:**  It shall be the Contractor's duty to provide Strategic Consulting services to the Client as it deems necessary and appropriate.

3.   **Duties of The Subcontractor:**  It shall be the Subcontractor's duty to provide the Contractor and the Client with Domestic Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client.

4.  **Compensation:**  The Subcontractor shall receive from the Contractor 25 percent of net fees received from the Client in fulfillment of the Contractor's agreement with the Client.

**Interamerican Consulting, Incorporated**      **PG and Associates**

_____           _____

By:   David Rivera                  By:   Hugo Perera

Title:  President                   Title:  President

Date:_____          Date:_____

PGA0140



### CONTRACT FOR SERVICES

This contract is entered into between Interamerican Consulting, Incorporated ("the Contractor"), located at 10925 N.W. 43rd Lane, Miami, Florida 33178, and Interaglobal Yaght Management, ("the Subcontractor), located at 2665 South Bayshore Drive, Suite 600, Miami, Florida 33186 in fulfillment of the Contractor's consulting agreement with PDV USA (the Client), located at 65 East 55th Street, Floor 21, New York, New York, 10022.

### TERMS AND RECITALS

Whereas, the Contractor wishes to retain the services of the Subcontractor in order that the Contractor may provide Strategic Consulting to the Client in connection with the Client's business in the United States; and

Whereas, the Subcontractor wishes to provide International Strategic Consulting services as the Contractor and the Client may from time to time require; and

Whereas, the parties have agreed to the terms under which the Subcontractor will provide the Contractor and the Client with International Strategic Consulting services and wish to memorialize their agreement in writing.

Now, therefore, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

    1.    **Term of Agreement:** This agreement shall become effective on May 24, 2017, 2017 and shall remain effective until May 24, 2018.

    2.    **Duties of The Contractor:** It shall be the Contractor's duty to provide Strategic Consulting services to the Client as it deems necessary and appropriate.

    3.    **Duties of The Subcontractor:** It shall be the Subcontractor's duty to provide the Contractor and the Client with International Strategic Consulting to best serve the Contractor's ability to fulfill its agreement with the Client.

    4.    **Compensation:** The Subcontractor shall receive from the Contractor 25 percent of net fees received from the Client in fulfillment of the Contractor's agreement with the Client.

**Interamerican Consulting, Incorporated**    **Interglobal Yaght Management**

_____    _____

By:   David Rivera          By:_____

Title:  President          Title:_____

Date:_____    Date:_____

PGA0141

PGA0001



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK        )
                         )                ss:
COUNTY of NEW YORK       )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, "PGA0001-PGA0170_EN"- originally written in Spanish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 3/3/2022                              Sworn to and signed before ME
                                             This 3rd day of March, 2022

_____

Heather Cameron                              Notary Public
Projects Manager
Consortra Translations



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

# Exhibit 18

<u>Print</u>  |  <u>Close Window</u>



Subject: **Project Invoices**
   From: **David Rivera <rivera2002@comcast.net>**
   Date: **Wed, Nov 29, 2017 9:06 pm**
     To: **Esther Nuhfer <esther@commsol.biz>, hugo@pgandassociates.net**

---

Here are the invoice dates and amounts that I need from each sub-contractor. I also still need W-9s from Krome, PG and Interglobal. Thank you again for all of your hard work and great contributions to this project. This has really been a team effort and the performance by each sub-contractor has been truly exceptional.

3-27-17: Krome Agronomics, LLC ($625,000)
3-30-17: PG and Associates ($625,000)
4-11-17: PG and Associates ($625,000)
4-12-17: PG and Associates ($625,000)
4-21-17: PG and Associates ($625,000)
4-24-17: PG and Associates ($625,000)
11-7-17: PG and Associates ($1,100,000)


3-27-17: Communication Solutions ($750,000)
4-11-17: Communication Solutions ($750,000)
4-12-17: Communication Solutions ($750,000)
4-21-17: Communication Solutions ($625,000)
4-24-17: Communication Solutions ($625,000)
11-7-17: Communication Solutions ($1,000,000)


3-31-17: Interglobal Yacht Management, LLC ($625,000)
4-4-17:   Interglobal Yacht Management, LLC ($625,000)
4-11-17: Interglobal Yacht Management, LLC ($625,000)
4-12-17: Interglobal Yacht Management, LLC ($625,000)
4-21-17: Interglobal Yacht Management, LLC ($625,000)
4-24-17: Interglobal Yacht Management, LLC ($625,000)

---

Copyright © 2003-2020. All rights reserved.

Exhibit 19

Form **1120S**

**U.S. Income Tax Return for an S Corporation**

▶ Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
▶ Go to *www.irs.gov/Form1120S* for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0123

**2017**

For calendar year 2017 or tax year beginning _____, 2017, ending _____

| A 3 election effective date | | | | D Employer identification number |
|---|---|---|---|---|
| 1/24/2013 | TYPE | Interamerican Consulting, Inc. | | |
| B Business activity code number (see instrs) | OR | 10925 NW 43rd Lane | | E Date incorporated |
| 541990 | PRINT | Miami, FL 33178-1823 | | 1/24/2013 |
| C Check if Schedule M-3 attached ☐ | | | | F Total assets (see instructions) $ 3,099,766. |

G   Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No   If 'Yes,' attach Form 2553 if not already filed

H   Check if:  (1) ☐ Final return  (2) ☐ Name change  (3) ☐ Address change
(4) ☐ Amended return  (5) ☐ S election termination or revocation

I   Enter the number of shareholders who were shareholders during any part of the tax year . . . . . . . . . . . . . . . . . . . . . ▶ 1

Caution: Include **only** trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales . . . . . . . . . . . . . . . . . . | 1a | 20,000,000. | |
| | b Returns and allowances . . . . . . . . . . . . . . . . . | 1b | | |
| | c Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1c | 20,000,000. |
| | 2 Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 20,000,000. |
| | 4 Net gain (loss) from Form 4797, line 17 (attach Form 4797) . . . . . . . . . . . . . . . . . . . . . | 4 | |
| | 5 Other income (loss) *(see instrs — att statement)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | |
| | 6 **Total income (loss).** Add lines 3 through 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 6 | 20,000,000. |
| **D E D U C T I O N S   S E E   I N S T R S** | 7 Compensation of officers (see instructions - attach Form 1125-E) . . . . . . . . . . . . . . . . . . | 7 | |
| | 8 Salaries and wages (less employment credits) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | 270,000. |
| | 9 Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| | 10 Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | |
| | 11 Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | |
| | 12 Taxes and licenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 | 12,347. |
| | 13 Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | |
| | 14 Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) . . . . . . . . . | 14 | |
| | 15 Depletion **(Do not deduct oil and gas depletion.)** . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 | |
| | 16 Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 | 551,213. |
| | 17 Pension, profit-sharing, etc, plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 | 54,000. |
| | 18 Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 | |
| | 19 Other deductions (attach statement) . . . . . . . . . . . . . . . . . . . . . . . . . See Statement.1 | 19 | 14,837,653. |
| | 20 **Total deductions.** Add lines 7 through 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 20 | 15,725,213. |
| | 21 **Ordinary business income (loss).** Subtract line 20 from line 6 . . . . . . . . . . . . . . . . . . . | 21 | 4,274,787. |
| **T A X   A N D   P A Y M E N T S** | 22a Excess net passive income or LIFO recapture tax *(see instructions)* . . . . . . . . . . . . | 22a | | |
| | b Tax from Schedule D (Form 1120S) . . . . . . . . . . . . . . . . . . . . . . . . . . | 22b | | |
| | c Add lines 22a and 22b (see instructions for additional taxes) . . . . . . . . . . . . . . . . . . . . | 22c | |
| | 23a 2017 estimated tax payments and 2016 overpayment credited to 2017 . . . . . . | 23a | | |
| | b Tax deposited with Form 7004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23b | | |
| | c Credit for federal tax paid on fuels (attach Form 4136) . . . . . . . . . . . . . . | 23c | | |
| | d Add lines 23a through 23c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23d | |
| | 24 Estimated tax penalty (see instructions). Check if Form 2220 is attached . . . . . . . . . . . . . . . . . ▶ ☐ | 24 | |
| | 25 Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed . . . . | 25 | 0. |
| | 26 **Overpayment.** If line 23d is larger than the total of lines 22c and 24, enter amount overpaid . . . . . . . . . | 26 | |
| | 27 Enter amount from line 26 **Credited to 2018 estimated tax** ▶ _____ Refunded ▶ | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ _____   _____   ▶ President
Signature of officer            Date        Title

May the IRS discuss this return with the preparer shown below (see instructions)?   ☒ Yes  ☐ No

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|---|
| | John D. Lykkebak, CPA | John D. Lykkebak, CPA | | | P00394427 |
| | Firm's name ▶ JOHN D. LYKKEBAK & ASSOCIATES | | | Firm's EIN ▶ | |
| | Firm's address ▶ 864 EXECUTIVE DR STE 2 | | | | |
| | OVIEDO, FL 32765-7699 | | | Phone no. (407) 366-3130 | |

BAA **For Paperwork Reduction Act Notice, see separate instructions.**   SPSA0105L 08/17/17   Form **1120S** (2017)

LYKKEBAK0000000003

Form **1120S** (2017)   Interamerican Consulting, Inc.                                                                      Page **2**

| **Schedule B** | **Other Information** (see instructions) | | | | | **Yes** | **No** |
|---|---|---|---|---|---|---|---|
| **1** | Check accounting method:  **a** [X] Cash  **b** [ ] Accrual  **c** [ ] Other (specify) ► | | | | | | |
| **2** | See the instructions and enter the: | | | | | | |
| | **a** Business activity ► Consulting | | **b** Product or service... ► Service | | | | |
| **3** | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation...... | | | | | | X |
| **4** | At the end of the tax year, did the corporation: | | | | | | |
| | **a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below........ | | | | | | X |

| **(i)** Name of Corporation | **(ii)** Employer Identification Number (if any) | **(iii)** Country of Incorporation | **(iv)** Percentage of Stock Owned | **(v)** If Percentage in (iv) is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below......     **X** (No)

| **(i)** Name of Entity | **(ii)** Employer Identification Number (if any) | **(iii)** Type of Entity | **(iv)** Country of Organization | **(v)** Maximum % Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | **Yes** | **No** |
|---|---|---|---|
| **5a** | At the end of the tax year, did the corporation have any outstanding shares of restricted stock?......................... | | X |
| | If 'Yes,' complete lines (i) and (ii) below. | | |
| | **(i)** Total shares of restricted stock..........................  ► | | |
| | **(ii)** Total shares of non-restricted stock.....................  ► | | |
| **b** | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments?...... | | X |
| | If 'Yes,' complete lines (i) and (ii) below. | | |
| | **(i)** Total shares of stock outstanding at the end of the tax year.................................  ► | | |
| | **(ii)** Total shares of stock outstanding if all instruments were executed......................  ► | | |
| **6** | Has this corporation filed, or is it required to file, **Form 8918**, Material Advisor Disclosure Statement, to provide information on any reportable transaction?................................................... | | X |
| **7** | Check this box if the corporation issued publicly offered debt instruments with original issue discount.............  ► [ ] | | |
| | If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| **8** | If the corporation: **(a)** was a C corporation before it elected to be an S corporation **or** the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation **and (b)** has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions)...........................  ►$ | | |
| **9** | Enter the accumulated earnings and profits of the corporation at the end of the tax year........  $ | | |
| **10** | Does the corporation satisfy **both** of the following conditions? | | |
| | **a** The corporation's total receipts (see instructions) for the tax year were less than $250,000.................... | | |
| | **b** The corporation's total assets at the end of the tax year were less than $250,000.................... | | X |
| | If 'Yes,' the corporation is not required to complete Schedules L and M-1. | | |
| **11** | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt?........................................... | | X |
| | If 'Yes,' enter the amount of principal reduction                                          $ | | |
| **12** | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If 'Yes', see instructions.... | | X |
| **13a** | Did the corporation make any payments in 2017 that would require it to file Form(s) 1099?........................... | X | |
| **b** | If 'Yes,' did the corporation file or will it file required Forms 1099?................................... | X | |

Form **1120S** (2017)

SPSA0112L  08/17/17

LYKKEBAK0000000003

Form **1120S** (2017)   Interamerican Consulting, Inc.                                    Page **3**

| Schedule K | Shareholders' Pro Rata Share Items | | Total amount |
|---|---|---|---|
| **Income** **(Loss)** | **1** Ordinary business income (loss) (page 1, line 21) | **1** | 4,274,787. |
| | **2** Net rental real estate income (loss) (attach Form 8825) | **2** | |
| | **3a** Other gross rental income (loss) | **3a** | |
| | **b** Expenses from other rental activities (attach statement) | **3b** | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a | **3c** | |
| | **4** Interest income | **4** | 1,851. |
| | **5** Dividends: **a** Ordinary dividends | **5a** | |
| | **b** Qualified dividends | **5b** | |
| | **6** Royalties | **6** | |
| | **7** Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | **7** | |
| | **8a** Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | **8a** | |
| | **b** Collectibles (28%) gain (loss) | **8b** | |
| | **c** Unrecaptured section 1250 gain (attach statement) | **8c** | |
| | **9** Net section 1231 gain (loss) (attach Form 4797) | **9** | |
| | **10** Other income (loss) (see instructions) ........ Type ► | **10** | |
| **Deductions** | **11** Section 179 deduction (attach Form 4562) | **11** | |
| | **12a** Charitable contributions .......................... See Statement 2 .... | **12a** | 50,000. |
| | **b** Investment interest expense | **12b** | |
| | **c** Section 59(e)(2) expenditures **(1)** Type ► _ _ _ _ _ _ _ _ _ _ _ _ _ **(2)** Amount ► | **12c (2)** | |
| | **d** Other deductions (see instructions) .. Type ► | **12d** | |
| **Credits** | **13a** Low-income housing credit (section 42(j)(5)) | **13a** | |
| | **b** Low-income housing credit (other) | **13b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | **13c** | |
| | **d** Other rental real estate credits (see instrs) Type ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **13d** | |
| | **e** Other rental credits (see instrs) Type ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **13e** | |
| | **f** Biofuel producer credit (attach Form 6478) | **13f** | |
| | **g** Other credits (see instructions) ...... Type ► | **13g** | |
| **Foreign Trans- actions** | **14a** Name of country or U.S. possession ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| | **b** Gross income from all sources | **14b** | |
| | **c** Gross income sourced at shareholder level | **14c** | |
| | Foreign gross income sourced at corporate level | | |
| | **d** Passive category | **14d** | |
| | **e** General category | **14e** | |
| | **f** Other (attach statement) | **14f** | |
| | Deductions allocated and apportioned at shareholder level | | |
| | **g** Interest expense | **14g** | |
| | **h** Other | **14h** | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | **i** Passive category | **14i** | |
| | **j** General category | **14j** | |
| | **k** Other (attach statement) | **14k** | |
| | Other information | | |
| | **l** Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | **14l** | |
| | **m** Reduction in taxes available for credit | | |
| | (attach statement) | **14m** | |
| | **n** Other foreign tax information (attach statement) | | |
| **Alterna- tive Mini- mum Tax (AMT) Items** | **15a** Post-1986 depreciation adjustment | **15a** | |
| | **b** Adjusted gain or loss | **15b** | |
| | **c** Depletion (other than oil and gas) | **15c** | |
| | **d** Oil, gas, and geothermal properties — gross income | **15d** | |
| | **e** Oil, gas, and geothermal properties — deductions | **15e** | |
| | **f** Other AMT items (attach statement) | **15f** | |
| **Items Affec- ting Share- holder Basis** | **16a** Tax-exempt interest income | **16a** | |
| | **b** Other tax-exempt income | **16b** | |
| | **c** Nondeductible expenses | **16c** | 4,316. |
| | **d** Distributions (attach stmt if required) (see instrs) | **16d** | 1,249,150. |
| | **e** Repayment of loans from shareholders | **16e** | |

BAA                              SPSA0134L   08/17/17                              Form **1120S** (2017)

LYKKEBAK0000000003

Form **1120S** (2017)   Interamerican Consulting, Inc.                                                    Page **4**

| Schedule K | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| Other Infor-mation | 17a Investment income | 17a | 1,851. |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts | | |
| | (attach statement) | | |
| Recon-ciliation | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 4,226,638. |

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | Assets | (a) | (b) | (c) | (d) |
| 1 | Cash | | 2,130. | | 3,099,766. |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach stmt) | | | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | | | |
| 10a | Buildings and other depreciable assets | | | | |
| b | Less accumulated depreciation | | | | |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 14 | Other assets (attach stmt) | | | | |
| 15 | Total assets | | 2,130. | | 3,099,766. |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach stmt) .. See .St .3. | | | | 124,464. |
| 19 | Loans from shareholders | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach statement) | | | | |
| 22 | Capital stock | | 2,130. | | 2,130. |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings | | | | 2,973,172. |
| 25 | Adjustments to shareholders' equity (att stmt) | | | | |
| 26 | Less cost of treasury stock | | | | |
| 27 | Total liabilities and shareholders' equity | | 2,130. | | 3,099,766. |

9PSA0134L  08/17/17                                                    Form **1120S** (2017)

LYKKEBAK0000000003

Form **1120S** (2017)  Interamerican Consulting, Inc.   Page **5**

**Schedule M-1** | **Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

Note: The corporation may be required to file Schedule M-3 (see instructions)

| | | |
|---|---|---|
| 1 Net income (loss) per books............... | 4,222,322. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | **a** Tax-exempt interest. $ _ _ _ _ _ _ _ _ _ _ |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): |
| **a** Depreciation........ $ _ _ _ _ _ _ _ _ _ | | **a** Depreciation .... $ _ _ _ _ _ _ _ _ _ _ |
| **b** Travel and entertainment. $ _ _ _ _ _ 111. | | |
| See Statement 4 _ _ _ _ 4,205. | 4,316. | 7 Add lines 5 and 6.................... | 0. |
| 4 Add lines 1 through 3................... | 4,226,638. | 8 Income (loss) (Schedule K, ln 18). Ln 4 less ln 7... | 4,226,638. |

**Schedule M-2** | **Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year................................ | 0. | | |
| 2 Ordinary income from page 1, line 21............................ | 4,274,787. | | |
| 3 Other additions.....................See Statement 5.... | 1,851. | | |
| 4 Loss from page 1, line 21....................................... | | | |
| 5 Other reductions...................See Statement 6.... | ( 54,316.) | | |
| 6 Combine lines 1 through 5...................................... | 4,222,322. | | |
| 7 Distributions other than dividend distributions.................... | 1,249,150. | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6............ | 2,973,172. | | |

SPSA0134L  08/17/17

Form **1120S** (2017)

LYKKEBAK0000000003

671117

| **Schedule K-1** (Form 1120S) | **2017** | | ☐ Final K-1 | ☐ Amended K-1 | | OMB No. 1545-0123 |

Department of the Treasury
Internal Revenue Service

For calendar year 2017, or tax year

beginning ____ / ____ / 2017   ending ____ / ____ / ____

## Shareholder's Share of Income, Deductions, Credits, etc. ► See page 2 of form and separate instructions.

| **Part I** | **Information About the Corporation** |

**A** Corporation's employer identification number

�â– 

**B** Corporation's name, address, city, state, and ZIP code

Interamerican Consulting, Inc.
10925 NW 43rd Lane
Miami, FL 33178-1823

**C** IRS Center where corporation filed return

e-file

| **Part II** | **Information About the Shareholder** |

**D** Shareholder's identifying number

▮

**E** Shareholder's name, address, city, state, and ZIP code

David Rivera
10925 NW 43rd Lane
Miami, FL 33178-1823

**F** Shareholder's percentage of stock
ownership for tax year..................... 100 %

F
O
R

I
R
S

U
S
E

O
N
L
Y

| **Part III** | **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items** |

| 1 | Ordinary business income (loss) | 4,274,787. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Interest income | 1,851. |
| 5a | Ordinary dividends | |
| 5b | Qualified dividends | |
| 6 | Royalties | |
| 7 | Net short-term capital gain (loss) | |
| 8a | Net long-term capital gain (loss) | |
| 8b | Collectibles (28%) gain (loss) | |
| 8c | Unrecaptured section 1250 gain | |
| 9 | Net section 1231 gain (loss) | |
| 10 | Other income (loss) | |

| 11 | Section 179 deduction | |
| 12 | Other deductions | |
| | A | 50,000. |

| 13 | Credits | |
| 14 | Foreign transactions | |
| 15 | Alternative minimum tax (AMT) items | |
| 16 | Items affecting shareholder basis | |
| | C | 4,316. |
| | D | 1,249,150. |
| 17 | Other information | |
| | A | 1,851. |

*See attached statement for additional information.

BAA  For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.

Shareholder 1

Schedule **K-1** (Form 1120S) 2017

SPSA0412L   012/11/17

LYKKEBAK0000000003

| 2017 | Federal Statements | Page 2 |
|---|---|---|

**Client 34128**                              **Interamerican Consulting, Inc.**

6/18/18                                                                03:33PM

**Statement 6**
**Form 1120S, Schedule M-2, Column A, Line 5**
**Other Reductions**

| | | |
|---|---|---|
| Contributions......................................................................... | $ | 50,000. |
| Disallowed Meals and Entertainment................................................... | | 111. |
| Shareholder Health Ins Preiums pd..................................................... | | 4,205. |
| Total | $ | 54,316. |

LYKKEBAK0000000003

# Interamerican Consulting, Inc.
## Profit & Loss
### January through December 2017

Cash Basis

| | Jan - Mar 17 | Apr - Jun 17 | Jul - Sep 17 | Oct - Dec 17 | TOTAL |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| **Fee Income** | | | | | |
| Citgo Petroleum | 5,000,000.00 | 10,000,000.00 | 0.00 | 5,000,000.00 | 20,000,000.00 |
| Total Fee Income | 5,000,000.00 | 10,000,000.00 | 0.00 | 5,000,000.00 | 20,000,000.00 |
| Total Income | 5,000,000.00 | 10,000,000.00 | 0.00 | 5,000,000.00 | 20,000,000.00 |
| **Expense** | | | | | |
| **Automobile Expense** | | | | | |
| Gas | 33.00 | 0.00 | 64.50 | 0.00 | 97.50 |
| Lease payment | 650.00 | 1,647.00 | 1,647.00 | 1,647.00 | 5,791.00 |
| Total Automobile Expense | 683.00 | 1,647.00 | 1,711.50 | 1,647.00 | 5,688.50 |
| Bank Service Charges | 54.00 | 30.00 | 5.00 | 48.44 | 137.44 |
| Computer and Internet Expenses | 0.00 | 281.79 | 350.52 | 361.84 | 994.15 |
| **Consulting Fees** | | | | | |
| BCM Consulting, Incorporated | 125,000.00 | 125,000.00 | 0.00 | 0.00 | 250,000.00 |
| Communication Solutions | 750,000.00 | 2,750,000.00 | 0.00 | 1,087,000.00 | 4,587,000.00 |
| Interglobal Yacht Management | 625,000.00 | 3,125,000.00 | 0.00 | 0.00 | 3,750,000.00 |
| Krome Agronomics | 625,000.00 | 0.00 | 0.00 | 0.00 | 625,000.00 |
| PG and Associates | 625,000.00 | 2,500,000.00 | 0.00 | 1,337,500.00 | 4,462,500.00 |
| Total Consulting Fees | 2,750,000.00 | 8,500,000.00 | 0.00 | 2,424,500.00 | 13,674,500.00 |
| Contributions | 0.00 | 0.00 | 0.00 | 50,000.00 | 50,000.00 |
| **Employee Benefits Expense** | | | | | |
| SEP IRA | 0.00 | 0.00 | 0.00 | 54,000.00 | 54,000.00 |
| Total Employee Benefits Expense | 0.00 | 0.00 | 0.00 | 54,000.00 | 54,000.00 |
| **Insurance Expense** | | | | | |
| Auto | 388.29 | 641.80 | 596.70 | 623.90 | 2,250.69 |
| Health | 0.00 | 0.00 | 3,652.15 | 552.47 | 4,204.62 |
| Total Insurance Expense | 388.29 | 641.80 | 4,248.85 | 1,176.37 | 6,455.31 |
| Marketing | 26,291.97 | 149,174.40 | 0.00 | 375,746.56 | 551,212.93 |
| Meals and Entertainment | 92.31 | 27.78 | 29.73 | 72.20 | 222.02 |
| Office | 0.00 | 2,000.00 | 300.00 | 450.00 | 2,750.00 |
| Office Supplies | 0.00 | 415.27 | 315.00 | 0.00 | 730.27 |
| Officer's Salary | 0.00 | 0.00 | 0.00 | 270,000.00 | 270,000.00 |
| **Payroll Expenses** | | | | | |
| FICA | 0.00 | 0.00 | 0.00 | 12,116.40 | 12,116.40 |
| FUTA | 0.00 | 0.00 | 0.00 | 42.00 | 42.00 |
| SUTA | 0.00 | 0.00 | 0.00 | 189.00 | 189.00 |
| Total Payroll Expenses | 0.00 | 0.00 | 0.00 | 12,347.40 | 12,347.40 |
| Postage | 0.00 | 6.77 | 0.00 | 0.00 | 6.77 |
| **Professional Fees** | | | | | |
| Accounting | 0.00 | 0.00 | 0.00 | 2,606.91 | 2,606.91 |
| Legal Fees | 0.00 | 5,612.68 | 0.00 | 1,015,000.00 | 1,020,612.68 |
| Total Professional Fees | 0.00 | 5,612.68 | 0.00 | 1,017,606.91 | 1,023,219.59 |
| Telephone Expense | 442.01 | 717.80 | 1,061.62 | 887.10 | 3,108.53 |
| **Travel Expense** | | | | | |
| Tolls | 100.00 | 350.00 | 300.00 | 0.00 | 750.00 |
| Travel Expense - Other | 9,696.74 | 36,740.82 | 40,040.96 | 36,074.17 | 122,552.69 |
| Total Travel Expense | 9,796.74 | 37,090.82 | 40,340.96 | 36,074.17 | 123,302.69 |
| Utilities | 0.00 | 77.09 | 253.15 | 323.91 | 654.15 |
| **Total Expense** | 2,787,948.32 | 8,697,723.20 | 48,516.33 | 4,245,241.90 | 15,779,529.75 |

Page 1
Read the account's report.

LYKKEBAK0000000003

## Interamerican Consulting, Inc.
## Profit & Loss
### January through December 2017

Cash Basis

|  | Jan - Mar 17 | Apr - Jun 17 | Jul - Sep 17 | Oct - Dec 17 | TOTAL |
|---|---|---|---|---|---|
| Net Ordinary Income | 2,212,051.68 | 1,302,276.80 | -48,616.33 | 754,758.10 | 4,220,470.25 |
| Other Income/Expense |  |  |  |  |  |
| Other Income |  |  |  |  |  |
| Other Income |  |  |  |  |  |
| Interest | 0.00 | 288.19 | 540.26 | 1,022.65 | 1,851.10 |
| Total Other Income | 0.00 | 288.19 | 540.26 | 1,022.65 | 1,851.10 |
| Total Other Income | 0.00 | 288.19 | 540.26 | 1,022.65 | 1,851.10 |
| Net Other Income | 0.00 | 288.19 | 540.26 | 1,022.65 | 1,851.10 |
| Net Income | 2,212,051.68 | 1,302,554.99 | -48,076.07 | 755,780.75 | 4,222,321.35 |

LYKKEBAK0000000003