# Exhibit 1

```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
 2
                          CASE NO. 22-MC-21372-JAL
 3
     PDV USA, INC.,
 4                                         Miami, Florida
                   Petitioner(s),
 5                                         August 16, 2022
             vs.
 6
     COMMUNICATION SOLUTIONS, INC.,
 7   et al.,

 8
                    Respondent(s).      Pages 1 - 69
 9   -----------------------------------------------------------

10                         DISCOVERY HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
11           BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
                   UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     FOR THE PLAINTIFF(S):  BRADY M. SULLIVAN, ESQ.
14                          WILLKIE FARR & GALLAGHER, LLP
                            787 Seventh Avenue
15                          New York, NY 10019
                            212-728-5949
16                          bsullivan@willkie.com

17

18   FOR THE DEFENDANT(S):  PHILIP L. REIZENSTEIN, ESQ.
                            3191 Coral Way
19                          Miami, FL 33145
                            305-444-0755
20                          philip@miamicriminallaw.net

21

22   TRANSCRIBED BY:        Joanne Mancari, RPR, CRR, CSR
                            Court Reporter
23                          jemancari@gmail.com

24

25
```

1    Thereupon,

2    the following proceedings were held:

3            THE DEPUTY CLERK:  Calling case No. 22 MC 21372, Judge

4    Lenard, PDV USA, Inc. v. Communications Solutions, Inc., *et al.*

5            Counsel, would you please note your appearances for

6    the record.

7            MR. SULLIVAN:  Good morning.  Brady Sullivan for

8    petitioner PDV USA.

9            MR. REIZENSTEIN:  Good morning.  Philip Reizenstein

10   for the respondent Esther Nuhfer.

11           THE COURT:  OK.  Thank you.

12           Go ahead and have a seat.  I just wanted to make sure

13   that we are good in the courtroom.

14           (Pause)

15           THE COURT:  I apologize.  I didn't know that we had

16   sort of a partial courtroom going on.

17           Mr. Sullivan, this is your motion.  I have a lot of

18   questions that I try to resist asking until the right moment.

19   Any way around it, you will have a fulsome opportunity to

20   present your argument.  If I take you off script, know that you

21   will have a chance to go back where you want to go.

22           MR. SULLIVAN:  Thank you, your Honor.

23           I would just like to thank the court by convening on

24   such short notice and accommodating the schedules of counsel.

25   We very much appreciate it.

1           Your Honor, in April of this year my client served,

2   properly served two subpoenas on Esther Nuhfer and her company

3   Communication Solutions for the production of documents.  We to

4   this day have not received a single piece of paper in response

5   to our subpoenas.  In advance of this conference I conferred

6   once again with counsel for respondents and confirmed that the

7   position of respondents remains the same.  So we are here

8   before your Honor today.

9           We outlined in our papers why we think Ms. Nuhfer's

10  objections are invalid.  There are a few sort of more discrete

11  observations that I'd like to make that perhaps might color the

12  court's decision here.

13          The first, your Honor, is that we maintain Ms. Nuhfer

14  has waived her objections to these subpoenas here.  The rule is

15  you have to serve written objections within 14 days, and there

16  are no exceptions unless unusual circumstances and for good

17  cause.

18          At least my reading of the case law, your Honor, is

19  that this is not a liberally granted exception.  You have to

20  show unusual circumstances and good cause.  We don't think they

21  have shown that here.  You look at their papers, they say,

22  well, gee, we had no obligation to object to the subpoenas

23  because they are overbroad on their face and they exceed all

24  fair bounds of discovery.

25          That can't be the case because even on this motion

1    they've conceded that eight of the 16 requests that we have

2    asked for are at least relevant, not overbroad.  They have

3    Fifth Amendment objections as a separate matter, but they have

4    conceded that half of our requests are at least relevant.

5         So even as to those other eight, we maintain all the

6    more reason to serve written objections here.  The 14-day rule

7    has to mean something.  If a party that receives a subpoena can

8    sort of look at it and say we think this is overbroad, we think

9    this is unfair, which I dare say is the majority of folks that

10   receive a third-party subpoena, if that exempts them from

11   serving written objections, then I would submit the rule

12   doesn't mean much.

13        What else do they say in their papers on this point?

14   Well, they say Ms. Nuhfer acted in good faith.  They claim here

15   she acted in good faith by agreeing to sit for a deposition.

16   Just to be frank, we think that is an absurd excuse, an absurd

17   objection on this point.

18        Ms. Nuhfer has clearly not acted in good faith in this

19   matter, as demonstrated by the pages of affidavits and exhibits

20   that we have submitted, primarily in connection with our

21   opening brief, showing that Ms. Nuhfer has led our process

22   servers on what amounts to a wild goose chase through the

23   streets of Miami.  It has cost my clients thousands of dollars

24   and many hours of wasted time.

25        Just as a point aside, the only reason Ms. Nuhfer has

1   agreed to sit for a deposition here is because we had a police

2   officer serve her papers in her house after multiple attempts

3   to do so.

4         Again, my point here, your Honor, is that the 14-day

5   rule has to mean something.  It has to have some applicability.

6   If Ms. Nuhfer's conduct in this dispute constitutes good faith

7   that excuses written objections, then I would submit the rule

8   doesn't have much teeth.

9         The second observation I'd like to make for your Honor

10  pertains to the Fifth Amendment.  We think the Fifth Amendment

11  does not afford Ms. Nuhfer license to refuse to produce

12  documents in response to our subpoenas for numerous independent

13  reasons.  I would just like to highlight a few.

14        First, Communication Solutions, the entity, the

15  subject of one of our subpoenas, it is a corporation.  It is

16  not a sole proprietorship, your Honor.  We outlined why that is

17  the case in our papers.  They have submitted no evidence

18  whatsoever suggesting that Communication Solutions is the sole

19  proprietorship.  We think it is a made-for-litigation position

20  with no support in the record.

21        So what does that mean?  What are the consequences of

22  Communication Solutions being a corporation here?  Well, number

23  one, the corporation has no valid Fifth Amendment defense.

24  That is from the Braswell case in the Supreme Court.

25        It also means that Ms. Nuhfer, as the custodian of

1    records here, cannot invoke the Fifth Amendment even if the act

2    of production incriminates the custodian of records,

3    Ms. Nuhfer.  That is also from the Braswell case.

4         This rule applies even if the custodian of records in

5    question is the sole owner of the corporation.  If it's a

6    solely-held, small, one-person corporation, that does not

7    excuse the Braswell rule that the custodian of records must

8    make a production even if it incriminates the custodian of

9    records.  This came up just last year before Magistrate Judge

10   Torres in United States v. Stein.

11        So in our view, your Honor, these facts more or less

12   end the Fifth Amendment inquiry because, at least in our view

13   and we would maintain, it is inconceivable that there are

14   documents responsive to our subpoena that are also not

15   corporate records.

16        Why do I say that?  Communication Solutions signed the

17   subcontracts between the defendant in our litigation, the

18   subcontracts that form the subject of probably half of the

19   document requests in our subpoena.  Those were signed by

20   Communication Solutions.  Of course, signed by Ms. Nuhfer on

21   behalf of the entity.

22        It was Communication Solutions that received $4.5

23   million of my client's money, funneled by the defendant in the

24   underlying litigation.  That was the entity, not the

25   individual.

1          Communication Solutions helped draft the contract that

2     is in dispute in our case.  How do we know this?  Well,

3     Ms. Nuhfer used her Communication Solutions business account to

4     exchange emails discussing early drafts of the contract that is

5     at issue here.

6          So again, anything that is responsive to our document

7     requests and that is also in Ms. Nuhfer's possession of course

8     would be, in our view, a corporate record not subject to any

9     Fifth Amendment defenses.

10         Now, to be clear, we maintain that Ms. Nuhfer does not

11    have a personal Fifth Amendment objection here either.

12         Just sort of in very brief summary, the contents of

13    the documents themselves cannot be incriminating.  That is from

14    the Fisher case.  Just because the documents themselves might

15    tend to incriminate Ms. Nuhfer via the contents, that is not

16    the issue.  It has to be the act of production.

17         The act of production here is both.  Again, under the

18    Fisher case it has to be both testimonial and incriminating,

19    the act itself.  We maintain it is not testimonial primarily

20    based on the forgone conclusion doctrine, and we also maintain

21    that it is not incriminating.

22         The fact that Ms. Nuhfer possesses these documents,

23    the fact that she might offer them in response to our subpoenas

24    is known not only by us, it's known by this court, it's known

25    by the government that she possesses these documents, it is

1    known by the Miami Herald that she possesses these documents.

2    The act of production here is not going to reveal any

3    incriminating information about Ms. Nuhfer.

4         The next point I'd like to raise for your Honor is

5    that we know Ms. Nuhfer has already produced documents to the

6    government here, including by means of a forensic collection of

7    numerous of her cell phones, phones in her possession.  We also

8    know from their brief that the government subpoena calls for

9    documents that are virtually identical to those in our

10   subpoena.  We also know that the government investigation, to

11   which Ms. Nuhfer is subject, is, quote, inextricably

12   intertwined -- those are their words -- with the litigation and

13   our subpoenas.  The subject matters are inexplicably

14   intertwined.

15        What this means, in our view, is that Ms. Nuhfer

16   already collected, already produced to the government the same

17   documents that we're requesting in this subpoena.  We think

18   this fact moots many, if not all, of their objections here.

19   You can't assert a Fifth Amendment privilege over documents

20   that have been produced to the government.

21        They have no burden objection insofar as all or most

22   of the work, as I understand it, has already been done here in

23   terms of collecting the documents.

24        It also, more broadly, your Honor, it refutes this

25   notion that Ms. Nuhfer is somehow tangential to this matter.

1    In respondent's opposition brief they note that both she and

2    David Rivera, the principal of the defendant in the underlying

3    litigation, they are both targets of a criminal investigation

4    that, again, is inextricably intertwined with our litigation.

5    Clearly, Ms. Nuhfer is a key witness here with relevant

6    documents.

7            The final point I would just like to raise is that it

8    is important to keep in mind here that respondents bear the

9    burden on virtually all of the objections here.  We maintain

10   that their opposition brief falls well short.

11           This is part of your Honor's discovery practices.  It

12   is also in the case law.  From Rule 7 of your Honor's

13   practices, to show that the requested discovery is

14   objectionable the burden is on the objecting party to

15   demonstrate, with specificity, how the objected-to request is

16   unreasonable.

17           So, for example, they claim that responding to our

18   subpoenas would be overly burdensome.  The case law is clear

19   that when a party raises a burden objection they have to show

20   something.  They have to bring to court an affidavit, specific

21   information about how the subpoenas are overly burdensome.

22   They haven't done that here.

23           THE COURT:  What, though, about Rule 45's obligation

24   to minimize the burden to a nonparty subpoena recipient?

25           MR. SULLIVAN:  Yes, your Honor.  That certainly is an

1    obligation that we have.  We think we've met that obligation

2    here.  In letters exchanged with counsel in between the

3    opposition and the reply brief, PDV USA agreed to narrow a few

4    of the categories of documents that we've requested here.

5         We have offered, and am still happy to negotiate with

6    counsel for Ms. Nuhfer, a protocol with search terms and a date

7    range to make this process not as burdensome as they might

8    think it is.

9         As I discussed earlier, your Honor, we think that

10   most, if not all -- I haven't seen the subpoena -- but we think

11   most, if not all, of the documents we are looking for have

12   already been collected here.

13        THE COURT:  What makes you think that?

14        MR. SULLIVAN:  Because they have represented to us

15   that the scope or -- excuse me -- that the documents requested

16   in the government's subpoena are virtually identical to the

17   documents requested in our subpoena, and they've also

18   represented that they have made multiple productions to the

19   government in response to that subpoena.  They have also

20   represented that they have engaged in forensic collections of

21   Ms. Nuhfer's devices.

22        So unless the government subpoena is somehow

23   dramatically different than ours, which we think it is the

24   opposite -- they have told us they are virtually identical --

25   that is the basis for my understanding, your Honor.

```
1              THE COURT:  OK.

2              MR. SULLIVAN:  I think with that, unless the court has

3    further questions.

4              THE COURT:  I do.

5              In your reply you had delineated costs associated with

6    service and with prosecuting the motion on the service

7    sufficiency as though it was distinct from other costs.

8              Have you attempted to estimate what costs you contend

9    under Rule 37 you should receive if the motion is granted?

10             MR. SULLIVAN:  To directly answer your Honor's

11   question, no, I have not attempted to numerically estimate what

12   those costs will be.

13             I can tell you, just to be very specific about what

14   we're requesting, these would be fees paid by my client to the

15   process servers, which in this case were, in addition to

16   process servers, private investigators to track down

17   Ms. Nuhfer's whereabouts and her location, the opening brief,

18   the drafting of the opening brief, and the work associated with

19   that.

20             The reason, your Honor, is because we think, in

21   fairness, the majority of the opening brief was devoted to the

22   issue of service.  It was not until after we served that brief

23   that counsel for respondents conceded that our service was

24   proper.  This was after we had sent to the other side case law

25   showing that service by mail was proper.  So we don't think we
```

1    should have to pay for the briefing of that, that particular

2    motion.

3            Afterwards, our reply brief, again, in fairness, was

4    devoted -- really entirely to issues of scope and Fifth

5    Amendment.  Those are objections that, in fairness, the other

6    side may raise.  We think they are not meritorious, but we are

7    not seeking fees with respect to the briefing of that motion,

8    of that brief, the reply brief.

9            THE COURT:  OK.  But what is the source of authority

10   for me to award the cost of your process servers?

11           MR. SULLIVAN:  Your Honor, may I step and just get

12   my --

13           THE COURT:  Of course.

14           (Pause)

15           MR. SULLIVAN:  To answer your question, your Honor,

16   from case law, we cite the Xfinity case in our opening brief

17   where the type of service evasion was very similar to what

18   happened here.

19           THE COURT:  But was it awarded on a motion to compel?

20           MR. SULLIVAN:  Your Honor, I don't know the answer to

21   that question.

22           THE COURT:  All right.  The reason that I ask is I am

23   not convinced that it is not two separate -- your motion to

24   compel travels on Rule 45 and 26 -- I'm a rules girl; you will

25   learn this quickly -- which means that the authority that I

1    have to apportion fees travels from Rule 37.

2         The sanction that you are proposing I think draws from

3    a separate source of authority and may necessitate a different

4    motion if you sought to pursue it with respect to the process

5    servers.

6         With respect to seeking the fees that you have

7    incurred in prosecuting the motion, that is directly drawn from

8    Rule 37(a)(5), and that I obviously understand.  That is why I

9    ask what you estimate those fees or costs to be.

10        The other reason I bring it up now is that Rule 45

11   also requires that I consider -- and I understand your position

12   on burden and whether or not they have met it with respect to

13   the burdensomeness of the response.  But there is case law out

14   there as well that requires me to apportion the cost of

15   production so that the respondent to a nonparty subpoena

16   recipient isn't burdened by the cost of production.

17        So all of these numbers or at least these variables

18   are what I'm weighing, but I don't know their numeric values.

19   So that is why I'm asking.

20        MR. SULLIVAN:  Understood, your Honor.

21        THE COURT:  All right.  Did you have a full

22   opportunity to make your presentation, Mr. Sullivan?

23        MR. SULLIVAN:  Yes, and I appreciate that, your Honor.

24        THE COURT:  OK.  Mr. Reizenstein.

25        MR. REIZENSTEIN:  Thank you, Judge, and good morning

```
 1    again.
 2            THE COURT:  Good morning.
 3            MR. REIZENSTEIN:  May it please the court, Philip
 4    Reizenstein on behalf of Esther Nuhfer.  I may proceed a little
 5    bit slower than normal.  I had an eyeglass malfunction.
 6            Oh my goodness.
 7            (Pause)
 8            MR. REIZENSTEIN:  You know my phone is ringing.
 9            THE COURT:  We do.
10            MR. REIZENSTEIN:  Yes.  What's worse is that is my
11    wife.  I apologize.  I thought I had this on silent.  In 36
12    years that has never happened to me.  So pardon me a moment.
13            THE COURT:  Maybe airplane mode.
14            MR. REIZENSTEIN:  Yes.  Exactly.  I thought I had done
15    that.  OK.
16            THE COURT:  You know what is great about that is that
17    in this courtroom your transcript is based on the DAR, right.
18    So one day when one of you order this a court reporter is going
19    to have to include that in the transcript.
20            MR. REIZENSTEIN:  I had a phone malfunction and I had
21    an eyeglass malfunction.  I had my eyeglasses taped and my
22    vision is a little skewed, but I can proceed.
23            THE COURT:  OK.  At your comfortable pace.
24            MR. REIZENSTEIN:  Sure.
25            THE COURT:  The rule in my courtroom, because I can
```

```
 1    see you are wearing glasses there and I don't know how your

 2    mask is interacting with it --

 3             MR. REIZENSTEIN:  Poorly.

 4             THE COURT:  -- but if you are -- it is your choice to

 5    have your mask on or off while you are presenting.

 6             MR. REIZENSTEIN:  Thank you.  I'm fully vaccinated.  I

 7    will take it off.  It will help me a little.

 8             OK.  So I will proceed again.

 9             Esther Nuhfer is a political consultant for the past

10    two decades.  To that end, more than 15 years ago she was hired

11    after meeting David Rivera, who is the subject of a lawsuit

12    that underlies this, and she represented him and assisted him

13    in his various political campaigns.  He served time in the

14    Florida legislature, and he was a one-term congressman before

15    losing that election.

16             So by way of explanation, then, what troubles me

17    greatly is many of the facts that were conceded in the

18    plaintiff's reply.  So, for example, while they say that they

19    concede Nuhfer had a long-standing business relationship with

20    Rivera, which is something that we did say, we said it in

21    connection not with this case, these underlying facts, the

22    relationship that Rivera had and what he was hired for for

23    their clients, which is this Venezuelan oil company.  Their

24    business relationship predated this by well over a decade.  Her

25    work for Rivera in this regard only occurred after he lost an
```

1    election and was short in nature.

2          In that regard, of all the things that they said in

3    their reply brief in the beginning, that is really the mildest

4    of what we believe is incorrect.

5          The next thing that they concede is Nuhfer, and then

6    they write in quotes is assisted -- and that is the only thing

7    in quotes, and then they add their own interpretation, which we

8    believe is wrong -- Mr. Rivera in connection with the contract

9    at the center of the underlying litigation.

10          Once again, the implication is that Rivera, who was

11    hired by this Venezuelan oil company and to provide consulting,

12    the implication and what they are citing to this court is that

13    Ms. Nuhfer assisted him in his work with that oil company.

14    That is just, again, not correct and it is not what we wrote

15    whatsoever.

16          What I wrote was Nuhfer was involved in assisting

17    Interamerican, which is Rivera's company, in securing the

18    contract.  Nuhfer did no work for PDV USA nor was her company

19    in contractual privity with PDV USA.

20          Then the final thing that I feel like I need to

21    correct in their reply is that they wrote, and again out of

22    context, that -- and they use my quotes -- from her agreement

23    with Rivera, and then they write, Nuhfer was paid millions of

24    dollars.

25          I was so concerned about that being cited as something

1    that I would have said that I went and did a keyword search in

2    my own writing to make sure that I never wrote to this court

3    that Nuhfer was working with Rivera in his contract with PDV

4    USA and earned millions of dollars.  That did not occur.

5         She assisted him in obtaining this contract and was

6    paid money for it.  That is one of the reasons why she is not a

7    defendant in this case.  There is no contractual privity.  She

8    was not working closely with Rivera.

9         Now, that being said, one of the issues that is then

10   confronting this court -- by the way, that is an example, I

11   think, of what is going on here and why this is overbroad.

12        Now, as to good cause, again, I don't believe, as

13   counsel argued, that we ever said Ms. Nuhfer had no objection,

14   no obligation to file objections in this case.  What we said

15   was that good cause exists.  They say no good cause exists.

16        In the cases that we cited -- it is fairly simple -- a

17   nonparty acting in good faith, and we believe Ms. Nuhfer has

18   acted in good faith not only agreeing by sitting for a

19   deposition, by entering into discussions, which were eventually

20   not fruitful, but discussions occurred frequently on the phone

21   and through email as to the scope of the subpoena and the depth

22   of what they were seeking, and therefore that is sufficient

23   under the case law to meet the issue of good cause.

24        Also, the case law holds, as we cited in our brief, is

25   that when a subpoena is overbroad on its face and exceeds the

1    bounds of fair discovery, that is also good cause.

2          Now, as a prime example of what we believe is the

3    subpoena being overbroad, and, quite frankly, being a fishing

4    expedition, request 7 of their subpoena, and I quote directly

5    now from them:  "Concerns a meeting or meetings on a single day

6    when Mr. Rivera and Joel Brakha, the manager of Mr. Gorrin's

7    yachts, who Mr. Rivera asked to sign a version of the same

8    Interglobal Yacht Management subcontract that Ms. Nuhfer

9    previously drafted" -- and by the way, I think that means they

10   have all of this -- "Mr. Brakha testified that Mr. Rivera and

11   an unidentified woman visited Mr. Brakha's offices on March 8,

12   2018 to discuss the subcontract.  Mr. Brakha did not recall

13   whether Ms. Nuhfer was the one who attended, but given the

14   timing and the circumstances it is reasonable to assume it was

15   Ms. Nuhfer.  Respondents have never denied that Ms. Nuhfer

16   attended the meeting in question."

17         That is so overbroad on its face that if you look at a

18   definition in the dictionary that should be in there what

19   they're seeking.  Of all the people in Miami, all the females

20   in Miami on March 18, 2018, they want Ms. Nuhfer to conduct a

21   search, use electronic experts and data recovery experts, of

22   all of her communications, all of her texts, all of her data,

23   all of her emails to see whether or not she has texts, phone

24   calls and emails concerning this meeting because some woman

25   showed up with Mr. Brakha.

1          What they didn't tell the court was when they deposed

2     Mr. Brakha they showed him a picture of Ms. Nuhfer and they

3     asked him, can you identify her as the woman who attended with

4     Mr. Rivera, and he said he could not.  I think his words were

5     "I don't know."

6          Now --

7          THE COURT:  But, Ms. Reizenstein, those are two

8     different concepts, whether or not it is a specific

9     identifiable request and the burden that she will undertake to

10    find it.  So you are describing data recovery and forensic

11    examination and I am not sure why when we haven't started with

12    the first premise of is it relevant and identifiable.

13         MR. REIZENSTEIN:  Right.  I put that in there as an

14    argument to show that this is not a simple matter, that when

15    they engage in this type of speculation, and this is not a

16    request that they have narrowed, by the way.  When they engage

17    in this type of speculation and this kind of overbroad request

18    it has significant consequences for my client.  It is not where

19    she goes to a filing cabinet, pulls out a file and says yes or

20    no.  These all have significant financial consequences to my

21    client in this regard.

22         Let me pause for a moment.

23         THE COURT:  What are the financial consequences?  I

24    don't understand that.

25         MR. REIZENSTEIN:  Sure.  She has to engage a law firm,

1    engage experts, engage us to review the documents that the

2    experts obtain from her data to review to see if they are

3    responsive or not and find out if there are any other

4    objections they may have.

5         THE COURT:  What experts?

6         MR. REIZENSTEIN:  Experts in the source of data

7    recovery.  I don't think it is appropriate to say to a client

8    when subpoenaed on electronic documents or email, do me a

9    favor, just search for something.  We need to have a party that

10   insulates it, who has the ability to do this, who can then

11   testify, I did a search of all the relevant documents, data,

12   hard drives.  I mean, we would employ a forensic specialist to

13   secure these hard drives and do a search of them and do keyword

14   searches so that when we make a response there is never a

15   request or an allegation that it wasn't fully responded to.

16        I think to do that it is important to insulate a

17   client and, quite frankly, a law firm, with a third party who

18   is engaged simply to say we're telling you to look for this, go

19   see if you find it and give it to us and then we'll take it

20   from there.

21        THE COURT:  I understand now.  I completely agree.

22        MR. REIZENSTEIN:  Right.

23        THE COURT:  But as a starting premise, perhaps

24   wrongly, I assumed that the first step would be to conduct some

25   more local examination of records that would or wouldn't

1    confirm that it was or wasn't her at the meeting.  Meaning --

2    and this goes, again, to burden.

3              MR. REIZENSTEIN:  Right.

4              THE COURT:  Mr. Sullivan is right that when you are

5    advancing a position that is premised on burden, you bear the

6    burden of showing something more than we all have a burden

7    associated with litigation.  That's a known quantity and not

8    one that I can base a decision on when overcoming a subpoena.

9    So I am just trying to break this down into smaller pieces.

10             MR. REIZENSTEIN:  I understand.

11             THE COURT:  Candidly, I don't know whether or not we

12   have moved off of this particular point in terms of the failure

13   to respond at all.

14             MR. REIZENSTEIN:  Sure.

15             THE COURT:  I want to make sure that I understand your

16   position.

17             MR. REIZENSTEIN:  Right.

18             THE COURT:  Well, I thought that it was not disputed

19   that there wasn't any response or objection to the subpoena,

20   but now I understand your presentation, or I'm asking more

21   directly, is it your position that your conferral with opposing

22   counsel was functionally your objection?

23             MR. REIZENSTEIN:  No.

24             THE COURT:  OK.

25             MR. REIZENSTEIN:  To be clear, it is correct, I think

1   that the time limit that he cited and under different

2   circumstances within that time period a response is filed.

3   What I'm saying is the allegation that we would not meet as a

4   nonparty the exception under good cause and overbroad is

5   refuted by the work that was undertaken.

6        It is not as if these things came in, nobody reached

7   out and said a word, we just all sat around until a pleading

8   arrived that required us to go to court.  So I am trying to

9   show here that there was good faith in terms of speaking with

10  them.

11       It wasn't ignored.  It wasn't dismissed.  It was

12  treated seriously.  There were attempts made to resolve this

13  issue.  They did not resolve.  I agree that the objections

14  initially weren't timely made, and now I think because of the

15  argument of good faith and overbroad it is something the court

16  can still consider.

17       With regard to that, let's pause for a second and say

18  that there's no contention here or dispute that Ms. Nuhfer has

19  received a notice from the local U.S. Attorney's Office that

20  she is a target of a grand jury investigation, and in that

21  regard that fuels really and places into context all of the

22  actions that they complain about.

23       So, for example, well, I would never say, as

24  practicing law for 35 years, that almost all of the time I

25  don't speak with opposing counsel and say let me know what is

1      going on, I will take service and we will go from there.  In

2      the context of somebody who has a U.S. Attorney's Office

3      validly coming after them for a criminal indictment with the

4      same subject matter of their lawsuit, it is really -- no

5      explanation should be necessary as to why my client didn't say,

6      sure, I'll submit myself to your case and allow myself to be

7      examined and turn over everything, while I'm also worried about

8      the fact that things that I turn over could very well be used

9      against me by the Southern District United States Attorney's

10     Office.

11              THE COURT:  I don't disagree that there is a strong

12     motivation; I just don't understand that it provides a legal

13     basis to avoid lawful process, and by that I don't just mean

14     whether or not who has the better of the argument on the

15     process server --

16              MR. REIZENSTEIN:  Right.

17              THE COURT:  -- but participating in this process once

18     she indisputably did receive the subpoena.

19              She may not want to give over the documents, but a

20     subpoena is a subpoena.

21              MR. REIZENSTEIN:  No, I understand that.  I'm trying

22     to place into context, and I have more to say about this

23     issue --

24              THE COURT:  OK.

25              MR. REIZENSTEIN:  -- as to what occurred during

```
 1    service in this matter.

 2           So before any of this reared, essentially, what became

 3    sort of an ugly side note to this, someone showed up at her

 4    home and essentially committed, what she called the police as

 5    to, a burglary with regard to that.  It ended up being their

 6    process server.

 7           Now, I wasn't there and I don't know the specific

 8    details, but the police were called because people unlawfully

 9    entered a private dwelling and a premises beyond what a process

10    server is allowed to do, to the extent that a complaint was

11    filed, that I don't think has been resolved yet, to the Dade

12    County State Attorney's Office of the actions of this

13    individual.

14           THE COURT:  Can I also suggest, as I said to

15    Mr. Sullivan, I don't think that their request for fees and the

16    process server is ripe.

17           MR. REIZENSTEIN:  OK.

18           THE COURT:  Meaning, it is my impression, and based on

19    the case law that they cited, that that is not something I can

20    order on this motion.  It is not properly raised yet, if that

21    is their intention.

22           MR. REIZENSTEIN:  I'm concerned about fees and costs

23    but I'm also concerned that the court understand the context --

24           THE COURT:  Context.

25           MR. REIZENSTEIN:  -- of my client's actions.
```

1          I think to summarize, then, it is simply that there

2    was an unfortunate incident as this started, and, of course,

3    this is in the context of her obviously not wanting to do all

4    other than what is lawfully required to come forward because of

5    the pending indictment for the U.S. Attorney's Office.

6          Now the next point that we have raised in the context

7    of this being overbroad and burdensome is they already have the

8    documents for the most part here.

9          THE COURT:  Can I ask a very blunt question.

10          MR. REIZENSTEIN:  Sure.  Yes.

11          THE COURT:  Is it true that documents have already

12    been produced to the government in response --

13          MR. REIZENSTEIN:  Yes.

14          THE COURT:  Can I then try to understand the objection

15    to duplicating that production in response to this subpoena?

16          MR. REIZENSTEIN:  Sure.  There's two parts to it.

17    While I think the subpoenas are very close in nature, they are

18    not exact in nature, and I think that the documents that were

19    provided to the government would be somewhat different than the

20    documents that were provided here.

21          For example, this issue regarding this contract and

22    this meeting, and there are others, are not similar to what the

23    government said.  There is also an issue regarding the fact

24    that we don't know for certain what's going to be the

25    government's ultimate action here.  Whatever is provided in

1   this case automatically becomes out there for the public to

2   see.  So there is that concern.

3         THE COURT:  Why couldn't we then consider a protective

4   order?

5         MR. REIZENSTEIN:  That would be something we would do

6   if that were to come down here.

7         As a final point on this, Judge, I am fairly confident

8   that these subpoenas are not the same, and I can present it to

9   the court.  It came to me in the form of a photograph which I'm

10  having turned into a PDF.  I sent it to counsel the other day.

11        The government has issued subpoenas to various

12  entities in this case, this civil case, for documents or

13  depositions that were produced.  So when we get back to this

14  deposition that I was talking about of this yacht broker and

15  this issue in their case, I have a government subpoena to the

16  court reporting service for that person's deposition in what I

17  believe is the criminal case that is pending here.

18        THE COURT:  So I'm confused because I thought I heard

19  you say in the civil case and in this criminal case.

20        MR. REIZENSTEIN:  So what I'm saying is the government

21  in the pending grand jury --

22        THE COURT:  In this district.

23        MR. REIZENSTEIN:  -- in the Southern District of

24  Florida.

25        THE COURT:  Can I just attach a name to it for

1    convenience?  Who issued it?  The grand jury issued the

2    subpoena or a government attorney issued a request?

3         MR. REIZENSTEIN:  I believe -- I have it here.  Let me

4    take a look real fast.

5         THE COURT:  I'm just trying to keep my players.

6         MR. REIZENSTEIN:  I understand.

7         (Pause)

8         MR. REIZENSTEIN:  Fortunately, as I said, this was a

9    photograph that was sent to me.  It is a subpoena to testify at

10   a hearing, and it is for October 17, 2022, and it is to the

11   court reporting firm for the deposition of Joel Brakha in the

12   matter of PDV USA, which is then counsel's case.

13        So the point, again, that I'm trying to make is we

14   have a very real concern in that the existence of the subpoena

15   shows that the government doesn't have all of the documents and

16   they are peering over the shoulder of what's occurring in the

17   civil case for the purposes of what appears to us, or at least

18   what we are alert to being and obtaining additional evidence

19   that could very well be used against my client.

20        She has agreed to sit for a deposition in this case.

21   We have told them that she is going to invoke the Fifth

22   Amendment, and I fully expect the government is going to get

23   that deposition as well.  These are significant concerns that

24   we have with regard to that.

25        THE COURT:  I understand.  I truly don't mean to

1    minimize your client's concerns, but in terms of a cognizable

2    objection or privilege, really, to production, I am still

3    looking for a very direct answer to why can't they have the

4    documents you produced to the government already.

5         What is the cognizable objection to -- it can't be

6    burden.  It can't be Fifth Amendment.

7         MR. REIZENSTEIN:  Well, it actually is, because these

8    subpoenas are not -- as I said, they are very, very similar.

9         THE COURT:  Right.

10        MR. REIZENSTEIN:  We would still have to go through,

11   and I think we were in the 7 or 8 or 9,000 document range.

12        THE COURT:  So I am going to ask Mr. Sullivan, so he

13   gets heads up for this, part of what I am at least considering

14   is --

15        MR. REIZENSTEIN:  Right.

16        THE COURT:  Well, I am going to ask him, would you be

17   satiated with what they produced to the government.

18        I hear you when you say that from your opinion it

19   might not do the trick to everything they are asking for, but

20   as at least to what you produced to the government --

21        MR. REIZENSTEIN:  Right.

22        THE COURT:  -- what could be the objection to turning

23   it over to this party?

24        MR. REIZENSTEIN:  I think it is actually flipped, and

25   I think that it is, in fact, that the government has requested

1    and received more than they have done.

2           I can do this and have it to the court in a day or so

3    and present you both subpoenas and go through it line by line

4    to show you the differences, but it is my belief and opinion

5    based on this that we would have to go through the production

6    to the government and remove certain items that would be

7    responsive to the subpoena.  So the government's bigger than

8    this.

9           THE COURT:  OK.

10          MR. REIZENSTEIN:  That would be the burden with regard

11   to that.

12          THE COURT:  OK.  So I would submit there's two choices

13   there.  One is, if it is overinclusive, I will let Mr. Sullivan

14   complain and tell me that he doesn't want to go through 7 or

15   8,000 documents, some of which might not be relevant, but if

16   you were to duplicate the production exactly as is, do you

17   agree that she would have no objection there?

18          MR. REIZENSTEIN:  No, we still don't want to be

19   involved in this lawsuit whatsoever.

20          THE COURT:  Chances are she is.

21          MR. REIZENSTEIN:  OK.  No.  I want to make clear, and

22   I think you see what I'm saying is, there is a part of this

23   which their subpoena on its face is overbroad.  Regardless of

24   what the government has asked and received, what they're asking

25   for in the context of this case is overbroad, it does create a

1    burden, and, as I have shown in one of the issues, it is

2    clearly just a fishing expedition.  So on its face it is not

3    valid.

4            While I don't mean to -- I want to phrase this the

5    right way.  We have engaged in discussions in which it is

6    absolutely correct counsel has narrowed their requests for

7    that, which I think is also an additional point of showing that

8    we have come to the court in good faith for purposes of

9    litigating this because the initial subpoena at the outset was

10   really just a whole lot more than they ever really would have

11   been entitled to.  We haven't reached an agreement to narrowing

12   it down, but I think there is a concession, at least, that this

13   subpoena needs to be narrowed down.

14           I do want to make a further point here about the

15   documents, Judge.  Again, in their reply they say, and I quote

16   from page 7, that PDV USA obtained a handful of emails

17   involving Ms. Nuhfer from other third parties.

18           I think that means they're saying that is all they

19   have of everything they have requested and that does not exempt

20   the respondents from complying with the subpoena.  I think that

21   in and of itself is proof of how overbroad this is.

22           They sued David Rivera for a contract that he entered

23   into with their client.  It boggles the mind that they would

24   ask my client for that contract, which they've done.  They have

25   asked my client for their internal documents where PDV

1    Venezuela transferred their rights to PDV USA.  Can they

2    possibly come to court and say that they don't have these

3    documents that they have sued Mr. Rivera on?

4            They took his deposition two weeks ago.  They have

5    engaged in civil discovery.  That my client has to be the one

6    as a nonparty to give them their own internal documents?  That

7    is the point that I'm making when I say this subpoena is way

8    overbroad on its face, way burdensome, and is clearly engaging

9    in a fishing expedition.

10           It cannot be correct that they are in the middle of a

11   trial, or at least hearings in the Southern District of New

12   York, and they don't have the contract that David Rivera signed

13   with PDV USA to provide consulting or the contract PDV

14   Venezuela sent to PDV USA assigning the rights?

15           THE COURT:  Let me try to do it this way.

16           MR. REIZENSTEIN:  OK.

17           THE COURT:  It is your ask and proposal that the

18   subpoena be quashed in its entirety.

19           MR. REIZENSTEIN:  Well, that is the Fifth Amendment

20   issue.

21           THE COURT:  Here is where, at least, I would -- here

22   are my concerns.

23           MR. REIZENSTEIN:  Sure.

24           THE COURT:  OK.  I understand your position, and I

25   decided to hear the objections because I think they are so

```
1    important.  When we implicate the Fifth Amendment, particularly
2    of a nonparty, I am going to hear them.
3         Mr. Sullivan makes an awfully good argument about the
4    failure to respond and whether or not they should be waived.
5         In terms of moving to quash, though, I think your
6    argument is premised at this point entirely on the Fifth
7    Amendment, right?  That was your --
8         MR. REIZENSTEIN:  On the overall document in its
9    entirety.  That's correct, yes.
10        THE COURT:  She should not have to respond at all.
11        MR. REIZENSTEIN:  Right.
12        THE COURT:  OK.  So the difficulty I have with that
13   argument is that this is not a sole proprietorship under the
14   law.  It is an incorporated entity.  I have had this recently
15   in a number of criminal cases.  It is an issue near and dear to
16   my heart.  The Communication Solutions subpoena is not going to
17   be quashed on that basis.
18        Does your individual client still have a Fifth
19   Amendment right?  I am really having trouble understanding and
20   appreciating the position that she does when -- twofold.
21   Foregone conclusion.  Let me just leave it there, right.
22        I think that both the petition and the response in
23   many ways recognize the petitioner knows these documents exist,
24   even as -- what is transitioning me to this point right now is
25   your argument they clearly have these documents from elsewhere,
```

1   but there are other indicia on these papers that say foregone

2   conclusion, and Judge Torres' decision in <u>Apollo</u>.  I have a

3   very difficult time -- and the fact that these documents in

4   some degree, perhaps overinclusive, but to some degree have

5   already been turned over to the government in response to a

6   grand jury subpoena.

7          If then there is not a cognizable Fifth Amendment

8   privilege by your individual client, and there clearly isn't

9   from the entity, then we are not quashing it and we need to

10  talk about scope.

11          MR. REIZENSTEIN:  OK.  May I --

12          THE COURT:  Why you're here.

13          MR. REIZENSTEIN:  -- with the understanding that I

14  hear you loud and clear briefly, in the course of 20 or 30

15  seconds, just have access to the record, as it were, so that my

16  position is clear.

17          THE COURT:  Please.

18          MR. REIZENSTEIN:  Again, not to argue with your --

19          THE COURT:  Mr. Reizenstein, I know what you are

20  doing.  It is OK.  Go ahead.

21          MR. REIZENSTEIN:  -- what I think is a very reasoned

22  statement to me, and I don't take issue with that.

23          That being said, I have searched -- if we are going to

24  boil this right down and move quickly to the issue of sole

25  proprietorship, I have looked long and hard at this to try to

1    find some definition in the State of Florida.

2         Counsel for the plaintiffs cited, and I'm sure they

3    have better research than me, could only come up with something

4    from the Florida Department, Division of Corporations.  I can't

5    seem to locate cases that distinguish between it.  My client,

6    in fact, has a corporation that she filed, but I think the

7    record is clear she is a single individual, there are no other

8    people who are there, it is in all other de facto, if not de

9    jure, circumstances a sole proprietorship.

10         I acknowledge the decision in the Stein case by

11   Magistrate Torres, and you have obviously had this litigation

12   before you.  I note in the Stein case, while they talk about

13   the sole owner and custodian of records of a corporation, they

14   don't really look at -- and I was just reading it while counsel

15   was arguing -- the issue of whether or not it is a sole

16   proprietorship.  I think this is something that is ripe for

17   perhaps review at a higher level than myself.

18         THE COURT:  I think you're right.

19         MR. REIZENSTEIN:  Because for me, and I will conclude

20   with this, I look at this as saying, I have a client who is her

21   own businesswoman and, like millions of other Americans when

22   they open a business, their CPA says, OK, here is what you need

23   to do; you have to form a corporation so you can get a business

24   bank account; you put your money in there, and then you pay

25   your taxes on it.  That seems to me to be some sort of now

1    loophole gotcha for every business in the United States, and

2    there's probably hundreds of millions, if the government comes

3    looking for you or you get wrapped up in a lawsuit and the

4    government is looking for you, all of the sudden the Fifth

5    Amendment to the United States you've lost it because of our

6    practices and procedures in our society.  You are bound by the

7    law, and I understand that, but we are objecting to that, for

8    what it is worth, and I am prepared now to address your

9    concerns, and thank you for that time.

10          THE COURT:  Of course.

11          MR. REIZENSTEIN:  Sure.

12          So, again, with regard to scope, I will say counsel

13   reached out to me yesterday.  We have open lines of

14   communication and speak frequently.  There is never a problem

15   in that.  I think we'd agree to that -- may not agree to much

16   else -- but we agree to that.

17          We did talk, and the substance was, gee, we're very

18   concerned about these issues, Mr. Sullivan, but thanks for

19   reaching out and let's keep talking.

20          So if your concern is scope, I can present arguments

21   to you today, I can sit with counsel at your direction, we can

22   prepare something for you.  If there are particulars, and I'm

23   just throwing this out here and freewheeling, if there are

24   particulars that we can't particularly agree to, some of the

25   numbers in that subpoena, we can refer to you with what we have

1    agreed to.  I will proceed however you wish.

2         THE COURT:  I appreciate that because, again, I am

3    very sensitive to a nonparty subpoena recipient and the burden

4    that is on her, and this is a unique case.  Believe it or not,

5    I often have third-party subpoena recipients who have the

6    specter of a criminal investigation being out there and it

7    being a reason they don't want to participate.  Yours is,

8    quote, tangible.  I understand that.

9         We have already talked about the fact that it is not

10   going to overcome her compliance with the subpoena.  So what do

11   we do with it?

12        MR. REIZENSTEIN:  Sure.

13        THE COURT:  What I would propose, hearing from both of

14   you, and time is not as much an issue for me as it is for

15   Mr. Sullivan.  So while I always prefer, once my parties know

16   that there is not going to be a motion to quash, where do we go

17   from here.  I don't know the extent to which Mr. Sullivan's

18   client has that flexibility.  I know that the email requesting

19   for this hearing date observed the upcoming discovery deadline

20   in the underlying litigation.

21        So I put that out there first, but I would come back

22   to the suggestion that the least burdensome, least

23   objectionable manner of substantially complying with this

24   subpoena would be to duplicate the production that's been

25   provided to the government and would again ask why that is not

1    sufficient.

2            I would also then, in anticipation of where you

3    started with respect to a forensic examination and a

4    third-party vendor, I couldn't agree with you more that that is

5    the best practice, and I wish it were the case in every one of

6    my civil cases.  It is not.  But it might not be necessary

7    here.

8            Before we go down that path, I would want to know very

9    specifically from the subpoenaing party why she should have to

10   undertake such a probing analysis of her deleted and otherwise

11   cold-stored data and what those repositories are.

12           So anything that would go into backup data, data

13   recovery, anything like that, that would require a second

14   hearing where I would have to say what are you looking for and

15   what is the cost associated with it.  So start back where I was

16   trying to get you to go.

17           MR. REIZENSTEIN:  Sure.  So I will say this.  I would

18   need to sit with Mr. Sullivan subpoena with subpoena, meaning

19   what we have complied with to the U.S. government -- and by the

20   way, a lot of that the answer was we don't have any.  So it

21   would be the same.  To the extent that his request is within

22   the government's request, sure.  So if his request fits inside

23   what the government has requested, we can then fulfill his

24   requests.  Some of them are identical.  There might be some

25   year differences to it, which are probably easily resolved by

1    us just doing searches at this point with what was turned over.

2    So if he is at 2018 and the government was at 2016, we should

3    be able to excise things out.

4         THE COURT:  How are the documents that you have

5    produced stored?  Do you have it up on a review platform?  Do

6    you just have it saved on a share drive?

7         MR. REIZENSTEIN:  We employed a review platform that

8    was significantly less expensive than I know the one that

9    everybody uses is called Relativity.

10        THE COURT:  Relativity is top of the line.

11        MR. REIZENSTEIN:  Yes, and it is a lot of money.

12        THE COURT:  That is the Rolls Royce of review

13   platforms.

14        MR. REIZENSTEIN:  So what we did, in answer to the

15   government's subpoena -- I have an associate who is much

16   younger than me, which means she understands all of this, but,

17   unfortunately, she had a family emergency in Pittsburgh.  They

18   are different formats.  One is native format and then another

19   is a PDF, and there is a third.

20        THE COURT:  TIFF.

21        MR. REIZENSTEIN:  We used the platform called Cloud9.

22   We went up to it.  They did their work.  We pulled it down.

23   Now we have it on a cloud drive.

24        THE COURT:  OK.  When you say "they did their work,"

25   you mean your document vendor, Cloud9?

1            MR. REIZENSTEIN:  Cloud9 assisted us in two things.

2    We did the searches.  Once we had the raw data, we did the

3    searches and the keywords and then we were able to manipulate

4    the formats.

5            THE COURT:  OK.  So that is great because then to the

6    extent there is any manipulation of the original documents in

7    order to comply with what Mr. Sullivan's looking for, you can

8    do it automatically and it is in a manner that you can, without

9    duplicating costs, be able to produce it.

10           So without any challenge to your previously-noted

11   objections, assuming that those for now are preserved for

12   appeal, I'm just asking you at this posture what to my proposal

13   that you produce from that body of documents to Mr. Sullivan in

14   response to the subpoena?

15           MR. REIZENSTEIN:  As I said, the answer is we are

16   going to follow the court's order.  I would just need to sit

17   down with him side by side and make sure --

18           THE COURT:  You're right.  I should ask a better

19   question, which is, anything else that you and I have not

20   talked about yet that would be an impediment to you producing

21   from that body of documents that we haven't covered?

22           MR. REIZENSTEIN:  I have one consideration that

23   concerns me that has nothing to do with documents but is the

24   thing that rules my life, and that is time.

25           THE COURT:  Time.

```
1              MR. REIZENSTEIN:  So I would like to hear from

2    Mr. Sullivan, and let me just start the opening bid, which is

3    as follows.

4              I just returned from two weeks of what should have

5    been vacation but deadlines ensued.  I have got two this week

6    and an argument in the Southern District of New York where they

7    are trying to remove me as a defense attorney for a conflict.

8    That's on Wednesday.  I'm fairly booked, and I also lost the

9    associate who works on this just with a family matter for a few

10   days, but she can work remotely.

11             So I want to work with him once you rule and I see

12   where you are going with this.  What I don't want to have

13   happen is then we defeat it because I have sometime issues and

14   I want to let you very specifically know I have these time

15   issues.

16             THE COURT:  And what was your opening bid?

17             MR. REIZENSTEIN:  Just to tell you how swamped I am

18   and concerned I am and then to see what Mr. Sullivan can

19   propose, and then I will work within that the very best that I

20   can.

21             THE COURT:  I will warn you that usually when I have a

22   discovery hearing and I compel the production of documents, I

23   order it done within 14 days.

24             MR. REIZENSTEIN:  Right.

25             THE COURT:  So that is really the opening bid that
```

1   you're working off of.

2   　　　　　MR. REIZENSTEIN:  Right.

3   　　　　　THE COURT:  I will hear from Mr. Sullivan before you

4   bid against yourself, so to speak.

5   　　　　　MR. REIZENSTEIN:  I can throw myself on the mercy of

6   the court and say Judge Martinez denied a motion regarding a

7   sentencing memorandum and a sentencing and the Fourth District

8   gave me until Friday because of my vacation to file a reply

9   brief, and then I have got to be in New York.  That is where my

10  concerns are literally starting today when I leave here.

11  　　　　　I have got to get this out.  I can have someone begin

12  to work on this remotely and also can discuss with my client --

13  there is another law firm that is assisting us in the criminal

14  investigation, and I am sure they can throw some people at it,

15  but I need to speak with her about that and them.

16  　　　　　I am going to do everything I can to reply quickly.  I

17  would like to know what his issues are and then I will tell you

18  exactly what --

19  　　　　　THE COURT:  Well, I know one of his issues is his

20  discovery period is closing and, to the extent they have

21  followup issues with what is produced, they don't want to have

22  the prejudice of not being to come back to this court.

23  　　　　　MR. REIZENSTEIN:  That is why I raised it.

24  　　　　　THE COURT:  So then understanding that even a little

25  bit of attention is attention away from your other pressing

```
 1   matters, it -- well, I suppose we still have to hear from

 2   Mr. Sullivan.  It seems as though you don't have to rereview

 3   the body of documents.  You may or may not be using automated

 4   parameters.  Like you said, perhaps the existing data might be

 5   for five years and they are seeking four.

 6          MR. REIZENSTEIN:  If we agree on parameters, I know I

 7   have someone who can work remotely on this.  That being said,

 8   since I'm not conversant and I never wanted to learn how to go

 9   up to Cloud9 and those things, I would have to rely on them.

10   You know better than me probably how long it takes, and I will

11   have someone who is out of state dealing with a family issue,

12   but I think is sitting around in a house watching some kids,

13   work on it.

14          THE COURT:  OK.

15          MR. REIZENSTEIN:  Yes.

16          THE COURT:  All right.  Mr. Reizenstein, I asked you a

17   lot of questions.  Did you have an opportunity to make a

18   fulsome presentation?

19          MR. REIZENSTEIN:  Yes, I did.  Thank you.

20          THE COURT:  OK.

21          MR. REIZENSTEIN:  I would just say as we are

22   discussing this I may reach out to that person now and say I

23   need you to be available, please confirm kind of thing.

24          THE COURT:  All right.

25          MR. REIZENSTEIN:  I can do that by text.
```

```
 1              THE COURT:  I appreciate it.

 2              MR. REIZENSTEIN:  Although I'm really, really

 3    frightened to go touch my phone at this point considering how

 4    this started.  Again, I sincerely apologize.  That has never,

 5    ever, ever happened to me.  This is the first time.

 6              THE COURT:  At an investiture a few years ago a phone

 7    rang behind me, and not in the judge's box, before I sat in

 8    that box, but the person attending had a personal ring go off

 9    that they were too embarrassed to reach for and turn off, but

10    the person called right back and it just kept going on loop.

11              MR. REIZENSTEIN:  Thank you, Judge.

12              THE COURT:  Indeed.

13         Mr. Sullivan, start where I pushed Mr. Reizenstein to

14    end, which is what to my suggestion that they produce to you

15    what they produced to the government as a starting point and

16    without prejudice to you saying I'm still missing the following

17    categories of documents, but starting there.

18              MR. SULLIVAN:  Thank you, your Honor.  A few initial

19    remarks to this proposal, which I think we would be amenable to

20    under certain circumstances.

21         What we would really need to know, it is not just a

22    matter of sitting down side by side with the subpoenas; this

23    request mirrors this one, this one is a little different than

24    this one.  What it really comes down to is what's been done.

25    What sources of documents have been collected.  Have
```

1    Ms. Nuhfer's emails been collected, have her text messages, her

2    What's App messages, which, by the way, we know she uses for

3    business.  We are not fishing here.  We have seen text messages

4    discussing business matters with her consulting firm.  What

5    date range has been searched.  What search terms have been

6    used.  Basic ESI parameters.

7        It sounds like Mr. Reizenstein has an associate who

8    probably knows the answers to these questions, but certainly we

9    would need to know in very short order what parameters were

10   used.

11       Of course, we also need a sense for their

12   responsiveness criteria that that comes from the subpoena.  If

13   we can get comfortable that the categories of documents being

14   requested sufficiently overlap with what we're requesting, and

15   hypothetically I will accept counsel's representation on that

16   fact, then I think we're fine.  It is just a matter of

17   understanding what's been done.

18       I should say on the flip side of that, what's been

19   withheld.  Are they asserting some sort of a Fifth Amendment

20   objection over documents that they maintain are not corporate

21   records?  We would need to know that.

22       We would like to see a privilege log.  I understand

23   this is a third party.

24       THE COURT:  The local rule requires a privilege log.

25       MR. SULLIVAN:  I'm sorry, your Honor?

1          THE COURT:  Our local rule requires a privilege log

2     for anything that's been withheld.

3          MR. SULLIVAN:  Excellent.

4          MR. REIZENSTEIN:  Let me cut to the chase.  There were

5     either documents that were not responsive or they were turned

6     over.  There was no privilege --

7          THE COURT:  Just so we are all on the same page,

8     because I can see Mr. Sullivan making a slight face, that may

9     be the case for what has been produced.  Anything else, if you

10    were to withhold something --

11         MR. REIZENSTEIN:  Oh, of course.

12         THE COURT:  -- everyone understands that our local

13    rule requires production of a privilege log or it's waived.

14         MR. REIZENSTEIN:  As I recall now, the government

15    subpoena was fairly broad to the point where -- I mean, there

16    were a lot of campaign literature from years and years ago that

17    had people's names in it.  I am like, do you really need to see

18    the fundraiser for so-and-so at the local political club in

19    Hialeah in 2017.  That's not what you are looking for.

20         THE COURT:  Understood.

21         MR. REIZENSTEIN:  So it was in the nature of that, and

22    then there were hundreds and hundreds of duplicates.  There was

23    no privilege log and there was nothing litigated with regard to

24    what they requested other than me just saying, you sure you

25    really want the stuff about John McCain's campaign.

```
1              THE COURT:  OK.

2              MR. SULLIVAN:  So in summary, your Honor, if we could

3    get comfortable as to the precise parameters of what was done

4    here and what was withheld, then I think this is a solution

5    forward.  We certainly have no interest in making a third party

6    go back to the well, so to speak, when the collection has

7    already been done.  It just doesn't make any sense.

8              So I think that's our position there.

9              I guess I should just say, to the extent we do sit

10   down and determine that the responsiveness criteria that their

11   team has been employing to determine whether a document is

12   responsive or not, if that criteria is in fact broader than our

13   subpoena, we would be happy to just accept the document

14   production in its entirety.  To the extent it is 7 to 8 to

15   9,000 and not 70 to 80 to 90,000.

16             We actually already stipulated in this case to have

17   Ms. Nuhfer's production be subject to the protective order.

18   The protective order very clearly provides for that.  It is

19   like every other protective order.  Mr. Reizenstein raised

20   concerns about this becoming public.  It is under a protective

21   order, just like any other documents that would be produced.

22             They are welcome to mark confidential whatever they

23   have a reasonable basis for marking as confidential.

24             I take your Honor's point that certain components of

25   our subpoena might have been a bit reaching with cold storage
```

1    facilities and whatnot.  At bottom here what we're looking for

2    is emails, text messages, documents that have been saved.  We

3    are not asking -- and to the extent our subpoena does we will

4    sort of withdraw the request -- for some sort of a soup-to-nuts

5    forensic exam here of every document that's ever crossed the

6    devices of Ms. Nuhfer.

7           That said, we do need ESI.  This is not a case where

8    the party can sort of pull together the contract and the board

9    minutes and a few documents that everybody agrees are core and

10   central.  This is not a case like that.  We do need ESI, but it

11   sounds like we are in agreement on that.  Again, that is all

12   the more reason we need to understand what exactly was done

13   here.

14          I am happy to address timing, unless your Honor has

15   questions about what I have just discussed.

16          THE COURT:  Well, I am going to make the observation

17   that our dearly departed Dave Brannon said five years ago, all

18   discovery is ESI at this point.  So that is not unique and that

19   is not any type of exception here.  But my point should be more

20   generally understood that when it is a nonparty subpoena

21   recipient, I am going to require that you identify the

22   documents you are seeking with enough specificity that it

23   doesn't undertake a search of a scope that isn't proportional

24   to that subpoena recipient.  Part of that consideration does

25   take into account your ability to get documents from other

1    repositories or the expense that it will obviously require of

2    that respondent.

3         So that is the prism through which I am talking about

4    these documents, and, again, through the proposal of take what

5    they have first and -- I understand you would still have

6    questions about how they were collected or whether or not they

7    overlooked known and important repositories that they couldn't

8    be fully responsive, but nonetheless, they will inform any

9    additional requests that you make that this reveals the absence

10   of this and you need to go get it.

11        MR. SULLIVAN:  Yes, your Honor.  It is a two-step

12   process.

13        THE COURT:  Exactly.

14        MR. SULLIVAN:  So we would look at the production and

15   say, my gosh, they haven't even produced emails from this six

16   months.  I'm not making any accusations, but it is just a

17   hypothetical.  Or we look at it and we say, this is everything

18   we need.

19        But just as a secondary kind of corollary there, we

20   really would request that there be a requirement that we are

21   told what was done here because we don't know what we don't

22   know.  There are spoliation issues in our underlying

23   litigation.  In order to get comfortable --

24        THE COURT:  I understood that from your petition.  But

25   some of these categories -- I'm looking at, I think this is her

1   subpoena -- give me a split second.

2          MR. SULLIVAN:  The subpoenas are identical, your

3   Honor.

4          MR. REIZENSTEIN:  Well, actually, I'm just looking at

5   them really closely and their paragraph 10 is identical to the

6   government's subpoena.

7          THE COURT:  Sorry.  I was looking at the subpoenas at

8   issue in my case, and I was looking at request for production

9   No. 3:  All documents and communications concerning PDV USA's

10  attempt to transfer its rights and obligations under the

11  consulting agreement to PDVSA.

12         That strikes me, and maybe you two see it differently,

13  as an example of what are you looking for there, without asking

14  her to apply search terms, what are you looking for there.

15         MR. SULLIVAN:  Certainly, your Honor.  I guess I will

16  note at the outset that request No. 3 has not been objected to

17  by counsel for Ms. Nuhfer.  I will nonetheless, of course,

18  answer your Honor's question.

19         What happened in our litigation was there was an

20  attempt by our client, PDV USA, to assign the contract with

21  David Rivera to its ultimate parent company.  Now, what does

22  that have to do with Ms. Nuhfer?  We don't know, of course,

23  because we haven't actually seen documents in her possession.

24  We know that she was blind copied, BCC'd, on a number of emails

25  during the 2017 time period when this assignment occurred.

These are emails from David Rivera to our client, to PDV USA.

This is an entity largely employed by individuals from Venezuela.  Ms. Nuhfer was blind copied on these emails.  The emails run the gamut.  They concern payments over the contract, they concern invoices, progress reports that Mr. Rivera claims demonstrate that he's performed.

Can I represent to your Honor that I specifically remember an email about assignment on which Ms. Nuhfer was copied?  No, I can't standing here right now, but we certainly have reason to believe she was involved in the day-to-day communications between Mr. Rivera and our client.

I think something like request No. 3 would probably be captured by search terms, that I assume Mr. Reizenstein has already run and would be responsive to probably request No. 1. To specifically answer your question, that is the genesis of request No. 3.

THE COURT:  Right.  Your reference back to No. 1 is exactly why I say then what are you looking for in No. 3, how do they differ.

To the extent you are drawing from a body of documents you already have and you are asking her to identify further communications that specifically relate to a particular event, I think you identified 2017 or communications between particular persons, that's the level of specificity that I am going to require.

1              No. 3, I understand that you have a sense of what you

2      thought it meant, but on its face I don't understand how it is

3      different than No. 1, and I don't want the parties spending a

4      tremendous amount of time figuring out what would satisfy one

5      versus the other.  That is why I'm asking about that one.

6              I hear you when you say that they didn't object, but

7      isn't your primary argument they didn't object to anything?

8              MR. REIZENSTEIN:  I would say we raised it today --

9              MR. SULLIVAN:  Understood, your Honor.

10             MR. REIZENSTEIN:  -- and we objected as an example of

11     it being two things overbroad.  If you look at documents and

12     communications, communications is one thing, but documents, it

13     is their client, PDV USA.

14             THE COURT:  Right.

15             MR. REIZENSTEIN:  We don't have access to their

16     documents.  However their company transferred it to PDV USA

17     from PDV Venezuela has nothing to do with us.

18             THE COURT:  I understand that.

19             MR. REIZENSTEIN:  Communications is one point, and I

20     get that if there are conversations with Mr. Rivera, but the

21     documents between their client and I guess an offshoot

22     transferring something --

23             THE COURT:  I am going to go out on a limb and assume

24     that documents were somewhere defined as all documents within

25     the meaning of Rule 34?

```
 1              MR. SULLIVAN:  Yes, your Honor.

 2              THE COURT:  There it is.

 3              MR. SULLIVAN:  I don't understand Mr. Reizenstein's

 4      objection.

 5              THE COURT:  So you understand that it just means -- it

 6      might be a What's App text, but it is within Rule 34's

 7      definition of document --

 8              MR. REIZENSTEIN:  I do understand that --

 9              THE COURT:  -- as opposed to a final agreement.

10              MR. REIZENSTEIN:  -- but I'm sort of saying that's a

11      communication.  I was just reading more into it, like if there

12      is some sort of internal documents we don't have those.  We may

13      have communications.

14              THE COURT:  Right.

15              MR. REIZENSTEIN:  Right.

16              THE COURT:  I guarantee that is not what they're

17      looking for or what I would compel.  If it is not within your

18      control, you can't turn it over.

19              MR. REIZENSTEIN:  Exactly.

20              THE COURT:  So no dispute there.

21              OK.  Let's get to the heart of what we are going to do

22      here.  You have heard me say that 14 days is my norm when I

23      have compelled documents.  I know you have upcoming deadlines.

24      The delay in this case is largely mine.  Through the mystery

25      coding that sometimes happens in our district when it was
```

1    referred, I overlooked it.  So we have set it for hearing and

2    we are going to resolve it as quickly as we can, but I have got

3    you up against this deadline, and, I'm sorry, but what do we do

4    now?

5             MR. SULLIVAN:  Thank you, your Honor.

6             I want to be, of course, reasonable.  Just for

7    context, we have an August 19th, Friday, fact discovery

8    deadline.  Was I prepared to come before your Honor today and

9    say everything needs to be done and wrapped up by Friday?  That

10   might not be the most reasonable request.  I think our client

11   would like to see documents as soon as possible.

12            Taking this in steps, perhaps -- again, recognizing

13   that the documents are going to be subject to a protective

14   order, recognizing that there is significant overlap in the

15   subpoenas, a flip of the production I would ask occur this

16   week.  Insofar as you take the documents, put a new Bates stamp

17   on them.  They've already been shipped out the door.  There are

18   no privilege concerns.  Give them to us.

19            MR. REIZENSTEIN:  Wait.

20            MR. SULLIVAN:  Can I finish?

21            THE COURT:  Let me try to -- go ahead.

22            MR. SULLIVAN:  Likewise, I think -- again,

23   Mr. Reizenstein might have a different view -- to the extent

24   all of this work has been done, simply advising us as to some

25   of the basic parameters that I have outlined could perhaps

1    occur this week.  Again, we will seek relief from the

2    underlying litigation in New York as necessary, to the extent

3    we have to, but I guess my point, your Honor, is --

4         THE COURT:  Can I ask a question.  I understand your

5    discovery deadline is the 19th.  What is your next impeding

6    deadline that production here in 14 days could prejudice?  Do

7    you have something else going on that is coming up in the

8    Southern District?  Because usually the discovery deadline just

9    means you can't ask me for anymore help, you had to ask by the

10   19th.

11        MR. SULLIVAN:  No.  Exactly.

12        THE COURT:  By me, I meant that judge.

13        MR. SULLIVAN:  Yes, exactly right.  That is why I'm

14   not asking for everything to be done this week.

15        To the extent it drags on to the next, are we going to

16   be prejudiced?  Again, I certainly can't speak for Magistrate

17   Judge Lehrburger, who is in charge of our schedule, as to

18   whether we would somehow be not permitted to receive and then

19   serve to the other side these documents.  I don't suspect that

20   will be an impediment, and I can't certainly point to another

21   deadline that if it were to spill to two weeks then we have a

22   real problem.  I can't make that representation to your Honor.

23        THE COURT:  At least I know you have got a good judge.

24        MR. SULLIVAN:  Yes, your Honor.

25        THE COURT:  Again, I unfortunately have to own that

1    the delay since your petition was filed and your hearing date

2    is mine, and I'm sorry, but I am not going to trim their time

3    to respond by that much because of me.

4              MR. SULLIVAN:  Understood, your Honor.

5              MR. REIZENSTEIN:  May I just be clear about something?

6    It is just not -- and I maybe didn't do a good enough job

7    clearing this, but in now looking very closely at the

8    government subpoena there is one paragraph that has like 11

9    subparagraphs or letters that involve the same individuals.

10   That's exactly the same.  But the government asked for loans,

11   bank records, financial statements, documents, tax returns,

12   calendar book appointments, all sorts of other matters that I

13   just can't say, well, here's what we gave to the government and

14   take a look at that because none of that is covered in here.

15             Now, as I said, the government's broader, theirs is

16   smaller.  Within what we did we are still going to have to go

17   and if a search term coincided with wires or transfers or bank

18   statements, they've got that, but now we have got to go in and

19   excise that out because I'm giving them things they never asked

20   for that is personal data to my client that no one would ever

21   want to volunteer.

22             THE COURT:  I understood that.

23             MR. REIZENSTEIN:  OK.

24             THE COURT:  I have understood that that is your

25   position.

```
 1              MR. REIZENSTEIN:  I heard them say, well, just flip it
 2    to us this week.
 3              THE COURT:  I understand that is their request, but
 4    that is not what is in the subpoena and it is not what I am
 5    compelling.
 6              MR. REIZENSTEIN:  All right.
 7              THE COURT:  So it is going to be -- you both are
 8    hearing me, I hope, which is, you have got a body of documents
 9    that at least complies or responds to their subpoena in part.
10              MR. REIZENSTEIN:  Probably most and then more than.
11              THE COURT:  You will know better than we do.
12              MR. REIZENSTEIN:  Right.
13              THE COURT:  You will also make a competent choice
14    about what from there to produce to the other side.  But in
15    order to produce, you will not have to engage in collection or
16    any back-to-the-well efforts.  Rather, you have got it loaded
17    on a review platform.
18              My point here is, it should significantly shorten the
19    response time.  The extent to which you manually or conduct a
20    linear review of those documents before you produce it is going
21    to have to be a decision that you and your client and your
22    associate make depending on what the nature of those documents
23    are.  Mr. Sullivan and I don't know.  So that is on your end to
24    decide.
25              It will remain Mr. Sullivan's ability to come back and
```

```
 1    say, we got these documents, we got them quickly, we appreciate
 2    that, but these are the following requests that weren't
 3    responded to and, after conferring with Mr. Reizenstein,
 4    there's been no effort to produce.  How you actually
 5    logistically comply with it I am going to leave to you, but you
 6    will have to do it fairly quickly, not within the next seven
 7    days, and I understand your position, Mr. Sullivan, if it was
 8    going to be an exact dupe it could have been run today, but
 9    they are going to have the ability to look at it and make a
10    decision.
11              MR. SULLIVAN:  Understood, your Honor.
12              MR. REIZENSTEIN:  Here's what I would propose, because
13    in just thinking that some requests do mirror the government's,
14    those can be complied with rather quickly because, as I said,
15    there is a portion of the subpoena that is exactly the same.
16              THE COURT:  Right.
17              MR. REIZENSTEIN:  So that is the easy part.
18              THE COURT:  I was thinking that to the extent you can
19    get a rolling production out --
20              MR. REIZENSTEIN:  Yes.
21              THE COURT:  -- that would be exceptionally helpful in
22    probably changing petitioner's spirit about the rest of the
23    conferral.
24              MR. REIZENSTEIN:  Sure.
25              THE COURT:  So to the extent that you can just grab --
```

1    and hopefully your review platform has tags.

2         MR. REIZENSTEIN:  It does, yes.  I will do that.  But

3    then there is a portion that is going to require more intensive

4    work.  So that is why I'm saying if we agree to the rolling

5    production, which I think is logical and there is no reason not

6    to, I am still going to ask for 14 days because I don't know

7    how I can humanly possibly do this otherwise.  I don't have a

8    large law firm.

9         THE COURT:  You have heard me that I am not inclined

10   to trim it less than the 14.  I understand that is going to put

11   you past your fact deadline, but understand that that is a --

12   when we are talking about rolling, I don't mean that the

13   rolling begins within 14.

14        MR. REIZENSTEIN:  No, no, no.

15        THE COURT:  I mean it concludes in 14.

16        MR. REIZENSTEIN:  I'm talking about if to the extent

17   when I leave here and I can have someone look at this and say,

18   OK, look at paragraph 10, it is the exact same as the

19   government's.  What did we provide to them because this is

20   exactly the same language.  Excise all of those out and prepare

21   to send those.  I don't want to say that can be done today,

22   tonight or tomorrow, but I certainly can say to you that phrase

23   that I just used to you will be delivered to the person who is

24   going to be working with me on this within the hour.

25        THE COURT:  OK.

1        MR. REIZENSTEIN:  So then I anticipate that would

2   occur very quickly and then we will get into the meat of the

3   work --

4        THE COURT:  OK.

5        MR. REIZENSTEIN:  -- which is a little bit harder.

6        THE COURT:  Understand too that sometime within that

7   14-day time it is, I think, necessary to confer with

8   Mr. Sullivan, probably after you have reviewed with your team

9   and identified the extent to which this subpoena includes

10  categories that haven't been collected, and this goes to

11  Mr. Sullivan's point of, OK, but how did you get the documents

12  in the first place.

13       MR. REIZENSTEIN:  Right.

14       THE COURT:  There may be repositories that you did not

15  consider for the government subpoena.  I know you have talked

16  about the phone collection, and so it may be the case that this

17  hasn't happened.  But somewhere in between you all have to

18  figure out if in fact your collection for the government is

19  going to completely satisfy the petitioner's subpoena or if it

20  is not and be making efforts to figure that out before the 14

21  days runs.

22       MR. REIZENSTEIN:  I don't know if you want to get into

23  the meat and potatoes of this, but I know there are things that

24  they are looking for that I know we never had.  We couldn't

25  give them to the government.

1          THE COURT:  That will be extremely helpful then to

2    Mr. Sullivan to understand if that affects his other requests.

3          Here is my intention.  So understand that the motion

4    is granted.  The objections are largely overruled.  The

5    document production is due within 14 days.  However, so that we

6    don't get too far out and have a problem brewing, that we

7    haven't made an effort to fix, it is my intention to set you

8    down for a status, and I will listen to you both on proposed

9    dates, so that after you have had a chance to speak with the

10   benefit of these rulings and Mr. Sullivan has withdrawn any

11   request for some deep-dive forensic review, and,

12   Mr. Reizenstein, you have a better sense of what it is that

13   they are truly looking for, I can know in advance if there are

14   any continuing objections over the petitioner's position that

15   more has to be collected or what has been produced so far is

16   not what they were looking for or what they expected, but I'm

17   looking right around the 14-day mark, whether it is right

18   before or right after.  So it is essentially --

19          MR. REIZENSTEIN:  As to a report to the court, like a

20   status?

21          THE COURT:  No.  I think it would be cheaper and

22   faster if we have it as a status even if we did it

23   telephonically rather than have you put pen to paper.

24          MR. REIZENSTEIN:  That's fine.

25          MR. SULLIVAN:  That's fine with us, your Honor.

```
 1              THE COURT:  OK.

 2              MR. SULLIVAN:  If I may, your Honor.

 3              THE COURT:  What is on your mind?

 4              MR. SULLIVAN:  My apologies.  So that I fully

 5   understand the court's ruling, Mr. Reizenstein has represented

 6   that he is going to go through this prior document production

 7   and some documents will go to us and some will not.  I guess,

 8   is part of the court's ruling today governing the

 9   responsiveness criteria that allows Mr. Reizenstein to make

10   that decision?

11              In other words, I don't really have any visibility

12   into sort of what -- the decision-making process.  Is it just

13   whether the documents are responsive to our subpoena?  I know

14   your Honor has raised some concerns with at least one of the

15   requests.  So I guess I'm just trying to understand what the

16   criteria will be, or is this just something that your Honor

17   wants the parties to sort out amongst themselves?

18              THE COURT:  So I am not following your question, but

19   if I think I understand at least the subject matter you're

20   concerned about, your motion is granted.  Mr. Reizenstein is

21   going to respond and produce documents on a rolling basis

22   beginning as soon as he can.  He is going to complete his

23   production within 14 days.  He is going to begin that

24   production by choosing documents that he has already identified

25   and produced to the government.
```

```
 1              Within the 14-day window the parties, with the benefit
 2     of the ruling that the motion to quash has been denied and that
 3     the court has reviewed and largely overruled the objections but
 4     observed that the requests could be more narrow, and with the
 5     benefit then of further conferral and opportunity for the
 6     respondent to provide more specific objections about the scope
 7     of any of those requests, we will conduct a status conference
 8     so that if the parties continue to dispute the scope of
 9     responsive documents compelled, we can take it up without
10     briefing and hopefully resolve it in the most quick and
11     inexpensive way that we can.
12              MR. SULLIVAN:  Thank you.  Your Honor has answered --
13              THE COURT:  Oh, good.
14              MR. SULLIVAN:  -- my unartful question.  Thank you.
15              MR. REIZENSTEIN:  So just to be clear, I'm taking that
16     as a directive that there have been prior negotiations and
17     conversations between counsel where they have offered to narrow
18     certain scopes.  I am going to sit down with him and go over
19     those and still if that is still something that is agreeable
20     and move from there.
21              If, after we have made those agreements, there is an
22     additional one where there is a difficulty, we would alert the
23     court and say we are all good except for number so-and-so, this
24     is what they want, this is what we propose, you're aware of
25     everything, and we need some guidance.
```

```
 1            THE COURT:  Exactly.

 2            MR. REIZENSTEIN:  OK.

 3            THE COURT:  When you say you have to alert the court,

 4    you won't have to ask for a hearing.  I am going to give you a

 5    prophylactic date.  If, for whatever reason, you all have

 6    resolved everything and you prefer not to speak to me that day,

 7    file a joint notice that tells me there are no disputes pending

 8    and I will cancel it.

 9            MR. REIZENSTEIN:  OK.

10            THE COURT:  OK.  So again, I'm looking around the

11    30th.  The last thing I want to do is prevent the parties from

12    effectively communicating and producing documents because they

13    have got a status conference, but I'd like to keep you

14    somewhere right around there.  So it looks to me like either

15    the 29th, 30th, 31st.

16            MR. REIZENSTEIN:  I truly promise you it is not a

17    matter of being given an inch and taking a mile, and I hope to

18    show that to you through what we do in the next few days, but

19    just in terms of hearings that are scheduled I would greatly

20    prefer the 31st.

21            MR. SULLIVAN:  I have no objection to that, your

22    Honor.

23            THE COURT:  Morning, noon, or night?

24            MR. REIZENSTEIN:  That is open to the court.  I am

25    free that day and I am not the other days.
```

```
 1              THE COURT:  OK.

 2              MR. REIZENSTEIN:  And I don't want to jam myself up.

 3              THE COURT:  All right.

 4              Mr. Sullivan.

 5              MR. SULLIVAN:  Yes.  Also I can make myself available

 6    all day, your Honor.  I appreciate your Honor's willingness to

 7    do the conference over the phone.

 8              THE COURT:  Of course.  We will set it for 10:00.  We

 9    will do it over the phone.

10              If there are protracted differences that you think are

11    going to require a lot of argument, I would be grateful for a

12    notice the night before, at the latest, that tells me which

13    request numbers are still at issue or if it is not a request

14    number, that it is a scope issue -- the parties continue to

15    dispute whether or not the client has to collect old phones --

16    whatever that is just gives me a heads up.

17              If I think it is going to be a lot of oral argument, I

18    may switch us to Zoom because contested argument can sometimes

19    be difficult on the phone.  Either way we will do it remotely

20    to try to cut down on the cost of travel and appearance in

21    court.

22              MR. REIZENSTEIN:  May I have one moment to confer with

23    my client before we conclude?

24              THE COURT:  Of course.

25              MR. SULLIVAN:  Thank you, your Honor.
```

```
 1            (Pause)

 2            MR. REIZENSTEIN:  OK, Judge.  Final point, and I

 3   don't, unfortunately, know for sure.  Again, speaking frankly,

 4   as I tried to do throughout the course of this, I have a client

 5   that has bigger concerns and drives all of our actions here in

 6   this regard.

 7            Should she decide to object to the court's order, and

 8   I am obviously trying to say that if there is no objection we

 9   are going to immediately begin compliance here to get this

10   done, how do I alert the court to that?

11            THE COURT:  To an appeal of any order?

12            MR. REIZENSTEIN:  Essentially, yes.  I don't know that

13   is going to happen, but --

14            THE COURT:  I understand.

15            MR. REIZENSTEIN:  -- I have to really spend 45

16   minutes, that you don't have, sitting down with my client

17   saying, this is really where we are at, this is where I think

18   we need to go, this is how we get there, and this is what I

19   suggest.

20            THE COURT:  You appeal to the district court judge.

21            MR. REIZENSTEIN:  No, I understand.

22            THE COURT:  In terms of alerting within the 14 days --

23            MR. REIZENSTEIN:  Well, I would have to say to you,

24   gee, we have consulted other counsel, whatever, and we are

25   going to take this issue up further, it now affects counsel.  I
```

1    don't want to do anything at this point because I'm sensitive

2    to his deadlines and the delays that have occurred here.

3             THE COURT:  But I'm not sure I follow your question.

4             MR. REIZENSTEIN:  If we appeal, we are going to need

5    something in writing, I guess, or we will just get the

6    transcript.

7             THE COURT:  Oh, no, you will get a written order.

8             MR. REIZENSTEIN:  Right.  OK.

9             THE COURT:  Sorry.  A written order always follows.

10            MR. REIZENSTEIN:  OK.  I guess we would immediately

11   alert everyone if that is the course we are going to take.

12            THE COURT:  Yes.

13            MR. REIZENSTEIN:  Which I am not saying now is going

14   to happen.

15            THE COURT:  It is OK.

16            MR. REIZENSTEIN:  It has to be discussed with my

17   client, obviously.

18            THE COURT:  It might surprise you, not the only case

19   in which I have had an appeal or objections filed to a

20   discovery order that I have entered.

21            MR. REIZENSTEIN:  Right.  OK.  I just wanted to make

22   sure because we are proceeding along the lines of, let's get

23   this done and get it done as easily and quickly and least

24   expensively as possible, and I appreciate that, and I think

25   that is a strong consideration here, but it doesn't necessarily

```
 1  mean that is a thousand percent the way it is going to go.

 2          THE COURT:  I get it.  I can only do what I can do.  I

 3  don't control your client's decisions in this litigation.  I

 4  just rule on the motions that are brought before me.

 5          MR. REIZENSTEIN:  As long as that's clear, because I

 6  didn't want it to be like I had perhaps misrepresented that

 7  that was a potential, then I feel comfortable.

 8          THE COURT:  OK.

 9          MR. REIZENSTEIN:  My strong inclination is if we don't

10  do that, as I said, we will immediately start rolling

11  production.

12          THE COURT:  OK.  All right.  So then I understand your

13  point, which is then that any objection to the court's decision

14  with respect to the motion to quash I am going to have to

15  change the deadline for.  We are not going to adhere to 14 days

16  under the local rules.  It will have to be filed within five.

17          MR. REIZENSTEIN:  Sure.

18          THE COURT:  In order for the parties to know how they

19  are going to proceed here.

20          MR. REIZENSTEIN:  And that's OK.

21          THE COURT:  There will be a written order.

22          MR. REIZENSTEIN:  Right.

23          THE COURT:  If the compliance hasn't started, then the

24  petitioner will have a choice to make about moving for contempt

25  or where they are.
```

```
 1                MR. REIZENSTEIN:  That is fine.

 2                THE COURT:  OK.

 3                MR. REIZENSTEIN:  I think that is very fair, but I

 4    wanted to make sure that was out there so there were no

 5    curveballs here.

 6                THE COURT:  I am glad that you raised it.

 7                The deadline to file objections to the written order

 8    is five days.

 9                MR. REIZENSTEIN:  Sure.

10                THE COURT:  OK.

11                MR. REIZENSTEIN:  I am more comfortable with that

12    because I don't want to be in a position of saying anybody

13    misled anybody and didn't raise what could potentially be an

14    issue, and I have no idea if it will be.

15                THE COURT:  OK.

16                MR. REIZENSTEIN:  All right.  Thank you, Judge.

17                MR. SULLIVAN:  Your Honor, if I may respond?

18                THE COURT:  OK.

19                MR. SULLIVAN:  So if I can understand, is this the

20    court to which we would request, perhaps, expediting this

21    appeal or is that something we take directly to the district

22    judge?

23                THE COURT:  Either judge can shorten the time to file

24    objections, and I just did.

25                MR. SULLIVAN:  You just did, your Honor.
```

```
 1              THE COURT:  Yes.

 2              MR. SULLIVAN:  Thank you, your Honor.

 3              THE COURT:  OK.  All right.  I think we are all on the

 4   same page.  That was extremely helpful.  Took a little bit

 5   longer than you might have prepared to be with me, but I had

 6   questions.

 7              So with the benefit of your presentations, you know

 8   the ruling, but I will memorialize it in a written order, which

 9   is appealable.

10              MR. REIZENSTEIN:  All right.  Thank you for your time.

11              MR. SULLIVAN:  Thank you for your time, your Honor.

12              THE COURT:  Of course.

13              (Adjourned)

14

15                   C E R T I F I C A T E

16

17       I hereby certify that the foregoing is an accurate

18   transcription to the best of my ability of the digital audio

19   recording in the above-entitled matter.

20

21   August 23, 2022          s/ Joanne Mancari
                               Joanne Mancari, RPR, CRR, CSR
22                             Court Reporter
                               jemancari@gmail.com
23

24

25
```

MR. REIZENSTEIN: [138]
MR. SULLIVAN: [43]  2/7 2/22 9/25
10/14 11/2 11/10 12/11 12/15 12/20
13/20 13/23 43/18 44/25 45/3 46/2 48/11
48/14 49/2 49/15 51/9 52/1 52/3 53/5
53/20 53/22 54/11 54/13 54/24 55/4
57/11 60/25 61/2 61/4 62/12 62/14 63/21
64/5 64/25 68/17 68/19 68/25 69/2 69/11
THE COURT: [165]
THE DEPUTY CLERK: [1]  2/3

$
$4.5 [1]  6/22

0
0755 [1]  1/19

1
10 [2]  49/5 58/18
10019 [1]  1/15
10:00 [1]  64/8
11 [1]  55/8
14 [13]  3/15 40/23 52/22 54/6 58/6
58/10 58/13 58/15 59/20 60/5 61/23
65/22 67/15
14-day [5]  4/6 5/4 59/7 60/17 62/1
15 [1]  15/10
16 [2]  1/5 4/1
17 [1]  27/10
18 [1]  18/20
19th [3]  53/7 54/5 54/10

2
20 [1]  33/14
2016 [1]  38/2
2017 [3]  45/19 49/25 50/23
2018 [3]  18/12 18/20 38/2
2022 [3]  1/5 27/10 69/21
212-728-5949 [1]  1/15
21372 [1]  2/3
22 [1]  2/3
22-MC-21372-JAL [1]  1/2
23 [1]  69/21
26 [1]  12/24
29th [1]  63/15

3
30 [1]  33/14
305-444-0755 [1]  1/19
30th [2]  63/11 63/15
3191 [1]  1/18
31st [2]  63/15 63/20
33145 [1]  1/19
34 [1]  51/25
34's [1]  52/6
35 [1]  22/24
36 [1]  14/11
37 [3]  11/9 13/1 13/8

4
45 [3]  12/24 13/10 65/15
45's [1]  9/23

5
5949 [1]  1/15

6
69 [1]  1/8

7
70 [1]  46/15
787 [1]  1/14

8
8,000 [1]  29/15
80 [1]  46/15

9
9,000 [2]  28/11 46/15
90,000 [1]  46/15

A
ability [5]  20/10 47/25 56/25 57/9 69/18
able [3]  38/3 39/3 39/9
about [35]  8/3 9/21 9/23 11/13 14/16
16/25 22/22 23/7 23/22 24/22 25/10
30/14 32/3 33/10 34/12 35/18 36/9 39/20
41/15 45/25 46/20 47/15 48/3 48/6 50/8
51/5 55/5 56/14 57/22 58/12 58/16 59/16
61/20 62/6 67/24
above [1]  69/19
above-entitled [1]  69/19
absence [1]  48/9
absolutely [1]  30/6
absurd [2]  4/16 4/16
accept [2]  44/15 46/13
access [2]  33/15 51/15
accommodating [1]  2/24
account [2]  7/3 34/24 47/25
accurate [1]  69/17
accusations [1]  48/16
acknowledge [1]  34/10
act [5]  6/1 7/16 7/17 7/19 8/2
acted [4]  4/14 4/15 4/18 17/18
acting [1]  17/17
action [1]  25/25
actions [4]  22/22 24/12 24/25 65/5
actually [6]  28/7 28/24 46/16 49/4 49/23
57/4
add [1]  16/7
addition [1]  11/15
additional [4]  27/18 30/7 48/9 62/22
address [2]  35/8 47/14
adhere [1]  67/15
Adjourned [1]  69/13
advance [2]  3/5 60/13
advancing [1]  21/5
advising [1]  53/24
affects [2]  60/2 65/25
affidavit [1]  9/20
affidavits [1]  4/19
afford [1]  5/11
after [11]  5/2 11/22 11/24 15/11 15/25
23/3 57/3 59/8 60/9 60/18 62/21
Afterwards [1]  12/3
again [21]  3/6 5/4 7/6 7/17 9/4 12/3 14/1
15/8 16/10 16/14 16/21 17/12 21/2 27/13
30/15 33/18 35/12 36/2 36/25 43/4 47/11
48/4 53/12 53/22 54/1 54/16 54/25 63/10
65/3
against [4]  23/9 27/19 41/4 53/3
ago [5]  15/10 31/4 43/6 45/16 47/17
agree [10]  20/21 22/13 29/17 35/15
35/15 35/16 35/24 37/4 42/6 58/4
agreeable [1]  62/19
agreed [4]  5/1 10/3 27/20 36/1
agreeing [2]  4/15 17/18
agreement [5]  16/22 30/11 47/11 49/11
52/9
agreements [1]  62/21
agrees [1]  47/8
ahead [3]  2/12 33/20 53/21
airplane [1]  14/13
al [2]  1/7 2/4
alert [5]  27/18 62/22 63/3 65/10 66/11
alerting [1]  65/22
all [54]  3/23 4/5 8/18 8/21 9/9 10/10
10/11 12/22 13/17 13/21 16/2 18/10
18/19 18/19 18/22 18/22 18/22 18/23
19/20 20/11 21/6 21/13 22/7 22/21 22/24
25/3 27/15 30/18 32/10 34/8 35/4 38/16
42/16 42/24 45/7 47/11 47/17 49/9 51/24
52/24 55/12 56/6 58/20 59/17 62/23 63/5
64/3 64/6 65/5 67/12 68/16 69/3 69/3
69/10
allegation [2]  20/15 22/3
allow [1]  23/6
allowed [1]  24/10
allows [1]  61/9
almost [1]  22/24
along [1]  66/22
already [16]  8/5 8/16 8/16 8/22 10/12
25/7 25/11 28/4 33/5 36/9 46/7 46/16
50/14 50/21 53/17 61/24
also [25]  5/25 6/3 6/14 7/7 7/20 8/7 8/10
8/24 9/12 10/17 10/19 13/11 17/24 18/1
23/7 24/14 24/23 25/3 30/7 37/2 40/8
41/12 44/11 56/13 64/5
Although [1]  43/2
always [2]  36/15 66/9
am [40]  10/5 12/22 19/11 21/9 22/8 26/7
28/2 28/12 28/23 29/14 32/2 32/19 35/8
36/2 40/17 40/18 41/14 41/16 45/17
47/14 47/16 47/21 48/3 50/24 51/23 55/2
56/4 57/5 58/6 58/9 61/18 62/18 63/4
63/24 63/25 65/8 66/13 67/14 68/6 68/11
amenable [1]  43/19
Amendment [19]  4/3 5/10 5/10 5/23 6/1
6/12 7/9 7/11 8/19 12/5 27/22 28/6
31/19 32/1 32/7 32/19 33/7 35/5 44/19
Americans [1]  34/21
amongst [1]  61/17
amount [1]  51/4
amounts [1]  51/6
analysis [1]  37/10
another [3]  38/18 41/13 54/20
answer [9]  11/10 12/15 12/20 28/3 37/20
38/14 39/15 49/18 50/15
answered [1]  62/12
answers [1]  44/8
anticipate [1]  59/1
anticipation [1]  37/2
any [21]  2/19 7/8 8/2 20/3 21/19 24/2
37/20 39/6 39/10 46/7 46/21 47/19 48/8
48/16 56/16 60/10 60/14 61/11 62/7
65/11 67/13
anybody [2]  68/12 68/13
anymore [1]  54/9
anything [8]  7/6 37/12 37/13 39/19 45/2
45/9 51/7 66/1
Apollo [1]  33/2
apologies [1]  61/4
apologize [3]  2/15 14/11 43/4
App [2]  44/2 52/6
appeal [6]  39/12 65/11 65/20 66/4 66/19
68/21
appealable [1]  69/9
appearance [1]  64/20
appearances [2]  1/12 2/5

## A

appears [1] 27/17
applicability [1] 5/5
applies [1] 6/4
apply [1] 49/14
appointments [1] 55/12
apportion [2] 13/1 13/14
appreciate [7] 2/25 13/23 36/2 43/1 57/1 64/6 66/24
appreciating [1] 32/20
appropriate [1] 20/7
April [1] 3/1
are [127]
argue [1] 33/18
argued [1] 17/13
arguing [1] 34/15
argument [13] 2/20 19/14 22/15 23/14 32/3 32/6 32/13 32/25 40/6 51/7 64/11 64/17 64/18
arguments [1] 35/20
around [6] 2/19 22/7 42/12 60/17 63/10 63/14
arrived [1] 22/8
as [78]
aside [1] 4/25
ask [15] 12/22 13/9 25/9 28/12 28/16 30/24 31/17 36/25 39/18 53/15 54/4 54/9 54/9 58/6 63/4
asked [8] 4/2 18/7 19/3 29/24 30/25 42/16 55/10 55/19
asking [5] 2/18 13/19 21/20 28/19 29/24 39/12 47/3 49/13 50/21 51/5 54/14
assert [1] 8/19
asserting [1]
assign [1] 49/20
assigning [1] 31/14
assignment [2] 49/25 50/8
assisted [5] 15/12 16/6 16/13 17/5 39/1
assisting [2] 16/16 41/13
associate [4] 38/15 40/9 44/7 56/22
associated [4] 11/5 11/18 21/7 37/15
assume [3] 18/14 50/13 51/23
assumed [1] 20/24
assuming [1] 39/11
at [61] 3/18 3/21 4/2 4/4 4/8 6/12 7/5 13/17 14/23 16/9 18/17 21/1 21/13 24/3 27/9 27/17 28/13 28/20 30/9 30/12 31/11 31/21 32/6 32/10 33/25 34/14 34/17 34/20 35/21 38/1 38/2 38/2 39/12 41/14 43/3 43/6 45/18 47/1 47/18 48/14 48/17 48/25 49/4 49/7 49/7 49/8 49/16 51/11 54/23 55/7 55/14 56/9 57/9 58/17 58/18 61/14 61/19 64/12 64/13 65/17 66/1
attach [1] 26/25
attempt [2] 49/10 49/20
attempted [2] 11/8 11/11
attempts [2] 5/2 22/12
attended [3] 18/13 18/16 19/3
attending [1] 43/8
attention [4] 41/25 41/25
attorney [2] 27/2 40/7
Attorney's [5] 22/19 23/2 23/9 24/12 25/5
audio [1] 1/10 69/18
August [3] 1/5 53/7 69/21
authority [3] 12/9 12/25 13/3
automated [1] 42/3
automatically [2] 26/1 39/8
available [2] 42/23 64/5
Avenue [1] 1/14
avoid [1] 23/13

award [1] 12/10
awarded [1] 12/9
aware [1] 62/24
away [1] 41/25
awfully [1] 32/3

## B

back [10] 2/21 26/13 36/21 37/15 41/22 43/10 46/6 50/17 56/16 56/25
backup [1] 37/12
bank [3] 34/24 55/11 55/17
base [1] 21/8
based [4] 7/20 14/17 24/18 29/5
basic [2] 44/6 53/25
basis [5] 10/25 23/13 32/17 46/23 61/21
Bates [1] 53/16
BCC'd [1] 49/24
be [97]
bear [2] 9/8 21/5
became [1] 24/2
because [39] 3/23 3/25 5/1 6/12 7/14 10/14 11/20 14/25 18/24 22/14 24/8 25/4 26/18 28/7 30/9 31/25 34/19 35/5 36/2 39/5 40/13 41/8 45/8 48/21 49/23 54/8 55/3 55/14 55/19 57/12 57/14 58/6 58/19 63/12 64/18 66/1 66/22 67/5 68/12
becomes [1] 26/1
becoming [1] 46/20
been [31] 8/20 8/22 10/12 24/11 25/12 30/11 33/5 36/24 40/5 43/24 43/25 44/1 44/5 44/5 44/17 44/18 45/2 45/9 46/7 46/11 46/25 47/2 49/16 53/17 53/24 57/4 57/8 59/10 60/15 62/2 62/16
before [16] 1/11 3/8 6/9 15/14 24/2 34/12 37/8 41/3 43/7 53/8 56/20 59/20 60/18 64/12 64/23 67/4
begin [3] 41/11 61/23 65/9
beginning [1] 16/3 61/22
begins [1] 58/13
behalf [2] 6/21 14/4
behind [1] 43/7
being [16] 5/22 16/25 17/9 18/3 18/3 24/5 25/7 27/18 33/23 36/6 36/7 41/22 42/7 44/13 51/11 63/17
belief [1] 29/4
believe [9] 16/4 16/8 17/12 17/17 18/2 26/17 27/3 36/4 50/10
benefit [4] 60/10 62/1 62/5 69/7
best [3] 37/5 40/19 69/18
better [6] 23/14 34/3 39/18 42/10 56/11 60/12
between [8] 6/17 10/2 34/5 50/11 50/23 51/21 59/17 62/17
beyond [1] 24/9
bid [4] 40/2 40/16 40/25 41/4
bigger [1] 29/7 65/5
bit [5] 14/5 41/25 46/25 59/5 69/4
blind [2] 49/24 50/3
blunt [1] 25/9
board [1] 47/8
body [5] 39/13 39/21 42/3 50/20 56/8
boggles [1] 30/23
boil [1] 33/24
book [1] 55/12
booked [1] 40/8
both [9] 7/17 7/18 9/1 9/3 29/3 32/2 36/13 56/7 60/8
bottom [1] 47/1
bound [1] 35/6
bounds [1] 3/24 18/1

box [2] 43/7 43/8
BRADY [2] 1/13 2/7
Brakha [6] 18/6 18/10 18/12 18/25 19/2 27/11
Brakha's [1] 18/11
Brannon [1] 47/17
Braswell [3] 5/24 6/3 6/7
break [1] 21/9
brewing [1] 60/6
brief [17] 4/21 7/12 8/8 9/1 9/10 10/3 11/17 11/18 11/21 11/22 12/3 12/8 12/8 12/16 16/3 17/24 41/9
briefing [3] 12/1 12/7 62/10
briefly [1] 33/14
bring [2] 9/20 13/10
broad [1] 45/15
broader [2] 46/12 55/15
broadly [1] 8/24
broker [1] 26/14
brought [1] 67/4
bsullivan [1] 1/16
burden [15] 8/21 9/9 9/14 9/19 9/24 13/12 19/9 21/2 21/5 21/6 21/6 28/6 29/10 30/1 36/3
burdened [1] 13/16
burdensome [6] 9/18 9/21 10/7 25/7 31/8 36/22
burdensomeness [1] 13/13
burglary [1] 24/5
business [8] 7/3 15/19 15/24 34/22 34/23 35/1 44/3 44/4
businesswoman [1] 34/21
but [83]

## C

cabinet [1] 19/19
calendar [1] 55/12
called [5] 24/4 24/8 38/9 38/21 43/10
Calling [1] 2/3
calls [2] 8/8 18/24
came [3] 6/9 22/6 26/9
campaign [2] 45/16 45/25
campaigns [1] 15/13
can [58] 4/7 11/13 14/22 14/25 19/3 20/10 21/8 22/16 24/14 24/19 25/9 25/14 26/8 26/25 29/2 31/1 34/23 35/20 35/21 35/21 35/25 37/23 39/7 39/8 40/10 40/18 40/20 41/5 41/11 41/12 41/14 41/16 42/7 42/25 44/13 45/8 47/8 50/7 53/2 53/20 54/4 57/14 57/18 57/25 58/7 58/17 58/21 58/22 60/13 61/22 62/9 62/11 64/5 64/18 67/2 67/2 68/19 68/23
can't [14] 3/25 8/19 28/3 28/5 28/6 34/4 35/24 50/9 52/18 54/9 54/16 54/20 54/22 55/13
cancel [1] 63/8
Candidly [1] 21/11
cannot [3] 6/1 7/13 31/10
captured [1] 50/13
case [47] 1/2 2/3 3/18 3/25 5/17 5/24 6/3 7/2 7/14 7/18 9/12 9/18 11/15 11/24 12/16 12/16 13/13 15/21 17/7 17/14 17/23 17/24 23/6 24/19 26/1 26/12 26/12 26/15 26/17 26/19 26/19 27/12 27/17 27/20 29/25 34/10 34/12 36/4 37/5 45/9 46/16 47/7 47/10 49/8 52/24 59/16 66/18
cases [4] 17/16 32/15 34/5 37/6
categories [5] 10/4 43/17 44/13 48/25 59/10
cause [8] 3/17 3/20 17/12 17/15 17/15

**C**

cause... [3]  17/23 18/1 22/4
cell [1]  8/7
center [1]  16/9
central [1]  47/10
certain [5]  25/24 29/6 43/20 46/24 62/18
certainly [8]  9/25 44/8 46/5 49/15 50/9
 54/16 54/20 58/22
certify [1]  69/17
challenge [1]  39/10
chance [2]  2/21 60/9
Chances [1]  29/20
change [1]  67/15
changing [1]  57/22
charge [1]  54/17
chase [2]  4/22 45/4
cheaper [1]  60/21
choice [3]  15/4 56/13 67/24
choices [1]  29/12
choosing [1]  61/24
circumstances [6]  3/16 3/20 18/14 22/2
 34/9 43/20
cite [1]  12/16
cited [6]  16/25 17/16 17/24 22/1 24/19
 34/2
citing [1]  16/12
civil [5]  26/12 26/19 27/17 31/5 37/6
claim [2]  4/14 9/17
claims [1]  50/5
clear [10]  7/10 9/18 21/25 29/21 33/14
 33/16 34/7 55/5 62/15 67/5
clearing [1]  55/7
clearly [7]  4/18 9/5 30/2 31/8 32/25 33/8
 46/18
client [31]  3/1 11/14 19/18 19/21 20/7
 20/17 23/5 27/19 30/23 30/24 30/25 31/5
 32/18 33/8 34/5 34/20 36/18 41/12 49/20
 50/1 50/11 51/13 51/21 53/10 55/20
 56/21 64/15 64/23 65/4 65/16 66/17
client's [4]  6/23 24/25 28/1 67/3
clients [2]  4/23 15/23
close [1]  25/17
closely [3]  17/8 49/5 55/7
closing [1]  41/20
cloud [1]  38/23
Cloud9 [4]  38/21 38/25 39/1 42/9
club [1]  45/18
coding [1]  52/25
cognizable [3]  28/1 28/5 33/7
coincided [1]  55/17
cold [2]  37/11 46/25
cold-stored [1]  37/11
collect [1]  64/15
collected [7]  8/16 10/12 43/25 44/1 48/6
 59/10 60/15
collecting [1]  8/23
collection [5]  8/6 46/6 56/15 59/16 59/18
collections [1]  10/20
color [1]  3/11
come [9]  25/4 26/6 30/8 31/2 34/3 36/21
 41/22 53/8 56/25
comes [3]  35/2 43/24 44/12
comfortable [6]  14/23 44/13 46/3 48/23
 67/7 68/11
coming [2]  23/3 54/7
committed [1]  24/4
communicating [1]  63/12
communication [13]  1/6 3/3 5/14 5/18
 5/22 6/16 6/20 6/22 7/1 7/3 32/16 35/14
 52/11

communications [10]  2/4 18/22 49/9
 50/13 50/22 50/23 51/4 51/7 51/23
 52/13
company [8]  3/2 15/23 16/11 16/13
 16/17 16/18 49/21 51/16
compel [4]  12/19 12/24 40/22 52/17
compelled [2]  52/23 62/9
compelling [1]  56/5
competent [1]  56/13
complain [2]  22/22 29/14
complaint [1]  24/10
complete [1]  61/22
completely [2]  20/21 59/19
compliance [3]  36/10 65/9 67/23
complied [2]  37/19 57/14
complies [1]  56/9
comply [2]  39/7 57/5
complying [2]  30/20 36/23
components [1]  46/24
concede [2]  15/19 16/5
conceded [4]  4/1 4/4 11/23 15/17
concepts [1]  19/8
concern [5]  26/2 27/14 35/20 50/4 50/5
concerned [6]  16/25 24/22 24/23 35/18
 40/18 61/20
concerning [2]  18/24 49/9
concerns [11]  18/5 27/23 28/1 31/22
 35/9 39/23 41/10 46/20 53/18 61/14 65/5
concession [1]  30/12
conclude [2]  34/19 64/23
concludes [1]  58/15
conclusion [3]  7/20 32/21 33/2
conduct [5]  5/6 18/20 20/24 56/19 62/7
confer [2]  59/7 64/22
conference [4]  3/5 62/7 63/13 64/7
conferral [2]  21/21 57/23 62/5
conferred [1]  3/5
conferring [1]  57/3
confident [1]  26/7
confidential [2]  46/22 46/23
confirm [2]  21/1 42/23
confirmed [1]  3/6
conflict [1]  40/7
confronting [1]  17/10
confused [1]  26/18
congressman [1]  15/14
connection [3]  4/20 15/21 16/8
consequences [4]  5/21 19/18 19/20
 19/23
consider [4]  13/11 22/16 26/3 59/15
consideration [3]  39/22 47/24 66/25
considering [2]  28/13 43/3
constitutes [1]  5/6
consultant [1]  15/9
consulted [1]  65/24
consulting [4]  16/11 31/13 44/4 49/11
contempt [1]  67/24
contend [1]  11/8
contention [2]  22/18
contents [2]  7/12 7/15
contested [1]  64/18
context [10]  16/22 22/21 23/2 23/22
 24/23 24/24 25/3 25/6 29/25 53/7
continue [2]  62/8 64/14
continuing [1]  60/14
contract [14]  7/1 7/4 16/8 16/18 17/3
 17/5 25/21 30/22 30/24 31/12 31/13 47/8
 49/20 50/4
contractual [2]  16/19 17/7
control [2]  52/18 67/3

convenience [1]  27/1
convening [1]  42/23
conversant [1]  42/8
conversations [2]  51/20 62/17
convinced [1]  12/23
copied [3]  49/24 50/3 50/9
Coral [1]  1/18
core [1]  47/9
corollary [1]  48/19
corporate [2]  6/15 7/8 44/20
corporation [8]  5/15 5/22 5/23 6/5 6/6
 34/6 34/13 34/23
Corporations [1]  34/4
correct [6]  16/14 16/21 21/25 30/6 31/10
 32/9
cost [6]  4/23 12/10 13/14 13/16 37/15
 64/20
costs [7]  11/5 11/7 11/8 11/12 13/9
 24/22 39/9
could [11]  19/4 23/8 27/19 28/22 34/3
 46/2 53/25 54/6 57/8 62/4 68/13
couldn't [4]  26/3 37/4 48/7 59/24
counsel [19]  2/5 2/24 3/6 10/2 10/6
 11/23 17/13 21/22 22/25 26/10 30/6 34/2
 34/14 35/12 35/21 49/17 62/17 65/24
 65/25
counsel's [2]  27/12 44/15
County [1]  24/12
course [16]  6/20 7/7 12/13 25/2 33/14
 35/10 44/11 45/11 49/17 49/22 53/6 64/8
 64/24 65/4 66/11 69/12
court [34]  1/1 1/22 2/23 5/24 7/24 9/20
 11/2 14/3 14/18 16/12 17/2 17/10 19/1
 22/8 22/15 24/23 26/9 26/16 27/11 29/2
 30/8 31/2 41/6 41/22 60/19 62/3 62/23
 63/3 63/24 64/21 65/10 65/20 68/20
 69/22
court's [6]  3/12 39/16 61/5 61/8 65/7
 67/13
courtroom [4]  2/13 2/16 14/17 14/25
covered [2]  39/21 55/14
CPA [1]  34/22
create [1]  29/25
criminal [7]  9/3 23/3 26/17 26/19 32/15
 36/6 41/13
criteria [5]  44/12 46/10 46/12 61/9 61/16
crossed [1]  47/5
CRR [2]  1/22 69/21
CSR [2]  1/22 69/21
curveballs [1]  68/5
custodian [6]  5/25 6/2 6/4 6/7 6/8 34/13
cut [2]  45/4 64/20

**D**

Dade [1]  24/11
DAR [1]  14/17
dare [1]  4/9
data [12]  18/21 18/22 19/10 20/2 20/6
 20/11 37/11 37/12 37/12 39/2 42/4 55/20
date [5]  10/6 36/19 44/5 55/1 63/5
dates [1]  60/9
Dave [1]  47/17
David [6]  9/2 15/11 30/22 31/12 49/21
 50/1
day [15]  3/4 4/6 5/4 14/18 18/5 26/10
 29/2 50/10 50/10 59/7 60/17 62/1 63/6
 63/25 64/6
days [15]  3/15 40/10 40/23 52/22 54/6
 57/7 58/6 59/21 60/5 61/23 63/18 63/25
 65/22 67/15 68/8

**D**

de [2]  34/8 34/8
deadline [10]  36/19 53/3 53/8 54/5 54/6
 54/8 54/21 58/11 67/15 68/7
deadlines [3]  40/5 52/23 66/2
dealing [1]  42/11
dear [1]  32/15
dearly [1]  47/17
decade [1]  15/24
decades [1]  15/10
decide [2]  56/24 65/7
decided [1]  31/25
decision [9]  3/12 21/8 33/2 34/10 56/21
 57/10 61/10 61/12 67/13
decision-making [1]  61/12
decisions [1]  67/3
deep [1]  60/11
deep-dive [1]  60/11
defeat [1]  40/13
defendant [5]  1/18 6/17 6/23 9/2 17/7
defense [2]  5/23 40/7
defenses [1]  7/9
defined [1]  51/24
definition [3]  18/18 34/1 52/7
degree [2]  33/4 33/4
delay [2]  52/24 55/1
delays [1]  66/2
deleted [1]  37/10
delineated [1]  11/5
delivered [1]  58/23
demonstrate [2]  9/15 50/6
demonstrated [1]  4/19
denied [3]  18/15 41/6 62/2
departed [1]  47/17
Department [1]  34/4
depending [1]  56/22
deposed [1]  19/1
deposition [9]  4/15 5/1 17/19 26/14
 26/16 27/11 27/20 27/23 31/4
depositions [1]  26/13
depth [1]  17/21
describing [1]  19/10
details [1]  24/8
determine [2]  46/10 46/11
devices [2]  10/21 47/6
devoted [2]  11/21 12/4
dictionary [1]  18/18
did [24]  13/21 15/20 16/18 17/1 17/4
 18/12 20/11 22/13 23/18 35/17 38/14
 38/22 38/24 39/2 39/2 42/17 42/19 55/16
 58/19 59/11 59/14 60/22 68/24 68/25
didn't [8]  2/15 19/1 23/5 51/6 51/7 55/6
 67/6 68/13
differ [1]  50/19
differences [3]  29/4 37/25 64/10
different [9]  10/23 13/3 19/8 22/1 25/19
 38/18 43/23 51/3 53/23
differently [1]  49/12
difficult [2]  33/3 64/19
difficulty [2]  32/12 62/22
digital [2]  1/10 69/18
direct [1]  28/3
direction [1]  35/21
directive [1]  62/16
directly [5]  11/10 13/7 18/4 21/21 68/21
disagree [1]  23/11
discovery [14]  1/10 3/24 9/11 9/13 18/1
 31/5 36/19 40/22 41/20 47/18 53/7 54/5
 54/8 66/20
discrete [1]  3/10

discuss [2]  18/12 41/12
discussed [3]  10/8 47/19 66/10
discussing [3]  7/4 42/22 44/4
discussions [3]  17/19 17/20 30/5
dismissed [1]  22/11
dispute [6]  5/6 7/2 22/18 52/20 62/8
 64/15
disputed [1]  21/18
disputes [1]  63/7
distinct [1]  11/7
distinguish [1]  34/5
district [12]  1/1 1/1 23/9 26/22 26/23
 31/11 40/6 41/7 52/25 54/8 65/20 68/21
dive [1]  60/11
Division [1]  34/4
do [58]  4/13 5/3 6/16 7/2 11/4 14/9 20/8
 20/10 20/13 20/13 20/16 24/10 25/3 26/5
 28/19 29/2 29/16 30/14 31/15 34/23
 36/10 36/11 36/16 38/5 38/5 39/8 39/23
 41/16 42/25 45/17 46/9 47/7 47/10 49/22
 50/19 51/17 52/8 52/21 53/3 53/3 54/6
 55/6 56/11 57/6 57/13 58/2 58/7 63/11
 63/18 64/7 64/9 64/19 65/4 65/10 66/1
 67/2 67/2 67/10
doctrine [1]  7/20
document [11]  6/19 7/6 28/11 32/8 38/25
 46/11 46/13 47/5 52/7 60/5 61/6
documents [82]
does [12]  5/11 5/21 6/6 7/10 29/25 30/19
 32/18 32/20 47/3 47/24 49/21 58/2
doesn't [7]  4/12 5/8 27/15 29/14 46/7
 47/23 66/25
doing [2]  33/20 38/1
dollars [3]  4/23 16/24 17/4
don't [56]  3/20 11/25 12/20 13/18 15/1
 17/12 19/5 19/24 20/7 21/11 22/25 23/11
 23/12 23/13 24/7 24/11 24/15 25/24
 27/25 29/18 30/4 31/2 31/12 32/22 34/14
 36/7 36/17 37/20 40/12 41/21 42/2 48/21
 48/21 49/22 51/2 51/3 51/15 52/3 52/12
 54/19 56/23 58/6 58/7 58/12 58/21 59/22
 60/6 61/11 64/2 65/3 65/12 65/16 66/1
 67/3 67/9 68/12
done [19]  8/22 9/22 14/14 29/1 30/24
 40/23 43/24 44/17 46/3 46/7 47/12 48/21
 53/9 53/24 54/14 58/21 65/10 66/23
 66/23
door [1]  53/17
down [16]  11/16 21/9 26/6 30/12 30/13
 33/24 37/8 38/22 39/17 43/22 43/24
 46/10 60/8 62/18 64/20 65/16
draft [1]  7/1
drafted [1]  18/9
drafting [1]  11/18
drafts [1]  7/4
drags [1]  54/15
dramatically [1]  10/23
drawing [1]  50/20
drawn [1]  13/7
draws [1]  13/2
drive [2]  38/6 38/23
drives [3]  20/12 20/13 65/5
due [1]  60/5
dupe [1]  57/8
duplicate [2]  29/16 36/24
duplicates [1]  45/22
duplicating [1]  51/25 39/9
during [2]  23/25 49/25
dwelling [1]  24/9

**E**

earlier [1]  10/9
early [1]  7/4
earned [1]  17/4
easily [2]  37/25 66/23
easy [1]  57/17
effectively [1]  63/12
effort [2]  57/4 60/7
efforts [2]  56/16 59/20
eight [2]  4/1 4/5
either [5]  7/11 45/5 63/14 64/19 68/23
election [2]  15/15 16/1
electronic [2]  18/21 20/8
else [5]  4/13 35/16 39/19 45/9 54/7
elsewhere [1]  32/25
email [4]  17/21 20/8 36/18 50/8
emails [11]  7/4 18/23 18/24 30/16 44/1
 47/2 48/15 49/24 50/1 50/3 50/4
embarrassed [1]  43/9
emergency [1]  38/17
employ [1]  20/12
employed [2]  38/7 50/2
employing [1]  46/11
end [4]  6/12 15/10 43/14 56/23
ended [1]  24/5
engage [6]  19/15 19/16 19/25 20/1 20/1
 56/15
engaged [4]  10/20 20/18 30/5 31/5
engaging [1]  31/8
enough [2]  47/22 55/6
ensued [1]  40/5
entered [3]  24/9 30/22 66/20
entering [1]  17/19
entirely [2]  12/4 32/6
entirety [3]  31/18 32/9 46/14
entities [1]  26/12
entitled [2]  30/11 69/19
entity [6]  5/14 6/21 6/24 32/14 33/9 50/2
ESI [4]  44/6 47/7 47/10 47/18
ESQ [2]  1/13 1/18
essentially [4]  24/2 24/4 60/18 65/12
Esther [4]  2/10 3/2 14/4 15/9
estimate [3]  11/8 11/11 13/9
et [2]  1/7 2/4
evasion [1]  12/17
even [9]  3/25 4/5 6/1 6/4 6/8 32/24 41/24
 48/15 60/22
event [1]  50/22
eventually [1]  17/19
ever [6]  17/13 30/10 43/5 43/5 47/5
 55/20
every [4]  35/1 37/5 46/19 47/5
everybody [2]  38/9 47/9
everyone [2]  45/12 66/11
everything [9]  23/7 28/19 30/19 41/16
 48/17 53/9 54/14 62/25 63/6
evidence [2]  5/17 27/18
exact [3]  25/18 57/8 58/18
exactly [13]  14/14 29/16 41/18 47/12
 48/13 50/18 52/19 54/11 54/13 55/10
 57/15 58/20 63/1
exam [1]  47/5
examination [3]  19/11 20/25 37/3
examined [1]  23/7
example [9]  9/17 15/18 17/10 18/2 22/23
 25/21 49/13 51/10
exceed [1]  3/23
exceeds [1]  17/25
Excellent [1]  45/3
except [1]  62/23

**E**

exception [3]  3/19 22/4 47/19
exceptionally [1]  57/21
exceptions [1]  3/16
exchange [1]  7/4
exchanged [1]  10/2
excise [3]  38/3 55/19 58/20
excuse [3]  4/16 6/7 10/15
excuses [1]  5/7
exempt [1]  30/19
exempts [1]  4/10
exhibits [1]  4/19
exist [1]  32/23
existence [1]  27/14
existing [1]  42/4
exists [2]  17/15 17/15
expect [1]  27/22
expected [1]  60/16
expediting [1]  68/20
expedition [3]  18/4 30/2 31/9
expense [1]  48/1
expensive [1]  38/8
expensively [1]  66/24
experts [6]  18/21 18/21 20/1 20/2 20/5 20/6
explanation [2]  15/16 23/5
extent [17]  24/10 36/17 37/21 39/6 41/20 46/9 46/14 47/3 50/20 53/23 54/2 54/15 56/19 57/18 57/25 58/16 59/9
extremely [2]  60/1 69/4
eyeglass [2]  14/5 14/21
eyeglasses [1]  14/21

**F**

face [8]  3/23 17/25 18/17 29/23 30/2 31/8 45/8 51/2
facilities [1]  47/1
fact [14]  7/22 7/23 8/18 23/8 25/23 28/25 33/3 34/6 36/9 44/16 46/12 53/7 58/11 59/18
facto [1]  34/8
facts [3]  6/11 15/17 15/21
failure [2]  21/12 32/4
fair [3]  3/24 18/1 68/3
fairly [5]  17/16 26/7 40/8 45/15 57/6
fairness [3]  11/21 12/3 12/5
faith [9]  4/14 4/15 4/18 5/6 17/17 17/18 22/9 22/15 30/8
falls [1]  9/10
family [3]  38/17 40/9 42/11
far [2]  60/6 60/15
FARR [1]  1/14
fast [1]  27/4
faster [1]  60/22
favor [1]  20/9
feel [2]  16/20 67/7
fees [7]  11/14 12/7 13/1 13/6 13/9 24/15 24/22
females [1]  18/19
few [8]  3/10 5/13 10/3 40/9 43/6 43/18 47/9 63/18
Fifth [19]  4/3 5/10 5/10 5/23 6/1 6/12 7/9 7/11 8/19 12/4 27/21 28/6 31/19 32/1 32/6 32/18 33/7 35/4 44/19
figure [2]  59/18 59/20
figuring [1]  51/4
file [6]  17/14 19/19 41/8 63/7 68/7 68/23
filed [6]  22/2 24/11 34/6 55/1 66/19 67/16
filing [1]  19/19

final [5]  9/7 16/20 26/7 52/9 65/22
financial [3]  7/20 19/23 55/1
find [4]  19/10 20/3 20/19 34/1
fine [4]  44/16 60/24 60/25 68/1
finish [1]  53/20
firm [6]  19/25 20/17 27/11 41/13 44/4 58/8
first [8]  3/13 5/14 19/12 20/24 36/21 43/5 48/5 59/12
Fisher [2]  7/14 7/18
fishing [4]  18/3 30/2 31/9 44/3
fits [1]  37/22
five [4]  42/5 47/17 67/16 68/8
fix [1]  60/7
FL [1]  1/19
FLEISCHER [1]  1/11
flexibility [1]  36/18
flip [3]  44/18 53/15 56/1
flipped [1]  28/24
FLORIDA [6]  1/1 1/4 15/14 26/24 34/1 34/4
folks [1]  4/9
follow [2]  39/16 66/3
following [4]  2/2 43/16 57/2 61/18
follows [2]  40/3 66/9
followup [1]  41/21
foregoing [1]  69/17
foregone [2]  32/21 33/1
forensic [7]  6/18 10/20 19/10 20/12 37/3 47/5 60/11
forgone [1]  7/20
form [3]  6/18 26/9 34/23
format [1]  38/18
formats [2]  38/18 39/4
Fortunately [1]  27/8
forward [2]  25/4 46/5
four [1]  42/5
Fourth [1]  41/7
frank [1]  4/16
frankly [3]  18/3 20/17 65/3
free [1]  63/25
freewheeling [1]  35/23
frequently [2]  17/20 35/14
Friday [3]  41/8 53/7 53/9
frightened [1]  43/3
fruitful [1]  17/20
fuels [1]  22/21
fulfill [1]  37/23
full [1]  13/21
fully [5]  15/6 20/15 27/22 48/8 61/4
fulsome [2]  2/19 42/18
functionally [1]  21/22
fundraiser [1]  45/18
funneled [1]  6/23
further [5]  11/3 30/14 50/21 62/5 65/25

**G**

GALLAGHER [1]  1/14
gamut [1]  50/4
gave [2]  41/8 55/13
gee [3]  3/22 35/17 65/24
generally [1]  47/20
genesis [1]  50/15
get [26]  12/11 26/13 27/22 34/23 35/3 37/16 41/11 44/13 46/3 47/25 48/10 48/23 51/20 52/21 57/19 59/2 59/11 59/22 60/6 65/9 65/18 66/5 66/7 66/22 66/23 67/2
gets [1]  28/13
girl [1]  12/24

give [7]  20/19 23/19 31/6 49/1 53/18 53/23 63/4
given [2]  18/13 63/17
gives [1]  64/16
giving [1]  55/19
glad [1]  68/6
glasses [1]  15/1
gmail.com [2]  1/23 69/22
go [29]  2/12 2/21 2/21 20/18 22/8 23/1 28/10 29/3 29/5 29/14 33/20 36/16 37/8 37/12 37/16 42/8 43/3 43/8 46/6 48/10 51/23 53/21 55/16 55/18 61/6 61/7 62/18 65/18 67/1
goes [3]  19/19 21/2 59/10
going [58]  2/16 8/2 14/18 17/11 23/1 25/24 27/21 27/22 28/12 28/16 32/2 32/16 33/23 36/10 36/16 39/16 40/12 41/16 43/10 47/16 47/21 50/25 51/23 52/21 53/2 53/13 54/7 54/15 55/2 55/16 56/7 56/20 57/5 57/8 57/9 58/3 58/6 58/10 58/24 59/19 61/6 61/21 61/22 61/23 62/18 63/4 64/11 64/17 65/9 65/13 65/25 66/4 66/11 66/13 67/1 67/14 67/15 67/19
good [27]  2/7 2/9 2/13 3/16 3/20 4/14 4/15 4/18 5/6 13/25 14/2 17/12 17/15 17/15 17/17 17/18 17/23 18/1 22/4 22/9 22/15 30/8 32/3 54/23 55/6 62/13 62/23
goodness [1]  14/6
goose [1]  4/22
Gorrin's [1]  18/6
gosh [1]  48/15
got [12]  40/5 41/9 41/11 53/2 54/23 55/18 55/18 56/8 56/16 57/1 57/1 63/13
gotcha [1]  35/1
governing [1]  61/8
government [39]  7/25 8/6 8/8 8/10 8/16 8/20 10/19 10/22 25/12 25/19 25/23 26/11 26/15 26/20 27/2 27/15 27/22 28/4 28/17 28/20 28/25 29/6 29/24 33/5 35/2 35/4 36/25 37/19 37/23 38/2 43/15 45/14 55/8 55/10 55/13 59/15 59/18 59/25 61/25
government's [9]  10/16 25/25 29/7 37/22 38/15 49/6 55/15 57/13 58/19
grab [1]  57/25
grand [4]  22/20 26/21 27/1 33/6
granted [4]  3/19 11/9 60/4 61/20
grateful [1]  64/11
great [2]  14/16 39/5
greatly [2]  15/17 63/19
guarantee [1]  52/16
guess [8]  46/9 49/15 51/21 54/3 61/7 61/15 66/5 66/10
guidance [1]  62/25

**H**

had [26]  2/15 3/22 5/1 11/5 11/24 14/5 14/11 14/14 14/20 14/20 14/21 15/19 15/22 17/13 32/14 34/11 38/17 39/2 43/8 45/17 54/9 59/24 60/9 66/19 67/6 69/5
half [2]  4/4 6/18
handful [1]  30/16
happen [3]  40/13 65/13 66/14
happened [5]  12/18 14/12 43/5 49/19 59/17
happens [1]  52/25
happy [3]  10/5 46/13 47/14
hard [3]  20/12 20/13 33/25
harder [1]  59/5

## H

has [59]  3/14 4/7 4/18 4/21 4/23 4/25 5/5
5/5 5/23 7/16 7/18 8/5 8/22 11/2 14/12
17/17 18/23 19/18 19/25 20/10 22/18
23/2 23/14 24/11 26/17 27/20 28/25
29/24 30/6 31/5 34/6 36/18 37/23 39/23
43/4 44/5 44/7 45/9 46/6 46/11 47/14
49/16 50/13 51/17 53/24 55/8 58/1 60/10
60/15 60/15 61/5 61/14 61/24 62/2 62/3
62/12 64/15 65/5 66/16
hasn't [2]  59/17 67/23
have [197]
haven't [9]  9/22 10/10 19/11 30/11 39/21
48/15 49/23 59/10 60/7
having [2]  26/10 32/19
he [16]  15/13 15/14 15/22 15/25 19/4
19/4 22/1 28/12 29/14 30/22 38/2 61/6
61/22 61/22 61/23 61/24
he's [1]  50/6
heads [2]  28/13 64/16
hear [8]  28/18 31/25 32/2 33/14 40/1
41/3 42/1 51/6
heard [4]  26/18 52/22 56/1 58/9
hearing [10]  1/10 27/10 36/13 36/19
37/14 40/22 53/1 55/1 56/8 63/4
hearings [2]  31/11 63/19
heart [2]  32/16 52/21
held [2]  2/2 6/6
help [2]  15/7 54/9
helped [1]  7/1
helpful [3]  57/21 60/1 69/4
her [32]  3/2 3/14 5/2 5/2 7/3 8/7 8/7
11/17 15/24 16/18 16/22 18/22 18/22
18/22 18/23 19/3 20/2 21/1 24/3 25/3
34/20 36/4 36/10 37/10 41/15 44/1 44/1
44/4 48/25 49/14 49/23 50/21
Herald [1]  8/1
here [63]  3/7 3/12 3/14 3/21 4/6 4/14 5/1
5/4 5/22 6/1 7/5 7/11 7/17 8/2 8/6 8/18
8/22 9/5 9/8 9/9 9/22 10/2 10/4 10/12
12/18 17/11 22/9 22/18 25/8 25/20 25/25
26/6 26/17 27/3 30/14 31/21 31/21 33/12
34/22 35/23 36/17 37/7 41/10 44/3 46/4
47/1 47/5 47/13 47/19 48/21 50/9 52/22
54/6 55/14 56/18 58/17 60/3 65/5 65/9
66/2 66/25 67/19 68/5
here's [2]  55/13 57/12
hereby [1]  69/17
Hialeah [1]  45/19
higher [1]  34/17
highlight [1]  5/13
him [10]  15/12 15/12 16/13 17/5 19/2
19/3 28/16 39/17 40/11 62/18
hired [3]  15/10 15/22 16/11
his [14]  15/13 16/13 17/3 19/4 31/4
37/21 37/22 37/23 41/17 41/19 41/19
60/2 61/22 66/2
holds [1]  17/24
home [1]  24/4
Honor [49]  2/22 3/1 3/8 3/13 3/18 5/4 5/9
5/16 6/11 8/4 8/24 9/25 10/9 10/25
11/20 12/11 12/15 12/20 13/20 13/23
43/18 44/25 46/2 47/14 48/11 49/3 49/15
50/7 51/9 52/1 53/5 53/8 54/3 54/22
54/24 55/4 57/11 60/25 61/2 61/14 61/16
62/12 63/22 64/6 64/25 68/17 68/25 69/2
69/11
Honor's [6]  9/11 9/12 11/10 46/24 49/18
64/6
HONORABLE [1]  1/11

hope [2]  56/8 63/17
hopefully [2]  58/16 62/10
hour [1]  58/24
hours [1]  4/24
house [2]  5/2 42/12
how [19]  7/2 9/15 9/21 15/1 30/21 38/4
40/17 42/8 42/10 43/3 48/6 50/18 51/2
57/4 58/7 59/11 65/10 65/18 67/18
however [3]  36/1 51/16 60/5
humanly [1]  58/7
hundreds [3]  35/2 45/22 45/22
hypothetical [1]  48/17
hypothetically [1]  44/15

## I

I'd [4]  3/11 5/9 8/4 63/13
I'll [1]  23/6
I'm [42]  12/24 13/18 13/19 15/6 21/20
22/3 23/7 23/21 24/22 24/23 26/9 26/18
26/20 27/5 27/13 29/22 31/7 34/2 35/22
39/12 40/8 42/8 43/2 43/16 44/25 48/16
48/25 49/4 51/5 52/10 53/3 54/13 55/2
55/19 58/4 58/16 60/16 61/15 62/15
63/10 66/1 66/3
idea [1]  68/14
identical [6]  8/9 10/16 10/24 37/24 49/2
49/5
identifiable [2]  19/9 19/12
identified [3]  50/23 59/9 61/24
identify [3]  19/3 47/21 50/21
if [70]
ignored [1]  22/11
immediately [3]  65/9 66/10 67/10
impediment [2]  39/20 54/20
impeding [1]  54/5
implicate [1]  32/1
implication [2]  16/10 16/12
important [4]  9/8 20/16 32/1 48/7
impression [1]  24/18
in [225]
INC [4]  1/3 1/6 2/4 2/4
inch [1]  63/17
incident [1]  25/2
inclination [1]  67/9
inclined [1]  58/9
include [1]  14/19
includes [1]  59/9
including [1]  8/6
inconceivable [1]  6/13
incorporated [1]  32/14
incorrect [1]  16/4
incriminate [1]  7/15
incriminates [2]  6/2 6/8
incriminating [4]  7/13 7/18 7/21 8/3
incurred [1]  13/7
Indeed [1]  43/12
independent [1]  5/12
indicia [1]  33/1
indictment [2]  23/3 25/5
indisputably [1]  23/18
individual [5]  6/25 24/13 32/18 33/8 34/7
individuals [2]  50/2 55/9
inexpensive [1]  62/11
inexplicably [1]  8/13
inextricably [2]  8/11 9/4
inform [1]  48/8
information [2]  8/3 9/21
initial [2]  30/9 43/18
initially [1]  22/14
inquiry [1]  6/12

inside [1]  37/22
insofar [2]  6/21 53/16
insulate [1]  20/16
insulates [1]  20/10
intensive [1]  58/3
intention [3]  24/21 60/3 60/7
interacting [1]  15/2
Interamerican [1]  16/17
interest [1]  46/5
Interglobal [1]  18/8
internal [3]  30/25 31/6 52/12
interpretation [1]  16/7
intertwined [3]  8/12 8/14 9/4
into [12]  17/19 21/9 22/21 23/22 26/10
30/23 37/12 47/25 52/11 59/2 59/22
61/12
invalid [1]  3/10
investigation [5]  8/10 9/3 22/20 36/6
41/14
investigators [1]  11/16
investiture [1]  43/6
invoices [1]  50/5
invoke [2]  6/1 27/21
involve [1]  55/9
involved [3]  16/16 29/19 50/10
involving [1]  30/17
is [377]
isn't [4]  13/16 33/8 47/23 51/7
issue [21]  7/5 7/16 11/22 17/23 22/13
23/23 25/21 25/23 26/15 31/20 32/15
33/22 33/24 34/15 36/14 42/11 49/8
64/13 64/14 65/25 68/14
issued [4]  26/11 27/1 27/1 27/2
issues [10]  12/4 17/9 30/1 35/18 40/13
40/15 41/17 41/19 41/21 48/22
it [233]
it's [4]  6/5 7/24 7/24 45/13
items [1]  29/6
its [11]  17/25 18/17 29/23 30/2 31/8
31/18 32/8 46/14 49/10 49/21 51/2
itself [2]  7/19 30/21

## J

JAL [1]  1/2
jam [1]  64/2
jemancari [2]  1/23 69/22
Joanne [3]  1/22 69/21 69/21
job [1]  55/6
Joel [2]  18/6 27/11
John [1]  45/25
joint [1]  63/7
judge [17]  1/11 2/3 6/9 13/25 26/7 30/15
33/2 41/6 43/11 54/12 54/17 54/23 65/2
65/20 68/16 68/22 68/23
judge's [1]  43/7
jure [1]  34/9
jury [4]  22/20 26/21 27/1 33/6
just [69]  2/12 2/23 4/16 4/25 5/13 6/9
7/12 7/14 9/7 11/13 12/11 16/14 20/9
21/9 22/7 23/12 23/13 26/25 27/5 30/2
30/10 32/21 33/15 34/14 35/23 38/1 38/6
39/12 39/16 40/2 40/4 40/9 40/17 42/21
43/10 43/21 44/16 45/7 45/24 46/7 46/9
46/13 46/21 47/15 48/16 48/19 49/4 52/5
52/11 53/6 54/8 55/5 55/6 55/13 56/1
57/13 57/25 58/23 61/12 61/15 61/16
62/15 63/19 64/16 66/5 66/21 67/4 68/24
68/25

## K

kept [1] 43/10
key [1] 9/5
keyword [2] 17/1 20/13
keywords [1] 39/3
kids [1] 42/12
kind [3] 19/17 42/23 48/19
know [50] 2/15 2/20 7/2 8/5 8/8 8/10
12/20 13/18 14/8 14/16 15/1 19/5 21/11
22/25 24/7 25/24 33/19 36/15 36/17
36/18 37/8 38/8 40/14 41/17 41/19 42/6
42/10 43/21 44/2 44/9 44/21 48/21 48/22
49/22 49/24 52/23 54/23 56/11 56/23
58/6 59/15 59/22 59/23 59/24 60/13
61/13 65/3 65/12 67/18 69/7
known [6] 7/24 7/24 7/24 8/1 21/7 48/7
knows [2] 32/23 44/8

## L

language [1] 58/20
large [1] 58/8
largely [4] 50/2 52/24 60/4 62/3
last [2] 6/9 63/11
latest [1] 64/12
LAUREN [1] 1/11
law [16] 3/18 9/12 9/18 11/24 12/16
13/13 17/23 17/24 19/25 20/17 22/24
24/19 32/14 35/7 41/13 58/8
lawful [1] 23/13
lawfully [1] 25/4
lawsuit [4] 15/11 23/4 29/19 35/3
learn [2] 12/25 42/8
least [18] 3/18 4/2 4/6 4/12 13/17 27/17
28/13 28/20 30/12 31/11 31/21 36/22
36/22 54/23 56/9 61/14 61/19 66/23
leave [4] 32/21 41/10 57/5 58/17
led [1] 4/21
legal [1] 23/12
legislature [1] 15/14
Lehrburger [1] 54/17
Lenard [1] 2/4
less [3] 6/11 38/8 58/10
let [10] 19/22 22/25 27/3 29/13 31/15
32/21 40/2 40/14 45/4 53/21
let's [4] 22/17 35/19 52/21 66/22
letters [2] 10/2 55/9
level [2] 34/17 50/24
liberally [1] 3/19
license [1] 5/11
life [1] 39/24
like [27] 2/23 3/11 5/9 5/13 8/4 9/7 16/20
34/21 37/13 40/1 41/17 42/4 44/7 44/22
45/17 46/19 46/21 47/10 47/11 50/12
52/11 53/11 55/8 60/19 63/13 63/14 67/6
Likewise [1] 53/22
limb [1] 51/23
limit [1] 22/1
line [3] 29/3 29/3 38/10
linear [1] 56/20
lines [2] 35/13 66/22
listen [1] 60/8
literally [1] 41/10
literature [1] 45/16
litigated [1] 45/23
litigating [1] 30/9
litigation [14] 5/19 6/17 6/24 8/12 9/3 9/4
16/9 21/7 34/11 36/20 48/23 49/19 54/2
67/3
little [7] 14/4 14/22 15/7 41/24 43/23
59/5 69/4

## LLP [1] 1/14

loaded [1] 56/16
loans [1] 55/10
local [7] 20/25 22/19 44/24 45/1 45/12
45/18 67/16
locate [1] 34/5
location [1] 11/17
log [5] 44/22 44/24 45/1 45/13 45/23
logical [1] 58/5
logistically [1] 57/5
long [4] 15/19 33/25 42/10 67/5
long-standing [1] 15/19
longer [1] 69/5
look [14] 3/21 4/8 18/17 20/18 27/4
34/14 34/20 48/14 48/17 51/11 55/14
57/9 58/17 58/18
looked [1] 33/25
looking [22] 10/11 28/3 35/3 35/4 37/14
39/7 45/19 47/1 48/25 49/4 49/7 49/8
49/13 49/14 50/18 52/17 55/7 59/24
60/13 60/16 60/17 63/10
looks [1] 63/14
loop [1] 43/10
loophole [1] 35/1
losing [1] 15/15
lost [3] 15/25 35/5 40/8
lot [8] 2/17 30/10 37/20 38/11 42/17
45/16 64/11 64/17
loud [1] 33/14
LOUIS [1] 1/11

## M

made [6] 5/19 10/18 22/12 22/14 60/7
62/21
MAGISTRATE [4] 1/11 6/9 34/11 54/16
mail [1] 11/25
maintain [8] 3/13 4/5 6/13 7/10 7/19 7/20
9/9 44/20
majority [2] 4/9 11/21
make [26] 2/12 3/11 5/9 6/8 10/7 13/22
17/2 20/14 21/15 27/13 29/21 30/14
39/17 42/17 46/7 47/16 48/9 54/22 56/13
56/22 57/9 61/9 64/5 66/21 67/24 68/4
makes [2] 10/13 32/3
making [6] 31/7 45/8 46/5 48/16 59/20
61/12
malfunction [3] 14/5 14/20 14/21
Management [1] 18/8
manager [1] 18/6
Mancari [3] 1/22 69/21 69/21
manipulate [1] 39/3
manipulation [1] 39/6
manner [2] 36/23 39/8
manually [1] 56/19
many [4] 4/24 8/18 15/17 32/23
March [2] 18/11 18/20
mark [2] 46/22 60/17
marking [1] 46/23
Martinez [1] 41/6
mask [2] 15/2 15/5
matter [13] 4/3 4/19 8/25 19/14 23/4
24/1 27/12 40/9 43/22 44/16 61/19 63/17
69/19
matters [4] 8/13 42/1 44/4 55/12
may [21] 12/6 12/11 13/3 14/3 14/4 20/4
23/19 33/11 35/15 42/3 42/3 42/22 45/8
52/12 55/5 59/14 59/16 61/2 64/18 64/22
68/17
maybe [3] 14/13 49/12 55/6
MC [2] 1/2 2/3

McCain's [1] 45/25
me [30] 10/15 12/10 13/4 14/12 14/12
15/7 15/16 19/22 20/8 22/25 23/9 26/9
27/3 27/9 29/14 31/15 32/21 32/24 33/22
34/3 34/19 34/25 35/13 36/14 38/16
39/23 40/2 40/7 41/8 42/10 43/5 43/7
45/4 45/24 49/1 49/12 52/22 53/21 54/9
54/12 55/3 56/8 58/9 58/24 63/6 63/7
63/14 64/12 64/16 67/4 69/5
mean [13] 4/7 4/12 5/5 5/21 20/12 23/13
27/25 30/4 38/25 45/15 58/12 58/15 67/1
meaning [4] 21/1 24/18 37/18 51/25
means [9] 5/25 8/6 8/15 12/25 18/9
30/18 38/16 52/5 54/9
meant [2] 51/2 54/12
meat [2] 59/2 59/23
meet [2] 17/23 22/3
meeting [6] 15/11 18/5 18/16 18/24 21/1
25/22
meetings [1] 18/5
memorandum [1] 41/7
memorialize [1] 69/8
mercy [1] 41/5
meritorious [1] 12/6
messages [4] 44/1 44/2 44/3 47/2
met [2] 10/1 13/12
Miami [6] 1/4 1/19 4/23 8/1 18/19 18/20
miamicriminallaw.net [1] 1/20
middle [1] 31/10
might [15] 3/11 7/14 7/23 10/7 28/19
29/15 37/6 37/24 42/4 46/25 52/6 53/10
53/23 66/18 69/5
mildest [1] 16/3
mile [1] 63/17
million [1] 6/23
millions [4] 16/23 17/4 34/21 35/2
mind [3] 9/8 30/23 61/3
mine [2] 52/24 55/2
minimize [2] 9/24 28/1
minutes [2] 47/9 65/16
mirror [1] 57/13
mirrors [1] 43/23
misled [1] 68/13
misrepresented [1] 67/6
missing [1] 43/16
mode [1] 14/13
moment [4] 2/18 14/12 19/22 64/22
money [4] 6/23 17/6 34/24 38/11
months [1] 48/16
moots [1] 8/18
more [21] 3/10 4/6 6/11 8/24 15/10
20/25 21/6 21/20 23/22 29/1 30/10 37/4
47/12 47/19 52/11 56/10 58/3 60/15 62/4
62/6 68/11
morning [2] 2/7 2/9 13/25 14/2 63/23
most [7] 8/21 10/10 10/11 25/8 53/10
56/10 62/10
motion [17] 2/17 3/25 11/6 11/9 12/2
12/7 12/19 12/23 13/4 13/7 24/20 36/16
41/6 60/3 61/20 62/2 67/14
motions [1] 67/4
motivation [1] 23/12
move [2] 33/24 62/20
moved [1] 21/12
moving [2] 32/5 67/24
Mr. [56] 2/17 13/22 13/24 16/8 18/6 18/6
18/7 18/10 18/10 18/11 18/12 18/25 19/2
19/4 21/4 24/15 28/12 29/13 31/3 32/3
33/19 35/18 36/15 36/17 37/18 39/7
39/13 40/22 40/18 41/3 42/2 42/16 43/13

## M

Mr.... [23]  43/13 44/7 45/8 46/19 50/5
50/11 50/13 51/20 52/3 53/23 56/23
56/25 57/3 57/7 59/8 59/11 60/2 60/10
60/12 61/5 61/9 61/20 64/4
Mr. Brakha [4]  18/10 18/12 18/25 19/2
Mr. Brakha's [1]  18/11
Mr. Gorrin's [1]  18/6
Mr. Reizenstein [13]  13/24 33/19 42/16
43/13 44/7 46/19 50/13 53/23 57/3 60/12
61/5 61/9 61/20
Mr. Reizenstein's [1]  52/3
Mr. Rivera [9]  16/8 18/6 18/7 18/10 19/4
31/3 50/5 50/11 51/20
Mr. Sullivan [23]  2/17 13/22 21/4 24/15
28/12 29/13 32/3 35/18 36/15 37/18
39/13 40/2 40/18 41/3 42/2 43/13 45/8
56/23 57/7 59/8 60/2 60/10 64/4
Mr. Sullivan's [4]  36/17 39/7 56/25 59/11
Ms. [44]  3/9 3/13 4/14 4/18 4/21 4/25 5/6
5/11 5/25 6/3 6/20 7/3 7/7 7/10 7/15
7/22 8/3 8/5 8/11 8/15 8/25 9/5 10/6
10/21 11/17 16/13 17/13 17/17 18/8
18/13 18/15 18/15 18/20 19/2 19/7 22/18
30/17 44/1 46/17 47/6 49/17 49/22 50/3
50/8
Ms. Nuhfer [36]  3/13 4/14 4/18 4/21 4/25
5/11 5/25 6/3 6/20 7/3 7/10 7/15 7/22
8/3 8/5 8/11 8/15 8/25 9/5 10/6 16/13
17/13 17/17 18/8 18/13 18/15 18/15
18/20 19/2 22/18 30/17 47/6 49/17 49/22
50/3 50/8
Ms. Nuhfer's [7]  3/9 5/6 7/7 10/21 11/17
44/1 46/17
Ms. Reizenstein [1]  19/7
much [7]  2/25 4/12 5/8 35/15 36/14
38/15 55/3
multiple [2]  5/2 10/18
must [1]  6/7
my [56]  3/1 3/18 4/23 5/4 6/23 10/25
11/14 12/12 14/6 14/8 14/10 14/21 14/21
14/25 16/22 17/2 19/18 19/20 23/5 24/18
24/25 27/5 27/19 29/4 30/24 30/25 31/5
31/22 32/16 33/15 34/5 36/15 37/6 39/12
39/24 41/8 41/9 41/12 43/3 43/14 47/19
48/15 49/8 52/22 54/3 55/20 56/18 60/3
60/7 61/4 62/14 64/23 65/16 66/16 67/9
69/18
myself [6]  23/6 23/6 34/17 41/5 64/2
64/5
mystery [1]  52/24

## N

name [1]  26/25
names [1]  45/17
narrow [3]  10/3 62/4 62/17
narrowed [3]  19/16 30/6 30/13
narrowing [1]  30/11
native [1]  38/18
nature [5]  16/1 25/17 25/18 45/21 56/22
near [1]  32/15
necessarily [1]  66/25
necessary [4]  23/5 37/6 54/2 59/7
necessitate [1]  13/3
need [21]  16/20 20/9 33/9 34/22 37/18
39/16 41/15 42/23 43/21 44/9 44/11
44/21 45/17 47/7 47/10 47/12 48/10
48/18 62/25 65/18 66/4
needs [2]  30/13 53/9
negotiate [1]  10/5

negotiations [1]  62/16
never [10]  14/4 17/2 17/18 18/5 19/24 22/25
35/14 42/8 43/4 55/19 59/24
new [6]  1/15 31/11 40/6 41/9 53/16 54/2
next [7]  8/4 16/5 25/6 54/5 54/15 57/6
63/18
night [2]  63/23 64/12
no [53]  1/2 2/3 3/16 3/22 5/17 5/20 5/23
8/21 11/11 16/18 17/7 17/13 17/14 17/15
19/20 21/23 22/18 23/4 23/21 29/17
29/18 29/21 34/7 45/6 45/23 46/5 49/9
49/16 50/9 50/12 50/14 50/16 50/17
50/18 51/1 51/3 52/20 53/18 54/11 55/20
57/4 58/5 58/14 58/14 58/14 60/21 63/7
63/21 65/8 65/21 66/7 68/4 68/14
nobody [1]  22/6
none [1]  55/14
nonetheless [2]  48/8 49/17
nonparty [9]  9/24 13/15 17/17 22/4 31/6
32/2 36/3 47/20
noon [1]  63/23
nor [1]  16/18
norm [1]  52/22
normal [1]  14/5
not [127]
note [5]  2/5 9/1 24/3 34/12 49/16
noted [1]  39/10
nothing [3]  39/23 45/23 51/17
notice [4]  2/24 22/19 63/7 64/12
notion [1]  8/25
now [27]  7/10 13/10 17/9 17/12 18/2
18/5 19/6 20/21 21/20 22/14 24/7 25/6
32/24 34/25 35/8 38/23 39/11 42/22
45/14 49/21 50/9 53/4 55/7 55/15 55/18
65/25 66/13
Nuhfer [46]  2/10 3/2 3/13 4/14 4/18 4/21
4/25 5/11 5/25 6/3 6/20 7/3 7/10 7/15
7/22 8/3 8/5 8/11 8/15 8/25 9/5 10/6
14/4 15/9 15/19 16/5 16/13 16/16 16/18
16/23 17/3 17/13 17/17 18/8 18/13 18/15
18/15 18/20 19/2 22/18 30/17 47/6 49/17
49/22 50/3 50/8
Nuhfer's [7]  3/9 5/6 7/7 10/21 11/17 44/1
46/17
number [5]  5/22 32/15 49/24 62/23
64/14
numbers [3]  13/17 35/25 64/13
numeric [1]  13/18
numerically [1]  11/11
numerous [2]  5/12 8/7
nuts [1]  47/4
NY [1]  1/15

## O

object [4]  3/22 51/6 51/7 65/7
objected [3]  9/15 49/16 51/10
objected-to [1]  9/15
objecting [2]  9/14 35/7
objection [17]  4/17 7/11 8/21 9/19 17/13
21/19 21/22 25/14 28/2 28/5 28/22 29/17
44/20 52/4 63/21 65/8 67/13
objectionable [2]  9/14 36/23
objections [22]  3/10 3/14 3/15 4/3 4/6
4/11 5/7 8/18 9/8 12/5 17/14 20/4 22/13
31/25 39/11 60/4 60/14 62/3 62/6 66/19
68/7 68/24
obligation [5]  3/22 9/23 10/1 10/1 17/14
obligations [1]  49/10
observation [2]  5/9 47/16
observations [1]  3/11

observed [2]  26/19 62/4
obtain [1]  26/7
obtained [1]  30/16
obtaining [2]  17/5 27/18
obviously [6]  13/8 25/3 34/11 48/1 65/8
66/17
occur [4]  17/4 53/15 54/1 59/2
occurred [5]  15/25 17/20 23/25 49/25
66/2
occurring [1]  27/16
October [1]  27/10
off [7]  2/20 15/5 15/7 21/12 41/1 43/8
43/9
offer [1]  7/23
offered [2]  10/5 62/17
Office [5]  22/19 23/2 23/10 24/12 25/5
officer [1]  5/2
offices [1]  18/11
offshoot [1]  51/21
often [1]  36/5
Oh [4]  14/6 45/11 62/13 66/7
oil [3]  15/23 16/11 16/13
OK [48]  2/11 11/1 12/9 13/24 14/15
14/23 15/8 21/24 23/24 24/17 29/9 29/12
29/21 31/16 31/24 32/12 33/11 33/20
34/22 38/24 39/5 42/14 42/20 46/1 52/21
55/23 58/18 58/25 59/4 59/11 61/1 63/2
63/9 63/10 64/1 65/2 66/8 66/10 66/15
66/21 67/8 67/12 67/20 68/2 68/10 68/15
68/18 69/3
old [1]  64/15
on [81]
once [6]  3/6 16/10 23/17 36/15 39/2
40/11
one [30]  5/15 5/23 6/6 14/18 14/18
15/14 17/6 17/9 18/13 21/8 29/13 30/1
31/5 37/5 38/8 38/18 39/22 41/19 43/23
43/23 43/24 51/4 51/5 51/12 51/19 55/8
55/20 61/14 62/22 64/22
one-person [1]  6/6
one-term [1]  15/14
only [8]  4/25 7/24 15/25 16/6 17/18 34/3
66/18 67/2
open [3]  34/22 35/13 63/24
opening [8]  4/21 11/17 11/18 11/21
12/16 40/2 40/16 40/25
opinion [2]  28/18 29/4
opportunity [4]  2/19 13/22 42/17 62/5
opposed [1]  52/9
opposing [2]  21/21 22/25
opposite [1]  10/24
opposition [3]  9/1 9/10 10/3
or [65]  6/11 8/21 10/15 13/9 13/12 13/17
15/5 18/5 18/23 19/8 19/19 20/3 20/8
20/15 20/25 21/1 21/11 21/19 21/20
22/18 23/14 26/12 27/2 27/17 28/2 28/11
28/11 29/2 29/14 31/11 31/13 32/4 33/14
34/15 35/3 36/4 42/3 45/5 45/13 46/12
48/1 48/6 48/6 48/17 50/23 52/17 55/9
55/17 55/17 56/9 56/15 56/19 58/22
59/19 60/15 60/16 60/18 61/16 63/23
64/13 64/15 66/5 66/19 67/25 68/21
oral [1]  64/17
order [23]  14/18 24/20 26/4 39/7 39/16
40/23 44/9 46/17 46/18 46/19 46/21
48/23 53/14 56/15 65/7 65/11 66/7 66/9
66/20 67/18 67/21 68/7 69/8
original [1]  39/6
other [26]  4/5 11/7 11/24 12/5 13/10
20/3 23/14 26/10 30/17 33/1 34/7 34/8

## Q

other... [14] 34/21 41/25 45/24 46/19
46/21 47/25 51/5 54/19 55/12 56/14 60/2
61/11 63/25 65/24
others [1] 25/22
otherwise [2] 37/10 58/7
our [46] 3/5 3/9 4/4 4/20 4/21 5/12 5/15
5/17 6/11 6/12 6/14 6/17 6/19 7/2 7/6
7/8 7/23 8/9 8/13 8/15 9/4 9/17 10/17
11/23 12/3 12/16 17/24 35/5 35/6 45/1
45/12 46/8 46/12 46/25 47/3 47/17 48/22
49/19 49/20 50/11 52/25 53/10
54/17 61/13 65/5
ours [1] 10/23
out [26] 13/13 16/21 19/19 20/3 22/7
26/1 35/13 35/19 35/23 36/6 36/21 38/3
41/11 42/11 42/22 51/4 51/23 53/17
55/19 57/19 58/20 59/18 59/20 60/6
61/17 68/4
outlined [3] 3/9 5/16 53/25
outset [1] 30/9 49/16
over [17] 8/19 15/24 23/7 23/8 23/19
27/16 28/23 33/5 38/1 44/20 45/6 50/4
52/18 60/10 64/18 64/7 64/9
overall [1] 32/8
overbroad [16] 3/23 4/2 4/8 17/11 17/25
18/3 18/17 19/17 22/4 22/15 25/7 29/23
29/25 30/21 31/8 51/11
overcome [1] 36/10
overcoming [1] 21/8
overinclusive [2] 29/13 33/4
overlap [2] 44/14 53/14
overlooked [2] 48/7 53/1
overly [2] 9/18 9/21
overruled [2] 60/4 62/3
own [5] 16/7 17/2 31/6 34/21 54/25
owner [2] 6/5 34/13

## P

pace [1] 14/23
page [3] 30/16 45/7 69/4
pages [2] 1/8 4/19
paid [3] 11/14 16/23 17/6
paper [2] 3/4 60/23
papers [6] 3/9 3/21 4/13 5/2 5/17 33/1
paragraph [3] 49/5 55/8 58/18
parameters [6] 42/4 42/6 44/6 44/9 46/3
53/25
pardon [1] 14/12
parent [1] 49/21
part [8] 9/11 25/8 28/13 29/22 47/24
56/9 57/17 61/8
partial [1] 2/16
participate [1] 36/7
participating [1] 23/17
particular [4] 12/1 21/12 50/22 50/24
particularly [2] 32/1 35/24
particulars [2] 35/22 35/24
parties [9] 30/17 36/15 51/3 61/17 62/1
62/8 63/11 64/14 67/18
parts [1] 25/16
party [13] 4/7 4/10 9/14 9/19 20/9 20/17
28/23 36/5 37/4 37/9 44/23 46/5 47/8
past [2] 15/9 58/11
path [1] 37/8
pause [7] 2/14 12/14 14/7 19/22 22/17
27/7 65/1
pay [2] 12/1 34/24
payments [1] 50/4
PDF [2] 26/10 38/19

PDV [20] 1/3 2/4 2/8 10/3 16/18 16/19
17/3 27/12 36/16 36/25 37/1 37/13 37/18
31/14 49/9 49/20 50/1 51/13 51/16 51/17
PDVSA [1] 49/11
peering [1] 27/16
pen [1] 60/23
pending [4] 25/5 26/17 26/21 63/7
people [4] 18/19 24/8 34/8 41/14
people's [1] 45/17
percent [1] 67/1
performed [1] 50/6
perhaps [9] 3/11 20/23 33/4 34/17 42/4
53/12 53/25 67/6 68/20
period [3] 22/2 41/20 49/25
permitted [1] 54/18
person [5] 6/6 42/22 43/8 43/10 58/23
person's [1] 26/16
personal [2] 7/11 43/8 55/20
persons [1] 50/24
pertains [1] 5/10
petition [3] 32/22 48/24 55/1
petitioner [4] 1/4 2/8 32/23 67/24
petitioner's [3] 57/22 59/19 60/14
philip [1] 1/18 1/20 2/9 14/3
phone [10] 14/8 14/20 17/20 18/23 43/3
43/6 59/16 64/7 64/9 64/19
phones [3] 8/7 8/7 64/15
photograph [2] 26/9 27/9
phrase [2] 30/4 58/22
picture [1] 19/2
piece [1] 3/4
pieces [1] 21/9
Pittsburgh [1] 38/17
place [2] 23/22 59/12
places [1] 22/21
PLAINTIFF [1] 1/13
plaintiff's [1] 15/18
plaintiffs [1] 34/2
platform [5] 38/5 38/7 38/21 56/17 58/1
platforms [1] 38/13
players [1] 27/5
pleading [1] 22/7
please [4] 2/5 14/3 33/17 42/23
point [30] 4/13 4/17 4/25 5/4 8/4 9/7
21/12 25/6 26/7 27/13 30/7 30/14 31/7
32/6 32/24 38/1 43/3 43/15 45/15 46/24
47/18 47/19 51/19 54/3 54/20 56/18
59/11 65/2 66/1 67/13
police [3] 5/1 24/4 24/8
political [3] 15/9 15/13 45/18
Poorly [1] 15/3
portion [2] 57/15 58/3
position [14] 3/7 5/19 13/11 21/5 21/16
21/21 31/24 32/20 33/16 46/8 55/25 57/7
60/14 68/12
possesses [3] 7/22 7/25 8/1
possession [3] 7/7 8/7 49/23
possible [3] 53/11 66/24
possibly [2] 31/2 58/7
posture [1] 39/12
potatoes [1] 59/23
potential [1] 67/7
potentially [1] 68/13
practice [1] 37/5
practices [3] 9/11 9/13 35/6
practicing [1] 22/24
precise [1] 46/3
predated [1] 15/24
prefer [1] 36/15 63/6 63/20
prejudice [3] 41/22 43/16 54/6

prejudiced [1] 54/16
premise [2] 49/12 20/23
premised [1] 21/5 32/6
premises [1] 24/9
prepare [2] 35/22 58/20
prepared [3] 35/8 53/8 69/5
present [4] 2/20 26/8 29/3 35/20
presentation [3] 13/22 21/20 42/18
presentations [1] 69/7
presenting [1] 15/5
preserved [1] 39/11
pressing [1] 41/25
prevent [1] 63/11
previously [2] 18/9 39/10
previously-noted [1] 39/10
primarily [2] 4/20 7/19
primary [1] 51/7
prime [1] 18/2
principal [1] 9/2
prior [2] 61/6 62/16
prism [1] 48/3
private [2] 11/16 24/9
privilege [10] 8/19 28/2 33/8 44/22 44/24
45/1 45/6 45/13 45/23 53/18
privity [2] 16/19 17/7
probably [10] 6/18 35/2 37/25 42/10 44/8
50/12 50/14 56/10 57/22 59/8
probing [1] 37/10
problem [3] 35/14 54/22 60/6
procedures [1] 35/6
proceed [5] 14/4 14/22 15/8 36/1 67/19
proceeding [1] 66/22
proceedings [1] 2/2
process [14] 4/21 10/7 11/15 11/16
12/10 13/4 23/12 23/15 23/17 24/6 24/9
24/16 48/12 61/12
produce [9] 5/11 39/9 39/13 43/14 56/14
56/15 56/20 57/4 61/21
produced [16] 8/5 8/16 8/20 25/12 26/13
28/4 28/17 28/20 38/5 41/21 43/15 45/9
46/21 48/15 60/15 61/25
producing [2] 39/20 63/12
production [28] 3/3 6/2 6/8 7/16 7/17 8/2
13/15 13/16 25/15 28/2 29/5 29/16 36/24
40/22 45/13 46/14 46/17 48/14 49/8
53/15 54/6 57/19 58/5 60/5 61/6 61/23
61/24 67/11
productions [1] 10/18
progress [1] 50/5
promise [1] 63/16
proof [1] 30/21
proper [2] 11/24 11/25
properly [1] 3/2 24/20
prophylactic [1] 63/5
proportional [1] 47/23
proposal [4] 31/17 39/12 43/19 48/4
propose [4] 36/13 40/19 57/12 62/24
proposed [1] 60/8
proposing [1] 13/2
proprietorship [6] 5/16 5/19 32/13 33/25
34/9 34/16
prosecuting [1] 11/6 13/7
protective [6] 26/3 46/17 46/18 46/19
46/20 53/13
protocol [1] 10/6
protracted [1] 64/10
provide [4] 16/11 31/13 58/19 62/6
provided [4] 25/19 25/20 25/25 36/25
provides [2] 23/12 46/18
public [2] 26/1 46/20

**P**

pull [1] 47/8
pulled [1] 38/22
pulls [1] 19/19
purposes [2] 27/17 30/8
pursue [1] 13/4
pushed [1] 43/13
put [6] 19/13 34/24 36/21 53/16 58/10
60/23

**Q**

quantity [1] 21/7
quash [4] 32/5 36/16 62/2 67/14
quashed [2] 31/18 32/17
quashing [1] 33/9
question [13] 6/5 11/11 12/15 12/21
18/16 25/9 39/19 49/18 50/15 54/4 61/18
62/14 66/3
questions [7] 2/18 11/3 42/17 44/8 47/15
48/6 69/6
quick [1] 62/10
quickly [9] 12/25 33/24 41/16 53/2 57/1
57/6 57/14 59/2 66/23
quite [2] 18/3 20/17
quote [4] 8/11 18/4 30/15 36/8
quotes [3] 16/6 16/7 16/22

**R**

raise [4] 8/4 9/7 12/6 68/13
raised [7] 24/20 25/6 41/23 46/19 51/8
61/14 68/6
raises [1] 9/19
rang [1] 43/7
range [3] 10/7 28/11 44/5
rather [1] 56/16 57/14 60/23
raw [1] 39/2
reach [2] 42/22 43/9
reached [3] 22/6 30/11 35/13
reaching [2] 35/19 46/25
reading [3] 3/18 34/14 52/11
real [3] 27/4 27/14 54/22
really [21] 12/4 16/3 22/21 23/4 28/2
30/10 30/10 32/19 34/14 40/25 43/2 43/2
43/21 43/24 45/17 45/25 48/20 49/5
61/11 65/15 65/17
reared [1] 24/2
reason [10] 4/6 4/25 11/20 12/22 13/10
36/7 47/12 50/10 58/5 63/5
reasonable [4] 18/14 46/23 53/6 53/10
reasoned [1] 33/21
reasons [2] 5/13 17/6
recall [2] 18/12 45/14
receive [4] 4/10 11/9 23/18 54/18
received [5] 3/4 6/22 22/19 29/1 29/24
receives [1] 4/7
recently [1] 32/14
recipient [5] 9/24 13/16 36/3 47/21 47/24
recipients [1] 36/5
recognize [1] 32/23
recognizing [2] 53/12 53/14
record [5] 2/6 5/20 7/8 33/15 34/7
recording [2] 1/10 69/19
records [10] 6/1 6/2 6/4 6/7 6/9 6/15
20/25 34/13 44/21 55/11
recovery [4] 18/21 19/10 20/7 37/13
refer [1] 35/25
reference [1] 50/17
referred [1] 53/1
refuse [1] 5/11
refuted [1] 22/5

refutes [1] 8/24
regard [11] 15/25 16/2 19/21 22/17
22/21 24/5 27/24 29/10 35/12 45/23 65/6
regarding [3] 25/21 25/23 41/6
Regardless [1] 29/23
REIZENSTEIN [17] 1/18 2/9 13/24 14/4
19/7 33/19 42/16 43/13 44/7 46/19 50/13
53/23 57/3 60/12 61/5 61/9 61/20
Reizenstein's [1] 52/3
relate [1] 50/22
relationship [3] 15/19 15/22 15/24
Relativity [2] 38/9 38/10
relevant [6] 4/2 4/4 9/5 19/12 20/11
29/15
relief [1] 54/1
rely [1] 42/9
remain [1] 56/25
remains [1] 3/7
remarks [1] 43/19
remember [1] 50/8
remotely [4] 40/10 41/12 42/7 64/19
remove [2] 29/6 40/7
reply [10] 10/3 11/5 12/3 12/8 15/18 16/3
16/21 30/15 41/8 41/16
report [2] 60/19
reporter [3] 1/22 14/18 69/22
reporting [2] 26/16 27/11
reports [1] 50/5
repositories [4] 37/11 48/1 48/7 59/14
represent [1] 50/7
representation [2] 44/15 54/22
represented [5] 10/14 10/18 10/20 15/12
61/5
request [25] 9/15 18/4 19/9 19/16 19/17
20/15 24/15 27/2 37/21 37/22 37/22
43/23 47/4 48/20 49/8 49/16 50/12 50/14
50/16 53/10 56/3 60/11 64/13 64/13
68/20
requested [9] 9/13 10/4 10/15 10/17
28/25 30/19 37/23 44/14 45/24
requesting [4] 8/17 11/14 36/18 44/14
requests [13] 4/1 4/4 6/19 7/7 30/6 37/24
48/9 57/2 57/13 60/2 61/15 62/4 62/7
require [6] 37/13 47/21 48/1 50/25 58/3
64/11
required [2] 22/8 25/4
requirement [1] 48/20
requires [5] 13/11 13/14 44/24 45/1
45/13
rereview [1] 42/2
research [1] 34/3
resist [1] 2/18
resolve [4] 22/12 22/13 53/2 62/10
resolved [2] 24/11 37/25 63/6
respect [6] 12/7 13/4 13/6 13/12 37/3
67/14
respond [6] 21/13 32/4 32/10 55/3 61/21
68/17
responded [2] 20/15 57/3
respondent [5] 1/8 2/10 13/15 48/2 62/6
respondent's [1] 9/1
respondents [6] 3/6 3/7 9/8 11/23 18/15
30/20
responding [1] 9/17
responds [1] 56/9
response [14] 3/4 5/12 7/23 10/19 13/13
20/14 21/19 22/22 25/12 25/15 32/22 33/5
39/14 56/19
responsive [10] 6/14 7/6 20/3 29/7 45/5
46/12 48/8 50/14 61/13 62/9

responsiveness [3] 44/12 46/10 61/9
rest [1] 57/22
returned [1] 40/4
returns [1] 55/11
reveal [1] 8/2
reveals [1] 48/9
review [10] 20/1 20/2 34/17 38/5 38/7
38/12 56/17 56/20 58/1 60/11
reviewed [2] 59/8 62/3
right [49] 2/18 12/22 13/21 14/17 19/13
20/22 21/3 21/4 21/17 23/16 28/9 28/15
28/21 30/5 32/7 32/11 32/19 32/21 32/24
33/24 34/18 39/18 40/24 41/2 42/16
42/24 43/10 50/9 50/17 51/4 52/14
52/15 54/13 56/6 56/12 57/16 59/13
60/17 60/17 60/18 63/14 64/3 66/8 66/21
67/12 67/22 68/16 69/3 69/10
rights [3] 31/1 31/14 49/10
ring [1] 43/8
ringing [1] 14/8
ripe [2] 24/16 34/16
Rivera [22] 9/2 15/11 15/20 15/22 15/25
16/8 16/10 16/23 17/3 17/8 18/6 18/7
18/10 19/4 30/22 31/3 31/12 49/21 50/1
50/5 50/11 51/20
Rivera's [1] 16/17
rolling [6] 57/19 58/4 58/12 58/13 61/21
67/10
Rolls [1] 38/12
Royce [1] 38/12
RPR [2] 1/22 69/21
rule [22] 3/14 4/6 4/11 5/5 5/7 6/4 6/7
9/12 9/23 11/9 12/24 13/1 13/8 13/10
14/25 40/11 44/24 45/1 45/13 51/25 52/6
67/4
rules [3] 12/24 39/24 67/16
ruling [4] 61/5 61/8 62/2 69/8
rulings [1] 60/10
run [3] 50/4 50/14 57/8
runs [1] 59/21

**S**

said [21] 15/20 16/2 17/1 17/9 17/13
17/14 19/4 22/7 24/14 25/23 27/8 28/8
33/23 39/15 42/4 42/7 47/7 47/17 55/15
57/14 67/10
same [13] 3/7 8/16 18/7 23/4 26/8 37/21
45/7 55/9 55/10 57/15 58/18 58/20 69/4
sanction [1] 13/2
sat [2] 22/7 43/7
satiated [1] 28/17
satisfy [2] 51/4 59/19
saved [2] 38/6 47/2
say [48] 3/21 4/8 4/9 4/13 4/14 6/16
15/18 15/20 17/15 20/7 20/18 22/17
22/23 22/25 23/5 23/22 26/19 28/18
30/15 31/2 31/7 33/1 35/12 37/14 37/17
38/24 41/6 42/21 42/22 44/18 46/9 48/15
48/17 50/18 51/6 51/8 52/22 53/9 55/13
56/1 57/1 58/17 58/21 58/22 62/23 63/3
65/8 65/23
saying [12] 22/3 26/20 29/22 30/18
34/20 43/16 45/24 52/10 54/8 65/17
66/13 68/12
says [2] 19/19 34/22
schedule [1] 54/17
scheduled [1] 63/19
schedules [1] 2/24
scope [10] 10/15 12/4 17/21 33/10 35/12
35/20 47/23 62/6 62/8 64/14

**S**

scopes [1] 62/18
script [1] 2/20
search [11] 10/6 17/1 18/21 20/9 20/11 20/13 44/5 47/23 49/14 50/13 55/17
searched [2] 33/23 44/5
searches [4] 20/14 38/1 39/2 39/3
seat [1] 2/12
second [4] 5/9 22/17 37/13 49/1
secondary [1] 48/19
seconds [1] 33/15
secure [1] 20/13
securing [1] 16/17
see [13] 15/1 18/23 20/2 20/9 26/2 29/22 40/11 40/18 44/22 45/8 45/17 49/12 53/11
seek [1] 54/1
seeking [6] 12/7 13/6 17/22 18/19 42/5 47/22
seem [1] 34/5
seems [2] 34/25 42/2
seen [3] 10/10 44/3 49/23
send [1] 58/21
sense [4] 44/11 46/7 51/1 60/12
sensitive [2] 36/3 66/1
sent [4] 11/24 26/10 27/9 31/14
sentencing [2] 41/7 41/7
separate [3] 4/3 12/23 13/3
seriously [1] 22/12
serve [4] 3/15 4/6 5/2 54/19
served [4] 3/1 3/2 11/22 15/13
server [4] 23/15 24/6 24/10 24/16
servers [5] 4/22 11/15 11/16 12/10 13/5
service [9] 11/6 11/6 11/22 11/23 11/25 12/17 23/1 24/1 26/16
serving [1] 4/11
set [3] 53/1 60/7 64/8
seven [1] 57/6
Seventh [1] 1/14
share [1] 38/6
she [34] 4/15 7/23 7/25 8/1 9/1 15/10 15/12 17/5 17/6 17/7 18/23 19/9 19/19 19/25 22/20 23/18 23/19 24/4 27/20 27/21 29/17 29/20 32/10 32/20 34/6 34/7 37/9 38/16 38/17 40/10 44/2 49/24 50/10 65/7
shipped [1] 53/17
short [4] 2/24 9/10 16/1 44/9
shorten [1] 56/18 68/23
should [15] 11/9 12/1 18/18 23/5 32/4 32/10 37/9 38/2 39/18 40/4 44/18 46/9 47/19 56/18 65/7
shoulder [1] 27/16
show [7] 3/20 9/13 9/19 19/14 22/9 29/4 63/18
showed [3] 18/25 19/2 24/3
showing [4] 4/21 11/25 21/6 30/7
shown [2] 3/21 30/1
shows [1] 27/15
side [10] 11/24 12/6 24/3 39/17 39/17 43/22 43/22 44/18 54/19 56/14
sign [1] 18/7
signed [4] 6/16 6/19 6/20 31/12
significant [4] 19/18 19/20 27/23 53/14
significantly [2] 38/8 56/18
silent [1] 14/11
similar [3] 12/17 25/22 28/8
simple [2] 17/16 19/14
simply [3] 20/18 25/1 53/24
since [2] 42/8 55/1

sincerely [1] 43/4
single [3] 3/4 18/5 34/7
sit [8] 4/15 5/1 27/20 35/21 37/18 39/16 46/9 62/18
sitting [1] 17/18 42/12 43/22 65/16
six [1] 48/15
skewed [1] 14/22
slight [1] 45/8
slower [1] 14/5
small [1] 6/6
smaller [2] 21/9 55/16
so [97]
society [1] 35/6
sole [8] 5/16 5/18 6/5 32/13 33/24 34/9 34/13 34/15
solely [1] 6/6
solely-held [1] 6/6
solution [1] 46/4
SOLUTIONS [12] 1/6 2/4 3/3 5/14 5/18 5/22 6/16 6/20 6/22 7/1 7/3 32/16
some [24] 5/5 18/24 20/24 29/15 33/4 33/4 34/1 34/25 35/24 37/24 37/24 41/14 42/12 44/19 47/4 48/25 52/12 53/24 57/13 60/1 61/7 61/7 61/14 62/25
somebody [1] 23/2
somehow [3] 8/25 10/22 54/18
someone [5] 24/3 41/11 42/7 42/11 58/17
something [22] 4/7 5/5 9/20 15/20 16/25 20/9 21/6 22/15 24/19 26/5 34/3 34/16 35/22 45/10 50/12 51/22 54/7 55/5 61/16 62/19 66/5 68/21
sometime [2] 40/13 59/6
sometimes [2] 52/25 64/18
somewhat [1] 25/19
somewhere [3] 51/24 59/17 63/14
soon [2] 53/11 61/22
sorry [5] 44/25 49/7 53/3 55/2 66/9
sort [14] 2/16 3/10 4/8 7/12 24/3 34/25 44/19 47/4 47/4 47/8 52/10 52/12 61/12 61/17
sorts [1] 55/12
sought [1] 13/4
sounds [2] 44/7 47/11
soup [1] 47/4
source [3] 12/9 13/3 20/6
sources [1] 43/25
SOUTHERN [6] 1/1 23/9 26/23 31/11 40/6 54/8
speak [8] 22/25 35/14 41/4 41/15 46/6 54/16 60/9 63/6
speaking [2] 22/9 65/3
specialist [1] 20/12
specific [5] 9/20 11/13 19/8 24/7 62/6
specifically [5] 37/9 40/14 50/7 50/15 50/22
specificity [3] 9/15 47/22 50/24
specter [1] 36/6
speculation [2] 19/15 19/17
spend [1] 65/15
spending [1] 51/3
spill [1] 54/21
spirit [1] 57/22
split [1] 49/1
spoliation [1] 48/22
stamp [1] 53/16
standing [2] 15/19 50/9
start [4] 37/15 40/2 43/13 67/10
started [5] 19/11 25/2 37/3 43/4 67/23
starting [1] 20/23 41/10 43/15 43/17

state [3] 24/12 34/1 42/11
statement [1] 35/22
statements [2] 55/11 55/18
STATES [6] 1/1 1/11 6/10 23/9 35/1 35/5
status [5] 60/8 60/20 60/22 62/7 63/13
Stein [3] 6/10 34/10 34/12
step [3] 12/11 20/24 48/11
steps [1] 53/12
still [14] 10/5 22/16 28/2 28/10 29/18 32/18 42/1 43/16 48/5 55/16 58/6 62/19 62/19 64/13
stipulated [1] 46/16
storage [1] 46/25
stored [2] 37/11 38/5
streets [1] 4/23
strikes [1] 49/12
strong [3] 23/11 66/25 67/9
stuff [1] 45/25
subcontract [2] 18/8 18/12
subcontracts [2] 6/17 6/18
subject [10] 5/15 6/18 7/8 8/11 8/13 15/11 23/4 46/17 53/13 61/19
submit [4] 4/11 5/7 23/6 29/12
submitted [2] 4/20 5/17
subparagraphs [1] 55/9
subpoena [63] 4/7 4/10 6/4 6/19 8/8 8/10 8/17 9/24 10/10 10/16 10/17 10/19 10/22 13/15 17/21 17/25 18/3 18/4 21/8 21/19 23/18 23/20 23/20 25/15 26/15 27/2 27/9 27/14 29/7 29/20 30/9 30/13 30/20 31/7 31/18 32/16 33/6 35/25 36/3 36/5 36/10 36/24 37/18 37/18 38/15 39/14 44/12 45/15 46/13 46/25 47/3 47/20 47/24 49/1 49/6 55/8 56/4 56/9 57/15 59/9 59/15 59/19 61/13
subpoenaed [1] 20/8
subpoenaing [1] 37/9
subpoenas [19] 3/2 3/5 3/14 3/22 5/12 5/15 7/23 8/13 9/18 9/21 25/17 26/8 26/11 28/8 29/3 43/22 49/2 49/7 53/15
substance [1] 35/17
substantially [1] 36/23
such [2] 2/24 37/10
sudden [1] 35/4
sued [2] 30/22 31/3
sufficiency [1] 11/7
sufficient [1] 17/22 37/1
sufficiently [1] 44/14
suggest [2] 24/14 65/19
suggesting [1] 5/18
suggestion [2] 36/22 43/14
SULLIVAN [25] 1/13 2/7 2/17 13/22 21/4 24/15 28/12 29/13 32/3 35/18 36/15 37/18 39/13 40/2 40/18 41/3 42/2 43/13 45/8 56/23 57/7 59/8 60/2 60/10 64/4
Sullivan's [4] 36/17 39/7 56/25 59/11
summarize [1] 25/1
summary [2] 7/12 46/2
support [1] 5/20
suppose [1] 42/1
Supreme [1] 5/24
sure [26] 2/12 14/24 17/2 19/11 19/25 21/14 21/15 23/6 25/10 25/16 31/23 34/2 35/11 36/12 37/17 37/22 39/17 41/14 45/24 57/24 65/3 66/3 66/22 67/17 68/4 68/9
surprise [1] 66/18
suspect [1] 54/19
swamped [1] 40/17

**S**

switch [1]  64/18

**T**

tags [1]  58/1
take [15]  2/20 15/7 20/19 23/1 27/4
33/22 46/24 47/25 48/4 53/16 55/14 62/9
65/25 66/11 68/21
takes [1]  42/10
taking [1]  53/12 62/15 63/17
talk [3]  33/10 34/12 35/17
talked [3]  36/9 39/20 59/15
talking [5]  26/14 35/19 48/3 58/12 58/16
tangential [1]  8/25
tangible [1]  36/8
taped [1]  14/21
target [1]  22/20
targets [1]  9/3
tax [1]  55/11
taxes [1]  34/25
team [2]  46/11 59/8
teeth [1]  5/8
telephonically [1]  60/23
tell [5]  11/13 19/1 29/14 40/17 41/17
telling [1]  20/18
tells [2]  63/7 64/12
tend [1]  7/15
term [2]  15/14 55/17
terms [11]  8/23 10/6 21/12 22/9 28/1
32/5 44/5 49/14 50/13 63/19 65/22
testified [1]  18/10
testify [2]  20/11 27/9
testimonial [2]  7/18 7/19
text [5]  42/25 44/1 44/3 47/2 52/6
texts [2]  18/22 18/23
than [23]  10/23 14/5 15/10 21/6 25/4
25/19 29/1 29/7 30/10 34/3 34/17 38/8
38/16 42/10 43/23 45/24 46/12 51/3
56/10 56/11 58/10 60/23 69/5
thank [17]  2/11 2/22 2/23 13/25 15/6
35/9 42/19 43/11 43/18 53/5 62/12 62/14
64/25 68/16 69/2 69/10 69/11
thanks [1]  35/18
that [516]
that's [21]  21/7 32/9 36/24 40/8 45/2
45/19 46/8 47/5 50/24 52/10 55/10 60/24
60/25 67/5 67/20
their [39]  3/21 3/23 4/13 8/8 8/12 8/18
9/10 13/18 15/23 15/23 16/3 16/7 16/21
18/4 23/4 24/5 24/15 24/21 26/15 29/23
30/6 30/15 30/23 30/25 31/1 31/6 34/22
38/22 38/24 44/11 46/10 49/5 51/13
51/15 51/16 51/21 55/2 56/3 56/9
theirs [1]  55/15
them [20]  4/10 7/23 18/5 20/13 22/10
23/3 27/21 31/6 32/2 37/24 41/15 42/9
49/5 53/17 53/18 55/19 56/1 57/1 58/19
59/25
themselves [3]  7/13 7/14 61/17
then [44]  4/11 5/7 15/16 16/5 16/7 16/20
16/23 17/9 20/10 20/19 25/1 25/14 26/3
27/12 33/7 33/9 39/24 37/23 38/18
39/3 39/5 40/13 40/18 40/19 41/9 41/17
41/24 44/16 45/22 46/4 50/18 54/18
54/21 56/10 58/3 59/1 59/2 60/1 62/5
67/7 67/12 67/13 67/23
there [84]
there's [5]  22/18 25/16 29/12 35/2 57/4
therefore [1]  17/22
Thereupon [1]  1/24

these [31]  3/14 6/11 7/22 7/25 8/1 11/14
13/17 13/17 15/21 18/20 20/15 23/6 26/8
27/23 28/7 31/2 32/23 32/25 33/1 33/3
35/18 40/14 44/8 48/4 48/25 50/1 50/3
54/19 57/1 57/2 60/10
they [121]
they're [4]  18/19 29/24 30/18 52/16
they've [5]  4/1 10/17 30/24 53/17 55/18
thing [7]  16/5 16/6 16/20 39/24 42/23
51/12 63/11
things [9]  16/2 22/6 23/8 38/3 39/1 42/9
51/11 55/19 59/23
think [67]  3/9 3/20 4/8 4/8 4/16 5/10 5/19
8/17 10/1 10/8 10/9 10/10 10/13 10/23
11/2 11/20 11/25 12/6 13/2 17/11 18/9
19/4 20/7 20/16 21/25 22/14 24/11 24/15
25/1 25/17 25/18 28/11 28/24 28/25
29/22 30/7 30/12 30/18 30/20 31/25 32/5
32/22 33/21 34/6 34/16 34/18 35/15
42/12 43/19 44/16 46/4 46/8 48/25 50/12
50/23 53/10 53/22 58/5 59/7 60/21 61/19
64/10 64/17 65/17 66/24 68/3 69/3
thinking [2]  57/13 57/18
third [8]  4/10 20/17 30/17 36/5 37/4
38/19 44/23 46/5
third-party [3]  4/10 36/5 37/4
this [177]
those [20]  4/5 6/19 8/9 8/12 11/12 12/5
13/9 19/7 37/13 39/11 42/9 52/12 56/20
56/22 57/14 58/20 58/21 62/7 62/19
62/21
though [4]  9/23 11/7 32/5 42/2
thought [5]  14/11 14/14 21/18 26/18
51/2
thousand [1]  67/1
thousands [1]  4/23
through [11]  4/22 17/21 28/10 29/3 29/5
29/14 48/3 48/4 52/24 61/6 63/18
throughout [1]  65/4
throw [2]  41/5 41/14
throwing [1]  35/23
TIFF [1]  38/20
time [20]  4/24 15/13 22/1 22/2 22/24
33/3 35/9 36/14 39/24 39/25 40/14 43/5
49/25 51/4 55/2 56/19 59/7 68/23 69/10
69/11
timely [1]  22/14
timing [1]  18/14 47/14
today [8]  3/8 35/21 41/10 51/8 53/8 57/8
58/21 61/8
together [1]  47/8
told [3]  10/24 27/21 48/21
tomorrow [1]  58/22
tonight [1]  58/22
too [3]  43/9 59/6 60/6
took [2]  31/4 69/4
top [1]  38/10
Torres [2]  6/10 34/11
Torres' [1]  33/2
touch [1]  43/3
track [1]  11/16
TRANSCRIBED [2]  1/10 1/22
transcript [3]  14/17 14/19 66/6
transcription [1]  69/18
transfer [1]  49/10
transferred [2]  31/1 51/16
transferring [1]  51/22
transfers [1]  55/17
transitioning [1]  32/24
travel [1]  64/20

travels [2]  12/24 13/1
tremendous [1]  51/4
trial [1]  31/11
trick [1]  28/19
tried [1]  65/4
trim [2]  55/2 58/10
trouble [1]  32/19
troubles [1]  15/16
true [1]  25/11
truly [3]  27/25 60/13 63/16
try [6]  2/18 25/14 31/15 33/25 53/21
64/20
trying [9]  21/9 22/8 23/21 27/5 27/13
37/16 40/7 61/15 65/8
turn [4]  23/7 23/8 43/9 52/18
turned [4]  26/10 33/5 38/1 45/5
turning [1]  28/22
two [14]  3/2 12/23 15/10 19/7 25/16
29/12 31/4 39/1 40/4 40/5 48/11 49/12
51/11 54/21
two-step [1]  48/11
twofold [1]  32/20
type [4]  12/17 19/15 19/17 47/19

**U**

U.S [4]  22/19 23/2 25/5 37/19
ugly [1]  24/3
ultimate [2]  25/25 49/21
unartful [1]  62/14
under [10]  7/17 11/9 17/23 22/1 22/4
32/13 43/20 46/20 49/10 67/16
underlies [1]  15/12
underlying [7]  6/24 9/2 15/21 16/9 36/20
48/22 54/2
understand [41]  8/22 13/8 13/11 19/24
20/21 21/10 21/15 21/20 23/12 23/21
24/23 25/14 27/6 27/25 31/24 35/7 36/8
44/22 47/12 48/5 51/1 51/2 51/18 52/3
52/5 52/8 54/4 56/3 57/7 58/10 58/11
59/6 60/2 60/3 61/5 61/15 61/19 65/14
65/21 67/12 68/19
understanding [5]  10/25 32/19 33/13
41/24 44/17
understands [2]  38/16 45/12
understood [9]  13/20 45/20 47/20 48/24
51/9 55/4 55/22 55/24 57/11
undertake [1]  19/9 37/10 47/23
undertaken [1]  22/5
unfair [1]  4/9
unfortunate [1]  25/2
unfortunately [3]  38/17 54/25 65/3
unidentified [1]  18/11
unique [2]  36/4 47/18
UNITED [6]  1/1 1/11 6/10 23/9 35/1 35/5
unlawfully [1]  24/8
unless [4]  3/16 10/22 11/2 47/14
unreasonable [1]  9/16
until [4]  2/18 11/22 22/7 41/8
unusual [2]  3/16 3/20
up [18]  6/9 13/10 18/25 24/3 24/5 28/13
34/3 35/3 38/5 38/22 42/9 53/3 53/9
54/7 62/9 64/2 64/16 65/25
upcoming [2]  36/19 52/23
us [17]  7/24 10/14 10/24 20/1 20/19 22/8
27/17 38/1 39/1 41/13 51/17 53/18 53/24
56/2 60/25 61/7 64/18
USA [16]  1/3 2/4 2/8 10/3 16/18 16/19
17/4 27/12 30/16 31/1 31/13 31/14 49/20
50/1 51/13 51/16

U

USA's [1] 49/9
use [2] 16/22 18/21
used [7] 7/3 23/8 27/19 38/21 44/6 44/10
58/23
uses [2] 38/9 44/2
using [1] 42/3
usually [2] 40/21 54/8

V

vacation [2] 40/5 41/8
vaccinated [1] 15/6
valid [2] 5/23 30/3
validly [1] 23/3
values [1] 13/18
variables [1] 13/17
various [2] 15/13 26/11
vendor [2] 37/4 38/25
Venezuela [4] 31/1 31/14 50/3 51/17
Venezuelan [2] 15/23 16/11
version [1] 18/7
versus [1] 51/5
very [24] 2/25 7/12 11/13 12/17 23/8
25/9 25/22 27/14 27/19 28/3 28/8 28/8
33/3 33/21 35/17 36/3 37/8 40/14 40/19
44/9 46/18 55/7 59/2 68/3
via [1] 7/15
view [5] 6/11 6/12 7/8 8/15 53/23
virtually [4] 8/9 9/9 10/16 10/24
visibility [1] 61/11
vision [1] 14/22
visited [1] 18/11
volunteer [1] 55/21

W

Wait [1] 53/19
waived [3] 3/14 32/4 45/13
want [27] 2/21 18/20 21/15 23/19 29/14
29/18 29/21 30/4 30/14 36/7 37/8 40/11
40/12 40/14 41/21 45/25 51/3 53/6 55/21
58/21 59/22 62/24 63/11 64/2 66/1 67/6
68/12
wanted [4] 2/12 42/8 66/21 68/4
wanting [1] 25/3
wants [1] 61/17
warn [1] 40/21
was [76]
wasn't [6] 20/15 21/1 21/19 22/11 22/11
24/7
wasted [1] 4/24
watching [1] 42/12
way [15] 1/18 2/19 15/16 17/10 18/9
19/16 30/5 31/7 31/8 31/15 37/20 44/2
62/11 64/19 67/1
ways [1] 32/23
we [217]
we'd [1] 35/15
we'll [1] 20/19
we're [7] 8/17 11/14 20/18 35/17 44/14
44/16 47/1
we've [2] 10/1 10/4
wearing [1] 15/1
Wednesday [1] 40/8
week [5] 40/5 53/16 54/1 54/14 56/2
weeks [3] 31/4 40/4 54/21
weighing [1] 13/18
welcome [1] 46/22
well [24] 3/22 4/14 5/22 7/2 9/10 13/14
15/24 21/18 22/23 23/8 27/19 27/23 28/7
28/16 31/19 41/19 42/1 46/6 47/16 49/4

55/13 56/1 56/16 65/23
went [2] 17/1 38/22
were [31] 2/2 6/19 11/15 15/17 17/19
17/22 19/4 22/12 24/8 25/18 25/20 26/6
26/13 28/11 29/16 33/15 37/5 39/3 43/9
44/9 45/4 45/5 45/5 45/10 45/16 45/22
48/6 51/24 54/21 60/16 68/4
weren't [2] 22/14 57/2
what [126]
what's [8] 14/10 25/24 27/16 43/24 44/2
44/17 44/18 52/6
whatever [5] 25/25 46/22 63/5 64/16
65/24
whatnot [1] 47/1
whatsoever [3] 5/18 16/15 29/19
when [30] 9/19 14/18 17/25 18/6 19/1
19/11 19/14 19/16 20/8 20/14 21/4 21/8
26/13 28/18 31/7 32/1 32/20 34/21 38/24
40/21 41/10 46/6 47/20 49/25 51/6 52/22
52/25 58/12 58/17 63/3
where [20] 2/21 12/17 19/18 30/25 31/21
36/16 37/2 37/14 37/15 40/6 40/12 41/9
43/13 45/15 47/7 62/17 62/22 65/17
65/17 67/25
whereabouts [1] 11/17
whether [14] 13/12 18/13 18/23 19/8
21/11 23/14 32/4 34/15 46/11 48/6 54/18
60/17 61/13 64/15
which [38] 4/9 8/11 10/23 11/15 12/25
15/20 15/23 16/7 16/17 17/19 26/9 27/12
29/15 29/23 30/5 30/7 30/24 36/17 37/25
38/16 39/19 40/2 43/14 43/19 44/2 48/3
50/8 56/8 56/19 58/5 59/5 59/9 64/12
66/13 66/19 67/13 68/20 69/8
while [8] 15/5 15/18 23/7 25/17 30/4
34/12 34/14 36/15
who [21] 15/11 16/10 18/7 18/13 19/3
20/10 20/10 20/17 23/2 23/14 27/1 34/8
34/20 36/5 38/15 40/9 42/7 42/11 44/7
54/17 58/23
whole [1] 30/10
why [19] 3/9 5/16 6/16 13/8 13/19 17/6
17/11 19/11 23/16 26/3 28/3 33/12 36/25
37/9 41/23 50/18 51/5 54/13 58/4
wife [1] 14/11
wild [1] 4/22
will [54] 2/19 2/21 11/12 12/24 15/7 15/7
15/8 19/9 23/1 23/1 29/13 34/19 35/12
36/1 37/17 40/19 40/21 41/3 41/17 42/10
44/15 47/3 48/1 48/8 49/15 49/17 54/1
54/20 56/11 56/13 56/15 56/25 57/6 58/2
58/23 59/2 60/1 60/8 61/7 61/7 61/16
62/7 63/8 64/8 64/9 64/19 66/5 66/7
67/10 67/16 67/21 67/24 68/14 69/8
willingness [1] 64/6
WILLKIE [1] 1/14
willkie.com [1] 1/16
window [1] 62/1
wires [1] 55/17
wish [2] 36/1 37/5
withdraw [1] 47/4
withdrawn [1] 60/10
withheld [3] 44/19 45/2 46/4
withhold [1] 45/10
within [18] 3/15 22/2 37/21 40/19 40/23
51/24 52/6 52/17 55/16 57/6 58/13 58/24
59/6 60/5 61/23 62/1 65/22 67/16
without [5] 39/8 39/10 43/16 49/13 62/9
witness [1] 9/5
woman [3] 18/11 18/24 19/3

won't [1] 63/4
word [1] 22/7
words [3] 8/12 19/4 61/11
work [17] 8/22 11/18 15/25 16/13 16/18
22/5 38/22 38/24 40/10 40/11 40/19
41/12 42/7 42/13 53/24 58/4 59/3
working [4] 17/3 17/8 41/1 58/24
works [1] 40/9
worried [1] 23/7
worse [1] 14/10
worth [1] 35/8
would [75]
wouldn't [1] 20/25
wrapped [2] 35/3 53/9
write [2] 16/6 16/23
writing [2] 17/2 66/5
written [9] 3/15 4/6 4/11 5/7 66/7 66/9
67/21 68/7 69/8
wrong [1] 16/8
wrongly [1] 20/24
wrote [4] 16/14 16/16 16/21 17/2

X

Xfinity [1] 12/16

Y

yacht [2] 18/8 26/14
yachts [1] 18/7
year [3] 3/1 6/9 37/25
years [8] 14/12 15/10 22/24 42/5 43/6
45/16 45/16 47/17
yes [21] 9/25 13/23 14/10 14/14 19/19
25/10 25/13 32/9 38/11 42/15 42/19
48/11 52/1 54/13 54/24 57/20 58/2 64/5
65/12 66/12 69/17
yesterday [1] 35/13
yet [3] 24/11 24/20 39/20
York [5] 1/15 31/12 40/6 41/9 54/2
you [191]
you're [6] 33/12 34/18 39/18 41/1 61/19
62/24
you've [1] 35/5
younger [1] 38/16
your [122]
Yours [1] 36/7
yourself [1] 41/4

Z

Zoom [1] 64/18